# EXHIBIT B



RÉPUBLIQUE DU CONGO

**AU NOM DU PEUPLE CONGOLAIS**

ROLE CIVIL N° 546
[ANNÉE] 2005

RÉPERTOIRE N° 477
DU CASO7 2005



L'an deux mil cinq
Et le quatre du mois de juillet;

Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc ETIKI, Greffier en Chef des Chambres Civiles dudit Tribunal;

(/u la requête en date à Pointe-Noire du 02 Juillet 2005 de la République du Congo, Ministère des Hydrocarbures, ayant pour conseils, Maîtres Irène Jansiane OKOKO, Hervé OBONGUI NGUIE et Nadia MACOSSO, Avocats à la Cour B.P5137 Pointe-Noire;

Attendu qu'elle expose à l'appui de sa requête [...] se prévalant de [...] qu'elles ont été saisies par la société AF CAP, titulaire d'une [...] sur la République du Congo suivant une décision de la Cour [...] (Etat de New York du 9 mai 2000) par les décisions des 4 et 22 [...] la Cour du District de l'Ouest de Texas, Division Austin [...] [...] les sociétés CMS Nomeco Congo Company et Nuevo Congo Limited [...]

[texte illisible]

Que les jugements des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales, le versement des redevances [...] au ministère au Greffe de la Cour en faveur de AF CAP en exécution [...] [...] [...] sur la République du Congo ainsi que [...] [...] que la Cour [...] [...] République du Congo à [...] [...] [...] de transférer, d'aliéner ou de disposer des intérêts de la République du Congo;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

[bloc de texte largement illisible]

Qu'en l'occurrence, les décisions Américaines des 4 et 22 février 2005 n'ont pas été notifiées à la République du Congo et que ni la société AF CAP, présumée créancière de la République du Congo, ni les sociétés CMS Nuevo Congo Company et Nuevo Congo Limited, tiers saisis n'ont formulé devant les Tribunaux Congolais une demande d'exéquatur des deux décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque État Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à l'ordre Public International et à la souveraineté de la République du Congo en ce qu'elle vise des redevances fiscales, par nature insaisissables et porte atteinte à la République du Congo dans l'exercice de sa souveraineté fiscale;

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de



**EXHIBIT B**

-2-

la République du Congo détenues par les sociétés CMS NOMECO Inc, Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain, d'ordonner sur minute que ces sociétés livrent à tout opérateur désigné par la République du Congo lesdites parts de pétrole brut;

Qu'en conséquence de ce qui précède, la République du Congo sollicite, par décision de référé d'heure à heure de constater que les décisions des Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction américaine et portant saisie de la redevance minière due à la République du Congo au titre de la convention du 25 mai 1979, bien que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les cours et tribunaux congolais, constater que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise. Ordonner aux sociétés CMS Nomeco, Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut lui revenant, conformément aux dispositions de la convention du 25 mai 1979 et de la législation en vigueur, ordonner l'exécution de droit de la décision, réservant sauf plus ample toutes voies de recours, statuer ce que de droit sur les dépens;

Attendu que par conclusions en date du 19 juillet 2005, la Société CMS NOMECO CONGO Inc ayant pour conseil maître Sylvie Miémié Boungou, expose à la Cour qui y fait l'attention, ce qui suit:

Que si certaine nombre de juridictions américaines ont rendu des décisions condamnant [illegible] à la République du Congo entre les mains de la société CMS NOMECO CONGO Inc;

Que si la Société CMS NOMECO CONGO INC a introduit des requêtes de nouvelle [illegible]

[several lines illegible]

[several lines illegible]

Qu'en effet, si tel était le cas, le moyen qui [illegible]

[several lines illegible]

Que la Société CMS NOMECO étant manifestement un tiers aux procédures américaines susdites, elle ne devrait pas avoir à subir de telles [illegible]

Que l'article 599 du Code de Procédure Civile Commerciale Administrative et Financière dispose: "Sauf conventions diplomatiques contraires, les décisions rendues par les tribunaux étrangers et les actes reçus par les officiers étrangers ne sont susceptibles d'exécution [illegible] sur le territoire congolais [illegible] qui en aurait été compétente ratione materiae pour en connaître;

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions étrangères exécutées sur le territoire Congolais;

Que or, les décisions de la Cour de District des Etats-Unis, District de l'Ouest du Texas, ont été rendues, signifiées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au



...s/...

-3-

Congo à travers la société CMS NOMECO CONGO INC;

Que la République du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP INC;

Que dans ces conditions, la République du Congo ne peut valablement opposer à son créancière le respecter la formalité d'exequatur comme si elle exécutait sa décision sur le territoire Congolais;

Que la République du Congo soumettant en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi notamment des articles 50 de l'Acte Uniforme OHADA portant Organisation des Procédures Simplifiées de Recouvrement et des Voies d'Exécution et 77 de la Charte des Entreprises d'État;

Que or, il a été rappelé plus que la société CMS NOMECO CONGO INC n'est que tierce détenteur des parts de pétrole lui appartenant entre la société Américaine AF-CAP INC et la République du Congo, suite aux décisions Américaines en dates respectives du 04 et 22 février 2005;

[texte largement illisible]

[plusieurs paragraphes illisibles en raison de la dégradation du document]

SUR CE TOUTES LES RAISONS

[texte largement illisible]

Attendu que la République du Congo est un État souverain dont une personne morale de droit public;

Attendu qu'il y a lieu de lui faire application des dispositions de l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution au Congo qui dispose [texte illisible] les biens et droits ne sont pas applicables, aux personnes [texte illisible] morales de droit public ou des entreprises publiques quelle qu'en soit la forme et la mission, donnent lieu à compensation avec les dettes également certaines, liquides et exigibles dont quiconque sera tenu envers elles, pour réserve de réciprocité;

Attendu également que les décisions judiciaires américaines dont saisie du pétrole le haut Congolais ne sont pas encore exéquaturées;

Qu'en effet l'article 499 du Code de Procédure Civile, Commerciale, Administrative et Financière (CPCCAF) dispose que les conventions diplomatiques contractuelles, jugements rendus par les tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise...

.../...

ce qui aurait été compétente "ratione materiae" pour en connaitre;

Attendu en définitive qu'il n'y a donc lieu à opposer à l'Etat Congolais toutes les décisions judiciaires Américaines;

Attendu également que l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution (AUPSRVE) du [...] dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Or attendu que les redevances pétrolières sont déclarées insaisissables par la loi Congolaise;

Attendu en définitive qu'il sied de dire que la saisie du pétrole brut Congolais ordonnée par les tribunaux Américains est contraire à l'ordre public et porte atteinte à la souveraineté de l'Etat Congolais;

Attendu qu'au regard de tout ce qui précède, il y a lieu de dire que la requête de l'Etat Congolais est donc régulière et recevable;

Attendu au fond que cette requête est fondée et il y a lieu de faire droit à cette requête;

[illegible lines]
[...] à la République du Congo au titre de la convention du 25 Mai 1979;

Attendu qu'il y a lieu donc de rejeter purement et simplement tous les arguments développés par la société CMS NOMECO CONGO INC;

Attendu que la société CMS NOMECO CONGO INC a succombé au procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du [...];

**PAR CES MOTIFS**

Statuant publiquement, contradictoirement, en [...] en matière d'injonction et en premier ressort;

En la forme: Renvoyons les parties à [...] se pourvoir ainsi qu'elles en [...]

Vide-les à présent, au fond et par exclusion;

Constatons que l'arbitrage Américain se sont saisis d'un litige [...] qui a été [...] les parties la [...] à la République du Congo au titre de la convention [...] 1979;

Disons que les décisions judiciaires Américaines en limitent les décisions [...]; [illegible lines] et [...] que les redevances pétrolières Congolaises sont insaisissables selon la loi Congolaise;

Constatons que les décisions judiciaires Américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à l'ordre public et portent atteinte à la souveraineté nationale de la République du Congo;

En conséquence;

Ordonnons aux sociétés CMS NOMECO Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut revenant à la république du Congo, conformément aux dispositions de la convention du 25 Mai 1979 et de la législation en vigueur;

.../...



-5-

Disons que la présente Ordonnance sera exécutée en cas de résistance de la
société CMS NOMECO,avec l'aide et l'assistance de la Force Publique;

Ordonnons l'exécution provisoire de la présente Ordonnance nonobstant tou-
tes voies de recours;

Mettons les dépens à la charge de la société CMS NOMECO CONGO INC;

Et avons rejans signé notre Ordonnance avec le Gréffier,/-

Suivant les signatures (s) illisibles
du Président et du Gréffier
suit la mention d'enregistrement
Enregistré à Pointe-Noire le 04 juillet 2005
Pour Expédition collationnée
certifiée conforme à Kodjagi
établie en .................... En pages.

POINTE-NOIRE, le 05 juillet 2005
Le Gréffier en Chef

Me R. LOUD-OKOUO
Gréffier en Chef

**EXECUTION COPY**

**ORDER**                                                    F No. 251

CIVIL LIST No. 546
YEAR: 2005

                                          **REPUBLIC OF THE CONGO**
                                    ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 477
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

With reference to the motion dated July 2, 2005 in Point Noire from the Republic of the Congo, Ministry of Hydrocarbons, with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

Whereas in support of its motion, it stated: whereas AF CAP (which holds a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

But whereas these decisions could not be executed in the Republic of the Congo;

Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas in this case, the Republic of the Congo was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each Contracting State may not be garnished even though it may be held by third parties;

2

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with International Public Order and the Republic of the Congo's sovereignty in that it is aimed at tax royalties, by their nature not subject to garnishment, and it interferes with the Republic of the Congo's exercise of its sovereignty in matters of taxation;

Whereas, therefore, since the issue of the delivery of any operator designated by the Republic of the Congo's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver said shares of crude oil to any operator designated by the Republic of the Congo;

Whereas based on the foregoing, the Republic of the Congo is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction on the garnishment of the mining royalty owed to the Republic of the Congo's under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to any operator designated by the Republic of the Congo, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in briefs dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, P.O. Box 5316, Pointe-Noire, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to the Republic of the Congo held by CMS Nomeco Congo Inc;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that its delivery of the shares of crude oil to any operator designated by the Republic of the Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco to deliver shares of crude oil to any operator designated by the Republic of the Congo would render CMS Nomeco liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco would be forced to deliver shares of crude oil to any operator designated by the Republic of the Congo in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas CMS Nomeco is obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

Whereas Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this code it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas the Republic of the Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas under these conditions, the Republic of the Congo cannot make valid use of the argument that its obligee observed the procedure for the authority to execute as though it were executing its decision in Congolese Territory;

Whereas the Republic of the Congo further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the Republic of the Congo, pursuant to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, mainly AF-CAP Inc., the U.S. company, and the Republic of the Congo;

Whereas it is requesting that the Court: - find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco; - find that CMS Nomeco Congo is only a "third arty holder" of the immobilized shares of crude oil; - find that only the effects of this execution are felt in the Congo through CMS Nomeco; find that there is no instrument of execution whatsoever that has been carried out in Congolese territory;

Whereas consequently, find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and - order the Republic of the Congo to pay the costs;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that the U.S. court decisions that ordered the attachment of Congolese crude oil conflict with the Congolese laws in effect;

Whereas the Republic of the Congo is indeed a sovereign State and therefore a Government Corporation and Enterprise;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution which provides that "Compulsory distraint and preventive measures shall not apply to persons enjoying immunity from execution. However, any unquestionable debts due for payment belonging to public corporations or enterprises, regardless of their form and mission, may equally be compensated with unquestionable debts due for payment belonging to any person owing them, subject to reciprocity;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas furthermore, the decisions of the U.S. courts, including for the attachment of the Congolese crude oil, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas ultimately, there is therefore no reason to use the decisions of the U.S. courts as arguments against the Congolese State;

Whereas, moreover, Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution (UAOSRPME) provides that "property declared not subject to attachment by the national law of each Contracting State may not be attached, even if it is held by third parties;

Yet, whereas the oil royalties are declared not subject to attachment by Congolese law;

Whereas ultimately, it should be found that the attachment of the Congolese crude oil ordered by the U.S. courts is in conflict with public order and interferes with the sovereignty of the Congolese State;

Whereas with regard to the foregoing, there is reason to find that the Congolese Republic's motion is in order and admissible;

Whereas, in substance, it is grounded; whereas there is reason to accept it;

Whereas it is therefore essential to find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the CCCAFP;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

On the merits, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

We find that the U.S. court decisions or decisions of other foreign jurisdictions may not be executed in Congolese territory without first having been the subject of the procedure of the authority to execute with the Congolese Courts and Tribunals. We find that the Congolese oil royalties cannot be attached according to Congolese law;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We find that the U.S. court decisions that ordered the attachment of the Congolese crude oil are in conflict with the public order and interfere with the Republic of the Congo's national sovereignty;

Consequently;

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to any operator designated by the Republic of the Congo in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc. to pay the costs.

And we have signed our Order with the Clerk,

> The illegible signatures of the Presiding Judge and the Registrar follow.
> The recording follows.
> Recorded in Pointe-Noire on July 4, 2005
> Certified true execution copy, checked against the original, 5 pages
> Pointe-Noire, July 5, 2005
> Head Registrar
>
> In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]