**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CONNECTICUT BANK OF COMMERCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-762 (SLR) |
| | ) | |
| THE REPUBLIC OF CONGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S EXCEPTIONS TO
GARNISHEES' ANSWER TO WRIT OF GARNISHMENT**

Pursuant to Rule 5 (aa)(2) of the Delaware Superior Court Civil Rules, Af-Cap, Inc. ("Af-Cap"), successor to Plaintiff, Connecticut Bank of Commerce, submits exceptions to Garnishees', CMS Nomeco Congo, Inc., ("CMS"), Answer to Writ of Garnishment. As more fully demonstrated below, CMS' answer is both procedurally and substantively flawed and, thus, Af-Cap is entitled to garnish property held by CMS on behalf of Af-Cap's Judgment Debtor, the Republic of Congo ("Congo").

## INTRODUCTION

The straightforward issue before this Court is whether CMS holds property belonging to Af-Cap's Judgment Debtor, Congo, in Delaware. In its answer, CMS admits that it holds such property. (*See* Answer of CMS at 19, ¶¶ 1-3). Despite the admission, CMS devotes the majority of its answer to casting aspersions on Af-Cap's motives in enforcing lawful U.S. judgments and lodges objections to Af-Cap's enforcement action, which CMS is barred from re-litigating under the doctrine of

1

collateral estoppel.  Specifically, in *Af-Cap, Inc. v. Republic of Congo*, the Fifth Circuit held that the very royalty obligation that Af-Cap seeks to garnish in this proceeding is subject to garnishment in the United States wherever the debt is located.  *See* 383 F.3d 371-72 (5th Cir.); *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir.), *modified on reh'g*. 389 F.3d 503 (5th Cir. 2004), *cert. denied* 125 S.Ct. 1735 (2005).  CMS was a party to the Fifth Circuit *Af-Cap* case and argued jointly with Congo against the Court's eventual holding and even filed a joint petition for *certiorari* with the Supreme Court, which was denied.  Thus, CMS is collaterally estopped from re-litigating issues already decided in the Fifth Circuit action.  Yet, in this case regarding the identical oil royalty obligation, CMS ignores the prior rulings and proceed as if they are writing on a blank slate.  They are not, and there is no basis for this Court to revisit the issues that the Supreme Court has already declined to review.  Accordingly, as demonstrated below, the Court should enforce Af-Cap's writ of garnishment.

CMS attempts to convey itself as an innocent third party, conveniently overlooking that it is subject to an injunction barring its proposed transfer of the asset at issue through an intra-corporate transaction to a related off-shore entity on the grounds that it is a fraudulent transfer.  That case is set for trial.

## ARGUMENT

## I.    CMS' ANSWER IS PROCEDURALLY FLAWED

Rule 5(aa)(2) of the Superior Court Civil Rules provides that a garnishee "shall serve upon plaintiff a **verified answer** within twenty days after service of process, which shall specify what goods, chattels, rights, credits, money or effects of a defendant, if any, he has in his possession custody and control."  *See* Del. Super. Ct. Civ. R. 5(aa)(2).

2

CMS' answer fails to meet these requirements. First, CMS did not timely file its answer. The answer was due on November 1, 2005, but was not filed until the following day on November 2, 2005.[1] Second, CMS' answer is not verified.

CMS' failure to respond properly to the writ of garnishment makes CMS liable for attachment in satisfaction of Af-Cap's judgment. *See* 10 *Del. C.* § 3509. In *Coopers Home Furnishings, Inc. v. Lolly*, the Delaware Superior Court held that a garnishee who fails to file a verified answer following service of attachment within the time prescribed is itself subject to attachment. 270 A.2d 676, 678 (Del. Super. Ct. 1970). Here, CMS did not file a verified answer, and the unverified answer was not filed on time. Accordingly, the Court should issue an attachment against CMS for the full value of Af-Cap's judgment against the Congo.

## II.    THE DOCTRINE OF COLLATERAL ESTOPPEL BARS CMS

As an initial matter, it is important to note that this is not a new case and the parties are not strangers. During the course of this litigation in other fora, the parties have been back and forth to the United States Court of Appeals for the Fifth Circuit more than three times, and CMS and Congo have had a joint request for *certiorari* to the Supreme Court denied. As a result of this procedural history, there are certain issues that CMS is precluded from raising. The doctrine of collateral estoppel precludes a litigant from re-litigating issues when the identical issue has already been fully litigated. *See Board of Trustees v. Centra*, 983 F.2d 495, 505-506 (3d Cir. 1995). A litigant is collaterally estopped when:

---

[1] CMS has failed to file any papers in this proceeding within court deadlines. Indeed, CMS filed its unfounded Notice of Removal long after the statutory deadline. Af-Cap files its exceptions in this Court even though it has filed a Motion to Remand because until the remand motion is ruled upon this Court maintains jurisdictions. Af-Cap expressly states that it is not waiving the relief sought in its Motion for Remand by virtue of filing its exceptions in this Court.

> (1) the identical issue was decided in a prior adjudication; (2) there
> was a final judgment on the merits; (3) the party against whom the
> bar is asserted was a party or in privity with a party to the prior
> adjudication; and (4) the party against whom the bar is asserted had
> a full and fair opportunity to litigate the issue in question.

*Id.* at 505 (citing *Temple Univ. v. White*, 941 F.2d 201, 212 (3d Cir. 1991) *cert. denied*
502 U.S. 1032 (1992)).  Here prior court decisions, collaterally estop CMS from arguing
the following:

1.    the intangible oil royalty obligation is not subject to garnishment;

2.    the situs of the debt is where the debtor is located;

3.    the Act of State Doctrine bars Af-Cap's recovery; and

4.    the foreign state compulsion doctrine bars Af-Cap's recovery.

## III.    AF-CAP'S RESPONSE TO CMS' OBJECTIONS

On pages 2-6 of its answer, CMS raises various objections to Af-Cap's writ of
garnishment.  Each of the objections lack merit and should be overruled on the following
grounds:

1.    CMS argues that Af-Cap failed to inform the Superior Court of Congolese
Court orders purportedly requiring CMS to deliver oil to Congo despite the writs of
garnishment issued by the Texas courts.  (*See* CMS Answer at 2, ¶ 1).  The Congolese
court orders are not relevant to Af-Cap obtaining a writ of garnishment against Congo's
property and certainly are not a defense to Af-Cap's garnishment action.  Af-Cap
obtained the writ of garnishment in compliance with the Foreign Sovereign Immunities
Act after demonstrating to the Superior Court that the foreign sovereign was served and
that a reasonable period of time has elapsed since entry of judgment.  *See* 28 U.S.C.

§ 1610(c). Moreover, Congo, by agreement, is barred from taking any action to frustrate Af-Cap's garnishment and further must consent to the relief sought in Af-Cap's action.

2.    CMS argues that Af-Cap "is asking this Court to impose obligations on CMS [Nomeco] that are in direct conflict with the requirement, and associated Congolese court orders, to deliver oil in the Congo." (*See* CMS Answer at 3). Contrary to CMS' position, Af-Cap is merely seeking to levy upon a debt owed by a garnishee to its judgment debtor. Furthermore, CMS is not an "innocent bystander" that would be subject to double-liability if it complied with the writ of garnishment. CMS' conduct throughout this and other litigation shows that it is not innocent, and regularly panders to Congo. Nevertheless, CMS seeks protection in this Court from Congo on the grounds it must be protected from "double liability." In support of its position, CMS cites *LNC Investments, Inc. v. The Republic of Nicaragua*, No. Misc. A.01-134-JJF (D. Del. Dec. 18, 2002). CMS' reliance on *LNC Investments* is misplaced. Additionally, the defense of double liability is inapplicable where, as here, there is evidence of collusion, fraud, and negligence between the garnishee and judgment debtor. *See Parker, Peebles & Know v. Nat'l Fire Ins. Co.*, 150 A. 313 (Conn. 1930). Thus, CMS' arguments concerning double-liability and its reliance on *LNC Investments* are irrelevant to the determination of this case, and the Court should overrule CMS' objection.

3.    CMS contends that the so-called "Foreign State Compulsion Doctrine" prohibits the Court from issuing the writs. (*See* CMS Answer at 3, ¶ 3). CMS' argument is merely an offshoot of both its barred act of state doctrine and flawed "double liability" argument, and is independently barred because CMS has already litigated the claim before the Southern District of Texas, which has rejected it. Even if CMS were not

collaterally estopped from making the argument, the argument fails on its own for a number of reasons. For example, because Congo is a party to this case and there is evidence that CMS has engaged in collusion or fraud with the Congo, the foreign state compulsion doctrine does not apply. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004).

CMS is barred from raising the act of state doctrine as a defense to this action because the Fifth Circuit has already ruled that it does not apply. *See Af-Cap, Inc.*, 383 F.3d 361, 372 n. 14. In any event, CMS' reliance on the act of state doctrine is misplaced because this case does not involve a public act. For these reasons, the Court should overrule CMS' objections.

4.    CMS suggests that Af-Cap's writ of garnishment is deficient because "it failed to disclose to the Court that the United States District Court for the Western District of Texas has held that an in-kind royalty obligation . . . is not subject to garnishment...." (CMS Answer at 3-4, ¶ 4). CMS is barred from re-litigating this issue because the Fifth Circuit resolved the issue against CMS when it found that the oil royalty, an intangible obligation, is subject to garnishment. *See Af-Cap, Inc.*, 383 F.3d at 371-372 (discussing the situs of an intangible obligation for purposes of garnishment). Nor can CMS hide behind the Western District of Texas' erroneous opinion, which failed to apply the Fifth Circuit's mandate and is on appeal again to the Fifth Circuit. In the meantime, the United States District Court for the Southern District of Texas has already cast doubt on the Western District's decision because when it analyzed the same facts that were before the Western District, and that are also before this Court, the Southern District of Texas concluded that writs of garnishment were a proper procedural vehicle to

6

attach the intangible asset and issued writs to another creditor of Congo over the same objections that CMS raises in this proceeding. Also, the royalty obligation between Congo and CMS has been converted to an in-cash payment stream based upon a Letter of Instruction signed on behalf of Congo by the Western District of Texas and served upon CMS. Thus, the royalty obligation that Af-Cap seeks here has been monetized, which resolves the unfounded concerns of the Western District of Texas and CMS' argument against garnishment.[2]

Moreover, even if CMS was not barred from arguing that a writ of garnishment is not appropriate in this case, its argument is irrelevant because under Delaware law there is no question that an oil royalty obligation is subject to attachment. *See Dangelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1038-39 (D. Del. 1977). In *Dangelo*, this Court held that Mobil Oil Corporation was responsible in a garnishment action for an intangible debt, an oil royalty, that it owed to an agency and instrumentality of the Mexican government. Additionally, there is no question that under Delaware law an intangible obligation is subject to garnishment. *See Wilmington Trust Co. v. Barron*, 470 A.2d 257, 262 (Del. 1983) (*citing* 2 V. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware,* § 1152 (1906)). The items subject to execution include goods, and intangible property such as rights and credits. *Id.* (citing 10 *Del. C.* § 5031 – Execution on Attachment). Thus, CMS' argument, even if not barred or irrelevant, is contrary to Delaware law.

---

[2] Thus, to the extent that CMS believes Af-Cap has a burden to show that there is a practical way to garnish this asset in the United States, Af-Cap satisfies the burden. The only reason Af-Cap has not been paid to date is because neither CMS nor Congo believe that they are required to follow court orders. One court has already held Congo in contempt and another has suggested that an intra-corporate transaction designed to move CMS' operations wholly outside the United States appears fraudulent. *See* Order of United States District Judge Keith P. Ellison, attached hereto as Ex. A; *see also* Order of United States District Judge Sam Sparks, attached hereto as Ex. B.

5.    CMS suggests that Af-Cap failed to disclose that the *Connecticut Bank of Commerce v. Republic of Congo* case requires that the District Court first must determine that an exception to immunity exist prior to issuing a writ of garnishment against a foreign sovereign property. (*See* CMS Answer at 3, ¶ 4-5 (*citing* 309 F.3d 240, 247 (5th Cir. 2002))). CMS' suggestion is, at a minimum, disingenuous because it ignores that the *Af-Cap* case, which it sought *certiorari* on, held that the very asset Af-Cap seeks to garnish in this case was in the United States and subject to attachment. *See Af-Cap, Inc.*, 383 F.3d at 370. Thus, the standard CMS espouses is satisfied by a subsequent court ruling with which it is intimately familiar.

CMS then attempts to limit the temporal scope of the *Af-Cap* case, arguing that it is relevant only to 2003 when CMS was "formed and headquartered" in the United States. *Id.* at 5. CMS argues that *Af-Cap* does not apply because CMS "no longer has any physical offices, directors, officers or activities in the United States . . .." *Id.* CMS' argument is bizarre, not supported by the plain language of *Af-Cap*, and irrelevant. CMS has not and cannot deny that CMS is qualified to do business in Delaware, or subject to suit in Delaware. It also cannot deny that it contests jurisdiction in Texas because it claims to have relocated its headquarters while Af-Cap's and other creditors' actions were pending in Texas and before the Fifth Circuit. CMS is on the run, but it cannot escape jurisdiction from this garnishment action in Delaware. *See e.g. Netter Bros. v. Stoeckle*, 56 A. 604 (Del. Super. Ct. 1903) (holding judgment creditor has jurisdiction over a garnishee as long as garnishee is subject to suit in Delaware).

6.    CMS' argument that Af-Cap failed to disclose to the Superior Court that tax obligations between it and Congo are not subject to attachment under the *Af-Cap* case

8

highlights the disingenuous approach it has taken in this proceeding.  CMS is correct that

the Fifth Circuit modified the *Af-Cap* opinion to exclude from garnishment taxes paid by

CMS to Congo as long as those taxes were not used for commercial activity in the United

States.[3]  *See Af-Cap*, 389 F.3d 503.   To the extent that CMS construed Af-Cap's request

to seek a writ of garnishment against a pure tax obligation to Congo, Af-Cap expressly

states that it does not seek to garnish such obligations.

For each of these reasons, CMS' request to quash Af-Cap's writ of garnishment

should be denied.

## IV.  AF-CAP's RESPONSE TO CMS' STATEMENT OF FACTS

Af-Cap objects to CMS' Statement of Facts and states that the only facts relevant

to determining this case are set forth in Af-Cap's Praecipe/Motion for Writ of

Garnishment.

## V.  AF-CAP's RESPONSE TO CMS DEFENSES

CMS' defenses mirror its objections, but are just arranged under different

headings or in a different order.  The realignment does not strengthen CMS' arguments or

help it to avoid the inescapable conclusion that they are precluded from reasserting the

arguments.  Rather than burden the Court by repeating each of Af-Cap's responses, Af-

Cap will incorporate its responses above by reference where appropriate.  In addition, for

ease of reference, Af-Cap adopts CMS' numbering system.

### A1.  CMS' "Double Liability" Defense Should Be Rejected

Af-Cap hereby incorporates by reference its arguments in Section III (1)-(3),

*supra*.  In addition, Af-Cap declines CMS' invitation to "concede" that the Congolese

---

[3] CMS is wrong to assert that **all tax obligations** are not subject to garnishment.  On Rehearing, the Court held that tax obligations were immune only if they were not used to satisfy the Congo's commercial debt.

court orders defeat its garnishment action. (*See* CMS Answer at 11). Furthermore, CMS' reliance upon *Weitzel v. Weitzel*, 27 Ariz. 117 (Ariz. 1924) and *West v. Baker*, 510 P.2d 710, 734 (Ariz. 1973) is also unavailing. (*See* CMS Answer at 11-12). Neither case arises under the FSIA or Delaware law. *Weitzel*, in particular, addresses a situation where a spouse sought to garnish her ex-husbands wages for services that were all rendered in Mexico and were paid entirely in Mexico. The garnishee had no connection to Arizona. Here, CMS is a Delaware entity.

### A2.    CMS' Foreign State Compulsion Argument is a Ruse

Af-Cap hereby incorporates its arguments by reference in Section III (3), *supra*.

### A3.    CMS is Barred From Raising the Act of State Doctrine

Af-Cap hereby incorporates its arguments in Section III (3), *supra*.

### B.    The Writ Does Not Apply to the In-Kind Royalty Because, as Held by the Western District of Texas, Only Monetary Obligations Are Subject to Garnishment

Af-Cap hereby incorporates by reference its arguments in Section III (4), *supra*. The Western District of Texas' determination of a state law issue, which is on appeal, does not preclude Af-Cap from seeking to garnish the obligation under Delaware law. Finally, if decisions from the *Af-Cap* cases bind Af-Cap, then those same decisions also bind CMS.

### C.    Af-Cap has Failed to Garnished Is Currently "in the United States" as Required by The FSIA Demonstrate That the In-Kind Royalty Sought to be

As shown above, none of CMS' arguments state grounds to dismiss, quash or dissolve Af-Cap's writ of garnishment. CMS suggests the FSIA requires a Court to determine that an asset sought to be garnished is "currently" located in the United States. (*See* CMS Answer at 14). CMS misstates the requirements for obtaining a writ of

garnishment under FSIA section 1610(c). CMS has self-legislated a "currency requirement" into Section 1610(c) that simply does not exist. *See* 28 U.S.C. § 1610(c). Section 1610(c) merely requires that the Congo be served under Section 1608(e) of FSIA and that a "reasonable period of time has elapsed following entry of judgment." Af-Cap satisfied those requirements.

In addition, CMS argues that the debt is not in the United States because it has moved its headquarters. CMS' argument is fatally flawed because it is a Delaware entity.

Next, CMS contends that the Court lacks *in-rem* jurisdiction over the Congo's asset. (*See* CMS Answer at 15). CMS ignores that it is precluded from reasserting this situs argument, which is both incorrect and irrelevant. *See also* Section III (4)-(5) (arguments incorporated by reference herein), *supra*. Additionally, CMS is incorrect as a matter of law because under FSIA, determinations of the federal and state courts concerning foreign sovereign immunity are matters of federal law. *See* 28 U.S.C. § 1602. Also, CMS' view is irrelevant because for more than a century Delaware has adhered to the principle that a judgment creditor has jurisdiction over a garnishee as long as it is subject to suit in Delaware. *See e.g. Netter Bros. v. Stoeckle*, 56 A. 604 (Del. Super. Ct. 1903)

Moreover, the cases cited by CMS, *Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985), and *Tabacalera* do not support its position that Delaware is not the situs of the debt. In *Callejo*, a case under FSIA, the court accepted the view that acts could take place in several jurisdictions and that "outmoded rules placing such activity 'in' one jurisdiction or another are not helpful here." *Callejo*, 764 F.2d at 1112. *Tabacalera* did not involve the FSIA, but there too, the Court recognized that where as here, the question

before the court was the situs of intangible property (in that case, as here, a credit owed by an American company), the court decided that the situs was in the United States because the debtor was in the United States. The court expressly rejected "the fiction" that situs is at the domicile of the creditor. *Tabacalera*, 392 F.2d at 715-16. Accordingly, Delaware is the situs of the debt between Congo and CMS; and CMS, a Delaware entity, is subject to suit in Delaware on the basis of that debt.

> **D.    Even If the FSIA Requirements Were Met With Regard to the Royalty, There is No Basis For Any Contention that Tax Obligations Fall Within An Exception To Immunity Under FSIA**

Af-Cap hereby incorporates by reference the arguments in Section III (6), *supra*.

## VI.    AF-CAP's EXCEPTIONS TO CMS' ANSWER

None of CMS' objections or defenses have merit and, accordingly, its objections and defenses should be overruled.

1.    CMS admits that it holds an asset, oil royalty obligation, belonging to Af-Cap's judgment debtor, Congo. As demonstrated above, the oil royalty obligation is subject to garnishment in Delaware and an attachment should issue forthwith. Furthermore, under a Turnover Order issued in the Western District of Texas and a Letter of Instruction signed on Congo's behalf by that Court and sent to CMS' counsel, the Congo converted the royalty obligation to cash. Thus, CMS' answer is wrong concerning the form of the royalty obligation it holds on behalf of Congo.

2.    CMS admits that it holds an asset, oil royalty obligation, belonging to Af-Cap's judgment debtor, Congo. As demonstrated above, the oil royalty obligation is subject to garnishment in Delaware and an attachment should issue forthwith. Furthermore, under a Turnover Order issued in the Western District of Texas and a Letter

of Instruction signed on Congo's behalf by that Court and sent to CMS' counsel, the Congo converted the royalty obligation to cash. Thus, CMS' answer is wrong concerning the form of the royalty obligation it holds on behalf of Congo.

3.       CMS admits that it holds an asset, oil royalty obligation, belonging to Af-Cap's judgment debtor, Congo. As demonstrated above, the oil royalty obligation is subject to garnishment in Delaware and an attachment should issue forthwith. Furthermore, under a Turnover Order issued in the Western District of Texas and a Letter of Instruction signed on Congo's behalf by that Court and sent to CMS' counsel, the Congo converted the royalty obligation to cash. Thus, CMS' answer is wrong concerning the form of the royalty obligation it holds on behalf of Congo.

4.       CMS' contends that there was no money due and owning as of the date of its answer. (*See* CMS Answer at 21). CMS' response is belied by the terms of the Convention, which provides that the mining royalty is a continuing obligation. (*See* Oil Convention at § 7, ¶ 7.01, attached hereto as Ex. C). Thus, as long as CMS is extracting oil, its royalty obligation to Congo accrues. There is nothing in CMS' answer that suggests CMS is no longer extracting oil, and all the evidence in its answer shows that CMS continues to operate in Congo. CMS' attempt to limit a "lifting" to the date that it and Congo decide an actual royalty payment is due merely constitutes an attempt to frustrate Af-Cap's action.

## VII.    AF-CAP OBJECTS TO CMS' JURY DEMAND

Af-Cap hereby objects to CMS' jury demand.

## CONCLUSION

Based upon the foregoing, Af-Cap respectfully requests the following relief:

1.    that the Court overrule CMS' objections and defenses;

2.    that the Court issue a judgment against CMS for the full value of Af-Cap's judgment plus interest and costs; and

3.    that the Court grant such other relief to which it deems Af-Cap is justly entitled; or

4.    Alternatively, set the matter for a bench trial.

**GREENBERG TRAURIG LLP**
Sanford M. Saunders, Jr.
Kenneth P. Kaplan
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006
(202) 331-3100

**GREENBERG TRAURIG LLP**

Paul D. Brown (No. 3903)
Joseph B. Cicero (No. 4388)
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7000

*Attorneys for Af-Cap, Inc.*

*Attorneys for Af-Cap, Inc.*

Dated: November 17, 2005