# EXHIBIT A

**IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | |
|---|---|
| CONNECTICUT BANK OF COMMERCE, | ) Delaware Judgment No. 05J-08-826 <br> ) J-22-165 FJ <br> ) <br> ) Index No. 26671/99 <br> ) <br> ) SUPREME COURT OF THE STATE <br> ) OF NEW YORK <br> ) COUNTY OF KINGS <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) |
| THE REPUBLIC OF CONGO, | ) WRIT OF GARNISHMENT <br> ) |
| Defendant. | ) <br> ) |

RECEIVED

DELAWARE JUDICIARY

2005 OCT -3 P 4: 58

**TO:    THE SHERIFF OF NEW CASTLE COUNTY, STATE OF DELAWARE,**
you are commanded:

To serve this attachment on **CMS Nomeco Congo., c/o its Registered Agent, Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801,** to attach the money, goods, chattels, credits and effects, stocks, bonds, personal property, and/or real estate of **<u>Republic of the Congo</u>,** to satisfy a debt owed to the assignee of the above named plaintiff by the defendant in the amount of $13,628,340.11 according to the judgment of the Supreme Court of the State of New York, County of Kings, Index No. 26671/99, which has been converted to a Delaware judgment by the Superior Court of Delaware In and for New Castle County, **Delaware Judgment No. 05J-08-826, J-22-165 FJ.**

**To the defendant's garnishee who is served this paper:**

The Superior Court of the State of Delaware, in and for New Castle County, requires you to inform **PAUL D. BROWN, ESQUIRE, 1000 West Street, Suite 1540, Wilmington, Delaware, 19801 (302) 661-7000,** of all money, goods, credits and effects, stock, bonds, personal property, and/or real estate belonging to the defendant you currently possess. As the Garnishee, you are to retain the items stated by you in response to the above. You are to hold these items until another order of this Court releases you from this obligation. **You must do this within 20 days after service of this writ upon you, not counting the day that you received this writ.** Your failure to respond may result in a default judgment against you for the amounts the defendant owes as shown below. The amounts the defendant owes are:

IN SHERIFF'S HANDS

OCT -6 AM 10:27

NEW CASTLE COUNTY

**Office of the Sheriff**
**Deputy Service Sheet**

05015078

**FIFA Garnishment**

Court:   Superior Court Execution (New Castle)

**Return Date: 01/04/2006**

**CA#05J 08 826ET**

**CONNECTCUT BANK OF COMMERCE**
**vs.**
**THE REPUBLIC OF CONGO**

Service Count: 1

**Court Date:**

Return of Service to be made by: __/__/__
Return of Service Mailed on: __/__/__

Received Date:   10/06/2005
Prepared by:   LGGasby

**Service On**

CMS NOMECO CONGO INC ET AL -GARNISHEE

1209 ORANGE  STREET
WILMINGTON , DE

**File Comments**

GARN CICERO GARN CK # 001596 $ 20.00 FOR CMS
NOMECO CONGO INC ET AL

So Ans:
Sheriff

Writ Returned

er

Deputy Sheriff

Attempted Service _____

Attempted Service _____

Attempted Service _____

Attempted Service _____

Attempted Service _____

FILED PROTHONOTARY 2005 OCT 17 PH 2: 26

**Service**

Served By _____

Served  B Penrod

Date Served 10/12  Time Served 1215

Place Served _____

Substitute _____

**Attorney:**

GREENBERG TRAURIG LLP

BRANDYWINE BUILDING
1000 WEST STREET
SUITE 11540
WILMINGTON, DE 19801

**Description of Person Served**

Male _____    Female _____

Hair Color _____ Skin Color _____ Ethnicity _____

Height _____ Weight _____ Age _____

Other Identifying Marks _____

(302)661-7000

OCT   6

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 598457 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
PERSONALIZED MEDIA COMMUNICATIONS,
L.L.C., Plaintiffs,
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics, Inc., and Philips
Electronics North America Corporation, Defendants.
THOMSON MULTIMEDIA, INC., Counterplaintiff,
v.
PEGASUS DEVELOPMENT CORPORATION,
Personalized Media Communications, L.L.C., TVG-
PMC, Inc., Starsight Telecast, Inc., and Gemstar-TV
Guide International, Inc., Counterdefendants.
**No. CIV.A. 00-1020-GMS.**

April 18, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On December 4, 2000, the plaintiffs, Pegasus
Development Corporation ("Pegasus") and
Personalized Media Communications, LLC ("PMC"),
filed the above-captioned action alleging patent
infringement. Specifically, Pegasus and PMC allege
that each defendant has willfully infringed seven
patents owned or licensed exclusively by PMC and
Pegasus.

On November 2, 2001, the defendant Thomson
Multimedia, Inc. ("Thomson") sought leave to add
third-parties Gemstar-TV Guide International, Inc.,
StarSight Telecast, Inc., and TVG-PMC, Inc.
(collectively "Gemstar") to the case. At that time,
Thomson also filed a pleading entitled, "First
Amended Answer and Counterclaim and Third Party
Complaint." Along with this amended pleading,
Thomson also filed a motion for a sixty-day
extension of time to "amend [its] pleadings to add
counts relating to [the] newly added [Gemstar]
parties."

On January 7, 2002, Thomson filed its "Second

Amended Answer and Counterclaims and Third Party
Complaint." On February 1, 2002, Gemstar moved to
dismiss Thomson's second amended counterclaims.
Subsequently, on March 1, 2002, Thomson sought
leave to amend its second amended answer and
counterclaims and third-party complaint. [FN1]
Thomson's motion proposes the following changes to
its counterclaims and third-party complaint: (1)
reorganization of the facts and claims set forth in the
allegations, (2) additional detail supporting
Thomson's allegations as to how the
counterdefendants have violated the antitrust laws,
and (3) a restatement of its claims to cure any alleged
defects in its pleading. The Gemstar parties are the
only parties that oppose this motion. For the reasons
that follow, the court will grant Thomson's motion.

> FN1. Although the motion is entitled
> "Thomson's motion for leave to amend its
> second amended answer and counterclaim
> and third party complaint," Thomson has
> indicated that it is seeking only to amend its
> counterclaim and third party complaint.

II. DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that
leave to amend shall be freely given when justice so
requires. See Foman v. Davis, 371 U.S. 178, 182
(1962). Following this mandate, the Third Circuit has
routinely held that leave to amend should be freely
granted when pleadings lack the requisite factual
specificity for a particular cause of action. See
District Council 47 v. Bradley, 795 F.2d 310, 316 (3d
Cir.1986); see also U.S. v. Teeven, 1992 WL 683682,
at *8 (D.Del. Oct. 27, 1992) (citing cases). Indeed,
"[t]he clearest cases for leave to amend are correction
of an insufficient claim or defense and amplification
of previously alleged claims or defenses." Teeven,
1992 WL 683682, at *7. Notwithstanding Rule
15(a)'s broad application, courts may deny leave to
amend where they find "undue delay, bad faith or
dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing
party by virtue of allowance of the amendment, [and]
futility of amendment ...." Foman, 371 U.S. at 182. In
its opposition to this motion, Thomson first argues that
Thomson has continuously acted improperly with
regard to its Gemstar claims, beginning with adding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 598457 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Gemstar as a counterdefendant in November 2001. The court disagrees. It was not until September 14, 2001 that the plaintiffs identified sixteen claims from the patents that it was asserting against Thomson. Moreover, it was not until October 15, 2001 that the plaintiffs set forth their infringement contentions concerning these claims. Thomson maintains that these infringement contentions clearly rely on functionality that falls squarely within an exclusive field of use that Gemstar admittedly has licensed from PMC.

*2 Less than a month after receiving the plaintiffs' contentions, Thomas sought, and was granted, leave to add Gemstar as a party based on the license defense. Furthermore, Thomson argues that it needed additional time to review the plaintiff's "voluminous" document production. Thus, when Thomson sought leave to add Gemstar as a defendant, it simultaneously filed a motion for a sixty-day extension for leave to add additional claims against Gemstar. The court granted the motion, thereby giving Thomson until January 7, 2002 to file additional claims against Gemstar. Accordingly, Thomson timely filed its second amended counterclaim on January 7, 2002. On these facts, Gemstar's charges that Thomson acted in bad faith or with dilatory intent in adding Gemstar as a party are baseless.

Gemstar next relies on statements made by Thomson's counsel at the December 5, 2001 office conference. Specifically, on that date, Thomson's counsel stated that, "we can live with an early January date by which we either amend, that we should make any amendments based on the documents we currently have access to." Gemstar reads this statement as precluding Thomson from filing any additional pleadings in this action. However, based on the transcript of that conference, the court concludes that the issue of whether Thomson should be permitted to seek leave to amend in the future was not before the court at that time. Thus, to read such a broad meaning into Thomson's statements at that conference would be improper.

Gemstar further argues that it will suffer undue prejudice if the court were to grant Thomson's motion. Gemstar bears the burden of proving that actual prejudice will result from an amendment. *See Pension Fund v. North Philadelphia Health Sys., 1999 WL 236606, at *2 (E.D. Pa. April 21, 1999).* To satisfy this burden, Gemstar must do more than merely claim prejudice. *See id.* Instead, Gemstar "must show that it was unfairly disadvantaged or

deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Id.* (citing *Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir.1989)).* "Prejudice does not result merely from a party's having to incur additional counsel fees; nor does it result from a delay in the movement of a case." *Pension Fund,* 199 WL 236606, at *2 (citing *Adams v. Gould, Inc ., 739 F.2d 858, 869 (3d Cir.1984)).* Rather, prejudice under *Rule 15* "means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." *Pension Fund, 1999 WL 236606, at *2* (citing *Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 (3d Cir.1990)).*

On the facts before it, the court concludes that Gemstar has failed to demonstrate how it would be prejudiced if the court were to grant Thomson permission to amend. Indeed, nowhere does Gemstar explain how it was "deprived of the opportunity to present facts or evidence." *See Pension Fund, 1999 WL 236606, at *2.* Nor does Gemstar explain how it would suffer "undue difficulty" in defending against Thomson's claims in the face of an amendment. *See id.* Indeed, the only prejudice Gemstar has asserted is that it has incurred, and will incur, attorney's fees in briefing the motions to dismiss. [FN2] The law is clear, however, that "prejudice does not result merely from a party's having to incur additional counsel fees ...." *Id., see also Adams, 739 F.2d at 869.*

> FN2. The court notes, however, that it appears that Gemstar filed substantially similar motions to dismiss in the pending MDL cases as well.

*3 Furthermore, given the current stage of the proceedings, the court finds no indication of any prejudice to Gemstar that would result from the grant of this amendment. The Markman schedule remains in flux. The fact that this case may be transferred to the MDL Court in Atlanta, Georgia creates further uncertainty with regard to the schedule. Additionally, at least several months of discovery remain in this case, and no duplicative discovery will be necessary as a result of Thomson's proposed amended counterclaims. Given the fact that Thomson is not seeking to add new claims, there is ample time for Gemstar to conduct discovery on Thomson's counterclaims.

Finally, Gemstar contends that this will be Thomson's third amended pleading. As such, Gemstar is of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 598457 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

opinion that, because Thomson was unable to cure the defects twice before, it should not be given another bite at the pleading apple. While the court is sympathetic to this argument, it concludes that Gemstar has overstated Thomson's earlier actions. Thomson first filed an answer to the complaint on January 22, 2001, when it was arguably unclear whether Gemstar's license would be invoked. In November 2001, when it became clear to Thomson that it should include Gemstar in this action, it did so. Thereafter, on January 7, 2002, it amended its answer again in light of relevant new information it had discovered. The January 7, 2002 pleading is the first time the antitrust allegations appear. Thus, Thomson has, in fact, had no opportunity to correct any pleading defects or to amplify its allegations with regard to the antitrust issues.

In granting Thomson's motion, the court is particularly mindful that one of Thomson's objectives in amending its pleading is to survive Gemstar's motion to dismiss. In that motion, Gemstar argued, among other things, that the allegations in Thomson's existing pleading were "vague and unsupported." Allowing an amendment which purports to rectify this alleged fatal defect in a pleading is surely in the interest of justice. *See Kiser v. General Elec. Corp ., 831 F.2d 423, 427 (3d Cir.1987)* (rejecting the approach that pleading is a game of skill in which one misstep by counsel my be decisive to the outcome, when the Federal Rules clearly accept that the purpose of pleading is to facilitate a proper decision on the merits.)

### III. CONCLUSION

For the foregoing reasons, the court will grant Thomson's motion to amend. <u>FN3</u>

> <u>FN3.</u> Because the court has found no evidence of reckless and indifferent conduct on Thomson's part which would warrant the imposition of sanctions, it need not address Gemstar's request for sanctions.

Therefore, IT IS HEREBY ORDERED that:

1. Thomson's motion for leave to amend (D.I.232) is GRANTED.

D.Del.,2002.
Pegasus Development Corp. v. DIRECTV, Inc.
Not Reported in F.Supp.2d, 2002 WL 598457

(D.Del.)

Briefs and Other Related Documents <u>(Back to top)</u>

• <u>1:00cv01020</u> (Docket) (Dec. 04, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.                                                                          Page 1
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
UNITED STATES of America, Plaintiff,
v.
Robert L. TEEVEN, Paul L. Teeven, USA Training
Academy, Inc., Teeven Holding Company, RKJ
Corporation, Newark Business Center, Inc., Mary
Jane Teeven, Louise G. Teeven, Robert F. Teeven,
Dina M. Teeven, Kelly Ann Teeven and Jeffrey L.
Teeven, Defendants.
**Civ. A. No. 92-418 LON.**

Oct. 27, 1992.

Patricia C. Hannigan, Dept. of Justice, Wilmington,
DE, Joan E. Hartman (argued), Dept. of Justice,
Washington, DC, for plaintiff.
Steven D. Goldberg, Theisen, Lank, Mulford &
Goldberg, Wilmington, DE, Martin D. Minsker
(argued), Randall J. Turk (argued) and Cynthia
Thomas Calvert, Miller, Cassidy, Larroca & Lewin,
Washington, DC, for Robert L. Teeven, Teeven
Holding Co., RKJ Corp. and Newark Business
Center, Inc.
Gerard F. Treanor, Jr., and Nancy Voisin, Venable,
Baetjer, Howard & Civiletti, Washington, DC, Karen
L. Pascale, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE, for Paul L. Teeven and Louise G.
Teeven.
James W. Garvin, Jr., USA Training Academy, Inc.,
Newark, DE, for USA Training Academy, Inc.
Richard G. Elliott, Jr. and David L. Finger (argued)
Richards, Layton & Finger, Wilmington, DE, for
Mary Jane Teeven, Robert F. Teeven, Dina M.
Teeven, Kelly Ann Teeven and Jeffrey L. Teeven.
Gerard A. Chamberlain, Wilmington Trust Co.,
Wilmington, DE, for Garnishee Wilmington Trust
Co.
Linda A. Blanchfield, Delaware Trust Co.,
Wilmington, DE, for Garnishee Delaware Trust Co.
Piet E. VanOgtrop, Daley, Erisman, VanOgtrop &
Hudson, Wilmington, DE, for Martin L. Whiteman
and Susan Whiteman.

OPINION

LONGOBARDI, Chief Judge.
**\*1** Presently before the Court is a motion for

reconsideration of the Court's order of August 20,
1992, filed by Defendants Robert L. Teeven, Teeven
Holding Company, RKJ Corporation and Newark
Business Center, Inc. Motion for Reconsideration,
Docket Item ("D.I.") 118. By a letter filed with the
Court on August 28, 1992, Defendants Paul L.
Teeven and Louise G. Teeven joined in the motion.
D.I. 132. The Court's order (the "Order") of August
20, 1992 amended by substitution a prior order of the
Court issued August 14, 1992, D.I. 95. Order, D.I.
107. Briefing was completed on the motion prior to
a hearing held by the Court on September 2, 1992
pursuant to 28 U.S.C. § 3101(d)(2). [FN1] Upon
consideration of the briefs and arguments of counsel,
and for the reasons stated herein, the Court denies the
instant motion.

BACKGROUND

On July 17, 1992, the United States of America (the
"Government") filed a complaint initiating this action
against the Defendants, USA Training Academy,
Inc., Robert L. Teeven and Paul L. Teeven, under the
False Claims Act and the common law. The
"remaining defendants [were] sued as transferees of
wrongfully obtained funds pursuant to 28 U.S.C. § §
3301-3308 and under the common law of unjust
enrichment." Complaint, D.I. 1. Shortly thereafter,
the Government filed an *ex parte* application for
prejudgment attachment, garnishment and
sequestration under the Federal Debt Collection
Procedure Act ("FDCPA"), 28 U.S.C. § § 3001-
3308. Application, D.I. 3. Specifically, the
Government applied for prejudgment remedies
against the Defendants pursuant to 28 U.S.C. § 3101.
[FN2] An affidavit sworn to by LaRoss C. Campbell, a
Special Agent with the Inspector General of the
United States Department of Education, accompanied
the application. The affidavit alleges that the "USA
Training Academy, Inc., Robert L. Teeven and Paul
L. Teeven are indebted to the United States in a
single damages amount of at least $220,000,000,
together with statutory multiples of these damages,
civil penalties, interest and costs." Affidavit ¶ 2
(attached to D.I. 3).

Upon review of the application and accompanying
affidavit, and an initial determination that the
Government had met the requirements of the
prejudgment remedies section of the FDCPA

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

authorizing the issuance of *ex parte* writs, 28 U.S.C. § 3101(e), [FN3] the Court issued a writ of attachment and sequestration, D.I. 4, and a writ of garnishment, D.I. 5. These writs were thereafter executed by a Deputy United States Marshal. D.I. 9-44, 57-69.

On July 28, 1992, the Defendants requested a hearing pursuant to 28 U.S.C. § 3101(d)(2) to challenge the issuance of the prejudgment remedies. In conjunction with their request for a hearing, the Defendants moved to quash all prejudgment writs and the parties briefed the matter. D.I. 72-75, 78, 82 and 86. The grounds for the Defendants' motion to quash were "1) there is no need for prejudgment remedies in this case because no property has been or is about to be converted in a manner prejudicial to the United States with the effect of hindering, delaying, or defrauding the United States; and 2) the government has not made the requisite particularized showing ... of the government's likelihood of success of the merits." D.I. 72. *See generally* D.I. 73 for supporting arguments. Thus, the Defendants' arguments raised issues under 28 U.S.C. § § 3101(b) and (c) respectively, [FN4] as to the grounds alleged by the government to establish compelling need for prejudgment remedies and whether the affidavit met the particularity requirement for pleading under the statute.

**\*2** The Court held a section 3101(d)(2) hearing on August 5, 1992. [FN5] At the post-issuance hearing, the Defendants made clear that they were challenging the substance of the Government's affidavit, *i.e.,* the probable validity of the debt, under section 3101(c)(1). *See United States v. Teeven,* No. 92-418, slip op. at 4 (D.Del. Aug. 14, 1992) (the "Memorandum Opinion") (D.I. 94).

On August 14, 1992, the Court issued an order quashing the writs. D.I. 95. The basis for quashing the writs was the Government's failure to substantially comply with the statutory requirements for prejudgment remedies pursuant to the FDCPA. *See Teeven,* No. 92-418, slip op. at 22-23. As a preliminary matter, the Government failed to comply with the statutory requirement to make the application under oath. [FN6] *Id.* at 9. The Court noted, however, that the noncompliance in this instance may have been "*de minimis* and not fatal to issuance of the writs if the Government had otherwise substantially complied with the statutory requirements." *Id.* Second, the Court held that "the affidavit does not establish *with enough particularity* facts supporting the probable validity of the Government's claim, does not present facts

sufficient to enable the Court to determine whether the 'information and belief' allegations are 'reliable and reasonably necessary' and does not explain with particularity the basis for the averments connected with a specific Defendant." [FN7]

*Teeven,* No. 92-418, slip op. at 22. Underlying the decision was the Court's finding that averments in the affidavit failed to provide a sufficient basis for the Court to determine whether the conclusions were reasonable. *Id.* at 19. Additionally, based on the averments in the affidavit, the Court was unable to determine the reliability of persons who provided information to the affiant. *Id.* at 21-22.

Subsequent to the issuance of the order quashing the writs, D.I. 95, on August 17, 1992 the Government filed a motion to amend (the "Motion to Amend") the Court's order of August 14, 1992 and to permit the United States until August 17, 1992 to amend its application for prejudgment attachment. D.I. 96. The Government also moved the Court, *inter alia,* to stay implementation of its order quashing the writs pending receipt and approval of the amended application and affidavit (the "Amended Application and Affidavit"). *Id.*

Upon receipt of the Government's Motion to Amend and Amended Application and Affidavit, the Court held a telephone conference with all parties on August 17, 1992 to discuss the Government's pending motion and amended application. *See* Transcript, D.I. 123. The Court held a second telephone conference with the parties on August 19, 1992. During the August 19, 1992 telephone conference, the parties were advised that the Court would grant the Government's Motion to Amend and would consider the Amended Application and Affidavit a part of the original pleadings in the case. *See* Transcript, D.I. 104 at 11. Further, based on a review of the Government's Amended Application and Affidavit, the parties were advised that the Court would issue an order amending its previous order of August 14, 1992 and denying the motions by the Defendants to quash the writs. *Id.* The Court advised the Defendants that they again were entitled to a hearing pursuant to 28 U.S.C § 3101(d)(2). *Id.* Although requesting a hearing, the Defendants waived the statutory requirement that it be held within five days of their request. [FN8] D.I. 104 at 12, 15. A briefing schedule was established and a hearing was scheduled for September 2, 1992.

**\*3** On August 20, 1992, the Court issued its Order amending by substitution "[t]he Court's Order of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 3

August 14, 1992, quashing all writs issued on July 20, 1992, D.I. 95." Order, D.I. 107. The Court ordered that the Government's Amended Application and Affidavit were deemed filed as of July 20, 1992, *nunc pro tunc. Id.* Further, the Court approved the writs as originally issued based on the amendments. Supplementary to the reauthorization of the prior writs, and based on its determination that the Amended Application and Affidavit met the statutory requirements of 28 U.S.C. § 3101(a), (b) and (c), the Court also granted the Government the right to the issuance of new writs. *Id.*

Subsequent to the Court's Order of August 20, 1992, the Defendants filed various motions,[FN9] including the Defendants' motion for reconsideration. The Defendants' remaining motions are resolved in a separate memorandum opinion issued concurrently with this opinion. The instant opinion does not address issues raised by the Defendants in the briefs in support of the motion for reconsideration which are more appropriately addressed in the Court's opinion resolving the Defendants' motion to quash and motion for alternative remedies.

Defendants Robert L. Teeven, Teeven Holding Company, RKJ Corporation, Newark Business Center, Inc., Paul L. Teeven and Louise G. Teeven (hereinafter, the "Defendants") raise four arguments in support of their motion for reconsideration: (1) that the Government may not revive the illegally-obtained writs by amending its initial application and affidavit, (2) that the use of a *nunc pro tunc* order to support the writs was improper, (3) that the Government was not entitled to have the writs remain in effect pending resolution of the motions and (4) that the Defendants were entitled to be heard on the merits of the Government's Motion to Amend prior to the *ex parte* re-issuance of the writs. The Court will not address the Defendants' third argument, that the Government was not entitled to a stay of the Court's August 14, 1992 order, D.I. 95, pending resolution of the motions. The issue of the Government's entitlement to a stay of the Court's August 14, 1992 order is moot because the Court did not grant the Government's motion for a stay, and instead issued its Order of August 20, 1992 amending the Court's August 14, 1992 order by substitution.[FN10]

DISCUSSION

*I. Amendment of Application and Affidavit*

The initial argument raised by the Defendants in support of their motion for reconsideration is that the Government is not permitted under the FDCPA and the Constitution to amend its application and affidavit for prejudgment remedies. Further, the Defendants argue that the Government's Motion to Amend its application and affidavit was made without legal authority and should have been denied. D.I. 119 at 2-3.

*A. Amendment under Section 3101(a)(1) of the FDCPA*

In determining whether the Government was entitled to amend its application and affidavit under the FDCPA, or alternately, whether the Court had discretion to permit the Government to amend, the Court must look to the plain language of the statute as the starting point of its analysis. The Court in this instance is writing on a clean slate as the issue has yet to be addressed by federal courts in cases involving the FDCPA.[FN11] Contrary to the Defendants' assertion that no statutory authority exists in the FDCPA permitting amendment of applications, after a considered analysis, the Court concludes that the statute contains at least two sections which provide bases for the Government's amendment of its application and affidavit for prejudgment remedies.[FN12]

**\*4** The first basis is contained in the language of the section authorizing applications for prejudgment remedies by the United States. Section 3101(a), entitled "Application," provides that "(1) *[t]he United States may,* in a proceeding in conjunction with the complaint or *at any time after the filing of a civil action on a claim for a debt,* make application under oath to a court to issue any prejudgment remedy." 28 U.S.C. § 3101(a)(1) (emphasis added). The language empowers the United States to make an application "at any time" after the filing of a civil action on a claim for a debt. This language plainly is not limiting, and in fact gives the United States some latitude in making applications for prejudgment remedies. Such a reading is supported by the legislative history of the statute, which states that subsection (a) of section 3101 "authorizes the United States to apply for such a [prejudgment] remedy at any time from filing an action to obtaining judgment." H.R.Rep. No. 736, 101st Cong., 2d Sess. 31, *reprinted in* 1990 U.S.C.C.A.N. 6630, 6639 ("House Report 736").

The broad language of the section likewise supports a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 4

construction that the Government may *amend* its application at any time after the filing of a civil action on a claim for a debt. As the Court stated in its Order of August 20, 1992, the FDCPA does not expressly prohibit the filing of successive applications for prejudgment remedies by the Government. D.I. 107. Instead, as set forth above, the plain language of the FDCPA supports the filing of successive applications by the Government. A construction of the statute which would prohibit the filing of an "amended" application while permitting successive applications is manifestly unreasonable and illogical.

The procedural history of the Government's filing of its Amended Application and Affidavit comports with the language of <u>section 3101(a)(1)</u>. The Government filed its complaint against the Defendants on July 17, 1992. Pursuant to the FDCPA, the Government filed its original application and affidavit on July 20, 1992, subsequent to the filing of the action against the Defendants. Again subsequent to the filing of the action, the Government submitted its Amended Application and Affidavit on August 17, 1992. Thus, the two filings by the Government comply with the express language of <u>section 3101(a)(1)</u>.

Further, such a reading is supported by construing <u>section 3101(a)(1)</u> in conjunction with the section under the "General Provisions" subchapter of the FDCPA related to discovery. Discovery as to the debtor's financial condition in an action for prejudgment remedies is authorized under section 3015 of the FDCPA, in accordance with the Federal Rules of Civil Procedure. [FN13] A reasonable assumption is that the Government may, through discovery procedures, obtain information about additional assets owned by debtors which potentially are subject to prejudgment attachment under the FDCPA. If through discovery the Government locates additional assets of a debtor which are subject to prejudgment attachment, there would exist the necessity of filing an amended application and affidavit. To permit discovery under the FDCPA for the express purpose of determining the debtor's financial condition, *i.e.*, locating assets of a debtor of the Government, only to prohibit the amendment of applications to add newly discovered assets which are subject to prejudgment attachment, is an inconsistent and unwarranted reading of the FDCPA.

*5 The primary purpose behind the prejudgment remedies subchapter of the FDCPA is to provide the United States with an *ex parte* mechanism for attaching assets of debtors when the Government shows a court reasonable cause to believe that the debtor is about to dispose of the assets or otherwise deal with them in such a manner as to cause prejudice to the United States. [FN14] It is untenable that a statutory construction of the FDCPA would require the Government to conduct discovery pursuant to section 3015 *prior* to filing an application for prejudgment remedies under <u>section 3101</u>. By so doing, the Government would place the debtor on notice of the imminent attachment proceedings, thus giving the debtor the opportunity to dispose of or otherwise conceal assets prior to attachment and thereby defeating the purpose behind prejudgment remedies.

In comporting with the purpose behind prejudgment remedies under the FDCPA, clearly the Government will in most situations conduct discovery *after* an application for prejudgment remedies is made to the court. To prohibit the Government from then amending its application under the plain language of <u>section 3101(a)(1)</u>, after the discovery of assets subject to prejudgment attachment, renders the prejudgment remedies provisions of the statute of little effect. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809 (1989) (citing *United States v. Morton,* 467 U.S. 822, 828 (1984)).

The Defendants contend that because the FDCPA does not explicitly permit the Government to amend an application and affidavit, the Government's amended filing was prohibited. In support of their argument, the Defendants rely on cases construing state laws governing procedures for amendment in attachment and garnishment proceedings. *See, e.g., Tilton v. Cofield,* 93 U.S. 163, 166 (1876) (local statute of Territory of Colorado authorized amendment of writ of garnishment); *Jones v. Preuit & Mauldin,* 851 F.2d 1321, 1329 n. 14 (11th Cir.1988), *vacated on other grounds,* 489 U.S. 1002 (1989) (Alabama law authorized amendment of affidavit, bond or attachment to cure any defect of form or substance); *Tanko v. Saperstein,* 149 F.Supp. 317, 325 (N.D.Ill.1957) (Illinois law permitted amendment of affidavit, writ of attachment or bond); *In re Chemical Separations Corp.,* 29 B.R. 240, 245 (Bankr.E.D.Tenn.1983) (Tennessee law authorized amendment of any defect of form in affidavit, bond, attachment or other proceedings); *Erdrich v. Amory,* 184 N.Y.S. 490 (N.Y.App. Term 1920) (New York Code of Civil Procedure permitted amendment of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 5

affidavits in support of attachment to cure defects).

Cases construing state laws related to prejudgment remedies provide no authority for statutory construction of the FDCPA and are irrelevant for this purpose in light of the FDCPA's legislative history. According to House Report 736, the remedial purpose behind the enactment of the FDCPA *6 "is to create a comprehensive statutory framework for the collection of debts owed to the United States Government. Creation of a uniform federal framework for the collection of Federal debts in the Federal courts will improve the efficiency and speed in collecting those debts, thereby lessening the effect of delinquent debts on the massive federal budget deficit...."

House Report 736 at 23, 1990 U.S.C.C.A.N. at 6631. *See id.* at 27, 1990 U.S.C.C.A.N. at 6635. The report further states that "[d]ifferences and conflicts in various provisions of State law that treat the subject of collection of government-owned debts have presented a number of obstacles to the efficient monitoring and implementation of federal debt collection efforts by the Department of Justice." *Id.* at 23, 1990 U.S.C.C.A.N. at 6631. References to difficulties created by the differing or overlapping state law provisions previously used to collect debts owed to the United States, too numerous to mention, abound throughout the legislative history. *See id.* at 23-28, 1990 U.S.C.C.A.N. at 6631-36.

As a consequence of the legislative framework, cases construing state laws related to collection procedures are inapplicable to a statutory construction of the FDCPA, precisely because the motivating purpose behind the enactment of the FDCPA was to preempt the patchwork of state laws governing collection procedures and substitute uniform federal procedural standards. The FDCPA enunciates this purpose in part in its preemption provision. [FN15]

B. *Amendment under Section 3003(f) of the FDCPA and the Federal Rules of Civil Procedure*

The legislative history's focus on uniform procedural standards for federal debt collection triggers the second basis for the Government's amendment of its application and affidavit for prejudgment remedies. Section 3003(f), related to rules of construction for the FDCPA, provides that the Federal Rules of Civil Procedure shall apply with respect to actions and proceedings under the statute. [FN16] Referring to the Federal Rules of Civil Procedure, Rule 15(a)

provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, ... [o]therwise ... by leave of court ... and leave shall be freely given when justice so requires."

The Defendants rely on a wooden interpretation of Rule 15(a) which they assert renders the rule inapplicable to FDCPA proceedings. According to the Defendants, Rule 7(a) of the Federal Rules of Civil Procedure sets forth the only forms of pleadings which may be amended pursuant to Rule 15(a). Under Fed.R.Civ.P. 7(a), pleadings are defined as follows:
There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

*7 Thus, the Defendants argue that an application and accompanying affidavit filed pursuant to section 3101 of the FDCPA does not constitute a pleading subject to amendment under the Federal Rules of Civil Procedure. [FN17]

The Court rejects such an inflexible construction of the Federal Rules of Civil Procedure as applied to collection actions under the FDCPA. Such a construction would render Fed.R.Civ.P. 15 a nullity as applied to subchapters B and C of the statute, [FN18] which contain no prejudgment or postjudgment collection mechanisms involving forms of pleading as defined in Fed.R.Civ.P. 7(a). At no place in the plain language of the statute is there authority for the proposition that Rule 15 of the Federal Rules of Civil Procedure is inapplicable to prejudgment and postjudgment proceedings under the FDCPA. In fact, the legislative history of the statute emphasizes that the [Judiciary] Committee was acutely aware of the need to avoid potential conflicts between the procedures in the FDCPA and those which are generally applicable under the Federal Rules of Civil Procedure. House Report 736 at 23, 1990 U.S.C.C.A.N. at 6631. A statutory construction which permits the amendment of applications and affidavits pursuant to Fed.R.Civ.P. 15 is not inconsistent with this goal.

In essence, an application by the United States for prejudgment remedies pursuant to section 3101 of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

FDCPA is a pleading within a larger pleading, the larger pleading being the complaint filed against the debtor to collect debts owed to the United States. As the Government stated at oral argument, the application under the FDCPA requires the Government to submit facts under oath and requires the Government to delineate those facts which support the probable validity of the claim and the compelling circumstances for prejudgment remedies. Transcript, D.I. 149 at 28. In all respects, it is similar to a complaint. As a type of pleading, standing independently, the Court construes a Government application as a pleading within the meaning of Rule 15(a). [FN19]

"[C]ourts have shown a strong liberality in allowing amendments under Rule 15(a)." 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 15.08 [2] (2d ed. 1992) (citation omitted). Further, the Supreme Court has directed that leave to amend under Rule 15(a) should be freely granted. *Foman v. Davis,* 371 U.S. 178, 182 (1962). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Kiser v. General Elec. Corp.,* 831 F.2d 423, 427 (3d Cir.1987), *cert. denied,* 485 U.S. 906 (1988) (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)).

Moreover, "[t]he clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses." Moore, *supra,* ¶ 15.08[3] (citations omitted). The Government's Motion to Amend presented a straightforward situation where the pleading party sought to amplify previously alleged claims. While there were defects in the Government's original application and affidavit, they nonetheless were defects which could be cured by amplification, *i.e.,* pleading with sufficient particularity. In its Memorandum Opinion of August 14, 1992, D.I. 94, the Court explained the bases for granting the Defendants' motions to quash the writs:
*8 the affidavit does not establish *with enough particularity* facts supporting the probable validity of the Government's claim, does not *present facts sufficient* to enable the Court to determine whether the 'information and belief' allegations are 'reliable and reasonably necessary' and does not *explain with particularity* the basis for averments connected with a specific Defendant.

*United States v. Teeven,* No. 92-418, slip op. at 22 (D.Del. Aug. 14, 1992) (emphasis added). The

Government moved the Court to allow amendment in order to meet the pleading requirements established by the Court in quashing the writs. D.I. 96.

The Third Circuit has routinely held that leave to amend should be freely granted when pleadings lack the requisite factual specificity for a particular cause of action. *See, e.g., Saporito v. Combustion Eng'g, Inc.,* 843 F.2d 666, 675 (3d Cir.1988), *vacated on other grounds,* 489 U.S. 1049 (1989) (civil RICO claim); *District Council 47, Am. Fed'n of State Employees, etc. v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986) (civil rights claim under 42 U.S.C. § 1983); *Darr v. Wolfe,* 767 F.2d 79, 81 (3d Cir.1985) (civil rights claim); *Rotolo v. Borough of Charleroi,* 532 F.2d 920, 923 (3d Cir.1976) (civil rights claim). In its Amended Application and Affidavit, the Government remedied the defects by pleading with sufficient particularity the factual basis for conclusory averments contained in the original affidavit. [FN20]

In the present case, the Government submitted its Motion to Amend and Amended Application and Affidavit without delay. The Motion to Amend and amended papers were filed on August 17, 1992, a Monday, following the issuance of the Court's order quashing the writs the previous Friday. Any contention by the Defendants that they were prejudiced by the delay is belied by the Defendants' failure to object to the Court's authority to grant the amendments during two telephone conferences held with the parties immediately after the Government's submissions. [FN21] Accordingly, the Court concludes that the Government's Motion to Amend was properly granted under Third Circuit precedent and the liberal amendment policy of the Federal Rules of Civil Procedure as incorporated into the FDCPA.

### C. Amendment under Section 3013 of the FDCPA

The Government cites a third basis in the FDCPA, section 3013, for the Court's authority to allow amendment of the Government's application. D.I. 134 at 5. Section 3013, entitled "Modification or protective order; supervision of enforcement," provides that "[t]he court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013.

By its explicit language, section 3013 provides a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

broad grant of power to the Court. Unfortunately, the statute's legislative history provides no guidance for construing the appropriate breadth of the section. Such a determination is not essential, however, to resolving whether the Government was properly granted its Motion to Amend because the Court concludes that there are sufficient alternative bases in the FDCPA, discussed *supra,* empowering the Court to grant the Government's Motion to Amend.

### D. *The Court's Inherent Power to Grant Amendment*

**\*9** The Government additionally cites common law authority empowering the Court to grant the Motion to Amend, asserting that "this Court also had inherent power to allow the amendment." D.I. 134 at 2. *See, e.g.,* Mitchell v. Overman, 103 U.S. 62, 64 (1881) (court had inherent power to enter a judgment or a decree, *nunc pro tunc,* as of a date anterior to that on which it was in fact rendered); Tilton v. Cofield, 93 U.S. 163, 166 (1876) (court had discretion, incidental to the exercise of all judicial power, to permit amendment of writ of garnishment).

The Defendants refute that *Tilton* supports a court's inherent power to grant an amendment of a writ of garnishment, contending that a local statute allowed amendment of writs and the decision rested on this ground. The Court notes, however, that the *Tilton* decision was not so limited. Rather, the Supreme Court observed that the amendments in question were within the equity, *if not the letter,* of the amendment statute. Tilton, 93 U.S. at 166 (emphasis added). The Supreme Court reasoned that even "[w]here no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others. Cases of this kind, too numerous to be cited, may be found, in which amendments in the most important particulars were permitted to be made." Id. at 167.

The Government's proposition that the Court's inherent authority supported the Court's granting of the Government's Motion to Amend is not without validity. It has been asserted that "even in the absence of statutory authority, a court has inherent power to grant amendments before trial." 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 15.08[1] (2d ed. 1992) (citation omitted). The Supreme Court recently acknowledged that the power of lower and appellate courts to grant amendments derives from the common law. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 834 (1989). Significantly, Fed.R.Civ.P. 15,

granting courts discretionary power over the amendment of pleadings, derived from federal practice at law and equity. Moore, *supra,* ¶ 15.02[1].

### E. *Constitutionality of Amendment*

The Defendants additionally assert that the Government's amendment of its application and affidavit was improper on constitutional grounds. The Defendants argue that due process concerns dictate that the Government's justification for seeking the extraordinary prejudgment remedy must be demonstrated to the Court *before* writs may be issued, relying in part on the Court's "compelling circumstances" analysis in its Memorandum Opinion of August 14, 1992. D.I. 119 at 7.

The Court agrees that the Government's justification for prejudgment remedies must be demonstrated to the Court before the issuance of such remedies. *See* 28 U.S.C. § 3101(b). The Defendants' argument is misplaced, however, because the Court in fact held in its Memorandum Opinion that the Government's original *ex parte* application and affidavit satisfied the constitutional requirement of compelling circumstances in the context of prejudgment remedies. [FN22] United States v. Teeven, No. 92-418, slip. op. at 14 (D.Del. Aug. 14, 1992). The Government's amendments went solely to correct *other* defects which the Court outlined in its Memorandum Opinion. [FN23] Accordingly, the Court concludes that it properly exercised discretion in granting the Government's Motion to Amend where the Government's prior constitutional showing remained intact.

### II. *Relation Back of Amendments*

**\*10** In its Order of August 20, 1992, the Court ruled that the Government's Amended Application and Affidavit were deemed filed as of July 20, 1992, *nunc pro tunc,* and also authorized the issuance of new writs. The Defendants contend that the use of a *nunc pro tunc* or relation back procedure was improper. The Court rejects this argument.

The FDCPA incorporates the Federal Rules of Civil Procedure, [FN24] and as the Court's previous analysis demonstrates, Fed.R.Civ.P. 15 is applicable to the amendment of applications and affidavits for prejudgment remedies under section 3101. Fed.Civ.P. 15(c)(2) provides that "[a]n amendment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 8

of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

In the instant action, the Government's Amended Application and Affidavit contained claims arising out of "the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." The purpose behind the amendments was to correct deficiencies in the original pleadings related directly to the same conduct, transactions or occurrences alleged in the original. The Government raised no new claims in its amended papers.

The Defendants acknowledge as much. First, in their brief in support of the motion for reconsideration, the Defendants concede that "the Government presented no new evidence in its amended application and affidavit ... but merely attempted to correct the deficiencies in its moving papers noted by the Court." D.I. 119 at 22. Second, in their reply brief, the Defendants submit that "the government presented essentially the same evidence to the Court...." D.I. 142 at 13.

The Government's amendments plainly met the requirement for relation back under Fed.R.Civ.P. 15(c)(2). Thus, the Court had the power to order the amendments to relate back to the filing date of the original application.

The Court's use of the term "*nunc pro tunc* " in its Order of August 20, 1992, as requested by the Government in its Motion to Amend and memorandum in support thereof, was perhaps improvident. The Court's analysis and the effect of the Court's Order, however, remain unchanged. The literal meaning of *nunc pro tunc*, "now for then," *Black's Law Dictionary* 964 (5th ed. 1979), aptly describes the relation back of an amended pleading to the filing date of the original pleading under Fed.R.Civ.P. 15(c). Indeed, the Court used the term for the specific purpose of ordering the relation back of the Government's Amended Application and Affidavit. D.I. 107.

The Defendants' arguments, while creative, incorrectly characterize the Court's Order as a *nunc pro tunc* order which retroactively ratified illegally-obtained writs. D.I. 119 at 10, 12. Rather, in its Order, the Court, *inter alia*, granted the Government's Motion to Amend, held that the Amended Application and Affidavit satisfied the FDCPA

requirements at 28 U.S.C. § 3101(a), (b) and (c) for *ex parte* writs, reauthorized the issuance of the writs and amended by substitution its order of August 14, 1992 quashing the writs. D.I. 107.

*11 The Court's power to order the substitution of an order which no longer is of any effect is incidental to the Court's inherent power to manage its docket. *Cf. Landis v. North American Co., 299 U.S. 248, 254 (1936)* (inherent power of court to stay proceedings); *Eash v. Riggins Trucking Inc., 757 F.2d 557, 561 (3d Cir.1985)* (in bank) (inherent power of district court to impose sanction on attorney for misconduct). "[I]n the absence of contrary legislation, courts under their inherent powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results." *Eash, 757 F.2d at 564.*

The Third Circuit discussed this principle in *United States v. Jerry, 487 F.2d 600, 604 (3d Cir.1973)*, in relation to the power of a district court to rescind four days later its order permitting a criminal defendant to withdraw a guilty plea. There was no rule of criminal procedure addressing the question. The court went on to observe that "[a]t common law, the general rule, in criminal as well as civil cases, was that judgments, decrees, and orders were within the control of the court during the term at which they were made, and they could be [amended,] modified, vacated, or set aside by that court." *Id.* at 604 (quoting *United States v. Benz, 282 U.S. 304, 306-07 (1931)*). Further, the court explained that although a rule of civil procedure, Fed.R.Civ.P. 60(b), generally covered this power of the federal courts, the inherent power of courts to set aside and reconsider interlocutory orders was nevertheless held not to be precluded or limited by the rule. *Jerry, 487 F.2d at 605.*

Similarly, the Supreme Court recently held that the courts' inherent power to impose sanctions for bad faith conduct is not displaced by the federal sanction scheme of statutes and rules. *See Chambers v. NASCO, Inc., 111 S.Ct. 2123, 2134 (1991)*. In *Chambers,* the Supreme Court recognized that courts' inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 2132 (quoting *Link v. Wabash R.R., 370 U.S. 626, 630-31 (1962)*).

For the above reasons, the Court concludes that its Order of August 20, 1992, amending its order of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 9

August 14, 1992 by substitution and granting the relation back of the Government's Amended Application and Affidavit was within its power.

### III. *The Debtors' Entitlement To a Hearing*

The Defendants' final argument is that they were entitled to be heard on the merits of the Government's Motion to Amend prior to the *ex parte* re-issuance of the writs. D.I. 119 at 18. In reality, the Defendants' assertion is nothing more than a disguised attempt to again argue that the Court must read a requirement into the FDCPA that debtors are entitled to a hearing prior to the Court's issuance of *ex parte* writs. The Court disagrees.

**\*12** The Court notes that the Defendants initially attempt to frame the issue differently, *i.e.,* that they were denied the opportunity to be heard on whether the FDCPA authorized amendment of applications for prejudgment remedies before this Court granted the Motion to Amend. They assert that the Court "granted the government's motion to amend *nunc pro tunc* without affording the Defendants the opportunity to present the Court *with the matters addressed in this Motion* [for Reconsideration]...." D.I. 119 at 18-19 (emphasis added). The "matters" referred to by the Defendants, discussed at length in the previous sections, relate to the procedural aspects of the amendment, that is, whether amendment was proper under the FDCPA. Based on the history of the present proceedings, the Defendants' framing of the issue is puzzling to the Court. Further, the Defendants' actions or lack thereof after the Government filed its Motion to Amend fail to support their framing of the issue.

The Court in fact afforded the Defendants two opportunities to be heard on the issue of whether the Government could amend its application, prior to the Court's ruling that it would permit the amendments. During telephone conferences on August 17, 1992 and August 19, 1992 with the parties, the Government's Amended Application and Affidavit were discussed at length. Indeed, the Defendants at no time squarely raised the issue of whether the FDCPA authorized amendment, as evidenced by the transcripts of the conferences. [FN24] D.I. 123 and 104. When the Court ruled at the conclusion of arguments at the second conference that it would grant the motion, the Defendants again did not question the Court's power to do so. The Defendants' contention that the Court denied them the opportunity to be heard regarding the Government's Motion to Amend

is plainly unwarranted.

The Court's subsequent issuance of ex parte writs without first affording the Defendants an opportunity for a hearing fully comports with the statutory requirements of the FDCPA. After the Government filed its Amended Application and Affidavit, the Court reviewed the amended pleadings pursuant to section 3101(e) of the FDCPA. Section 3101(e) sets forth the standard under which a court may issue ex parte writs. The standard provides that upon a court's determination that the requirements of subsections (a), (b) and (c) of section 3101 have been met, the Court is authorized to "issue all process sufficient to put into effect the prejudgment remedy sought." 28 U.S.C. § 3101(e).

Upon the Court's review, it concluded that the Government's amendments remedied the defects detailed in the Court's Memorandum Opinion. See United States v. Teeven, 1992 WL 683683 at \*7-8, 1992 U.S.Dist. LEXIS 22191, No. 92-418, slip. op. at 22-23 (D.Del. Aug. 14, 1992). Further, the Court determined that the Government's Amended Application and Affidavit satisfied the statutory requirements at 28 U.S.C. § 3101(a)-(c). The Court's Order of August 20, 1992 confirms that such a determination was made. D.I. 107. Having made its determination, the Court was authorized under the FDCPA to issue the ex parte writs.

Subsequent to the Court's Order reauthorizing the writs, the Defendants received their rightful hearing under the FDCPA. This entitlement arises pursuant to section 3101(d)(2). The section states in relevant part that "by requesting, at any time before judgment on the claim for a debt, the court to hold a hearing, the debtor may move to quash the order granting such remedy. The court shall hold a hearing on such motion as soon as practicable, or, if requested by the debtor, within 5 days after receiving the request for a hearing or as soon thereafter as possible." 28 U.S.C. § 3101(d)(2). According to the section's plain meaning, the debtor's right to a hearing arises only after the "order granting such [prejudgment] remedy." In the instant case, therefore, the Defendants' entitlement to a hearing did not arise until after the Court granted the Government's Motion to Amend, determined that the Amended Application and Affidavit satisfied the FDCPA's statutory requirements and ordered the writs reissued.

During the August 19, 1992 telephone conference, the Court notified the Defendants of its determination that the Government's Amended Application and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Affidavit complied with the FDCPA's requirements and informed them that the Court would issue an order amending its prior order quashing the writs. D.I. 104 at 11. The Court immediately apprised the Defendants of their right to a new hearing on the reissuance of the writs. Id. The Defendants requested a hearing, but waived their right to a hearing within five days of the request. Id. at 12, 15. The Court's Order was issued on August 20, 1992 and a hearing was held on September 2, 1992, the date agreed upon by the parties. Accordingly, the Defendants' right to a prompt post-deprivation hearing under the FDCPA was satisfied. Having concluded that the Defendants received all process due them under the FDCPA, the Court must now address the Defendants' thinly veiled constitutional argument. Contrary to the Defendants' assertion, the Court concludes that it need not read a requirement into the FDCPA that debtors are entitled to a pre-deprivation hearing prior to the Court's issuance of ex parte writs.

The Defendants' reliance on _Connecticut v. Doehr, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991)_, is misplaced. Doehr stands for the more narrow proposition that, by failing to provide a preattachment hearing without at least requiring a showing of some exigent circumstances, the Connecticut statute at issue fell short of the demands of due process. Id. at 2116. In Doehr, the United States Supreme Court stated that a properly supported claim that a defendant "was about to transfer or encumber his real estate or take any other action ... that would render his real estate unavailable to satisfy a judgment" could constitute an "exigent circumstance." Id. at 2115 (dictum).

As set forth in this Court's Memorandum Opinion of August 14, 1992, Doehr's constitutional infirmity did not arise as to the Government's original FDCPA ex parte application and affidavit. There, the Court held that the Government had satisfied Doehr's requirement that it demonstrate "compelling circumstances" before ex parte writs could issue on the basis of its original ex parte application and affidavit. [FN26] _United States v. Teeven, 1992 WL 683683 at *5, 1992 U.S.Dist. LEXIS 22191_, No. 92-418, slip op. at 14 (D.Del. Aug. 14, 1992). The Government's amendments did not affect that conclusion. Rather, the Court again determined that the Government had made the requisite showing of compelling circumstances in its Amended Application and Affidavit.

Moreover, as the Government points out in its brief

in opposition, the FDCPA suffers from none of the shortcomings which have rendered unconstitutional various state statutes which provided for prejudgment remedies. The infirmities in those statutes are catalogued in a line of Supreme Court cases. See, e.g., _North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606-607, 42 L.Ed.2d 751, 95 S.Ct. 719 (1975)_ (statute failed to provide for notice, a detailed affidavit setting out the claim, the determination of a judicial officer or a prompt post-deprivation hearing); _Fuentes v. Shevin, 407 U.S. 67, 73-78, 32 L.Ed.2d 556, 92 S.Ct.1983 (1972)_ (statutes permitted clerk to issue writ without judicial participation and failed to provide for notice or a prompt post-deprivation hearing); _Sniadach v. Family Fin. Corp., 395 U.S. 337, 338-39, 23 L.Ed.2d 349, 89 S.Ct. 1820 (1969)_ (statute permitted clerk to issue writ without judicial participation and failed to provide for a prompt post-deprivation hearing). The Supreme Court upheld, however, a statute which required a prompt post-deprivation hearing, a judicial determination that there was a clear entitlement to the writ and a detailed affidavit which emphasized the lienholder's interest in preventing waste or alienation of the property in _Mitchell v. W.T. Grant Co., 416 U.S. 600, 615-20 (1974)_.

Clearly, the FDCPA's provision for a hearing within five days of a debtor's request after the issuance of prejudgment remedies under section 3101(d)(2), the FDCPA's requirement that the Government make a showing of compelling circumstances as to its grounds for prejudgment remedies under section 3101(b) and the FDCPA's judicial determination requirement under section 3101(e) fulfill the constitutional safeguards for due process outlined in the above cases. For the foregoing reasons, the Court concludes that the Defendants were not entitled to a hearing before the Court ordered the reissuance of the writs.

CONCLUSION

The Defendants' motion for reconsideration is denied in its entirety.

FN1. See _infra_ note 5.

FN2. 28 U.S.C. § 3101 provides in relevant part:
§ 3101. Prejudgment remedies
(a) Application.-(1) The United States may, in a proceeding in conjunction with the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Page 11

complaint or at any time after the filing of a civil action on a claim for a debt, make application under oath to a court to issue any prejudgment remedy.

(2) Such application shall be filed with the court and shall set forth the factual and legal basis for each prejudgment remedy sought.

(3) Such application shall-

(A) state that the debtor against whom the prejudgment remedy is sought shall be afforded an opportunity for a hearing; and

(B) set forth with particularity that all statutory requirements under this chapter for the issuance of the prejudgment remedy sought have been satisfied.

(b) Grounds.-Subject to section 3102, 3103, 3104, or 3105, a prejudgment remedy may be granted by any court if the United States shows reasonable cause to believe that-

(1) the debtor-

(A) is about to leave the jurisdiction of the United States with the effect of hindering, delaying, or defrauding the United States in its effort to recover a debt;

(B) has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States;

(C) has or is about to convert the debtor's property into money, securities, or evidence of debt in a manner prejudicial to the United States with the effect of hindering, delaying, or defrauding the United States; or

(D) has evaded service of process by concealing himself or has temporarily withdrawn from the jurisdiction of the United States with the effect of hindering, delaying, or defrauding the United States; or

(2) a prejudgment remedy is required to obtain jurisdiction within the United States and the prejudgment remedy sought will result in obtaining such jurisdiction.

(c) Affidavit.-(1) The application under subsection (a) shall include an affidavit establishing with particularity to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application.

(2) The affidavit shall state-

(A) specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt;

(B) one or more of the grounds specified in

subsection (b); and

(C) the requirements of section 3102(b), 3103(a), 3104(a), or 3105(b), as the case may be.

(3) No bond is required of the United States.

FN3. 28 U.S.C. § 3101(e) provides that: Issuance of writ.-On the court's determination that the requirements of subsections (a), (b), and (c) have been met, the court shall issue all process sufficient to put into effect the prejudgment remedy sought.

FN4. For the text of subsections (b) and (c), 28 U.S.C. § 3101, see *supra* note 2.

FN5. 28 U.S.C. § 3101(d)(2) states that: By requesting, at any time before judgment on the claim for a debt, the court to hold a hearing, the debtor may move to quash the order granting such remedy. The court shall hold a hearing on such motion as soon as practicable, or, if requested by the debtor, within 5 days after receiving the request for a hearing or as soon thereafter as possible. The issues at such hearing shall be limited to-

(A) the probable validity of the claim for the debt for which such remedy was granted and of any defense or claim of exemption asserted by such person;

(B) compliance with any statutory requirement for the issuance of the prejudgment remedy granted;

(C) the existence of any ground set forth in subsection (b); and

(D) the inadequacy of alternative remedies (if any) to protect the interests of the United States.

FN6. The requirement that the application be made under oath is contained in 28 U.S.C. § 3101(a)(1). For the text of subsection (a), 28 U.S.C. § 3101, see *supra* note 2.

FN7. The requirement of particularity is contained in 28 U.S.C. § 3101(c)(1). For the text of subsection (c), 28 U.S.C. § 3101, see *supra* note 2.
Specific affidavit requirements for FDCPA actions are contained in 28 U.S.C. § 3006, which provides:
Any affidavit required of the United States

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Page 12

by this chapter may be made on information and belief, if reliable and reasonably necessary, establishing with particularity, to the court's satisfaction, facts supporting the claim of the United States.

FN8. The five day requirement is contained in 28 U.S.C. § 3101(d)(2). For the text of subsection (d)(2), 28 U.S.C. § 3101, see *supra* note 5.

FN9. Defendants Robert L. Teeven, Teeven Holding Company, RKJ Corporation and Newark Business Center, Inc. filed a motion to quash the reauthorized writs on August 24, 1992. D.I. 113. Defendants Mary Jane Teeven, Robert F. Teeven, Dina M. Teeven, Kelly Ann Teeven and Jeffrey L. Teeven filed a motion to quash, or in the alternative, to modify the reauthorized writs on August 24, 1992. D.I. 108. Defendants Robert L. Teeven, Teeven Holding Company, RKJ Corporation and Newark Business Center, Inc. filed a motion to consider alternative remedies on August 24, 1992. D.I. 111. Defendants Paul L. Teeven and Louise G. Teeven joined the motions of Defendant Robert L. Teeven (Motion for Reconsideration, D.I. 118, Motion to Quash, D.I. 113, and Motion to Consider Alternative Remedies, D.I. 111) pursuant to a letter filed with the Court on August 28, 1992. D.I. 132. Briefing was completed prior to the hearing on September 2, 1992. D.I. 109-10, 112, 114-17, 120, 135, 137, 139-41 and 144-46.

FN10. In conjunction with its Motion to Amend, the Government moved the Court for a stay of its order of August 14, 1992, D.I. 95, quashing the writs issued by the Court on July 20, 1992. Motion to Amend, D.I. 96. The Government moved for the stay to provide the Court with the opportunity to review and approve the Amended Application and Affidavit submitted by the Government on August 17, 1992 pursuant to 28 U.S.C. § 3101. During the August 17, 1992 telephone conference with the parties, the Defendants objected to the issuance of a stay of the Court's order quashing the writs. D.I. 123 at 6-8, 12-13. The Court raised the issue of whether the automatic stay provision of Rule 62(a) of the Federal Rules of Civil Procedure might

render moot the debate over a potential stay. *Id.* at 17.

Fed.R.Civ.P. 62(a) provides in relevant part that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." "As used in this rule, 'judgment' means 'a decree and any order from which an appeal lies.' " 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2901 n. 5 (1973) (citing Fed.R.Civ.P. 54(a)). The Court did not issue the stay requested by the Government at that time or rule that the automatic stay provision applied in that instance. D.I. 123 at 17. Moreover, the Court ultimately did not reach a determination that Rule 62(a) applied to its August 14, 1992 order. D.I. 104 at 11.

Thereafter, during the August 19, 1992 telephone conference with the parties, the Court effectively ruled that *the status quo would be preserved* pending the Court's issuance of an order which would amend the Court's August 14, 1992 order quashing the writs, D.I. 95, and would deny the motions by the defendants to quash the writs. D.I. 104 at 11. The Court based its ruling on the Government's establishment of a compelling need to preserve the Defendants' assets as supported by the Government's Amended Application and Affidavit, and the Defendants' proffered need to disburse legal fees and other expenses from the assets subject to the writs. *Id.* at 11-12.

The next day, on August 20, 1992, the Court issued its Order in substitution of the August 14, 1992 order. In its Order of August 20, 1992, the Court reauthorized the writs and ordered that the filing date of the Government's Amended Application and Affidavit relate back to the original filing date of the Government's initial application and affidavit of July 20, 1992, thus rendering moot the issue of an automatic stay under Fed.R.Civ.P. 62(a).

FN11. On November 29, 1990, Congress passed the Federal Debt Collection Procedure Act of 1990 ("FDCPA"), Pub.L. No. 101-647, Title XXXVI, § 3611, 104 Stat. 4933 (codified at 28 U.S.C. § § 3001-3308). The FDCPA became effective 180 days after its enactment, on May 29, 1991. *United States v. Gelb*, 783 F.Supp. 748, 751

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

(E.D.N.Y.1991).

FN12. Based on the Court's conclusion that the FDCPA supports an interpretation that the Court has authority to grant a motion to amend applications and affidavits in support of prejudgment remedies, the Court need not address squarely the Defendants' argument that because attachment is a statutory remedy, then authority to amend applications and affidavits in support of attachment can be granted only by statute.

FN13. 28 U.S.C. § 3015 provides in relevant part:
§ 3015. Discovery as to debtor's financial condition
(a) In general.- ... [I]n an action or proceeding under subchapter B [related to prejudgment remedies] ..., the United States may have discovery regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt.

FN14. See 28 U.S.C. § 3101(b)(1)(A)-(D).

FN15. 28 U.S.C. § 3003 provides in pertinent part:
§ 3003. Rules of construction
(d) Preemption.-This chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter.

FN16. 28 U.S.C. § 3003, entitled "Rules of construction," provides in relevant part:
(f) Applicability of Federal Rules of Civil Procedure.-Except as provided otherwise in this chapter, the Federal Rules of Civil Procedure shall apply with respect to actions and proceedings under this chapter.

FN17. The Defendants state that they have "found no cases in which a party even attempted to use Rule 15(a) to amend attachment papers-or indeed, any papers except the pleadings enumerated in Rule 7(a)-and the government has not cited any cases in which Rule 15(a) was used to amend attachment papers." D.I. 142 at 5. The Court, however, has found such cases. For example, in a federal case removed from state court, involving a motion to amend affidavits in garnishment, the court

concluded that under Fed.R.Civ.P. 81(c), federal procedural rules applied to the resolution of the amendment issue after removal. Robert W. Irwin Co. v. Sterling, Inc., 14 F.R.D. 250, 254 (W.D.Mich.1953). The court held that under Fed.R.Civ.P. 15(a), amendment was permitted at the court's discretion, and the affidavits would be considered amended as of the date they were initially filed under Fed.R.Civ.P. 15(c). Id. at 257. Cf. Tanko v. Saperstein, 149 F.Supp. 317, 321-22 (N.D.Ill.1957) (Federal Rules of Civil Procedure, if controlling, would permit amendment of affidavit in support of writ of attachment).
Irwin is cited by Professor Moore in his treatise discussion of Fed.R.Civ.P. 64 for the proposition that while state law, under Rule 64, determined the sufficiency of affidavits in attachment and garnishment proceedings, federal law determined the right to amend affidavits prior to the Federal Rules of Civil Procedure, and this rule continues under Fed.R.Civ.P. 15, so that the court, in its discretion, may permit them to be amended. 7 James W. Moore & Jo D. Lucas, Moore's Federal Practice ¶ 64.07[2] (2d ed. 1992). Of course, Fed.R.Civ.P. 64 is not at issue in the present action, due to the enactment of the FDCPA and its application here.

FN18. Subchapters B and C of the FDCPA contain the prejudgment remedies provisions and postjudgment remedies provisions, respectively.

FN19. A similar construction has been reached for various types of pleadings in bankruptcy cases under federal bankruptcy rules. Federal Bankruptcy Rule 7015 provides that Fed.R.Civ.P. 15 applies in adversary proceedings, and Bankruptcy Rule 9014 extends Bankruptcy Rule 7015 to contested matters. Thus, Fed.R.Civ.P. 15 has been held applicable to the amendment of a creditor's proof of claim in a bankruptcy proceeding, see, e.g., In re Unroe, 937 F.2d 346, 349 (7th Cir.1991); In re McLean Indus., 121 B.R. 704, 709-10 (Bankr.S.D.N.Y.1990); In re KDI Corp., 119 B.R. 594, 599 (Bankr.S.D.Ohio 1990), as well as the amendment of an involuntary bankruptcy petition, see, e.g., In re Christian & Porter Aluminum Co., 316 F.Supp. 1340, 1344-45 (N.D.Cal.1970); Marshall v.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 14

Showalter, 245 F.Supp. 365, 367 (D.Colo.1965), aff'd, 375 F.2d 529 (10th Cir.1967); In re Ostrer, 216 F.Supp. 133, 135-36 (E.D.N.Y.1963), neither of which meet the technical definition of a pleading under Fed.R.Civ.P. 7(a).

FN20. As stated by the Defendants in their brief in support, "[t]he [G]overnment presented no new evidence in its amended application and affidavit, and pointed to no changed circumstances that presented more compelling need, but merely attempted to correct the deficiencies in its moving papers noted by the Court." D.I. 119 at 22. The Court determined that the Government's Amended Application and Affidavit indeed corrected the deficiencies in its original application. See Order, D.I. 107. For a more detailed analysis of the Government's Amended Application and Affidavit, see the Court's memorandum opinion resolving the Defendants' motion to quash issued concurrently with the instant opinion.

FN21. The Defendants participated in two telephone conferences where the Government's Amended Application and Affidavit were discussed at length, on August 17, 1992 and August 19, 1992. Prior to the August 17, 1992 telephone conference, the Defendants were served with the Government's Motion to Amend and amended papers. Further, the Court stated that the purpose of the conference was to "talk about the [amended] application made by the Government and the implications of it." D.I. 123 at 3. The Defendants at no time during the conference objected to the Government's Motion to Amend its application. See D.I. 123. While raising issues as to particular averments in the papers, the Defendants did not object to the procedural aspects of the amendment itself. Id. In concluding, the Court observed that remarks made by the Defendants' counsel "might even prompt some additional amendments by the Government." Id. at 16. The Defendants again raised no objections. The Defendants' counsel did question the Government's filing of papers "which presumably they could have prepared to file 12 days ago." Id. at 6. However, the 12 day calculation by counsel began from the hearing on the original motions to quash on

August 5, 1992. The Government first received notice that the writs were quashed upon the issuance of the Court's order on August 14, 1992. Thus, the 12 day delay referred to by the Defendants' counsel is incorrect.
During the August 19, 1992 telephone conference, the Defendants' counsel requested "a fair opportunity to respond to these papers," but again did not object to the procedural aspects of the amendment. D.I. 104 at 4. At the conclusion of arguments by the parties, the Court ruled that the Government's Motion to Amend would be granted, and the amendments would be approved and considered a part of the original pleadings in the case. Id. at 11. The Court issued its corresponding Order on the following day, August 20, 1992.

FN22. In its Memorandum Opinion, the Court agreed with the Defendants that the Constitution and the legislative history of the FDCPA require that the Government show the Court "compelling circumstances" prior to seizures of property in the prejudgment stage. United States v. Teeven, No. 92-418, slip op. at 13 (D.Del. Aug. 14, 1992). The "compelling circumstances" analysis rests on the showing the Government must make for grounds for prejudgment remedies under section 3101(b) of the FDCPA. See id. at 13-14. While holding that the Government's application was deficient on other grounds (failure to make application under oath under section 3101(a)(1) and failure to meet the particularity requirements under section 3101(c)(1)), the Court concluded that the Government satisfied constitutional parameters for prejudgment remedies by demonstrating "a compelling need and exigent circumstances when it made its ex parte application for prejudgment remedies." Id. at 14.

FN23. See supra note 22.

FN24. See supra note 16.

FN25. For additional details about the telephone conferences, see supra note 21.

FN26. For a lengthier discussion of the Court's analysis, see supra note 22.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**


D.Del.,1992.
U.S. v. Teeven
Not Reported in F.Supp., 1992 WL 683682 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:92CV00418 (Docket) (Jul. 17, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.