# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONNECTICUT BANK OF COMMERCE, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-_____ |
| THE REPUBLIC OF CONGO, | ) ) ) | |
| Defendant; | ) ) | |
| CMS NOMECO CONGO INC., | ) ) ) | |
| Garnishee. | ) | |

## DECLARATION OF MARYSE BERNARD

I, Maryse Bernard, declare:

1. My name is Maryse Bernard. I am President of CMS Nomeco Congo LLC, which was formerly known as CMS Nomeco Congo Inc. ("CMS Nomeco") I have held that position since 19 October 2004 and I have personal knowledge concerning the facts set out in this declaration.

2. CMS Nomeco, The Nuevo Congo LLC, Nuevo Congo Ltd. and Société Nationale des Pétroles du Congo ("SNPC," the Congolese state-owned oil company) are the current working interest owners under a Convention for oil production in Congolese waters originally entered into in May 1979 ("the Convention"). A true and correct copy of the Convention, in both French and English, is attached hereto as Exhibit 1. CMS Nomeco is the current operator under the Convention. CMS Nomeco has no business activities, no officers, no directors, no employees, and no physical offices in the United States. The business activity of CMS Nomeco is focused on the oil production activities that are ongoing in the Congo.

**EXHIBIT A**

3. The Convention entitles the Congo to receive royalties. Under Article 7 of the Convention, the Congo may elect to receive royalties in cash or in-kind. As stated in the Amendment to Lifting Agreement, a true and correct copy of which (in both French and English) is attached as Exhibit 2, in 1999, the Congo changed its election to an in-kind election and has not changed its election since that time.

4. The Convention was executed in the Congo and is governed by Congolese law. The oil is extracted from the submerged seabed adjacent to the Congo's coast, in areas within the Congo's exclusive jurisdiction under Congolese and international law. The oil flows through a subsurface pipeline system to a storage vessel, known as the "Conkouati," in Congolese coastal waters. A lifting occurs when oil is offloaded from the Conkouati onto a vessel nominated by the buyer of the oil. CMS Nomeco and the other private working interest owners take liftings of oil stored on the Conkouati for their own account, and sell 100% of the oil so lifted for their own account.

5. CMS Nomeco, as operator, calculates the effect of liftings on the over- or under-lifted position of SNPC and the Congo, on a barrel basis, and records that effect on an "over/under statement." As described in the Amendment to Lifting Agreement attached hereto as Exhibit 2, once the combined under-lifted position of SNPC and the Congo reaches at least 275,000 barrels, SNPC may schedule and take a lifting of oil for itself and the Congo. When SNPC takes a lifting, SNPC sells, for its own and the Congo's account, all the barrels that it lifts. The SNPC lifting satisfies the Congo's in-kind royalty and puts SNPC into an over-lifted position. CMS Nomeco and the other private working interest owners take liftings until the combined under-lifted position of SNPC and the Congo again exceeds 275,000 barrels, when

SNPC may schedule, take, and sell another lifting oil for itself and the Congo, again satisfying the Congo's in-kind royalty and again putting SNPC into an over-lifted position.

6. On December 28, 2004, a court sitting in the Congo, upon applications by the Congo and SNPC, entered two orders requiring that CMS Nomeco, as operator of the storage terminal, deliver working interest oil and royalty oil to SNPC. True and correct copies of the December 28, 2004 Congo court orders, with English translations thereof, are attached hereto as Exhibits 3 and 4. I was in Brazzaville, Congo on December 28, 2004 to inform government officials of the decision to not allow a lifting of oil in light of writs of garnishment issued by U.S. courts, and I was informed that public force would be used if the lifting of oil by SNPC was not allowed to take place. The Director General of the Congo's Ministry of Hydrocarbons showed me copies of the Congo court orders and told me that I would be detained until the lifting of oil was completed. Based on these events, I authorized CMS Nomeco's operations manager to give instructions to permit the lifting of oil. On December 28-29, 2004, SNPC took a lifting of 550,032 barrels of oil, which included SNPC working interest oil as well as the Congo's royalty oil.

7. Attached hereto as Exhibits 5 and 6 are true and correct copies of an Order and Judgment signed by Judge of the Western District of Texas dated February 4, 2005.

8. Attached hereto as Exhibit 7 is a true and correct copy of a letter sent by the Congo to the Western District of Texas.

9. The clerk of the Western District of Texas sent instruction letters signed by the clerk to Mr. Guy Lipe, the attorney who had represented CMS Nomeco and the other working interest owners in the garnishment action that had been dismissed in February 2005. Mr. Lipe

3

was not authorized by CMS Nomeco to receive royalty elections or other notices under the Convention.

10. On July 4, 2005, a Congo court in Point Noire, Congo, upon applications filed by the Congo and SNPC, issued orders against CMS Nomeco directing CMS Nomeco to deliver the Congo's royalty oil and SNPC's working interest oil to SNPC. True and correct copies of those orders, including English translations thereof, are attached hereto as Exhibits 8 and 9.

11. On July 11, 2005, Af-Cap and Walker filed a lawsuit against CMS Nomeco in Delaware Chancery Court, claiming that CMS Nomeco had violated the instruction letters described in paragraph 9 above by failing to pay royalty into the registry of the Court in the Western District of Texas.

12. On July 26, 2005, the court in the Western District of Texas entered an order, a true and correct copy of which is attached as Exhibit 10. On August 17, 2005, the Western District of Texas entered an order, a true and correct copy of which is attached as Exhibit 11.

13. On September 7, 2005, SNPC took a lifting of the Congo's royalty oil and SNPC's working interest oil totaling 605,006 barrels, leaving SNPC in an over-lifted position with regard to its working interest oil and extinguishing the Congo's royalty entitlement. As discussed above, SNPC is entitled to take a lifting of royalty oil of the Congo and its own working interest oil only when the combined under-lifted position of the Congo with regard to royalty oil and SNPC with regard to working interest oil exceeds 275,000 barrels. The garnishment writ in this case was served on October 12, 2005, and on that date, on the date the answer to the October 12, 2005 writ was filed, and at all times in between, neither the Congo nor SNPC had any right to take a lifting of oil, as the Congo and SNPC were in a combined over-lifted position during that time period. Attached hereto as Exhibit 12 is a true and correct copy

4

of the current over/under statement which confirms this fact. It is currently anticipated that SNPC will not have any right to take another lifting of the Congo's royalty oil and SNPC's working interest oil until sometime in 2006.

14.   I declare under penalty of perjury, under the laws of the United States of America, that the foregoing statements are true and correct.

EXECUTED on the 14th day of December, 2005, in Paris, France.

*[signature]*
Maryse Bernard