**A P P E N D I X**

GAR 00104

TRANSLATION

(Letterhead of Congolese Superior Oil Company)

Minister of Finances                    Houston, May 17, 1979
istry of Finances
zaville

Minister:

Our company, together with Cities Service Congo Petroleum
poration and Canadian Superior Oil Ltd. are signing on May 25,
with the People's Republic of the Congo, represented by its
ister of Mining and Energy, a Convention relating to hydrocarbon
ration and exploitation on the permit known as "Marine 1".
this regard, we would like to request clarification with respect to
following questions:

1. The works relating to the working of this permit will
it necessary for us, as Operator for the Joint Venture, a
ys to a lesser extent for the other non-Congolese members of the
Venture, to send to the Congo specialized personnel for periods
will be limited, but may extend over several years.

(a) The expatriate personnel may bring with them household
ture, private cars and household furnishings for their personnel
ring their stay in the Congo. Can such goods be imported,
-exported at the end of their stay, free of customs duties
xes?

(b) The transfer to the Congo may entail for such personnel
tional costs which are a direct consequence of such transfer:
nance of two residences, special education expenses for their
en, and, in the absence of a tax treaty between the People's
lic of the Congo and the United States of America, double taxation
ir income. It will probably be necessary for us to pay such per-
an indemnity intended to cover these additional costs. Will
indemnity be subject to Congolese personal income tax, in
h to the tax payable on their salary after deduction of the
rd BCH deduction for professional expenses?

2. Should the Joint Venture, for reasons of Force Majeure,
discontinue the exploitation for an appreciable length of time,
ost-income tax payments, if any, be reimbursable?

3. With respect to the costs and expenses accumulated
he exploration phase, we understand that the Congolese tax
will result in treating such costs and expenses in the follow-
on: those of such costs and expenses which relate to the

GAR 00105

The Minister of Finances            -2-            May 17, 1979

creation of capitalized assets shall be amortized, beginning in the
first fiscal year showing a taxable income, in accordance with the
depreciation rates attached as an exhibit to the aforementioned
Convention. The other costs and expenses shall constitute "frais de
premier établissement" (costs of initial installation), which may
as such be amortized, at the taxpayer's option, without time limit.
We would be grateful if you could confirm that this would be the case.

Very truly yours,

(s) Diego O. Giordano
Diego O. Giordano
Vice-President

GAR 00106

TRANSLATION

(Letterhead of the Ministry of Finance)

Brazzaville, May 23, 1979

...olese Superior Oil Company
...th Floor
...st City National Bank Building
...ton, Texas

...r Sirs:

In reply to your letter of May 17, 1979, we are pleased
...let you know the following:

1.(a)  Household furniture, furnishings and materials
...be imported and re-exported free of customs duties and taxes,
...atever the length of the stay, so long as their use is limited to
...sonal use by the expatriate personnel. Private cars can be
...ported free of duties and taxes only for a period of six months.

1.(b)  Since the indemnities described in your letter
...a reimbursement of exceptional costs actually incurred, differing
...nature from the professional expenses that the standard deduction is
...tended to cover, they shall not be included in the taxable income
...the employees in question, subject of course to the furnishing of
...oper justification.

2.  The discontinuation of exploitation in the circumstances
...scribed in your letter can be interpreted as a discontinuation of
...tivities, with corresponding application of the provisions of Article
...bis (4) of the General Tax Code.

3.  We confirm to you that your description of the amor-
...ation of costs and expenses accumulated during the exploration phase
...accurate. This matter is indeed covered in identical terms by
...e last sub-paragraph of Exhibit III to the Convention that your
...pany and Cities Service Congo Petroleum Company and Canadian
...perior Oil Ltd. are signing today with the People's Republic of
...Congo and Hydro-Congo.

Very truly yours,

Minister of Finance

REPUBLIQUE POPULAIRE DU C  GO
Travail * Démocratie * P  x

— — — — — —

/ OI N° __60/83__ / DU ____ II/8/198

Complétant la loi n°17/83 du
27/01/83 portant approbation des
Accords particuliers signés 1
11 Décembre 1981 pour le Pera s
"MARINE 1" respectivement ave
BRASPETRO et I.E.D.C. (Congo)
Ltd.--

— — — — — —

L'ASSEMBLEE NATIONALE POPULAIRE A DELIBERE ET AD PTE ;

LE PRESIDENT DU COMITE CENTRAL DU PARTI CONGOLAI  DU
TRAVAIL, PRESIDENT DE LA REPUBLIQUE, CHEF DE L'E AT,
PRESIDENT DU CONSEIL DES MINISTRES, PROMULGUE LA LOI
DONT LA TENEUR SUIT :

ARTICLE 1ER.- L'article 1er de la loi n°17/83 du 27/ 1/83
portant approbation des accords particuliers signés  e
11 Décembre 1981 pour l'exploitation du Permis Marin  1
est complété comme suit :

    après : sont approuvés les accords ci-après sig és le
11 Décembre 1981 pour l'exploitation du Permis Marin  1 :

    ajouter : Avenant n°1 A LA CONVENTION DU 25 MAI 1979

Le reste sans changement.

ARTICLE 2.- La présente loi sera publiée au Journal  ffi-
ciel de la République Populaire du Congo et exécutée  omme
loi de l'Etat./-

            Fait à Brazzaville, le  II AOUT 19 3

                                        GAR 00108

        COLONEL Denis SASSOU - NGUESSO.--

(Free) <u>Translation</u>

PEOPLE'S REPUBLIC OF THE CONGO

Work – Democracy – Peace

- - - - - - - - -
- - - - - - - - - -

Law No. 60/83 of August 11, 1983
completing Law No. 17/83 of
January 27, 1983 approving
the Accords particuliers signed
December 11, 1981 re
"the Marine I Permit" with
BRASPETRO & I.E.D.C. (Congo)
Ltd.

- - - - - - - - -
- - - - - - - - - -

The People's National Assembly has deliberated and adopted;

The President of the Central Committee and
The Congolese Worker's Party, President of
the Republic, Chief of State, President of
the Council of Ministres,  promulgates the
Law the text of which follows:

<u>Article 1</u>    Article 1 of Law No. 17/83 of January 27, 1983 approving the
Accords particuliers signed December 11, 1981 for the exploitation of the
Marine I Permit is completed as follows:

After "have approved the accords below signed December 11, 1981
for the exploitation of the Marine I Permit"

Add: "Amendment No. 1 to the Convention of May 25, 1979."

The remainder is unchanged.

<u>Article 2</u>    This Law will be published in the Official Journal of the
People's Republic and executed as a law of the State.

Made in Brazzaville, August 11, 1983

<u>COLONEL Denis SASSOU – NGUESSO</u>

GAR 00109

ENGLISH TRANSLATION

* * * *

AMENDMENT N° 1
TO THE MAY 25, 1979
"MARINE 1" CONVENTION

December 11, 1981

GAR 00110

ENGLISH TRANSLATION

. . . .

AMENDMENT N° 1
TO THE MAY 25, 1979
"MARINE 1" CONVENTION

BETWEEN

The People's Republic of the Congo (hereinafter
referred to as the "CONGO"), represented for the purposes
hereof by its Minister of Mining and Energy Mr. Rodolphe
Adada,

on the one hand,

AND

Cities Service Congo Petroleum Corporation
(hereinafter referred to as "CITIES SERVICE") a Delaware
(U.S.A.) corporation with registered offices at 306 South
State Steet, Dover, Delaware, United States of America,
represented by Mr. Lewis Greenwald, duly authorized for
this purpose,

Société Nationale de Recherches et d'Exploitation
Pétrolières -- HYDRO-CONGO (hereinafter referred to as
"HYDRO-CONGO"), a société nationale with registered
offices at Brazzaville, represented by Mr. Camille Okamba,
duly authorized for this purpose,

IEDC (Congo) Ltd. (hereinafter referred to as
"IEDC") a Bermuda company with registered offices at 5th
Floor, Bank of Bermuda Building, Hamilton, Bermuda,
represented by Mr. Nordine Aït-Laoussine, duly authorized
for this purpose,

Petrobras Internacional S.A. BRASPETRO
(hereinafter referred to as "BRASPETRO") a Brazilian
corporation with registered offices at Rio de Janeiro,
Federative Republic of Brazil, represented for this purpose,
Mr. Joel Mendes Renno, duly authorized for this purpose,

on the other hand.

PREAMBLE

On May 25, 1979, the CONGO, HYDRO-CONGO, CITIES
SERVICE, Congolese Superior Oil Company ("SUPERIOR") and
Canadian Superior Oil Ltd. ("CANADIAN") signed a

GAR 00111

Convention (the "CONVENTION") for the exploration and possible exploitation of liquid and gaseous hydrocarbons on the territory of the People's Republic of the Congo. The CONVENTION was ratified by Government Order N° 24/79 of July 7, 1979.

HYDRO-CONGO, CITIES SERVICE, SUPERIOR and CANADIAN also signed in Brazzaville on May 25, 1979 a joint operating agreement (the "JOA") to carry out petroleum works on the "Marine 1" Type "A" exploration permit granted to HYDRO-CONGO by decree N° 79/253 of May 16, 1979.

On March 12, 1981, SUPERIOR and CANADIAN withdrew from the joint venture organized under the JOA (the "JOINT VENTURE"), effective immediately.

IEDC and BRASPETRO informed the Minister of Mining and Energy of the CONGO of their interest to participate in the operations of the JOINT VENTURE and, by reason of these two groups' experience in petroleum operations, the Minister of Mining and Energy of the CONGO agreed, in Heads of Agreements signed respectively with International Energy Development Corporation B.V. and BRASPETRO on July 28 and August 7, 1981, that these groups participate in the JOINT VENTURE and, as a result, that they take part in the petroleum works on the "Marine 1" permit.

NOW, THEREFORE, IT HAS BEEN AGREED AS FOLLOWS:

## Article 1

1.01.A.   IEDC and BRASPETRO hereby agree to and ratify all the provisions of the CONVENTION, a copy of which is attached hereto as an exhibit, and they become parties thereto in replacement for SUPERIOR and CANADIAN, respectively.  The CONGO hereby confirms all the provisions of the CONVENTION and agrees that all such provisions shall apply to IEDC and BRASPETRO in the same manner as they applied to SUPERIOR and CANADIAN.

1.01.B.   The CONGO warrants to IEDC and BRASPETRO that SUPERIOR and CANADIAN have withdrawn from the CONVENTION effective March 12, 1981 and neither SUPERIOR nor CANADIAN or any person claiming through or under SUPERIOR or CANADIAN have any rights or interest thereunder or in any HYDROCARBONS which may be produced on the PERMIT.

The CONGO also warrants that it did not approve any encumbrance (hypothèque, nantissement or mise en gage) on the PERMIT.

GAR 00112

3.

1.01.C.  Notwithstanding anything elsewhere contained in this Amendment N° 1, nothing herein contained shall be construed as imposing upon IEDC or BRASPETRO any liability for any failure of SUPERIOR or CANADIAN to fulfill any of their obligations or liabilities under the CONVENTION prior to the date of their withdrawal and the rights and interests of IEDC and BRASPETRO under the CONVENTION shall not be prejudiced in any way as a result of any such failure of SUPERIOR or CANADIAN.

1.02  For the purposes of the CONVENTION

(a) instead of "Congolese Superior Oil Company", read "IEDC (Congo) Ltd."

(b) instead of "SUPERIOR", read "IEDC";

(c) instead of "Canadian Superior Oil Ltd.", read "Petrobras Internacional S.A. BRASPETRO";  and

(d) instead of "CANADIAN", read "BRASPETRO".

1.03  For the purposes of paragraph 19.01 of the CONVENTION,

(a) amend sub-paragraph (b) of said paragraph 19.01 to read as follows:

"(b) for IEDC:

IEDC (Congo) Ltd.
5th floor
Bank of Bermuda Building
Hamilton
Bermuda

With copy to:

IEDC Services (U.K.) Ltd.
The Lower Mill
Kingston Road
Ewell, Surrey KT17 2AP
United Kingdom

Telex:  295277 IEDC (UK) - G

Attention:  Exploration Manager".

(b) Amend sub-paragraph (d) of said paragraph 19.01 to read as follows:

4.

"(d) for BRASPETRO:

Petrobras Internacional S.A. BRASPETRO
Plaça Pio X, 119 Centro
20,040 Rio de Janeiro, R.J.
Brésil
(P.O. Box 2027, Rio de Janeiro, RJ, Brazil)

    Télex:  2122640
            2121889

    Attention:  Vice President".

## Article 2

2.01  IEDC shall provide to the CONGO the
guarantee issued by its parent company pursuant to Article
21 of the CONVENTION at the latest on December 31, 1981.

## Article 3

3.01  This amendment N° 1 shall enter into force
upon its ratification by law, but it will be retro-
actively effective as of March 13, 1981.

Done in seven originals in French,
in Brazzaville,
on December 11, 1981.

The CONGO:


By: _____
    Rodolphe Adada,
    Minister of Mines and Energy


CITIES SERVICE:                    HYDRO-CONGO:


By: _____        By: _____
    Lewis Greenwald            Camille Okamba,
                               General Manager


IEDC:                              BRASPETRO:


By: _____        By: _____
    Nordine Ait Laoussine      Joel Mendas Renno,
                               Vice-President


**GAR 00114**

#3303-A

## PERMIS "MARINE 1"

o  o  o  o  o

## ACCORD PARTICULIER
### BRASPETRO

### 11 décembre 1981

GAR 00115

PERMIS "MARINE 1"

•  •  •  •  •

ACCORD PARTICULIER


ENTRE

La République Populaire du Congo (ci-après désignée le "CONGO"), représentée par Monsieur Rodolphe Adada, Ministre des Mines et de l'Energie,

d'une part,

ET

IEDC (Congo) Ltd. (ci-après désignée "IEDC"), une société des Bermudes dont le siège social est à Hamilton, Bermudes, 5ème étage, Bank of Bermuda Building, représentée par Monsieur Nordine Aït-Laoussine, dûment autorisé aux fins des présentes,

d'autre part.

EXPOSE PRELIMINAIRE

Le 25 mai 1979, le CONGO, HYDRO-CONGO, CITIES SERVICE, Congolese Superior Oil Company ("SUPERIOR") et Canadian Superior Oil Ltd. ("CANADIAN") ont signé une Convention (la "CONVENTION") pour la recherche et l'exploitation éventuelle d'hydrocarbures liquides et/ou gazeux sur le territoire de la République Populaire du Congo. La CONVENTION a été ratifiée par l'Ordonnance N° 24/79 du 7 juillet 1979.

HYDRO-CONGO, CITIES SERVICE, SUPERIOR et CANADIAN ont également signé à Brazzaville le 25 mai 1979 un contrat d'association (le "CONTRAT D'ASSOCIATION") pour l'exécution de travaux pétroliers sur le permis de recherche de type "A" dit Permis "Marine 1" accordé à HYDRO-CONGO par le décret N° 79/253 en date du 16 mai 1979.

GAR 00116

2.

Le 12 mars 1981, SUPERIOR et CANADIAN se sont retirées de l'association constituée aux termes du CONTRAT D'ASSOCIATION ("l'ASSOCIATION") et ce avec effet immédiat.

IEDC a fait connaître à Monsieur le Ministre des Mines et de l'Energie du CONGO son intérêt à participer aux travaux de l'ASSOCIATION, et son désir d'améliorer la situation du CONGO au sein de la CONVENTION.

CELA ETANT EXPOSE, LES PARTIES SONT CONVENUES DE CE QUI SUIT:

### Article 1
### Redevance Minière

Le taux de la redevance minière pour les hydrocarbures liquides prévu au paragraphe 5.03 de la CONVENTION est porté de quatorze et demi pour cent (14,5%) à seize deux-tiers pour cent (16 2/3%). Le taux de la redevance minière pour les hydrocarbures gazeux reste inchangé.

### Article 2
### Impôt sur les sociétés

En ce qui concerne IEDC, l'impôt sur les sociétés sera calculé au taux de soixante cinq pour cent (65%). A cet effet, si le taux de l'impôt sur les sociétés fixé par le Code Général des Impôts du CONGO est inférieur à soixante cinq pour cent (65%), IEDC sera soumise à l'impôt sur les sociétés calculé conformément aux dispositions du Code Général des Impôts du CONGO ainsi qu'à un impôt additionnel dont le montant sera calculé en appliquant au bénéfice imposable un pourcentage égal à la différence entre le taux de l'impôt sur les sociétés, tel qu'il résulte du Code Général des Impôts, et soixante cinq pour cent (65%).

### Article 3
### Cession à une société du groupe IEDC

En raison de la structure du groupe IEDC, le CONGO accepte que l'autorisation du Ministre de tutelle soit automatiquement accordée à toute cession par IEDC de

GAR 00117

3.

ses droits et obligations au titre de la CONVENTION et du
CONTRAT D'ASSOCIATION à un ou plusieurs de ses action-
naires ultimes, lesquels sont AZL Resources Inc., Arab
Petroleum Investments Corporation, Kuwait Petroleum
Corporation, Sulpetro Ltd. et A.B. Volvo (ou, sous réserve
d'obtenir l'accord préalable du Ministre de tutelle,
lequel accord ne sera pas refusé sans raison, à toute
filiale entièrement contrôlée par l'un quelconque desdits
actionnaires) à condition qu'IEDC reste responsable de
l'exécution de toutes les obligations et responsabilités
cédées à un tel cessionnaire et qu'IEDC représente ce
cessionnaire pour les besoins de la CONVENTION et du
CONTRAT D'ASSOCIATION.

### Article 4
### Entrée en vigueur; ratification

Le présent accord particulier entrera en vigueur
dès sa ratification par une loi, mais il prendra effet
rétroactivement à compter du 13 mars 1981.  Le texte
français seul fait foi, mais une traduction anglaise
approuvée par les parties y est jointe et il pourra y être
fait référence dans un but de clarification.

Fait en quatre exemplaires
à Brazzaville,
le 11 décembre 1981.

Pour le CONGO:                          Pour IEDC:

Rodolphe Adada,                         Nordine Aït-Laoussine
Ministre des Mines
et de l'Energie

GAR 00118

(Note: Agreement in same terms executed
        by Bras tro  December 11, 1981)

ENGLISH TRANSLATION

"MARINE 1" PERMIT

• • • •

AD HOC

AGREEMENT

BETWEEN

The People's Republic of the Congo (hereinafter
referred to as the "CONGO"), represented for the purposes
hereof by its Minister of Mining and Energy Mr. Rodolphe
Adada,

on the one hand,

AND

IEDC (Congo) Ltd. (hereinafter referred to as
"IEDC") a Bermuda company with registered offices at 5th
Floor, Bank of Bermuda Building, Hamilton, Bermuda,
represented by Mr. Nordine AIt Laoussine, duly authorized
for this purpose,

on the other hand.

PREAMBLE

On May 25, 1979, the CONGO, HYDRO-CONGO, CITIES
SERVICE, Congolese Superior Oil Company ("SUPERIOR") and
Canadian Superior Oil Ltd. ("CANADIAN") signed a
Convention (the "CONVENTION") for the exploration and
possible exploitation of liquid and gaseous hydrocarbons
on the territory of the People's Republic of the Congo.
The CONVENTION was ratified by Government Order N° 24/79
of July 7, 1979.

HYDRO-CONGO, CITES SERVICE, SUPERIOR and CANADIAN
also signed in Brazzaville on May 25, 1979 a joint

GAR 00119

2.

operating agreement (the "JOA") to carry out petroleum works on the "Marine 1" Type "A" exploration permit granted to HYDRO-CONGO by decree N° 79/253 of May 16, 1979.

On March 12, 1981, SUPERIOR and CANADIAN withdrew from the joint venture organized under the JOA (the "JOINT VENTURE"), effective immediately.

IEDC informed the Minister of Mining and Energy of the CONGO of its interest to participate in the operations of the JOINT VENTURE and of its intention to improve the CONGO's situation under the CONVENTION.

NOW, THEREFORE, IT HAS BEEN AGREED AS FOLLOWS:

Article 1
Mining Royalty

The rate of the mining royalty for liquid hydrocarbons set forth in paragraph 5.03 of the CONVENTION is hereby increased from fourteen and one half percent (14.5%) to sixteen and two thirds percent (16 2/3%). The rate of the mining royalty for gaseous hydrocarbons remains unchanged.

Article 2
Corporate Tax

With respect to IEDC, the corporate tax shall be computed at the rate of sixty five percent (65%). Therefore, should the corporate tax rate, as set forth in the Code Général des Impôts of the CONGO, be less than sixty five percent (65%), IEDC shall be subject to the corporate tax computed in accordance with the provisions of the Code Général des Impôts of the CONGO, as well as to an additional tax the amount of which shall be determined by applying to the taxable income a percentage rate equal to the difference between the corporate tax rate, as set in the Code Général des Impôts, and sixty five per cent (65%).

Article 3
Assignment to a company of the IEDC group

In view of the nature of the IEDC group corporate structure, the CONGO agrees that the authorization of the

GAR 00120

3.

Minister in charge shall be automatically granted to any assignment by IEDC of its rights and obligations under the CONVENTION and the JOA to all or any of its ultimate shareholders being AZL Resources Inc., Arab Petroleum Investments Corporation, Kuwait Petroleum Corporation, Sulpetro Ltd. and A.B. Volvo (or, subject to the authorization of the Minister in charge, such not to be unreasonably withheld, any wholly-owned subsidiary of any such ultimate shareholder), provided IEDC remains responsible for the fulfilment of all obligations and liabilities assigned to such assignee and represents such assignee for all purposes under the CONVENTION and the JOA.

### Article 4
### Effective date; ratification

This _ad hoc_ agreement shall enter into force upon of its ratification by law, but it will be retroactively effective as of March 13, 1981. The French text governs, but an English translation approved by the parties is attached, to which reference may be made for the purpose of clarification.

Done in four copies
in Brazzaville,
on December 11, 1981.

For the CONGO:                           For IEDC:


Rodolphe Adada,                          Nordine Ait-Laoussine
Ministre des Mines et
de l'Energie

GAR 00121

```
┌─────────────────────────────────────────┐
│          ASSESSORIA JURÍDICA             │
│  Contrato: 119      C ☒ E ☐  n.º:        │
│  Distribuído e:                  Data:   │
└─────────────────────────────────────────┘
```

### PERMIS "MARINE 1"

### ACCORD PARTICULIER

ENTRE

    La République Populaire du Congo (ci-après désignée le "CONGO"), représentée par Monsieur Rodolphe Adada, Ministre des Mines et de l'Energie,

                                    d'une part,

ET

    Petrobras Internacional S.A. BRASPETRO, (ci-après désignée "BRASPETRO"), société d'économie mixte de droit brésilien dont le siège est à Rio de Janeiro, République Fédérative du Brésil, représenté par Monsieur Joel Mendes Renno, dûment autorisé aux fins des présentes,

                                      d'autre part.

### EXPOSE PRELIMINAIRE

    Le 25 mai 1979, le CONGO, HYDRO-CONGO, CITIES SERVICE, Congolese Superior Oil Company ("SUPERIOR") et Canadian Superior Oil Ltd. ("CANADIAN") ont signé une Convention (la "CONVENTION") pour la recherche et l'exploitation éventuelle d'hydrocarbures liquides et/ou gazeux sur le territoire de la République Populaire du Congo.  La CONVENTION a été ratifiée par l'Ordonnance N° 24/79 du 7 juillet 1979.

    HYDRO-CONGO, CITIES SERVICE, SUPERIOR et CANADIAN ont également signé à Brazzaville le 25 mai 1979 un contrat d'association (le "CONTRAT D'ASSOCIATION") pour l'exécution de travaux pétroliers sur le permis de recherche de type "A" dit Permis "Marine 1" accordé à HYDRO-CONGO par le décret N° 79/253 en date du 16 mai 1979.

    Le 12 mars 1981, SUPERIOR et CANADIAN se sont retirées de l'association constituée aux termes du CONTRAT D'ASSOCIATION ("l'ASSOCIATION") et ce avec effet immédiat.

    BRASPETRO a fait connaître à Monsieur le Ministre des Mines et de l'Energie du CONGO son intérêt à participer aux travaux de l'ASSOCIATION, et son désir d'améliorer la situation du CONGO au sein de la CONVENTION.

GAR 00122

2.

**CELA ETANT EXPOSE, LES PARTIES SONT CONVENUES DE CE QUI
SUIT:**

### Article 1
### Redevance Minière

Le taux de la redevance minière pour les
hydrocarbures liquides prévu au paragraphe 5.03 de la
CONVENTION est porté de quatorze et demi pour cent (14,5%)
à seize deux-tiers pour cent (16 2/3%). Le taux de la
redevance minière pour les hydrocarbures gazeux reste
inchangé.

### Article 2
### Impôt sur les sociétés

En ce qui concerne BRASPETRO, l'impôt sur les
sociétés sera calculé au taux de soixante cinq pour cent
(65%). A cet effet, si le taux de l'impôt sur les
sociétés fixé par le Code Général des Impôts du CONGO est
inférieur à soixante cinq pour cent (65%), BRASPETRO sera
soumise à l'impôt sur les sociétés calculé conformément
aux dispositions du Code Général des Impôts du CONGO ainsi
qu'à un impôt additionnel dont le montant sera calculé en
appliquant au bénéfice imposable un pourcentage égal à la
différence entre le taux de l'impôt sur les sociétés, tel
qu'il résulte du Code Général des Impôts, et soixante cinq
pour cent (65%).

### Article 3
### Entrée en vigueur; ratification

Le présent accord particulier entrera en vigueur
dès sa ratification par une loi, mais il prendra effet
rétroactivement à compter du 13 mars 1981.

Fait en quatre exemplaires en français,
à Brazzaville,
le 11 décembre 1981.

Pour le CONGO:

Rodolphe Adada,
Ministre des Mines
et de l'Energie

Pour BRASPETRO:

Joel Mendes Rennò,
Vice-President

GAR 00123

CONGO

cc. Y. Vincent
Central File
14-12-81

$$1$$

PERMIS "MARINE 1"
∘ ∘ ∘ ∘ ∘
ACCORD PARTICULIER
IEDC (Congo) Ltd.

11 décembre 1981

GAR 00124



Amoco Congo Exploration Company
Amoco Congo Petroleum Company
200 East Randolph Drive,
Chicago,
Illinois 60680,
U.S.A.

le 29 juin 1984

Monsieur Auxence Ickonga,
Directeur Général-Président,
Hydro-Congo,
Brazzaville

Monsieur le Directeur Général-Président,

Lors de nos récents entretiens à Brazzaville au sujet de
la cession en notre faveur de certains interêts dans la Con-
vention et l'Accord d'Association du Permis Marine I, nous
vous avons fait connaître notre désir de recevoir sur certains
points importants des clarifications ou des confirmations
de la part d'Hydro-Congo ou des services administratifs
Congolais éventuellement compétents. Ces points sont les
suivants:

1.    Hydro-Congo étant une société entièrement controlée
      par la Republique Populaire du Congo, Amoco s'inquiete
      de la généralité de l'Article 18.03 du Contrat d'Associ-
      ation.

      A cet égard, Amoco désirerait qu'Hydro-Congo lui con-
      firme qu'elle ne considérera pas que des actes de la
      puissance publique affectant Hydro-Congo seule mais
      non les autres parties au Contrat d'Association, peuv-
      ent constituer des événements de force majeure dans
      le cadre du Contrat d'Association.

2.    Arbitrage

      Le permis de recherche de type "A" dit permis "Marine
      1" figure en annexe 1 à la Convention. Il ne semble
      pas clair à Amoco que cela implique nécessairement
      que le permis et la Convention doivent  être lus en-
      semble.

      Amoco désirerait obtenir confirmation  du fait que
      l'Article 17 de la Convention, qui traite de l'arbit-
      rage, autoriserait bien une partie à la Convention
      à invoquer le cas échéant la clause d'arbitrage dans
      le cadre de contestations portant sur le permis (ou
      sur tout permis d'exploitation qui pourrait en result-
      er) dans les mêmes conditions que pour des contestat-
      ions portant sur la Convention elle-même.

-1-

GAR 00125



3.  Amoco désirerait obtenir confirmation du fait que la
    loi N°23/82 du 7 juillet 1982 faisant référence au
    Code Minier n'a pas de raison de s'appliquer au permis
    "Marine 1" (ou à l'un quelconque des permis d'exploit-
    ation qui pourrait en résulter) ou à la Convention,
    et que l'Article 19.03 de la Convention exclut l'appli-
    cation tant de l'Article 20 de la loi N°29-62 du 20
    juin 1962 que de la loi N°35-65 du 12 août 1965, de
    telle sorte qu'il ne peut être question pour l'Etat
    Congolais d'acquérir une participation dans toute suc-
    cursale creée, ou dans toute société constituée par
    Amoco pour les besoins de ses activités au Congo dans
    le cadre du permis "Marine 1".

4.  Impôt sur les Sociétés

    Amoco désirerait obtenir confirmation que les points
    suivants concernant la fiscalité lui seront applicables:

    (A)  Conformément au paragraphe 4.A (A) du procès-
         verbal signé le 8 mars 1984:

         I.   Les modalités fiscales applicables au pour-
              centage de participation qu'Amoco doit
              acquérir de Cities Service seront identiques
              à celles qui étaient applicables au pour-
              centage de participation de Cities Service
              dans le cadre de la Convention du 25 mai
              1979. En particulier, le taux de l'impôt
              sur les sociétés applicable aux revenus
              D'Amoco en provenance du pourcentage de
              participation achetée à Cities sera de 55
              pour cent, et les taux de redevance applic-
              ables à ce pourcentage de participation
              seront de 14 1/2 pour cent pour les hydrocar-
              bures liquides et de 9 pour cent pour le
              gaz naturel.

         II.  Les modalités fiscales applicables aux pour-
              centages de participation qu'Amoco doit
              acquérir de Braspetro, IEDC et KUFPEC seront
              identiques à celles qui étaient incluses
              dans la Convention du 25 mai 1979, à l'ex-
              ception de la redevance minière pour les
              hydrocarbures liquides, qui sera de 16 2/3
              pour cent au lieu de 14 1/2 pour cent, et
              du taux de l'impôt sur les sociétés appli-
              cable a ce pourcentage de participation,
              qui sera de 65 pour cent au lieu de 55 pour
              cent. A tout autre point de vue, ce sont
              les modalités fiscales d'origine de la Con-
              vention du 25 mai 1979 qui s'appliqueront.

-2-

GAR 00126



(B)   La mention dans l'Article 6.03.2 de la Convention
du "taux de l'impôt du Congo" se réfère au taux
général d'impôt sur les sociétés qui s'applique
à toutes les sociétés qu'elles poursuivent des
activités pétrolières ou bien d'autres activités
industrielles et commerciales.

(C)   Au cas où une production commerciale d'hydro-
carbures serait obtenue, il a été convenu qu'Amoco
paierait une Portion du Bénéfice Net (PBN) à
Cities Service et à Braspetro,  qui  n'auront
plus alors de réprésentation permanente au Congo.
Ces versements seront faits après paiement des
impôts congolais. Amoco voudrait avoir la confirm-
ation qu'il ne sera pas appliqué sur ces verse-
ments aucune autre retenue à la source ou impôt
congolais sur les sociétés, dans la mesure où
ces versements seraient faits hors du Congo et
prélevés par Amoco sur des bénéfices qui auront
déjà été asujettis aux impôts congolais.

(D)   Amoco voudrait avoir la confirmation que les
versements de PBN faits par Amoco à Cities
Service et à Braspetro pourront être payés à
l'étranger par Amoco en devises sur les fonds
conservés à l'étranger par Amoco.

(E)   Amoco bénéficiera entièrement, pour le calcul
de sa charge d'impôt sur les sociétés, de tous
les frais et charges encourus par Cities Service
et Braspetro avant la date d'entrée en vigueur
de la cession par celles-ci de leurs pourcentages
de particiption respectifs en faveur d'Amoco.

(F)   Amoco désire obtenir confirmation de ce que sa
comptabilité visée à l'Article 6.03.4 de la Con-
vention peut être tenue en dollars des Etats-
Unis, et que cette même comptabilité constituera
la base sur laquelle sera calculé l'impôt sur
les sociétés du par Amoco.

5.   Remboursement des avances par Hydro-Congo

Conformément au paragraphe 4.A(C) du procès-verbal,
Amoco désirerait qu'il lui soit confirmé que, du fait
des cessions envisagées, le "compte-avance" (visé à
l'Article 9.01 du Contrat d'Association) établi au
nom de Cities Service et de Braspetro et qui reprend
toutes les avances faites par ces sociétés avant la
date de la cession sera transmis à Amoco et qu'Amoco

-3-

se verra en conséquence autorisée à recevoir le remboursement complet par Hydro-Congo de ces comptes-avances conformément à l'Article 9.02 du Contrat d'Association.

Nous vous prions, Monsieur le Directeur Général-Président, d'agréer l'expression de nos sentiments respectueux.

T.J. Gorton
Vice Président

TJG/ed

-4-

GAR 00128

Letter 3 of 29th June 1984

Mr. Auxence Ickonga,
Chairman and Managing Director
Hydro-Congo
Brazzaville

Dear Sir,

At our recent meetings in Brazzaville on the subject of the assignment in
our favour of certain interests in the Convention and the
Partnership Agreement of the Marine 1 Permit, we informed you of our
desire to receive clarifications or confirmations from Hydro-Congo or the
competent Congolese administrative departments on certain important
points. The points in question are the following:

1.  Hydro-Congo being a company that is wholly controlled by the
    People´s Republic of the Congo, Amoco is concerned about the general
    nature of Article 18.03 of the Partnership Agreement.

    With regard to this, Amoco would like Hydro-Congo to confirm to it
    that it will not consider governmental acts which only affect
    Hydro-Congo but not the other parties to the Partnership Agreement
    as constituting instances of force majeure under the Partnership
    Agreement.

2.  Arbitration
    The type "A" research permit known as permit "Marine 1" appears in
    appendix 1 of the Convention. It does not seem clear to Amoco that
    it necessarily implies that the permit and the Convention must be
    read together.

    Amoco wishes to obtain confirmation of the fact that Article 17 of
    the Convention, which deals with arbitration, would authorize a
    party to the Convention to invoke, where necessary, the arbitration
    clause under the disputes procedure relating to the permit (or any
    operating permit which might result from it) under the same
    conditions as disputes relating to the Convention itself.

3.  Amoco wishes to obtain confirmation of the fact that Law No. 23/82
    of 7th July 1982 referring to the Mining Code does not apply to the
    "Marine 1" permit (or to any operating permit which may result from
    it) or to the Convention, and that Article 19.03 of the Convention
    excludes the application of Article 20 of Law No. 29-62 of 20th June
    1962 and of Law No. 35-65 of 12th August 1965, so that there is no
    question of the Congolese State acquiring a share in any subsidiary
    created or in any company formed by Amoco for the purposes of its
    activities in the Congo under permit "Marine 1".

GAR 00129

4.    Company Tax

Amoco wishes to obtain confirmation that the following points
concerning tax matters will be applicable to it:

(A)    In accordance with paragraph 4.A (A) of the minutes signed on
8th March 1984:

I.    The tax procedures applicable to the percentage share
that Amoco is to acquire from Cities Service will be
identical to those which were applicable to the
percentage share of Cities Service under the Convention
of 25th May 1979. In particular, the rate of the company
tax applicable to Amoco income resulting from the
percentage share purchased from Cities will be 55
percent, and the rate of royalty applicable to this
percentage share will be 14 1/2 percent for liquid
hydrocarbons and 9 percent for natural gas.

II.    The tax procedures applicable to the percentage shares
that Amoco is to purchase from Braspetro, IEDC and
KUFPEC will be identical to those which were included in
the Convention of 25th May 1979, with the exception of
mineral royalty for liquid hydrocarbons, which will be
16 2/3 percent instead of 14 1/2 percent, and the rate
of company tax applicable to this percentage share,
which will be 65 instead of 55 percent. In every other
respect, the original tax procedures of the Convention
of 25th May 1979 will apply.

(B)    The words in Article 6.03.2 of the Convention of
the "rate of the tax of the Congo" refers to the
general rate of company tax which applies to all
companies pursuing oil activities or other
industrial and commercial activities.

(C)    In the event of commercial production of
hydrocarbons being achieved, it has been agreed
that Amoco would pay a portion of the net profit
(PBN) to Cities Service and Braspetro, which would
no longer have a permanent representation in the
Congo. These payments will be made after payment
of Congolese taxes. Amoco wishes to have
confirmation that no other deduction at source or
Congolese company tax will be applied to these
payments, in so far as these payments will be made
outside the Congo and deducted by Amoco from the
profits which will have already been subject to
Congolese taxes.

(D)    Amoco whishes to have confirmation that these PBN
payments made by Amoco to Cities Service and to
Braspetro may be paid abroad by Amoco in
currencies on the funds held abroad by Amoco.

GAR 00130

(E)   Amoco will benefit fully, for the calculation of
      its company tax burden, from all the costs and
      charges incurred by Cities Service and Braspetro
      prior to the date of the assignment by the latter
      of their respective percentage shares in favour of
      Amoco coming into force.

(F)   Amoco wishes to obtain confirmation that its
      accounts as referred to in Article 6.03.4 of the
      Convention may be kept in United States Dollars,
      and that the same accounts will constitute the
      basis on which the company tax owed by Amoco will
      be calculated.

5.   Repayment of Advances by Hydro-Congo

In accordance with paragraph 4.A (C) of the minutes, Amoco would
like to receive confirmation that, by reason of the assignments
envisaged, the "advance account" (referred to in Article 9.01 of the
Partnership Agreement) established in the name of Cities Service and
Braspetro and which covers all the advances made by these companies
prior to the date of assignment will be transferred to Amoco and
that Amoco will consequently be authorized to receive the full
repayment by Hydro-Congo of these advance accounts in accordance
with Article 9.02 of the Partnership Agreement.

Yours sincerely,

T.J. Gorton
Vice President

TJG/ed



SOCIETE NATIONALE
DE
RECHERCHE ET D'EXPLOITATION
PETROLIERES

# HYDRO-CONGO

Capital : 710.000.000 F. CFA
R. C. : 83 B 931

Siège Social : Brazzaville

N° 130/100-21 /DGP/HC          et

REPUBLIQUE POPULAIRE DU CONGO

Brazzaville, le   29   JUIN   1984.-

*Le Directeur Général Président.*

A

Amoco Congo Exploration Company
Amoco Congo Petroleum Company
1 Stephen Street
Tottenham Court Road
London W1 2AU
Royaume-Uni

Messieurs,

Par lettre en date du 29 Juin 1984, vous nous avez
soumis plusieurs questions relatives au statut du Permis "Marine 1"
et aux effets des cessions de pourcentages de participation
actuellement détenus par Cities Service Congo Petroleum Corporation,
Petrobras Internacional S.A. -- BRASPETRO, IEDC (Congo) Ltd. et
Kuwait Foreign Petroleum Exploration Company K.S.C. La plupart de
ces questions concernant l'Etat, nous les avons transmises à notre
autorité de tutelle qui les considère et vous fera connaître sa
position directement. La présente lettre ne porte donc que sur vos
questions numérotées 1 et 5.

### 1. Question numéro 1 : Force majeure

HYDRO-CONGO est une Société Nationale de droit Congolais
dont les organes de gestion sont indépendants des services de l'Etat,
et notamment du Ministère des Mines et de l'Energie. HYDRO-CONGO
estime donc ne pas être en mesure de vous donner la confirmation
demandée. HYDRO-CONGO tient toutefois à préciser qu'elle n'invoquera
les dispositions de l'article 18.03 du Contrat d'Association que
de manière raisonnable et sans abuser du droit qui lui est reconnu.

.../...

GAR 00132

B. P. 2008 - Brazzaville — Tél. : 81.41.26 — Télex : 5215 KG/5232 KG/5300 KG



.../...                                                    ( 2 )

2. <u>Question numéro 5</u> : <u>Remboursement des Avances</u>

HYDRO-CONGO admet que les avances qui lui ont été
consenties par les Sociétés cédantes conformément à l'article 9 du
Contrat d'Association et qui ont été inscrites aux comptes avances
sous le nom des Sociétés cédantes seront bien transmises à vos deux
Sociétés du fait des cessions. A ce titre, et conformément aux disposi-
tions de l'article 9 précité du Contrat d'Association, la ou les
Sociétés cessionnaires seront autorisées à recevoir les sommes versées
par HYDRO-CONGO à titre de remboursement desdites avances.

Veuillez agréer, Messieurs, l'expression de nos salutations
distinguées.

Le Directeur Général,
Président du Conseil d'Administration
d'HYDRO-CONGO.

cc : Ministère des Mines et de l'Energie.

GAR 00133



from the Chairman and Managing Director
   Hydro-Congo

No. 130/100-21/DGP/HC

29th June 1984

to  Amoco Congo Exploration Company
and Amoco Congo Petroleum Company
   1, Stephen Street,
   Tottenham Court Road,
   London W1 2AU
   United Kingdom

Dear Sirs,
   In your letter of 29th June 1984 you have submitted to us several
questions regarding the status of the "Marine 1" Permit and the
effects of the assignments of the percentage shares presently held
by Cities Service Congo Petroleum Corporation, Petrobras
Internacional S.A. — BRASPETRO, IEDC (Congo) Ltd. and Kuwait
Foreign Petroleum Exploration Company K.S.C. The majority of these
questions concern the State and we have forwarded them to our higher
authority, which will consider them and inform you of its position
directly. Consequently, this letter only deals with your questions
numbered 1 and 5.

   1. Question Number 1:   Force Majeure

   HYDRO-CONGO is a National Company incorporated under Congolese
law whose administrative bodies are independent of the State
departments and, in particular of the Ministry of Mines and Energy.
HYDRO-CONGO therefore considers that it is not in a position to give
you the confirmation requested. HYDRO-CONGO undertakes nevertheless
to state that it will only invoke the provisions of Article 18.03 of
the Partnership Agreement in a reasonable manner and without abusing
the right which is accorded it.

GAR 00134



2. <u>Question Number 5</u>:     <u>Repayment of Advances</u>

   HYDRO-CONGO acknowledges that the advances which have been
granted it by the assigning companies in accordance with Article 9
of the Partnership Agreement and which have been entered in the
advance accounts under the name of the assigning companies will be
transferred to your two companies by virtue of the assignments. In
this regard, and in accordance with the provisions of Article 9
referred to above of the Partnership Agreement, the assignee company
or companies will be authorized to receive the sums paid by
HYDRO-CONGO by way of repayments of the said advances.

   Yours sincerely,


The Managing Director,
Chairman of the Board of Directors
of HYDRO-CONGO


A. ICKONGA


cc: Ministry of Mines and Energy

GAR 00135

REPUBLIQUE POPULAIRE DU CONGO
Travail ∴ Démocratie ∴ Paix
———ooo———

MINISTERE DES MINES
ET DE L'ENERGIE

——— CABINET ———

B.P. 2120 — Tél : 81-12-81

N°———002381———/ MME - CAB.

Brazzaville, le ..29. juin 1984..............

Le Ministre des Mines
et de l'Energie

à

Amoco Congo Exploration Company

et

Amoco Congo Petroleum Company
1 Stephen Street

Tottenham Court Road

LONDON W1 2AU

Royaume — Uni

Messieurs,

J'ai pris bonne note de votre lettre du 29 juin 1984 adressée à la Société Nationale de Recherches et d'Exploitation Pétrolières "HYDRO-CONGO" dans laquelle vous posez certaines questions qui sont du ressort des services de l'Etat et que le Directeur Général - Président d'HYDRO-CONGO m'a soumises.

Il ressort de cette lettre que vos sociétés désirent reprendre en tant que cessionnaires, tout ou partie des pourcentages de participation actuellement détenus par Cities Service Congo Petroleum Corporation, Petrobras Internacional S. A. — BRASPETRO, IEDC (Congo) Ltd. et Kuwait Foreign Petroleum Exploration Company K. S. C.

La présente lettre a pour objet de vous apporter, lorsque cela est possible, les précisions que vous demandez.

1. Question numéro 2 : Arbitrage

La Convention du 25 mai 1979 relative au permis "Marine 1" (la "Convention"), vise expressément dans son paragraphe 1.04 le permis en question, lequel figure de plus en annexe 1 à ladite Convention. Toutefois celui-ci constitue un acte administratif unilatéral adopté avant l'entrée en vigueur de la Convention et dont la validité ne pourrait être remise en cause par une décision arbitrale.

.../...

GAR 00136

2.   Question numéro 3 : Code Minier

Il me semble ressortir des dispositions de la Conven-
tion que les droits et obligations des parties à cette Conven-
tion en matière minière restent régis par la loi n° 35-65 du
12 août 1965.

En ce qui concerne la deuxième partie de votre ques-
tion, l'article 19.03, *in fine*, de la Convention prévoit
clairement que :

    "Par dérogation à l'article 20 de la loi n° 29-62
du 16 juin 1962, tel que modifié, les SOCIETES ne seront pas
requises de constituer une Société filiale de droit congolais".

3.   Question   numéro 4 : Fiscalité

Votre paragraphe 4 comporte plusieurs questions que
j'aborderai successivement :

A - Dans le cadre des cessions envisagées, la Société
cessionnaire bénéficie des droits et obligations de la Société
cédante au titre de la Convention.

B - La référence faite par le sous-paragraphe 6.03.2
de la Convention à "l'impôt sur les sociétés" vise bien l'impôt
de ce nom prévu par le Code Général des Impôts du Congo et appli-
cable d'une manière générale à toutes les entreprises industriel-
les et commerciales établies au Congo et dotées de la personna-
lité morale. Le taux de cet   impôt est actuellement de 49 %.

C - Les versements faits par Amoco Congo Exploration
Company à Cities Service Congo Petroleum Corporation et par
Amoco Congo Petroleum Company à Braspetro consistent en une dis-
tribution hors du Congo de bénéfices nets d'impôts congolais
réalisés dans le cadre des travaux pétroliers, ces sommes sont
exonérées de tout impôt par application de ladite Convention.

D - Je vous rappelle les dispositions suivantes de
la Convention :

    "8.01.1 - Le CONGO n'impose pas aux SOCIETES d'obli-
gation de rapatriement du produit de la vente à l'ex-
portation d'HYDROCARBURES.

    8.01.6 - Les SOCIETES pourront rapatrier du CONGO vers
les pays extérieurs à la zone franc les capitaux
provenant de ces pays investis au CONGO dans le
cadre des TRAVAUX PETROLIERS, et transférer dans les
mêmes conditions leurs produits éventuels. Le CONGO
garantit aux SOCIETES qu'elles obtiendront les moyens
de règlement sur les pays extérieurs à la zone franc
nécessaires à la réalisation des opérations visées à
la CONVENTION. "

                                    :.../...        GAR 00137

3. -

E - Veuillez vous référer à la réponse que j'ai apportée sous la lettre A ci-dessus.

F - Je vous rappelle les dispositions du sous paragraphe 6.03.4 de la Convention :

"6.03.4 - Afin de permettre le calcul de l'impôt sur les Sociétés (...) chaque SOCIETE devra (...) tenir une comptabilité conforme aux règles fixées par le Code Général des Impôts".

Veuillez agréer, Messieurs, l'expression de ma considération distinguée.

Pour le Ministre des Mines et de l'Energie,
le Ministre de l'Industrie et de la Pêche,

J.   I T A D I

cc : HYDRO-CONGO

GAR 00138



From  The Minister of Mines and Energy

29th June 1984

To    Amoco Congo Exploration Company
and   Amoco Congo Petroleum Company
      1 Stephen Street,
      Tottenham Court Road
      London W1 2AU
      UK

Dear Sirs,
     I have taken note of your letter of 29th June 1984 addressed to
the Societe Nationale de Recherches et d'Exploitation Petrolieres
"HYDRO-CONGO" in which you raise several questions which are the
province of Government departments and which the Chairman and
Managing Director of HYDRO-CONGO has submitted to me.

     It appears from this letter that your companies wish to assume as
assignees all or part of the percentage shares presently held by
Cities Service Congo Petroleum Corporation, Petrobras Internacional
S.A. — BRASPETRO, IEDC (Congo) Ltd. and Kuwait Foreign Petroleum
Exploration Company K.S.C.

     The purpose of the present letter is to give you, where possible,
the answers you requested.

     1. Question Number 2:   Arbitration

     Paragraph 1.04 of the Convention of 25th May 1979 concerning the
"Marine 1" Permit (The "Convention") expressly refers to the Permit
in question, which is also referred to in Appendix 1 to the said
Convention. However, this constitutes a unilateral administrative
act adopted prior to the Convention coming into force and the
validity of it cannot be affected by an arbitration decision.

     2. Question Number 3:   Mining Code

     It seems clear to me from the provisions of the Convention that
the rights and obligations of the parties to this Convention with
regard to mining questions remain governed by law No. 35-65 of 12th
August 1965.

     In so far as the second part of your question is concerned,
Article 19.03, in fine, of the Convention, clearly lays down that:

     "Notwithstanding Article 20 of law 29-62 of 16th June 1962, as
amended, the COMPANIES will not be required to incorporate a
subsidiary company under Congolese law".

GAR 00139

3. Question Number 4:  Tax

Your paragraph 4 contains several questions which I will deal with in turn:

A - Under the assignments envisaged, the assignee company enjoys the rights and obligations of the assigning company by virtue of the Convention.

B - The reference made by sub-paragraph 6.03.2 of the Convention to "the company tax" clearly refers to the tax of this name laid down by the General Code of Taxes of the Congo and applicable, in a general manner, to all industrial and commercial enterprises established in the Congo with a legal entity. The rate of this tax is at present 49%.

C - The payments made by Amoco Congo Exploration Company to Cities Service Congo Petroleum Corporation and by Amoco Congo Petroleum Company to Braspetro consisting of a distribution made outside the Congo of profits net of Congolese taxes realized within the framework of oil works are exempted from any tax by application of the said Convention.

D - I would draw your attention to the following provisions of the Convention:

"8.01.1 - The CONGO does not impose on the COMPANIES the obligation of repatriating the proceeds of the sale of HYDROCARBON exports.

"8.01.6 - The COMPANIES may repatriate from the CONGO to countries outside the Franc zone capital originating from these countries invested in the CONGO under the framework of OIL WORKS, and transfer under the same conditions their possible proceeds. The CONGO guarantees the COMPANIES that they will obtain the means of settlement in countries outside the Franc zone necessary for the realization of the transactions referred to in the CONVENTION."

E - Please refer to the answer I made to A above.

F - I would draw your attention to the provisions of sub-paragraph 6.03.4 of the Convention:

"6.03.4 - In order to permit the calculation of the company tax (...) each COMPANY will (...) keep accounts in accordance with the rules laid down by the General Code of Taxes."

Yours sincerely

For the Minister of Mines and Energy
The Minister of Industry and Fisheries

J. I T A D I

cc: HYDRO-CONGO

GAR 00140



- ████████████████ (hereinafter the "Congo") represented for the purposes hereof by Mr. Nguila MOUNGOUNGA NKOMBO its Minister of the Economy, Finances and Planning

on the one hand,

and

- ███████████████████████████████████████ Pétrolière "Hydro-Congo" (hereinafter "Hydro-Congo") a national company with registered offices at Brazzaville, Republic of the Congo, represented by Mr. BERNARD OKIORINA, its General Manager,

- ███████████████████. (hereinafter "NOMECO") a legally constituted company with registered offices at Pointe-Noire, Republic of the Congo, represented by Mr. K. Charsinsky, its General manager,



- Kuwait Foreign Petroleum Exploration Co. Inc., a legally constituted company under the laws of Kuwait with registered offices in Kuwait at P.O. Box 5291, Safat 13053, Kuwait, represented by Mr. MAHMOUD A. AL RAHMANI, its President and General Manager, on behalf of KUFPEC (Congo) Limited (hereinafter "KUFPEC"),

- The NUEVO ████████████████████ (hereinafter "NUEVO"), a legally constituted Company with registered offices at Houston, Texas, represented by Mr. Michael D. Watford, its President

████████████████████████████ the "COMPANIES" or individually as

on the other hand,

In this respect the Republic of the Congo on the one hand, Hydro-Congo, NOMECO, KUFPEC and NUEVO on the other hand, are jointly referred to hereinafter as the "Parties" or individually as the "Party".

PREAMBLE:

Whereas the Companies' predecessors in right entered into a Convention Marine I dated 25 May 1979, hereinafter referred to as the "Convention", which defines in its Article 7.01 the calculation basis of the proportional mining royalty.

GAR 00141



The Parties having noted their differing opinions in the interpretation of Article 7.01 of the Convention, have agreed to clarify and harmonize its wording.

IT HAS BEEN AGREED AS FOLLOWS:

## Article 1  Definitions

The definitions contained in the Convention will apply to this Amendment, except if the context of this Amendment indicates clearly the contrary.



The following are not deductible from the calculation basis of the proportional mining royalty: all costs other than those set forth in the above paragraph, notably the charges of depreciation and financial costs relative to the investments.

The proportional mining royalty will not be levied on quantities of hydrocarbons utilized in petroleum operations or lost."

## Article 3  Other Terms

Consequently, all other terms of the Convention and its amendments remain unchanged and fully applicable.

## Article 4  Effective Date

This Amendment shall be effective retroactive to January 1, 1994 and shall be approved by legislation in accordance with required form.

Executed in Paris, in five (5)
originals on January 25, 1997

GAR 00142



For the Republic of the
Congo, the Minister of the
Economy, Finances and
Planning

For the Société Nationale de
Recherches et d'Exploration
Pétrolières "Hydro-Congo",
the President and General Manager

_____
Nguila MOUNGOUNGA NKOMBO

_____
Bernard OKIORINA

For CMS NOMECO Congo,
the General Manager

For The NUEVO Congo Company,
the President

_____
K. Charsinsky

_____
Michael D. Watford

For Kuwait Foreign Petroleum
Exploration Co. k.s.c. on behalf
of KUFPEC (Congo) Limited,
the President and General Manager

_____
Mahmoud A. AL-RAHMANI

GAR 00143