# EXHIBIT 10

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 2/8

```
                                                    FILED
IN THE UNITED STATES DISTRICT COURT          2005 JUL 26  PM 1:42
    FOR THE WESTERN DISTRICT OF TEXAS
             AUSTIN DIVISION                 CLERK U.S. DISTRICT COURT
                                             WESTERN DISTRICT OF TEXAS
                                             BY_____
                                                      DEPUTY
```

AF-CAP, INC.

           Plaintiff,

-vs-                                            Case No. A-01-CA-321-SS

THE REPUBLIC OF CONGO,

           Defendant.

## ORDER

BE IT REMEMBERED on the 26th day of July 2005, the Court reviewed the file in the above-styled cause, and specifically, Plaintiff Af-Cap, Inc.'s ("Af-Cap") "Emergency Motion for Issuance of a Show Cause Order Against CMS Entities" [#162] filed on July 21, 2005. Having considered the motion, the relevant law, and the case file as a whole, the Court now enters the following opinion and order.

### Background

This judgment collection action was instituted by a predecessor-in-interest of Af-Cap as part of an ongoing effort to collect a judgment against Defendant Republic of Congo ("the Congo"). Although this case has a long history, the Court here focuses its attention on a handful of recent developments. On February 22, 2005, this Court entered an order pursuant to the Texas Turnover Statute, TEX. CIV. PRAC. & REM. CODE § 31.002, and Rule 69 of the Federal Rules of Civil Procedure,[1] ordering the Congo to turn over certain royalty payments owed to it under a Convention

---

[1] Rule 69 provides that "[t]he procedure on execution, in proceedings supplementary to and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . . ." FED. R. CIV. P. 69(a).

163

EXHIBIT 10

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 3/8

for the production of oil and gas in the Congo dated May 25, 1979 ("the Convention"). Order of Feb. 22, 2004 ¶ 3. To effectuate this order, the Court directed the Congo to execute certain letters of instruction to the parties that owe it the royalty payments under the Convention—namely, CMS Nomeco Congo, Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. (collectively, "the CMS Entities")—that would direct each to begin paying its respective royalty obligations in cash into the registry of the Court. *Id.* The order also stated, "Until such time as the executed letters of instruction are filed and served as directed above, the Congo and all persons acting in concert with it, together with all persons having actual knowledge of this Order, are restrained and enjoined from transferring, concealing, or otherwise disposing of the Congo's interest in the property." *Id.* ¶ 4.

To date, the Congo has not executed the letters of instruction. Accordingly, on April 6, 2005, the Court entered an order pursuant to Rule 70 of the Federal Rules of Civil Procedure appointing the Clerk of the Court to execute the letters. Order of Apr. 6, 2005 at 4; *see* FED. R. CIV. P. 70 ("If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party."). On July 1, 2005, the Court imposed a set of additional sanctions against the Congo including a $10,000 per day fine against the Congo for its continuing contempt.

Af-Cap has advised the Court that the CMS Entities, to whom the letters of instruction were directed, have not paid into the registry of the Court the first set of royalty payments to come due under the Convention since their receipt of the Clerk's instruction letters. Furthermore, the CMS Entities have given Af-Cap notice of their intention to sell their interests in the Convention to a

-2-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 4/8

company formed under the laws of the Congo. Af-Cap seeks the issuance of an order directing the CMS Entities to show cause why they should not be held in this Court's contempt as well as an order restraining them from making the proposed sale of their interests in the Convention. Af-Cap also asks the Court to order the CMS Entities to pay, as a sanction, all of the royalties they owe to the Congo, up to the amount of Af-Cap's unsatisfied judgment, directly to Af-Cap in cash. Finally, Af-Cap asks the Court to order the CMS Entities to post a bond in the entire amount of its unsatisfied judgment against the Congo to secure the CMS Entities' compliance with Af-Cap's other proposed directives.

## Analysis

It cannot be gainsaid that a party cannot be held in contempt of court unless they are in actual violation of a court order. *Doe, 1–13 ex rel. Doe Sr. 1–13 v. Bush*, 261 F.3d 1037, 1058 (11th Cir. 2001). Here, in deciding whether a show cause order should issue, the threshold question for the Court is whether Af-Cap's allegations are sufficient to support a finding the CMS Entities are in violation of any of the Court's orders. In support of their motion, Af-Cap advances two theories. First, Af-Cap contends the CMS Entities are in violation of their obligations under the letters of instruction, which were issued by the Clerk of the Court at the Court's direction. Second, Af-Cap contends that by attempting to sell their royalty interests, the CMS Entities are acting "in active concert" with the Congo in its efforts to violate the Court's turnover order. The Court considers each of these arguments in turn.

Af-Cap first alleges the CMS Entities have violated the terms of the instruction letters that were sent to them by the Clerk pursuant to Rule 70. On this basis, Af-Cap contends the CMS Entities should be held in contempt. The most basic problem with Af-Cap's theory is that the

-3-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 5/8

Clerk's instruction letters are not orders of this Court. Although they were executed and sent by the Clerk of the Court pursuant to a court order, the letters themselves do not independently have the force and effect of a court order. Rather, by the plain terms of the Court's April 6, 2005 Order, the letters are to have the same effect--no more, no less—as instruction letters executed and sent by the Congo itself. Order of Apr. 6, 2005 at 4.

The Court is also convinced it would be inappropriate to treat the Clerk's letters as having the force and effect of court orders. The Texas Turnover Statute, under which Af-Cap has sought relief from the Court in this case, only permits a turnover order to issue against the judgment debtor itself. *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 77 (5th Cir. 1995) ("Texas courts do not apply the turnover statute to non-judgment debtors."); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991) (same); *see also Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.–Austin 1997, no writ). Although the Court may order the judgment debtor—here, the Congo—to turn over any property subject to its control no matter who possesses the property, the Court may not issue a turnover order to a third party, even if that party is in actual possession of the judgment debtor's property. *Parks*, 957 S.W.2d at 668.

What Af-Cap seeks, in effect, is to do an end-run around this particular limitation of Texas turnover law. Af-Cap has already essentially acknowledged the limitations of the Texas Turnover Statute by initially constraining its request for turnover relief to an order against the Congo itself. However, by now seeking an order that would require the CMS Entities to pay the amount of the Congo's judgment directly to it, it seeks the exact same relief expressly prohibited to it by binding precedents interpreting the Texas Turnover Statute. The policy behind the prohibition on non-judgment debtor turnover orders is that the turnover statute is "purely procedural in nature . . .

-4-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 6/8

[and it] does not provide for the determination of the substantive rights of the parties." *Resolution Trust Corp.*, 53 F.3d at 77 (quoting *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 439 (Tex. App.–San Antonio 1994, no writ)). That policy is equally applicable here. The letters the Court ordered to be signed by the Clerk and sent to the CMS Entities presupposed the existence of a binding contractual obligation on the CMS Entities to pay the Congo. As already stated, the execution of the instruction letters by the Clerk was to have like effect *as if it were done by the Congo*. No determination of what that particular "effect" is can be made without reference to the Congo's and the CMS Entities' substantive rights and obligations under the Convention. The making of such a determination would fall outside the appropriate scope of the turnover proceedings under which Af-Cap has sought relief. Although the Texas Turnover Statute entitles Af-Cap to a turnover order against the Congo, as well as appropriate supplemental relief *as against the Congo*, the Court holds Af-Cap is not entitled to turnover relief against entities that are not themselves judgment debtors. Likewise, the Court declines to construe its prior orders or the letters of instruction issued by the Clerk as having the effect of an injunction against the CMS Entities.

Af-Cap also contends the CMS Entities should be held in this Court's contempt because they have "acted in concert with the Congo by agreeing to sell [the CMS Entities'] working interest in the Convention to a Congolese company to aid and abet the Congo's contempt of this Court's orders." Pl.'s Emergency Mot. for Issuance of a Show Cause Order at 4. Pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, injunctions are binding, not only with respect to the parties against whom they are issued, but also against "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." FED. R. CIV. P. 65(d). There is no question

-5-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 7/8

the CMS Entities have received notice of this Court's turnover order against the Congo. Accordingly, if the CMS Entities' proposed sale is an act "in active concert" with the Congo made for the purpose of defeating the effectiveness of this Court's orders, they may be held in contempt and enjoined from proceeding with the sale.

The problem here, however, is that there is no evidence the proposed sale is an act "in active concert" with the Congo, nor is there any reason to believe the CMS Entities' sale of their interests in the Convention would be an act in furtherance of the Congo's noncompliance with the turnover order in this case. After all, the turnover order is directed solely at the Congo. It requires *the Congo* to execute instruction letters to cause its royalty interests to be paid into the registry of the Court. It also prohibits *the Congo* from transferring its own interests in the Convention royalties until after the Court's other orders have been complied with. The turnover order does not, by its terms, prohibit the CMS Entities from transferring their interests under the Convention.

Nor is it clear that a transfer would do anything to facilitate the Congo's present refusal to execute and send the letters of instruction, which is open and ongoing. The letters of instruction appended to the turnover order clearly indicate they are intended to bind the "successors and assigns" of the CMS Entities. The Court has no trouble in holding that the Congo's obligation to execute and send the instruction letters will continue with equal force and effect no matter who holds the CMS Entities' interests under the Convention. Accordingly, there is no reason to believe a transfer would be an act in furtherance of the Congo's present refusal to sign and execute the letters.

The cases cited by Af-Cap in support of its motion are inapposite. *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75–77 (1st Cir. 2002); *Waffenschmidt v. MacKay*, 763 F.2d 711, 714–15 (5th Cir. 1985). In both *Goya Foods* and *Waffenschmidt*, the courts upheld contempt

-6-

Received 07/26/2005 05:02PM in 04:40 on line [12] for GL0607 * Pg 8/8

sanctions against parties that aided and abetted enjoined parties in disposing of the assets of the enjoined parties themselves. *Goya Food*, 290 F.3d at 75–77; *Waffenschmidt*, 763 F.2d at 714–15. Neither case supports the proposition that a third party may be held in contempt for disposing of its own assets when the only outstanding court order is directed to the assets of the actual party to the action.

A related problem with Af-Cap's motion is that, under the cases on which it relies, the Court must find the CMS Entities' actions were taken "for the benefit of, or to assist, a party subject to the decree." *Goya Foods*, 290 F.3d at 75. Af-Cap has not alleged the existence of any evidence the CMS Entities' proposed sale is being pursued to aid or benefit the Congo. In fact, every bit of the evidence produced by Af-Cap would suggest these entities are merely attempting to cut their own losses, which years of litigation surrounding their interests in the Convention have produced.

## Conclusion

Because the Court is not satisfied Af-Cap has alleged any conduct on the part of the CMS Entities that could be construed as a violation of any of its orders, the issuance of a "show cause" order against the CMS Entities would not be appropriate here.

Accordingly,

IT IS ORDERED that Af-Cap's "Emergency Motion for Issuance of a Show Cause Order Against CMS Entities" [#162] is DENIED.

SIGNED this the 26th day of July 2005.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE