# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2005 AUG 18 AM 9:06
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

AF-CAP, INC.,
                    Plaintiff,

-vs-                                            Case No. A-01-CA-321-SS

THE REPUBLIC OF CONGO,
                    Defendant.

## ORDER

BE IT REMEMBERED on the 17th day of August 2005, the Court reviewed the file in the above-styled cause, and specifically, Plaintiff Af-Cap, Inc.'s ("Af-Cap") Emergency Motion for Order Authorizing Issuance of Garnishment Writs [#168]. Having considered the motion, the response, the relevant law, and the case file as a whole, the Court now enters the following opinion and order.

### Background

This judgment collection action was originally filed in state court by a predecessor-in-interest of Af-Cap as part of an ongoing effort to collect a judgment against Defendant Republic of Congo ("the Congo"). Around the time the judgment action was filed, Af-Cap's predecessor-in-interest also filed a number of individual garnishment actions by which it sought to garnish the obligations of several companies that owed royalties to the Congo under a Convention for the production of oil and gas in the Congo dated May 25, 1979 ("the Convention").

Each of these actions were eventually removed to this Court. Based on its initial conclusions that the royalty obligations at issue were immune from attachment and execution under the Foreign

**EXHIBIT 11**

Sovereign Immunities Act ("FSIA"), the Court entered an order dissolving the writs of garnishment in the first of the garnishment actions ("the 100 case"). *Conn. Bank of Commerce v. Republic of Congo*, No. A-01-CV-100-SS, slip op. at 9 (W.D. Tex. Mar. 16, 2001).

The Fifth Circuit vacated the dismissal of the 100 case and remanded, holding this Court and the parties had not made the appropriate factual inquiry in applying the "commercial use" test under the FSIA. *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 260–61 (5th Cir. 2002). On remand, this Court reexamined the question of whether the royalty obligations at issue in this case met the "commercial use" test with the benefit of the Fifth Circuit's opinion and again concluded the obligations did not satisfy the test's requirements. Accordingly, this Court entered orders dismissing both this case—the judgment action—and all of the pending garnishment actions, including the 100 case. Af-Cap appealed the Court's judgments against it in the 100 case and in this case, but it did not appeal the Court's judgment in any of the other individual garnishment actions.

The Fifth Circuit again reversed, holding the royalty obligations met the requirements of the commercial use test under the FSIA, and hence were not entitled to immunity from execution. *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, 373 (5th Cir. 2004). On remand, Af-Cap moved the Court to reinstate the previously dissolved writs of garnishment. On November 5, 2004, this Court entered an order denying Af-Cap's request on the grounds the underlying debts had been paid. Order of Nov. 5, 2004 at 6–7. The Court did, however, authorize the issuance of new writs against the garnishees in the 100 case. *Id.* Af-Cap then filed a petition for writ of mandamus with the Fifth Circuit seeking to compel this Court to reinstate the previously dissolved writs of garnishment. The Fifth Circuit denied the petition. *In re Af-Cap, Inc.*, 04-51357, slip. op. at 2 (5th Cir. Dec. 20, 2004).

Then, on February 4, 2005, this Court entered a pair of identical orders in this case and the 100 case. The two significant aspects of those orders were that they: (1) dissolved the newly issued writs of garnishment on the grounds that the royalty obligations, though subject to execution and attachment under the FSIA, were not garnishable under Texas law; and (2) granted Af-Cap's motion for a turnover order against the Congo. *Af-Cap, Inc. v. Republic of Congo*, No. A-01-CV-321-SS, slip op. at 30–31 (W.D. Tex. Feb. 4, 2005). On the day that these orders were entered, the Court also entered a final judgment against Af-Cap in the 100 case. Af-Cap subsequently filed a notice of appeal of that judgment on March 7, 2005.

The Court has retained jurisdiction over this case, however, to enforce the turnover order against the Congo. On February 22, 2005, pursuant to the Texas Turnover Statute, TEX. CIV. PRAC. & REM. CODE § 31.002, and Rule 69 of the Federal Rules of Civil Procedure,[1] the Court entered an order against the Congo requiring it to turn over the royalty payments owed to it by the garnishees from the 100 case—namely, CMS Nomeco Congo, Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. (collectively, "the CMS Entities"). Order of Feb. 22, 2005 ¶ 3. To effectuate this order, the Court directed the Congo to execute certain letters of instruction to the CMS Entities that would direct each to begin paying its respective royalty obligations in cash into the registry of the Court. *Id.*

To date, the Congo has not executed the letters of instruction. Accordingly, on April 6, 2005, the Court entered an order pursuant to Rule 70 of the Federal Rules of Civil Procedure appointing the Clerk of the Court to execute the letters. Order of Apr. 6, 2005 at 4; *see* FED. R. CIV. P. 70 ("If

---

[1] Rule 69 provides that "[t]he procedure on execution, in proceedings supplementary to and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . . ." FED. R. CIV. P. 69(a).

-3-

a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party."). On July 1, 2005, the Court imposed a set of additional sanctions against the Congo including a $10,000 per day fine against the Congo for its continuing contempt.

On July 21, 2005, Af-Cap sought the issuance of a show cause order against the CMS Entities on the theory that by failing to make the payments contemplated by the Clerk's letters of instruction, they were in contempt of court. Noting that the letters of instruction were not themselves court orders (and that accordingly, the failure to comply with the demands in those letters was not the equivalent of the failure to comply with a court order), the Court denied Af-Cap's motion.

Now, Af-Cap has filed another motion in this judgment action, this time seeking the issuance of new garnishment writs in the 100 case against the CMS Entities.

### Analysis

Since the Court has already made the determination in the February 4, 2005 order (which was entered in this case and the 100 case) that the royalty obligations at issue in this suit are not garnishable under Texas law, Af-Cap faces a significant hurdle in urging the re-issuance of garnishment writs. In an effort to get around the law-of-the-case difficulties it faces, Af-Cap attempts to argue that the defects identified in the February 4, 2005 order have been cured.

In the February 4, 2005 order, the Court held that garnishment proceedings under Texas law may reach only two types of property—seizable effects and debts in money. *Af-Cap, Inc. v. Republic of Congo*, No. A-01-CV-321-SS, slip op. at 10 (W.D. Tex. Feb. 4, 2005). Since the Court concluded

-4-

that the in-kind royalty obligations owed by the CMS Entities to the Congo, which took the form of obligations to deliver oil to the Congo, did not fit into either category, the Court granted the CMS Entities' summary judgment motion and dissolved the writs of garnishment. *Id.* at 17–19. Af-Cap contends that the Clerk's instruction letters to the CMS Entities have the effect of converting the formerly in-kind royalty obligations into money debts owed by the CMS Entities to the Congo. Accordingly, they argue the garnishment writs should reissue in the 100 case.

The most glaring problem with the Af-Cap's position is that the Court no longer has any jurisdiction to do anything in the 100 case. A final judgment was entered months ago. Even if Af-Cap could point to a correctable error in the judgment, its notice of appeal divested this Court of jurisdiction. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal").

Moreover, it is clear that the procedurally correct way to begin new garnishment proceedings is the initiation of a new lawsuit naming the garnishees as party defendants. *See* TEX. R. CIV. P. 659 (directing the court or the clerk to separately "docket the case in the name of the plaintiff as plaintiff and of the garnishee as defendant"). Although the failure to require the filing of a separate action for new garnishment proceedings is not an error of jurisdictional significance, *see Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 658 (Tex. App.–San Antonio 1989, writ denied) (describing such a failure as an "irregularity in procedure" that would not affect the validity of a judgment), it

-5-

is error, and the Court sees no basis on which to permit Af-Cap to serve new garnishment writs in either this action or the 100 action.[2]

In addition to the procedural hurdles facing Af-Cap's motion, the Court also notes that there are real questions about the ultimate legal effect of the Clerk's instruction letters vis-a-vis the CMS Entities. Af-Cap simply takes the position, almost as a matter of conclusion, that the in-kind royalty obligations were converted into money debts by the letters. However, a deeper inspection of the terms of the Convention, the letters themselves (which actually direct the cash payments to be made into the registry of the Court), and the relevant law would likely be required before the Court could find affirmatively the CMS Entities owed monetary debts to the Congo.

---

[2] Af-Cap contends this Court should issue new garnishment writs in the 100 case on the same rationale that was employed when new writs were issued on November 5, 2004. As the reasoning set out in the February 4, 2005 order makes clear, however, the situation presently before the Court is distinguishable from the one with which the Court was faced when it previously issued new writs in the 100 case:

> Garnishees further argue that allowing the filing of multiple garnishment writs under a single cause number would encourage gamesmanship since would-be garnishors could always avoid the problem of losing jurisdiction by simply filing new garnishment writs in old lawsuits. Any such concern is not warranted in this case, however. Af-Cap does not seek to reopen a closed garnishment action. Rather, it seeks the issuance of writs in a case on remand from the Fifth Circuit where the original writs were erroneously dissolved. The earlier writs cannot now be reinstated because the debts they had sought to capture have been fully paid. However, to require a renewed showing of the existence of personal jurisdiction would unnecessarily frustrate the Court's power to grant appropriate relief on remand.

Order of Feb. 4, 2005 at 6–7.

Unlike the prior situation, the Court is not now facing a situation in which it must craft an appropriate remedy to cure an error following a remand. In fact, the Court lacks jurisdiction to do anything in the 100 case at this point. Thus, there is no reason whatsoever to depart from the traditional rule that a separate action is required. *See Betzen v. Exxon Corp.*, 699 S.W.2d 352, 355 (Tex. App.–El Paso 1984, no writ) (holding that Rule 659 of the Texas Rules of Civil Procedure "requires a garnishment proceeding to be docketed separate from the main action [because] it is, in fact, an ancillary proceeding which involves a third party as garnishee.").

Af-Cap's motion makes clear that its real motivation for seeking the re-issuance of garnishment writs in the 100 case is the fact that unless the Court were able to rely on the CMS Entities' appearances in that case, it would probably not have personal jurisdiction over them. The Court is unwilling to adopt a rule, however, whereby personal jurisdiction obtained over a party in one suit, based on the facts existing at the outset of that suit, would forever subject that party to appear in all new proceedings which are in some way related to the original suit.

-6-

The Court is well aware that Af-Cap and its predecessors' efforts to collect on the judgment in this case has been plagued by a seemingly never-ending stream of obstacles. Although it is not unsympathetic to the difficulties they have faced, especially in light of the continuing intransigence of the Congo, the Court cannot grant more relief than the law will allow any more than it can make gold out of straw.

### Conclusion

In accordance with the foregoing:

IT IS ORDERED that Af-Cap's Emergency Motion for Order Authorizing Issuance of Garnishment Writs [#168] is DENIED.

SIGNED this the 17th day of August 2005.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE