UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONNECTICUT BANK OF COMMERCE | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 05-762 (SLR) |
| THE REPUBLIC OF CONGO | ) ) ) | |
| Defendant. | ) ) | |

**AF-CAP, INC.'S ANSWERING BRIEF IN OPPOSITION GARNISHEE CMS NOMECO CONGO, INC.'s (now CMS NOMECO CONGO LLC) <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

| | |
|---|---|
| **GREENBERG TRAURIG LLP**<br>Sanford M. Saunders, Jr.<br>Kenneth P. Kaplan<br>800 Connecticut Avenue, N.W.<br>Suite 500<br>Washington, DC 20006<br>(202) 331-3100<br><br>*Attorneys for Af-Cap, Inc.*<br><br>Dated: December 29, 2005 | **GREENBERG TRAURIG LLP**<br>Paul D. Brown (No. 3903)<br>Joseph B. Cicero (No. 4388)<br>The Nemours Building<br>1007 North Orange Street<br>Suite 1200<br>Wilmington, DE 19801<br>(302) 661-7000<br><br>*Attorneys for Af-Cap, Inc.* |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii
NATURE AND STAGE OF PROCEEDINGS ......................................................................... 1
SUMMARY OF ARGUMENT .................................................................................................. 4
STATEMENT OF FACTS ......................................................................................................... 6
ARGUMENT ............................................................................................................................... 7

    I.    CMS Has Failed To Demonstrate That It Is Entitled To Judgment As A Matter Of Law ............................................................................................................. 7

    II.    The Royalty Obligation Is Subject To Attachment As A Matter Of Law ............... 9

    III.    The Texas Rulings Provide No Basis For Summary Judgment In Favor Of CMS ................................................................................................................... 10

    IV.    CMS's Analysis Of The Operation Of The Convention Is Incorrect And, At Best, Raises Fact Issues That Cannot Be Resolved On This Motion ............... 12

    V.    CMS's Defenses Provide No Basis For Summary Judgment In CMS's Favor ................................................................................................................... 12

    VI.    CMS Is Barred From Arguing That The Act Of State Doctrine Applies .............. 15

    VII.    Double Liability Provides No Defense To CMS .................................................... 16

CONCLUSION ........................................................................................................................ 16

# **TABLE OF AUTHORITIES**

Cases

*Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir. ), *modified in reh'g* 389 F.3d 503 (5th Cir. 2004), *cert. denied* S.Ct. 173(2005)...................................1, 9, 12, 15

*A.I. Credit Corp. v. Government of Jamaica*, 666 F. Supp. 629, 633 (S.D.N.Y. 1987)...14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).................................7

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S. Ct. 923 (1964).........15

*Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1112-24 (5th Cir. 1985))......................15

*Construction Drilling, Inc. v. Chusid*, 63 F. Supp. 2d 509 (D.N.J. 1999)..................7

*Cresent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741 (5th Cir. 1994)............7

*D'Angelo v. Petroleo Mexicanos*, 378 F. Supp. 1034 (D. Del. 1974).........................9

*Griffin v. Griffin*, 327 U.S. 220, 229, 66 S. Ct. 556 (1946)..................................13

*Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 838 (8th Cir. 2004)...............................8

*LNC Investments, Inc. v. Democratic Republic of Congo*, 69 F. Supp. 2d 607, 611 (D.Del.999)..............................................................................................9

*Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409 (1st Cir. 2000) .............................8

*Nat'l Union Fire Ins. Co. v. People's Republic of Congo*, 729 F. Supp. 936, 945 (S.D.N.Y. 1989)......................................................................................14

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435 (3d Cir. 1971).......13

*U.S. v. One 1988 Chevrolet Half-Ton Pick-Up Truck*, 357 F. Supp. 2d. 1321, 1329 (S.D.Ala..2005)........................................................................................8

*U.S. v. Squillacote*, 221 F.3d 542 (4th Cir. 2000)............................................7

Rules

Fed. R. Civ. P. 44(a)(2).................................................................................7

Fed. R. Civ. P. 56......................................................................................5,7

## NATURE AND STAGE OF PROCEEDINGS

The matter before the Court is a garnishment action in which Af-Cap Inc. ("Af-Cap") seeks to garnish property belonging to its judgment debtor, The Republic of Congo ("Congo"), held by CMS Nomeco Congo, Inc. (now CMS Nomeco Congo LLC) ("CMS"). Af-Cap, and its predecessor, the Connecticut Bank of Commerce, have been chasing CMS and Congo in the Texas state and federal courts since 2001 to satisfy a judgment that its predecessor obtained in 1996 in the amount of $13,628,340.11 plus interest and costs. At the outset of the litigation, CMS was a resident in Texas and was a party to an oil deal with the Congo under which CMS was obligated to pay Congo royalties based upon oil production. In 2004, the United States Court of Appeals for the Fifth Circuit, held that CMS's obligation to pay the oil royalty to Congo was subject to garnishment, and that the situs of the debt was wherever the garnishee was located and, therefore, subject to jurisdiction. *See Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371-72 (5th Cir.), *modified on reh'g.*, 389 F.3d 503 (5th Cir. 2004), *cert. denied* 125 S.Ct. 1735 (2005). The Court further found that the garnishee, CMS, is located in the United States, including but not limited to Texas (where CMS was headquartered before it absconded to avoid execution).

After the Fifth Circuit remanded the case to Western District of Texas, Af-Cap sought to have its writs reinstated. CMS lodged multiple objections, including a jurisdictional objection on the grounds that it was no longer present in Texas. The District Judge rejected CMS's arguments and reissued writs of garnishment, which he subsequently dissolved under a strained reading of Texas law. Af-Cap has appealed that decision to the Fifth Circuit. In CMS's recent brief to the Fifth Circuit, it again asserts that it is not present in Texas. On the other hand, there can be no dispute that CMS is a going concern, incorporated and registered to do business in Delaware.

On August 30, 2005, Af-Cap recorded its entry of judgment in the Delaware Superior Court and filed a Praecipie, Motion for Writ of Attachment *Fieri Facias*, and other ancillary papers. Af-Cap served Congo in compliance with the Foreign Sovereign Immunities Act ("FSIA") and also served CMS through its Registered Agent. (*See* Return of Service Cards and Affidavit of Personal Service attached as Exs. A and B, respectively, to Af-Cap's Opening Brief In Support Of Its Motion For Summary Judgment Against Garnishee CMS Nomeco Congo, Inc. (now CMS Nomeco Congo LLC) (D.I. 8) ("Af-Cap Opening Brief")). Further, on September 8, 2005, Af-Cap served Congo again, this time including French translations of those papers in compliance with the FSIA. (*See* Return of Service Cards attached as Ex. C to Af-Cap Opening Brief). On September 30, 2005, after a hearing the Superior Court issued an order directing the Prothonatary to issue a Writ of Garnishment against Congo's property held by CMS. (*See* Order of Hon. Judge Silverman attached as Ex. D to Af-Cap Opening Brief). Af-Cap served the Writ of Garnishment on CMS through its respective registered agent on October 12, 2005. (*See* Writ of Garnishment attached as Ex. E to Af-Cap Opening Brief).

On November 1, 2005, CMS filed a Notice of Removal, and on November 2, 2005, CMS filed an unverified Answer to the Writ of Garnishment one day out of time and without leave of Court. (D.I. 1 and 2 respectively). Af-Cap filed a Motion to Remand on November 9, 2005, and on November 17, 2005 filed its Exceptions to CMS' Answer. (D.I. 3 and 4 respectively). On November 22, 2005, CMS filed its opposition to Af-Cap's Motion to Remand and also a Motion to Amend its Answer. (D.I. 5 and 6 respectively).

On November 30, 2005, Af-Cap filed its Opening Brief. On December 2, 2005, CMS filed its Reply Brief in further support of its Motion to Remand (D.I. 9). Then, on December 8, 2005, Af-Cap filed its Answering Brief In Opposition Garnishee's Motion to Amend Answer To

2

Writ Of Garnishment. (D.I. 10). CMS filed its reply thereto on December 15, 2005. (D.I. 16). CMS filed its Answering Brief and Cross-Motion For Summary Judgment on December 14, 2005. (D.I. 15). On December 21, 2005, Af-Cap filed its Reply Brief In Further Support Of Motion For Summary Judgment ("Af-Cap Reply Brief"). (D.I. 18).

This is Af-Cap's Answering Brief In Opposition To Garnishee CMS Nomeco Congo, Inc.'s (now CMS Nomeco Congo LLC) Cross-Motion For Summary Judgment.

## SUMMARY OF ARGUMENT

Af-Cap submits this brief in opposition to the cross-motion of garnishee CMS for summary judgment.

CMS claims it is entitled to summary judgment on the theory that Delaware law cannot catch the multi-million dollar royalty obligation it has to the Congo, which obligation the Fifth Circuit has already ruled is subject to execution. CMS is wrong. Delaware courts, including this Court in *D'Angelo v. Petroleos Mexicanos*, 378 F.Supp. 1034 (D. Del. 1974), have squarely held that royalty obligations arising from oil production agreements are subject to attachment.

CMS further contends that the ruling of a Texas court, which dissolved writs under Texas law, means that it is entitled to summary judgment here. To reach this position, CMS must ignore the rulings of the Fifth Circuit, the Southern District of Texas and even the Western District of Texas which dissolved the writs, all of which have held that the royalty obligation is subject to attachment or execution. Indeed, as CMS acknowledged in a recent filing in Texas (although not mentioned to the Court here) "the district court [Western District of Texas] authorized issuance of new garnishment writs, and writs issued that day." (Motion of CMS Nomeco Congo Inc., The Nuevo Company, and Nuevo Congo Ltd. to Transfer to the Western District of Texas, Austin Division at 9) (Exhibit "A" to the Transmittal Affidavit of Joseph B. Cicero, referenced herein as "Cicero Aff.").

CMS nonetheless continues to argue that there is no debt owing to the Congo that could be captured by a writ. Stating the best case for CMS, however, this argument, which is belied by the terms of the Convention itself,[1] raises the quintessential fact issue precluding summary judgment. CMS bases its factual assertions on a hearsay affidavit and which attaches uncertified

---

[1] The Convention is attached as Exhibit 1 to Exhibit A to CMS Nomeco's Answering Brief In Opposition To Af-Cap's Motion For Summary Judgment And Opening Brief In Support Of CMS Nomeco's Cross-Motion For Summary Judgment, (D.I. 15), and is incorporated herein by reference.

4

foreign documents without certified translation. The affidavit fails to meet the standards of Federal Rule of Civil Procedure 56(e), and, on that basis alone, the Court should deny CMS's Motion.

Next, CMS makes the incredible argument that because a foreign government – which has been cited by the United States Department of State as a rogue state – has purported to issue court orders that are allegedly inconsistent with the writ and judgment that Af-Cap seeks here, CMS should be excused from its legal obligations as a United States citizen. Again, CMS raises, at best, questions of fact about the effect and validity of the judgments that CMS claims place it between a rock and a hard place; these questions have no bearing on this motion.

On closer inspection, however, the purported "double liability" CMS alleges is a charade. As explained in Af-Cap's papers in support of its motion for summary judgment, the situs of the obligation under the Convention – whether in oil or cash – is in the United States and, in particular, in Delaware where CMS is incorporated and, therefore, subject to attachment. The fact (which CMS has thus far failed to establish) that Congo is ordering CMS to deliver oil in Congo, does not mean that it may not also abide by this Court's order to freeze assets sufficient to pay the Congo's debt. Indeed, CMS concedes that its contract with Congo is an ongoing contract (CMS Br. at 9)[2] and CMS is, itself, part of a multi-billion dollar enterprise. There is no conflict; CMS is simply seeking to pick and choose which obligations it will honor.

Finally, for the reasons stated in Af-Cap's papers in support of its motion for summary judgment, the defenses of sovereign compulsion, act of state, and double liability provide no haven for CMS. Having chosen to incorporate in Delaware and obtain the benefits and protections of this jurisdiction, it must now respond to the obligations it has to pay the long

---

[2] Citations herein to CMS Nomeco's Answering Brief In Opposition To Af-Cap's Motion For Summary Judgment And Opening Brief In Support Of CMS Nomeco's Cross-Motion For Summary Judgment appear as "(CMS Br. at ___)".

outstanding Congolese debts with the Congolese assets it concededly holds. CMS's motion for summary judgment should be denied.

## STATEMENT OF FACTS

There are only a handful of facts necessary to resolve the parties' competing summary judgment motions. First, CMS admits in its Answer to that it holds an asset, the oil royalty obligation, belonging to Af-Cap's judgment debtor. (*See* CMS Answer to Writ of Garnishment ("CMS Answer") at 19, ¶¶ 1-3). (D.I. 2). Second, CMS admits that it is a Delaware limited liability company. *Id.* at 1. Third, CMS' Answer was filed late and was not verified.[3] (*See* D.I. 2 and 6). Fourth, despite admitting that it holds property subject to Af-Cap's garnishment writ, CMS has not delivered the property to Af-Cap and the property has not been seized. These undisputed facts, for the reasons set forth in Af-Cap's Opening Brief and Reply Brief, establish Af-Cap's entitlement to summary judgment.

CMS's cross motion for summary judgment, on the other hand, raises material issues of disputed fact that necessitate the denial of that motion. Those facts are discussed throughout this brief.

---

[3] Af-Cap notes that CMS has sought leave to file a corrected answer to include a verification. Af-Cap opposes that Motion and, to date, it has not been ruled upon. (*See* D.I. 6). Accordingly, CMS still has not filed a verified answer.

## ARGUMENT

I. **CMS Has Failed To Demonstrate That It Is Entitled To Judgment As A Matter Of Law**

In order to succeed on a motion for summary judgment, the movant must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "At the summary judgment stage the judge's function is not himself to weight the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment will not be granted "[i]f the evidence is merely colorable, ... or is not significantly probative." *Id.* at 249-50. CMS bases its motion in large part on a hearsay affidavit with purported Congolese orders attached to it. These orders are not certified copies; nor are the translations of those orders certified. These submissions are not competent proof under Rule 56, which requires that proof be such that it is "admissible in evidence."

Under Rule 44(a)(2), official records of a foreign country are only considered properly authenticated if the records are attested to by a person authorized to make this attestation, and accompanied by a final certification as to the genuineness of the signature and official position relating to the attestation. Fed. R. Civ. P. 44(a)(2). *See U.S. v. Squillacote*, 221 F.3d 542, 561 (4th Cir. 2000) (cross-referencing Rule 44 with Federal Rule of Evidence 902(3)); *Cresent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 746 (5th Cir. 1994). CMS has failed to submit the necessary proof for the authentication of the Congolese court orders, and this Court should therefore not consider the contents therein. *See, e.g., Construction Drilling, Inc. v. Chusid*, 63 F. Supp. 2d 509 (D.N.J. 1999) (rejecting foreign documents as inadmissible where defendants failed to produce extrinsic evidence to authenticate such documents).

Similarly, it is well-recognized by the Circuit Courts of Appeal that the failure of a party to submit certified English translations of foreign language documents on its motion for summary judgment is grounds for the court's disregarding of such foreign language documents. *See Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409 (1st Cir. 2000) (refusing to consider Spanish documents in its review of district court's grant of summary judgment where proponent failed to provide English translation as part of record on summary judgment); *Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 838 (8th Cir. 2004) (copy of passport was properly excluded from evidence where no English translation or certification was offered); *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985) (where defendant engages in "deliberate tactical decision" not to submit English translation of Spanish tape, he cannot complain on appeal that jury's function was usurped when he failed to present evidence that would have aided jury in fulfilling that function); *U.S. v. One 1988 Chevrolet Half-Ton Pick-Up Truck*, 357 F. Supp. 2d. 1321, 1329 (S.D.Ala. 2005) (rejecting exhibit where no certified English translation provided and holding that responsibility of claimant to provide certified English translation in order for court to accept and consider exhibit). Accordingly, CMS's motion for summary judgment must be denied on these grounds alone because the uncertified documents should not be considered by the Court.

In addition, as explained below, and in Af-Cap's own motion for summary judgment, the arguments CMS raises in support of its motion are barred as a matter of law. The asset Af-Cap seeks to attach—the Congo's rights under the Convention—is properly subject to attachment in Delaware, and CMS, by virtue of its incorporation in this State, is subject to attachment here. At the very least, CMS's motion is based on unresolved questions of fact, thus rendering the granting of summary judgment in CMS's favor improper.

## II.   The Royalty Obligation Is Subject To Attachment As A Matter Of Law

For the reasons stated by Af-Cap in its Reply Brief, CMS's argument that the royalty obligation to Congo is not subject to attachment is baseless. (*See* Reply Br. at 14-16).[4] Specifically, (1) CMS has admitted that it has a contractual obligation to pay the royalty to the Congo;[5] (2) CMS's royalty obligations are subject to attachment under Delaware law; and (3) the Fifth Circuit and lower Texas courts have already ruled that the royalty obligations of CMS are subject to execution and attachment.[6] *See LNC Investments, Inc. v. Democratic Republic of Congo*, 69 F. Supp. 2d 607, 611 (D. Del. 1999) (citing *McNeilly v. Furman*, 95 A.2d 267, 271 (Del. 1953)) (debts owed judgment debtors may be attached); *D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1038-39 (D. Del. 1977) (holding that plaintiff creditor was entitled to attach garnishee Mobil Oil's obligation to pay oil royalties to the Mexican government's agency since the debt which Mobil owed to the defendant Mexican government agency "gave rise to a transitory cause of action for which the defendant could have sued and served Mobil in Delaware...and was, therefore, subject to sequestration").

CMS seeks to distract the Court from the issue at hand by focusing on two irrelevant issues. First, CMS asserts that "practical reasons" involved with the physical transfer of oil establish that CMS's royalty obligation is not subject to garnishment. (CMS Br. at 22). As

---

[4]   Citations herein to Af-Cap's Reply Brief appear as "(Reply Br. at ___)".

[5]   CMS has admitted in its answer that that it is "the current owner[s] of working interests in a convention for the production of oil in the Republic of Congo...." (CMS Answer at 19, at ¶ 1). CMS also admits that under its deal with Congo that "the Congo is entitled to royalty." (*Id.*) Furthermore CMS admits that it paid Congo a royalty during the pendency of this action. In particular, it states that "[i]n September 2005, SNPC...took a lifting of oil for the Congo and SNPC." (*Id.* at ¶ 3).

[6]   *See Af-Cap*, 383 F.3d at 370 and 372 n.13 ("Here, Af-Cap is not seeking to attach any of the Congo's physical property...but instead seeks to attach *obligations* to pay royalties owed by the Garnishees [CMS]."). *See also FG Hemisphere v. Republique du Congo*, No. H-02-4261 (S.D.Tx. Sept. 14, 2005) (finding "[royalty] obligations constitute property of the Congo and SNPC located in the United States, which has [sic] been used for commercial activity in the United States" and granting application for writs of garnishment in favor of FG Hemisphere and against CMS as garnishee) (Cicero Aff. Ex. B); *Af-Cap, Inc. v. Republic of Congo*, No. A-01-CA-321-SS (Sparks, J.) (W.D.Tx. Feb. 4, 2005) (holding turnover order in Af-Cap's favor should issue and making royalty obligation subject to execution) (Cicero Aff. Ex. C).

previously held by the Fifth Circuit, and discussed in Af-Cap's Reply Brief, Af-Cap is entitled to attach the contractual right of the Congo to receive royalty payments, <u>not</u> the actual oil reserves physically located in the Congo. (Reply Br. at 16). *See also Af-Cap*, 383 F.3d at 372 n.13 (holding CMS's contention that property at issue is "actually the oil stored in a taker in Congolese waters" was flawed because obligation was previously used for commercial activity in form of cash payments and in no way involved physical drawing of oil).

Second, CMS claims it should be excused from a writ of garnishment because of the alleged court orders in Congo. However, the only issue presently before the Court on CMS's motion is Af-Cap's right as a judgment creditor of the Congo to garnish the contractual obligations of CMS to pay royalties to the Congo. Garnishment means only that Af-Cap has a lien on the contractual right to extract oil pursuant to the Convention. Af-Cap's efforts to collect against the royalty obligations, and the consequence to CMS resulting from those efforts, are issues that are not implicated by the act of garnishment.

### III. The Texas Rulings Provide No Basis For Summary Judgment In Favor Of CMS

In support of its motion, CMS argues that a District Court held under Texas law that "non-monetary obligations are not subject to garnishment" and, therefore, royalty obligations are not attachable under Delaware law. (CMS Br. at 21). As explained in Af-Cap's reply brief, this is a non-sequitor: Texas law is not Delaware law. (*See* Reply Br. at 12-14.) Moreover, the Texas district court ruling to which CMS refers does not say what CMS says it does. Far from holding that the royalty obligation was not subject to attachment, the court acknowledged that "the original writs were erroneously dissolved." (CMS Br. at 7.) The district court determined, however, that writs could not be obtained because Texas garnishment law did not reach the subject contract rights. Nonetheless, in the very same order, the Texas court held that a turnover order in Af-Cap's favor should issue, thereby making the royalty obligation directly subject to

10

execution under Texas law. *Af-Cap, Inc. v. Republic of Congo*, No. A-01-CA-100-SS (Sparks, J.) (W.D. Tx. Feb. 4, 2005) (Cicero Aff. Ex. C.). As held by the Texas District Court:

> Having concluded that Af-Cap has established the propriety of turnover relief in this case and in finding the Congo's objections to be unavailing, the Court holds that Af-Cap is entitled to a turnover order under § 31.002 of the Texas Civil Practice and Remedies Code....

*Id.* at 29-30.

CMS has also failed to point out to the Court—and acts as if the facts were otherwise—that the Texas court order, and upon Congo's default, instructed the Clerk of the Court, on Congo's behalf, to change the royalty election from in-kind to cash. As the district court held:

> Af-Cap shall prepare and file for the Court's approval letters of instruction to be signed by the Congo's authorized representative(s), whereby the Congo would (1) elect to take its royalty interest from [CMS]...in cash; and (2) direct [CMS] to direct all royalty payments into the registry of this Court from the time of the Congo's in-cash election becomes effective until the time Af-Cap's judgment is fully satisfied.

*Id.* The clerk signed the instruction letter and the same was served on CMS's counsel as directed by the court. *Af-Cap, Inc. v. Republic of Congo*, No. A-01-CA-321-SS (Sparks, J.) (W.D.Tx. April 8, 2005) (Cicero Aff. Ex. D). These undisputed facts eviscerate CMS's entire theory about the unenforceability of an order purportedly attaching oil in Congo. As a matter of law, the royalty payments are to be delivered in cash. And, in any event, the obligation to be attached is the obligation to pay—which CMS concedes it has—not the payment itself. Thus, the form of payment is irrelevant.

Even assuming the payment form were relevant, CMS has raised, at most, disputed issues of material fact concerning the impact of the Texas and (apparently) Congolese court rulings.

## IV. CMS's Analysis Of The Operation Of The Convention Is Incorrect And, At Best, Raises Fact Issues That Cannot Be Resolved On This Motion

CMS asserts that it is entitled to judgment based on its factual assertion that no debt is due to Congo until there is a lifting. This is an incorrect reading of the Convention. The debt accrues as oil is pumped from the ground. (Reply Br. at 13-16, n. 4.) As CMS admits in its brief, as the oil is pumped, CMS keeps track of the respective participation interests and the royalty amount through an over/under reconciliation. (CMS Br. at 10.) To be sure, payment is not due until the lifting occurs, but the timing of the obligation to pay is not the same as when the underlying debt accrues. Thus, the basis for CMS's motion, which is predicated on the timing of the payment obligation, is flawed.[7]

In any event, CMS has merely made factual assertions about when and how CMS is to pay the royalty obligation (many of which, as discussed above, are contradicted by the Texas court record), none of which can be resolved on this motion.

## V. CMS's Defenses Provide No Basis For Summary Judgment In CMS's Favor

For the reasons explained in Af-Cap's reply brief in support of its own motion for summary judgment, the defenses of act of state, sovereign compulsion and double liability fail as a matter of law. First, CMS asserts further that the "foreign state compulsion" doctrine bars the issuance of writs of garnishment (CMS Br. at 28), but the purported Congolese court order in no way requires CMS to violate U.S. law. According to CMS, the Congolese court order compels CMS to physically deliver oil to the Congo, but a writ will not prevent it from doing so. It can deliver the oil to Congo, but at the same time, comply with the writ by holding funds pursuant to attachment order sufficient to pay the royalty.

---

[7] CMS's argument shows precisely the type of behavior the Fifth Circuit found abhorrent when it cautioned against Congo manipulating the oil royalty obligation. *See Af-Cap*, 383 F.3d n.8. This Court should not sanction such conduct.

12

CMS's recourse is not to be permitted to escape U.S. Court orders, but to seek relief under the Convention. Under the Convention, CMS has the right to litigate any and every dispute in the International Commercial Court – not in the Congolese courts – as well as arbitrate any and all its disputes before the International Center for the Settlement of Investment Disputes (Convention, Art. 17) and the result in such court is binding under Congolese law. (Convention, Art. 18 ("The [Convention] shall be governed by Congolese law.")) Hence, any order of the Congolese court is neither relevant nor binding unless CMS chooses to go outside the Convention. Therefore there can be no compulsion.

Casting further doubt on the validity of the purported Congolese orders—and, thus, whether they should be given any credence by this Court—is the manner in which it was obtained. Not only has CMS not pursued its rights under the Convention, but CMS has acknowledged that the supposed orders were obtained without due process. In particular, according to CMS, its chief executive was summoned to court without prior notice, threatened with arrest and imprisonment, and the order issued an hour later. (CMS Br. at 11-12.) It is also well-settled that recognition of a foreign court order under the doctrine of comity should be withheld where the court's acceptance of such order would be contrary or prejudicial to the interests of the United States. *See Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971) (citing *Hilton v. Guyot*, 159 U.S. 113, 16 S. Ct. 139 (1895)). Indeed, "due process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process." *Griffin v. Griffin*, 327 U.S. 220, 229, 66 S. Ct. 556 (1946). Accordingly, even if the Court were to credit CMS's allegations, the Congolese court order should not be afforded comity as CMS requests since it has conceded that the same order was obtained without due process.

13

That CMS would choose to honor the Congolese court order as opposed to the orders of courts in its place of incorporation evinces CMS's desire to protect its own commercial interests, which are clearly aligned with those of the Congo. The courts of the United States have not tolerated this in the past, and this Court should not tolerate this behavior now.[8] *See, e.g., Red Mountain Finance, Inc. v. Democratic Republic of Congo*, No. CV 00-164-R, Tr. at 8 (W.D. Ca. May 29, 2001) (addressing Congo's counsel, "there's no place for your clients to hide, and they ought to come to the table") (Cicero Aff. Ex. E); *Nat'l Union Fire Ins. Co. v. People's Republic of Congo*, 729 F. Supp. 936, 945 (S.D.N.Y. 1989) (rejecting argument of Congo that court should not enforce default judgment and holding that "[t]his court is not the appropriate government institution to weigh the harm to the Congo of paying a valid judgment against the harm to an insurer that would flow from its being denied its legal right to enforcement of the judgment"); *A.I. Credit Corp. v. Government of Jamaica*, 666 F. Supp. 629, 633 (S.D.N.Y. 1987) (holding that mere recognition by lender that enforcement of contractual rights may have adverse effects upon borrower does not render enforcement of contractual rights illegitimate).

Moreover, that the Congolese court's ruling was handed down within days of Af-Cap's commencement of this action is, at best, suspect. The timing and content of the order clearly evinces that the ruling was only made in anticipation of and in direct defiance of the Texas District Court rulings ordering the turnover of the royalty obligation. While the foreign compulsion doctrine may serve to protect a party from a legitimate foreign ruling in the

---

[8] Indeed, the United States government has specifically addressed the Congo's behavior in this regard. *See* United States Dep't. of State, Republic of Congo, Country Reports on Human Rights Practices 2003, Released by the Bureau of Democracy, Human Rights and Labor, Feb. 25, 2004, http://www.state.gov/g/drl/rls/hrrpt/2003/27722.htm (available on October 11, 2005) (discussing state of the judicial system in Congo).

commercial arena, this is clearly not the type of ruling to which the U.S. courts intend to give deference.

Finally, even if the Court were to give credence to CMS's assertion that the Congolese court order places conflicting demands upon it, at best CMS has raised material issues of fact as to the interpretation of the Congolese court order. As explained above, CMS has failed to fulfill the requirements for the recognition of and interpretation of the Congolese court order where CMS has failed to submit the requisite proof entitling it to this Court's recognition of the Congolese court orders. *See* Section V, *supra*.

## VI. CMS Is Barred From Arguing That The Act Of State Doctrine Applies

CMS's assertion that the "act of state" doctrine prohibits the Court from issuing the requested writ of attachment is patently meritless. (CMS Br. at 30-32). As previously demonstrated in Af-Cap's Reply, the Fifth Circuit has conclusively ruled against CMS on this very issue, holding that the act of state doctrine is unavailable to CMS here:

> The Congo Defendants [defined to include CMS] also argue that the act of state doctrine would apply; this means that the situs of foreign debt obligations must be the foreign country because a contrary conclusion would improperly "antagonize the foreign government." However, the act of state doctrine is inapplicable in this context. As the Supreme Court, and this court, have made clear, the act of state doctrine applies only when the dispute implicated the legitimacy of a public act undertaken by a sovereign nation.... Because this case does not involve such a public act, but rather a mere dispute over the payment of a debt the Congo does not dispute that it owes, <u>the act of state doctrine does not apply</u>.

*Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, 372 n. 14 (emphasis added) (citing rulings against application of act of state doctrine defense in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S. Ct. 923 (1964) and *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1112-24 (5th Cir. 1985)).

### VII. Double Liability Provides No Defense To CMS

As previously set forth by Af-Cap in its Reply, CMS's assertion of the defense of double liability is also without merit. (Reply Br. at 7-12). The U.S. courts have routinely rejected the argument that a party is subjected to "double liability" where it may face the possibility of being held liable in both the U.S. courts and in the courts of a foreign jurisdiction – this is a risk inherent in any party's participation in an international financial transaction as the price of doing business abroad. *See* Reply Br. at 7-10.

## CONCLUSION

For the reasons set forth above, and those reasons previously set forth in Af-Cap's Reply in further support of its Motion for Summary Judgment, Af-Cap respectfully submits that the Court deny CMS's cross-motion for summary judgment in its entirety.

| | |
|---|---|
| **GREENBERG TRAURIG LLP**<br>Sanford M. Saunders, Jr.<br>Kenneth P. Kaplan<br>800 Connecticut Avenue, N.W.<br>Suite 500<br>Washington, DC 20006<br>(202) 331-3100 | **GREENBERG TRAURIG LLP**<br><br>_/s/_<br>Paul D. Brown (No. 3903)<br>Joseph B. Cicero (No. 4388)<br>The Nemours Building<br>1007 North Orange Street<br>Suite 1200<br>Wilmington, DE 19801<br>(302) 661-7000 |
| *Attorneys for Af-Cap, Inc.* | *Attorneys for Af-Cap, Inc.* |

Dated: December 29, 2005