**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CONNECTICUT BANK OF COMMERCE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-762 SLR |
| THE REPUBLIC OF CONGO, | ) ) | |
| Defendant; | ) ) | |
| CMS NOMECO CONGO INC., | ) ) | |
| Garnishee. | ) | |

**GARNISHEE CMS NOMECO'S REPLY BRIEF IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

OF COUNSEL:

Guy S. Lipe
Jason M. Powers
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002-6760
(713) 758-2222

Dated: January 6, 2006

M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for Garnishee CMS Nomeco Inc.

Garnishee CMS Nomeco Congo Inc. (now named CMS Nomeco Congo LLC) ("CMS Nomeco") files this Reply to the Opposition of Af-Cap, Inc. ("Af-Cap") to CMS Nomeco's Cross-Motion for Summary Judgment.

## INTRODUCTION AND SUMMARY OF REPLY

For five years, Af-Cap and its predecessor have attempted to garnish the Congo's in-kind royalty in federal court in Texas, without success. In February 2005, the Western District of Texas entered a final judgment dismissing Af-Cap's Texas garnishment action, and as recently as August 2005, that same court refused Af-Cap's request for issuance of new writs.

Having failed in Texas, Af-Cap moved to Delaware, seeking another bite at the apple. In its effort to avoid the same fate as its Texas garnishment action, Af-Cap has raised a flurry of procedural arguments and also has argued that collateral estoppel arising out of a Fifth Circuit decision in the Texas action bars CMS Nomeco from litigating its defenses, even though the Texas federal court rejected that same argument and dismissed Af-Cap's Texas garnishment action on one of those very defenses.

Af-Cap's effort to avoid another unfavorable decision on the merits in its ongoing attempt to garnish the Congo's royalty is unavailing, as the law is not on its side. Judge Farnan held in LNC Investments, Inc. v. The Republic of Nicaragua, No. 01-134-JJF (D. Del. 2002) (unpublished decision), appeal dism'd, 396 F.3d 342 (3d Cir. 2005), that under Delaware garnishment law, a garnishment writ must be quashed when the garnishment will not provide a defense to the garnishee's performance of obligations owed to a foreign government under the law of that foreign government. The reason for this rule is that a garnishee is an innocent bystander and cannot be exposed to double liability. Here, a Congolese court has already ruled as a matter of Congolese law (which governs CMS Nomeco's contractual relationship with the Congo) that the Congo is entitled to take its royalty oil in Congolese waters, notwithstanding any

orders or garnishment writs issued by U.S. courts.  The Congolese court has, on two occasions, ordered CMS Nomeco, as operator of the storage terminal where the oil is stored, to deliver the Congo's royalty oil to the Congo's state-owned oil company, holding that the U.S. orders and writs provide no defense to CMS Nomeco, and directing the use of public force in the event of non-compliance.  CMS Nomeco, which is producing oil in Congolese waters, has no choice but to comply with Congolese law and with the Congo court orders issued in the jurisdiction in which it operates.

To sustain Af-Cap's garnishment action in this case, the Court would be required, contrary to the decision in LNC Investments, to impose double liability on Garnishee CMS Nomeco, an innocent bystander with regard to the debt that Af-Cap is attempting to collect from the Congo.  Af-Cap concedes as much in its Opposition, stating at page 12 of its Answering Brief that CMS Nomeco "can deliver oil to the Congo, but at the same time, comply with the writ by holding funds pursuant to the attachment order sufficient to pay the royalty."  In short, Af-Cap claims that CMS Nomeco should deliver royalty oil to the Congo and then pay the royalty again by delivering funds in the amount of the royalty for Af-Cap's benefit.  Judge Farnan's decision in LNC Investments mandates that the writ of garnishment be quashed when the garnishee is exposed to double liability, as is the case here.  In its Opposition, for obvious reasons, Af-Cap does not even discuss Judge Farnan's decision in LNC Investments.

Nor does Af-Cap discuss in its Opposition the Delaware Supreme Court's holding in McNeilly v. Furman, 95 A.2d 267, 271 (Del. 1953), that the Delaware garnishment statute only permits garnishment of an obligation that is a "fixed monetary obligation."  The Congo's royalty that Af-Cap seeks to garnish is an in-kind oil royalty, not a "fixed monetary obligation," and is not subject to garnishment.  The Texas federal court dismissed Af-Cap's garnishment

action on this same ground, and McNeilly compels the same result under Delaware law.  Having

failed to address McNeilly in its Opposition, Af-Cap apparently has no answer to McNeilly.

Af-Cap's primary responses to CMS Nomeco's foreign state compulsion and act

of state defenses, which are based on the Congo court orders, are (1) a baseless challenge to the

sufficiency of CMS Nomeco's authentication evidence with regard to the Congo court orders,

despite certifications of the orders by the head registrar of the Congo court that issued them and

extrinsic evidence proving the orders as true and correct copies of the orders served on CMS

Nomeco, and (2) its baseless argument that the Fifth Circuit already rejected those defenses, even

though the Congo court orders that are the basis for the defenses had not even been issued at the

time the Fifth Circuit decision was rendered.  Af-Cap simply has failed to raise any issue

precluding summary judgment in CMS Nomeco's favor.

Af-Cap's Delaware garnishment action deserves the same fate as its Texas action.

The garnishment writ should be quashed, and this case should be dismissed.

## ARGUMENT

I.     Double Liability Principles Preclude Enforcement of the Garnishment Writ

A.     *Under the Decision of this Court in* LNC Investments v. Republic of Nicaragua*, the Writ of Garnishment is Unenforceable and Should be Quashed*

As shown in the Cross-Motion for Summary Judgment, it is a fundamental tenet

of garnishment law that the garnishee, as an innocent bystander to the dispute between the

judgment creditor and judgment debtor, must be protected from double liability.  As recognized

by Judge Farnan in LNC Investments, Inc. v. The Republic of Nicaragua, No. 01-134-JJF (D.

Del. 2002) (unpublished decision), appeal dism'd, 396 F.3d 342 (3d Cir. 2005), this principle

comes into play when a judgment creditor of a foreign government attempts to garnish an

obligation owed to a foreign government that is governed by the foreign government's law.  If

-3-

the foreign government's law will not recognize the garnishment as a defense to performance in favor of the foreign government, the garnishment cannot be allowed to proceed, because the garnishee cannot be protected from double liability. *Id.*

Af-Cap effectively concedes in its Opposition that it is attempting to impose double liability on CMS Nomeco in this garnishment action. It states that CMS Nomeco "can deliver oil to the Congo, but at the same time, comply with the writ by holding funds pursuant to the attachment order sufficient to pay the royalty." Af-Cap Ans. Br. at 12. Af-Cap is attempting to convince this Court to order CMS Nomeco to pay twice. Judge Farnan held in LNC Investments that Delaware garnishment law precludes such relief.

Af-Cap's Answering Brief fails to explain why this fundamental principle of garnishment law does not require dismissal of this action. The Answering Brief itself does not even discuss Judge Farnan's decision in LNC Investments. It simply incorporates by reference a section in its Reply Brief in Support of its own Motion for Summary Judgment, in which Af-Cap cites a number of non-garnishment cases for the proposition that a defendant cannot avoid liability by claiming that it will be subjected to conflicting liability in another jurisdiction. None of the cases relied on by Af-Cap are garnishment cases, and none involve the rule applied by Judge Farnan in LNC Investments requiring that a garnishee be protected from double liability.

The only argument made by Af-Cap with regard to the LNC Investments case is its incorporation by reference of a single paragraph in its Reply Brief. Specifically, Af-Cap argues that Judge Farnan's decision in LNC Investments is not dispositive because in that case, "Nicaragua had not waived its sovereign immunity for purposes of execution; nor had it agreed to enforcement of the judgment upon which LNC sought the writ," and Judge Farnan allegedly

"found the garnishee's statements that it held no goods or assets belonging to the Republic of Nicaragua to be persuasive." Af-Cap Rep. Br. at 12.

The attempted distinctions represent a clear misstatement of the decision in <u>LNC Investments</u>. Judge Farnan's decision makes no mention of waivers of sovereign immunity or the absence of an agreement to enforce the judgment and therefore gives those alleged facts no significance. It also makes no reference to any statement by the garnishee that it held no goods or services of Nicaragua. Instead, the decision addresses only the risk of double liability. Judge Farnan wrote that he had "chosen to credit and accept . . . the sworn declarations . . . concerning the risk of double liability faced by [garnishee]," and "I find that such a risk is present." <u>Id.</u> (Exhibit C to Cross-Motion for Summary Judgment) at 1. Judge Farnan found that the garnishee was "exposed to double liability similar to the garnishees in the cases cited by [the garnishee]. See <u>West v. Baker</u>, 510 P.2d 731, 733 (Ariz. 1973) and <u>Weitzel v. Weitzel</u>, 230 P. 1106 (Ariz. 1924)." <u>Id.</u> at 2. He held that "FOR THE REASONS DISCUSSED, IT IS HEREBY ORDERED THAT: . . . [Garnishee's] Motion to Quash the Writ of Attachment (D.I. 56) is **GRANTED**." <u>Id.</u> (emphasis in original). As the decision itself clearly demonstrates, it was solely on the basis of the garnishee's exposure to double liability that Judge Farnan quashed the writ of garnishment in <u>LNC Investments</u>, applying the decisions in the <u>West</u> and <u>Weitzel</u> cases as being consistent with Delaware garnishment law. Incredibly, notwithstanding Judge Farnan's citation of <u>West</u> and <u>Weitzel</u> for the double liability proposition as requiring dismissal of the Delaware garnishment action involved in <u>LNC Investments</u>, Af-Cap argues that those cases are inapposite because they did not involve application of Delaware law. Af-Cap Rep. Br. at 11 n. 2. Judge Farnan specifically applied those cases in interpreting Delaware garnishment law.

The fact of the matter is that <u>LNC Investments</u> is indistinguishable, and the survival of Af-Cap's garnishment action would require this Court to conclude that Judge Farnan was wrong in <u>LNC Investments</u>. He was not wrong, and as in <u>LNC Investments</u>, Af-Cap's garnishment writ should be quashed and this action dismissed.

B.      *The Alleged Existence of Arbitration as a "Recourse" Does Not Preclude Application of Double Liability Principles*

Af-Cap argues that double liability cannot provide a basis for quashing the writs because CMS Nomeco has "recourse" to arbitration against the Congo under the terms of the Convention. Apparently, Af-Cap argues that this Court should feel free to impose double liability on CMS Nomeco because CMS Nomeco purportedly can recoup its losses in an arbitration proceeding against the Congo.

The short answer to this contention is that <u>LNC Investments</u> precludes it. In that case, this Court quashed the writ of garnishment, even though there had been no legal proceedings in Nicaragua with regard to the question of interpretation of Nicaraguan law and the risk of double liability under Nicaraguan law. Judge Farnan did not hold that the garnishee would be required to respond to the garnishment writ unless and until it exhausted all possible legal avenues of relief against Nicaragua. Instead, the garnishee's mere exposure to the risk of double liability was sufficient to require the quashing of the writ.

In any event, Af-Cap fails to explain how an arbitration proceeding would provide any remedy to CMS Nomeco at all. The Congo court has held that enforcement of a writ of garnishment would be contrary to the Congo's public order. Exhibits 8 and 9 to Exhibit A to Cross-Motion for Summary Judgment. Any arbitration award would be subject to the same enforcement objection. Furthermore, Af-Cap has failed to explain how CMS Nomeco could collect a monetary arbitration award against the Congo. CMS Nomeco would become just

another unsecured creditor of the Congo. To suggest that the prospect of a future, unsecured
monetary arbitration award against the Congo justifies imposition of current, double liability on
CMS Nomeco, not only runs counter to the principles applied by this Court in <u>LNC Investments</u>,
it defies all reason and logic.

C.    *Af-Cap's Argument that the Congo Court Deprived CMS Nomeco of Due Process
      Provides No Basis for Disregarding Double Liability Principles Applicable in the
      Garnishment Context*

Af-Cap argues that CMS Nomeco should be precluded from making its double
liability argument because CMS Nomeco was deprived of due process with regard to the
December 2004 Congo court orders, receiving inadequate notice to enable it to respond. Af-Cap
Ans. Br. at 13. Under this astonishing argument, Af-Cap posits that CMS Nomeco should be
deprived of its double liability and other defenses that are based on the Congo court orders if
CMS Nomeco was deprived of due process. In short, Af-Cap contends that the alleged inability
of CMS Nomeco to obtain a fair trial in the Congo requires that this Court impose double
liability on CMS Nomeco. None of the cases that Af-Cap cites suggest that such a ridiculous
result is required, nor can that argument be reconciled with <u>LNC Investments</u>, which made no
inquiry into and attributed no relevance to the garnishee's ability, or inability, to obtain a fair
trial in Nicaragua.

D.    *Af-Cap's "Collusion" Argument is Legally Wrong and Factually Unsupported*

Af-Cap argues that double liability is not a basis for summary judgment in CMS
Nomeco's favor because CMS Nomeco purportedly "must show that its conduct was free of

-7-

collusion," citing <u>Parker, Peebles & Knox v. National Fire Ins. Co.</u>, 150 A. 313 (Conn. 1930). [1]
Again, a plain reading of the very case relied upon by Af-Cap, proves this argument is wrong.

Af-Cap cites <u>Parker</u> in its "collusion" argument, but the only reference to
"collusion" in the <u>Parker</u> case is the following sentence: "We cannot look with favor upon any
construction of the law which would impose a double liability upon a garnishee who, without
collusion, fraud, or negligence, has undertaken to fully discharge his duties under apparently
conflicting laws of different jurisdictions." <u>Id.</u> at 317. Af-Cap's suggestion that this sentence
places a burden of proof on a garnishee to prove the absence of collusion, negligence, or fraud in
order to prevail on a double liability defense is simply wrong and not supported by the cases
applying the double liability rule.

There is no mention in <u>Parker</u> of any evidence offered by the garnishee
concerning the absence of collusion, negligence, or fraud, yet the double liability defense was
sustained in that case. Likewise, in <u>LNC Investments</u>, Judge Farnan made no reference to, and
made no findings concerning, the absence of collusion, negligence, or fraud. It simply is not the
garnishee's burden to negate collusion, negligence, or fraud. This argument, like many asserted
by Af-Cap, is a red herring and a thinly veiled attempt to detract from the merits of the case like
the double liability defense.

Further, even if its argument had merit, Af-Cap has not even attempted to prove,
as a matter in avoidance of the double liability defense, that CMS Nomeco is guilty of collusion,
negligence, or fraud in connection with the Congo court orders, and there is no possible basis for
such a showing. As the evidence attached to the Cross-Motion shows, CMS Nomeco received

---

[1] See Af-Cap's Reply Brief in Support of Its Motion for Summary Judgment at 11-12, which is
incorporated by reference at page 15 of Af-Cap's Answering Brief in Opposition to CMS Nomeco's Cross-Motion
for Summary Judgment.

little notice of the hearing on the applications filed by the Congo and its state-owned oil company that led to the December 2004 notices. The absence of collusion is so obvious, Af-Cap even asserted in its Answering Brief that CMS Nomeco was deprived of due process in connection with those orders. Af-Cap Ans. Br. at 13.

The double liability to which CMS Nomeco is exposed is the sole product of Congolese law (which governs the Convention), and the Congo's decision to enforce its rights under Congolese law as interpreted and upheld by the Congo court—not any purported collusion, negligence, or fraud on CMS Nomeco's part.[2]

E.    *Af-Cap's Challenge to the Sufficiency of CMS Nomeco's Authenticity Evidence With Regard to the Congo Court Orders is Baseless*

Despite the fact that Af-Cap made no objection to the Congo court orders attached to CMS Nomeco's Opposition to Af-Cap's Motion for Summary Judgment, Af-Cap now attempts to object to those same Congo court orders in the context of CMS Nomeco's Cross-

---

[2] Af-Cap's suggestion that the federal court in the Southern District of Texas made findings of fraud that bear on the double liability defense (Af-Cap Reply at 11) is a complete falsehood. The Order referenced by Af-Cap is an order that the federal court entered to prevent CMS Nomeco from selling its *own* working interests in the oil concession to an affiliate. CMS Nomeco, in mid-July 2005, had given thirty days notice to the court in the Southern District of Texas and to the judgment creditors (including Af-Cap) of its intent to sell its *own* working interests to a Congolese affiliate. That proposed sale transaction was in response, in substantial part, to claims by the Congo that CMS Nomeco was in breach of requirements of the OHADA treaty (Organisation for the Harmonisation in Africa of Business Law (Organization pour l'Harmonisation en Afrique du Droit des Affaires)) and related uniform laws requiring the holding or transfer of CMS Nomeco's interests in the concession to a company incorporated under the laws of the Congo or another African country that is signatory to the OHADA treaty. Af-Cap sought to enjoin the noticed transaction, claiming that CMS Nomeco, by the proposed transaction, was attempting to aid and abet the Congo. The court rejected that argument, stating: "Af-Cap has not alleged the existence of any evidence the . . . proposed sale is being pursued to aid or benefit the Congo. In fact, every bit of the evidence produced by Af-Cap would suggest these entities are merely attempting to cut their own losses, which years of litigation surrounding their interests in the Convention have produced." Order of July 26, 2005, attached as Exhibit 10 to Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment. While the court in the Southern District of Texas enjoined the proposed sale transaction on application of a different judgment creditor, the court there made no findings that CMS Nomeco was colluding or conspiring with the Congo in connection with the proposed sale of its *own* working interests. The proposed sale that was the subject of the injunction order in the Southern District of Texas has nothing to do with any purported allegation of collusion or fraud in connection with the Congo court orders, which were issued in December 2004 and early July 2005, before CMS Nomeco gave notice of the proposed sale of its interests. Af-Cap raises the issue of the injunction relating to the proposed sale not because it has any legitimate relevance to the double liability defense, but in an effort to paint CMS Nomeco in a bad light. Such litigation tactics are improper and should be dismissed without consideration.

Motion for Summary Judgment, on the grounds that the Congo court orders allegedly have not been properly authenticated and proper English translations allegedly have not been provided to the Court. These contentions are baseless.

As shown on the face of the Congo court orders submitted to the Court, the orders were certified as true and correct copies by the Head Registrar of the Congo court. See Exhibits 3, 4, 8, and 9 to Exhibit A to CMS Nomeco's Answering Brief in Opposition to Af-Cap's Motion for Summary Judgment and Opening Brief in Support of CMS Nomeco's Cross-Motion for Summary Judgment.[3] The orders reflect on their face that they were issued as the execution copies of the orders.[4] This satisfies the provisions of Fed. R. Civ. P. 44(b) permitting admission of a foreign public record "evidenced by an official publication thereof." One of the cases cited by Af-Cap, Construction Drilling, Inc. v. Chusid, 63 F. Supp. 2d 509, 515 (D.N.J. 1999) held that an Order of the High Court of Justice of Antigua and Barbuda "appears to be an official publication sufficient to satisfy" Rule 44, relying on the statement in the advisory committee note that "a document that, on its face, appears to be an official publication, is admissible, unless a party opposing its admission shows that it lacks the character." Furthermore, Rule 44(c) provides that the rule "does not prevent the proof of official records . . . by any other method authorized by law." Fed. R. Civ. P. 44(c). This rule has been interpreted to permit admission of a public record upon testimony of a witness, even though the self-authentication provisions of Rule 44 are not satisfied. See Wright & Miller, FEDERAL PRACTICE & PROCEDURE CIVIL 2D §2437 and cases cited therein. The declaration of Maryse Bernard (Exhibit A to CMS Nomeco's

---

[3] The certifications of the Head Registrar appear on page 3 of the French orders and page 4 of the English translations with regard to Exhibits 3 and 4 and on page 5 of both the French orders and the English translations with regard to Exhibits 8 and 9.

[4] Id.

Answering Brief in Opposition to Af-Cap's Motion for Summary Judgment and Opening Brief in Support of CMS Nomeco's Cross-Motion for Summary Judgment, ¶¶6, 10) establishes that the Congo court orders attached to the declaration and submitted with CMS Nomeco's Answering Brief in Opposition to Af-Cap's Motion for Summary Judgment and Opening Brief in Support of CMS Nomeco's Cross-Motion for Summary Judgment, are true copies of the Congo court orders as served on CMS Nomeco. For all of these reasons, Af-Cap's authentication arguments with regard to the Congo court orders are meritless.

English translations were submitted to the Court for each of the Congo court orders. The English translations included in Exhibits 3 and 4 are certified, and the English translations included in Exhibits 8 and 9 are verified by the declaration of Ms. Bernard.[5] Af-Cap has made no suggestion that the English translations provided with regard to each of the orders are inaccurate in any way.

In short, CMS Nomeco has submitted Congo court orders that are certified by the Head Registrar of the Congo court that issued them, reflecting the issuance of those orders as the execution copies thereof, with evidence that the orders are true copies of the orders served on CMS Nomeco, and with proven English translations that Af-Cap does not substantively challenge. Af-Cap's belated evidentiary objection to the Congo court orders is the latest effort by Af-Cap to avoid a decision on the merits with regard to its improper and groundless garnishment action against CMS Nomeco.

---

[5] Exhibit A to Cross-Motion for Summary Judgment, ¶10.

II.    As Held by the Delaware Supreme Court in McNeilly v. Furman, the Only Obligations
       that are Subject to Garnishment in Delaware are "Fixed Monetary Obligation[s],"
       Precluding Garnishment of the Congo's In-Kind Oil Royalty

              The Texas federal court dismissed Af-Cap's Texas garnishment action on the

grounds that non-monetary obligations are not subject to garnishment.[6]  Incredibly, Af-Cap

contends that CMS Nomeco is now barred by collateral estoppel from raising in this case the

same defense on which it prevailed in the Texas litigation.  It is strange indeed that Af-Cap

contends that CMS Nomeco is precluded from raising in this Court a state law garnishment issue

decided in CMS Nomeco's favor in the Texas litigation, but that Af-Cap is not precluded from

litigating state law garnishment issues decided against it in the Texas litigation.  Af-Cap cannot

have it both ways.

              Accepting as true Af-Cap's contention in its Answering Brief that the non-

monetary obligation issue is an issue of Delaware law that was not decided in the Texas

litigation, it is clear that Delaware garnishment law precludes garnishment of non-monetary

obligations, just as Texas law does, as held by the Texas federal court.  As noted in CMS

Nomeco's Cross-Motion, the Delaware Supreme Court held in McNeilly v. Furman, 95 A.2d

267, 271 (Del. 1953), that the Delaware garnishment statute only permits garnishment of an

obligation that is a "fixed monetary obligation."  The royalty that Af-Cap seeks to garnish is an

in-kind oil royalty, not a "fixed monetary obligation," and is not subject to garnishment.  Af-Cap

does not even mention McNeilly in its Opposition to the Cross-Motion, apparently having no

answer to CMS Nomeco's argument based on that controlling precedent.

─────────────────────

      [6] See Exhibits 5 and 6 to Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment.

Instead of addressing <u>McNeilly</u>, Af-Cap misrepresents the holding of this Court in <u>D'Angelo v. Petroleos Mexicanos</u>, 378 F. Supp. 1034 (D. Del. 1977), as purportedly standing for the proposition that the judgment creditor in that case "was entitled to attach garnishee Mobil Oil's obligation to pay oil royalties to the Mexican government's agency." Af-Cap Ans. Br. at 9. This characterization of the holding in <u>D'Angelo</u> is blatantly wrong. Mobil, the garnishee, owed no royalty obligation to the judgment creditor; to the contrary, the plaintiff claimed a royalty interest in properties in Mexico operated by the defendant, Petroleos Mexicanos, and the plaintiff sought an order requiring Petroleos Mexicanos to account for the oil produced from wells in which the plaintiff claimed a royalty interest. 378 F. Supp. at 1035-1036.

The plaintiff sought a sequestration order against garnishee Mobil, with this Court stating that "[t]he property sequestered purports to be an indebtedness owed on open account by Mobil to the defendant based on sales of crude oil to Mobil by defendant." <u>Id.</u> at 1036. Accordingly, the "indebtedness" that was garnished in <u>D'Angelo</u> was a monetary debt owed by Mobil to Petroleos Mexicanos arising out of Mobil's "open account" purchases of oil from Petroleos Mexicanos.

Contrary to Af-Cap's representation, Mobil did not owe an obligation to pay oil royalties to the Mexican government; instead, it owed a monetary obligation to pay for oil purchased from Petroleos Mexicanos. In any event, nothing in <u>D'Angelo</u> suggests that there was any effort to garnish a non-monetary obligation, and nothing in that case undercuts the clear statement in <u>McNeilly</u> that garnishment of obligations in Delaware is limited to "fixed monetary obligation[s]." 95 A.2d at 271. The Texas federal court dismissed Af-Cap's garnishment action on this same ground, and <u>McNeilly</u> compels the same result here.

-13-

Af-Cap's reliance on the turnover order issued by the Texas federal court against the Congo, as allegedly converting the in-kind oil royalty to a cash royalty and purportedly avoiding the bar on garnishment of non-monetary obligations, does not compel a different result, for a variety of reasons. First, the Convention is governed by Congolese law,[7] and the Congo court has held as a matter of Congolese law that the turnover order issued by the Texas federal district court did not affect the Congo's right to take its royalty in kind.[8] Af-Cap has made no showing to the contrary. Second, the Congo has refused to comply with the turnover order directed against it,[9] and as the Texas federal court held in its Order dated July 26, 2005, the turnover order was issued in a case to which CMS Nomeco is not a party, was not directed to CMS Nomeco, and is not binding on CMS Nomeco.[10] Third, the instruction letter issued by the clerk of the federal district court was not sent to any representative of CMS Nomeco authorized to receive notices under the Convention and is not a valid cash election, even if assumed to be the act of the Congo.[11] Fourth, the Texas federal court specifically refused to issue new writs of garnishment based on the turnover orders, a decision which Af-Cap has appealed to the Fifth Circuit.[12] Fifth, and finally, Af-Cap's argument ignores the fact that a garnishment writ only gives it the same rights that the judgment debtor has to sue the garnishee for the alleged

---

[7] Exhibit 1 to Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment, Article 18.

[8] See Exhibit 8 to Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment.

[9] See Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment, ¶8, and Exhibit 7 to Exhibit A to Cross-Motion for Summary Judgment.

[10] See Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment, ¶12, and Exhibit 10 to Exhibit A to Cross-Motion for Summary Judgment.

[11] See Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment, ¶9.

[12] See Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment, ¶12, and Exhibit 11 to Exhibit A to CMS Nomeco's Cross-Motion for Summary Judgment.

indebtedness. Wilmington Trust Co. v. Barron, 470 A.2d 257, 263 (Del. 1983) ("[A] creditor's right to recover from the garnishee is derived from, and no greater than, the debtor's right to recover from the garnishee in an action at law"). If Af-Cap's arguments with regard to the turnover order were assumed for purposes of argument to be valid, the Congo would have no right to sue CMS Nomeco for any royalty, and under the rule stated in Barron, the garnishment writ would give Af-Cap no such right. If Af-Cap desires to pursue its turnover order arguments, those are presented in the litigation it has filed and that remains pending in the Delaware Chancery Court and in its Fifth Circuit appeal of the Western District's order refusing to enforce the turnover order against CMS Nomeco. In short, the issues relating to the turnover order are not germane to the issues presented in this garnishment litigation.

III.     The Fifth Circuit Did Not Address Any Defenses Based on the then Non-Existent Congo Court Orders

CMS Nomeco's Cross-Motion for Summary Judgment raises act of state and foreign state compulsion defenses that are based on the Congo court orders. Af-Cap's principal response to these defenses is that the Fifth Circuit rejected them. That contention is clearly wrong. The statement in a footnote in the Fifth Circuit's FSIA opinion that references the act of state doctrine only addressed issues relating to the *situs* of the Congo's royalty. It did not address any argument based on the Congo court orders, nor could it have addressed those issues: the Congo court orders were not issued until months after the Fifth Circuit rendered its decision.

The public acts of the Congo that form the basis of CMS Nomeco's act of state defense are the acts of the Congo in seeking judicial orders requiring delivery of royalty oil in its own territory and the acts of the Congo court in ordering that delivery. Because all of those acts occurred long *after* the Fifth Circuit's decision, the Fifth Circuit necessarily did not resolve any act of state issues arising out of the Congo court orders. This argument fails and Af-Cap makes

-15-

no other argument in opposition to CMS Nomeco's act of state defense. That defense requires that this garnishment action be dismissed.

IV.     The Doctrine of Foreign State Compulsion Precludes Garnishment

        Af-Cap argues that the doctrine of foreign state compulsion recognized in Section 441 of the Restatement (Third) of the Foreign Relations Law of the United States is inapplicable because "the Congo court order in no way requires CMS Nomeco to violate U.S. law." Af-Cap Ans. Br. at 12. This argument misapprehends CMS Nomeco's foreign state compulsion contentions and misapplies Section 441.

        As pointed out in the Cross-Motion, Section 441 addresses the situation in which an entity is faced with conflicting orders of two jurisdictions. If this Court holds that the garnishment writ requires the withholding of the Congo's royalty oil and delivery of the royalty for Af-Cap's benefit, such an order would be in direct contravention of the Congo court orders mandating that CMS Nomeco deliver the Congo's royalty oil to the Congo's state-owned oil company in Congolese waters.

        To suggest that there is no conflict is to ignore the reality that CMS Nomeco faces. Operating in the Congo and subject to Congolese laws and court orders, CMS Nomeco has no option but to comply with the Congo court orders regarding oil located in the Congo. Af-Cap has failed to provide any explanation of how CMS Nomeco can both comply with a garnishment order relating to the delivery or sale of Congo's royalty oil for Af-Cap's benefit and, at the same time, comply with the Congo court orders regarding delivery of that same royalty oil to the Congo's state-owned oil company. This is precisely the situation addressed in Section 441 of the Restatement, precluding a garnishment judgment in this case.

-16-

V.    The Garnishment Writ Captured No Royalty

As demonstrated in the Cross-Motion, during the entire time period between

service of the writ of garnishment and the filing of the answer to the writ of garnishment, the

Congo and its state-owned oil company were in a combined over-lifted position with regard to

royalty and working interest oil.  Under the terms of the agreements therefore, the Congo was not

entitled to take any royalty oil.  Af-Cap does not dispute these facts, which compel the

conclusion that the garnishment action fails as a matter of law.  As pointed out in the Cross-

Motion, under Delaware's garnishment law:

> [A] creditor's right to recover from the garnishee is derived from, and no
> greater than, the debtor's right to recover from the garnishee in an action at
> law. . . .  An attaching creditor stands in no better position than the
> defendant in the judgment, as to the collection of a debt due to the latter
> from the garnishee.  The right of such creditor to recover from the
> garnishee depends upon the subsisting rights between the garnishee and
> the debtor in the attachment; and the test of the garnishee's liability is that
> he has funds, property or credits in his hands belonging to the debtor, for
> which the latter would have a right to sue.  The garnishee stands in every
> respect in the same position as if the suit had been brought by his own
> creditor.

Wilmington Trust Co. v. Barron, 470 A.2d at 263.  Furthermore, under Delaware law, a

garnishment writ captures only an obligation owed as of the service date of the writ of

garnishment and the answer date.  Cooper's Home Furnishings, Inc. v. Lolly, 270 A.2d

676, 679 (Del. Super. 1970) ("Delaware law contemplates attaching property which

comes into the hands of the garnishee subsequent to the serving of the attachment upon

the garnishee until the garnishee makes his answer.").

The Congo had no right to take, or right to sue for, any royalty oil at the

date of service of the garnishment writ, at the date of answer, or at any time in between.

-17-

As a result, under Delaware law, the garnishment writ likewise would grant Af-Cap no

such right, mandating the conclusion that the writ of garnishment served on October 12,

2005 captured nothing.[13]

VI.    Af-Cap's Argument that CMS Nomeco is in Default is Meritless

Af-Cap continues to press its argument that CMS Nomeco failed to timely file its

answer by one day.  CMS Nomeco has repeatedly demonstrated that its answer was timely, by

virtue of its timely removal of this action on November 1, 2005, the filing of its answer the next

day, on November 2, 2005, and the operation of Fed. R. Civ. P. 81(c), which extends the answer

date in a removed case to a date no earlier than five days after removal.

Af-Cap previously failed to provide any response to the Rule 81(c) argument, but

it now has posited that the twenty day answer period for a writ of garnishment as provided by

Delaware procedural law is in reality a rule of substance that renders Rule 81(c) inapplicable in a

removed garnishment action.  Af-Cap's argument is baseless.

As a threshold matter, that argument conflicts with the rule applied in most

federal courts that the federal rules of civil procedure are incorporated by Rule 69 and apply in

judgment enforcement proceedings in federal court.  See Schnieder v. National Railroad

Passenger Corp., 72 F.3d 17, 19 (2d Cir. 1995) ("Rule 69(a) adopts state procedures for

execution only to the extent that they do not conflict with any applicable 'statute of the United

States.'  This term includes the Federal Rules of Civil Procedure, since they have the force and

---

[13] Af-Cap's argument concerning the question of whether royalty accrues on liftings of oil when sold or on production of oil at the time of production is irrelevant to the issue raised in the cross-motion. As Af-Cap must concede, the Congo is not entitled to take a lifting of royalty oil until the combined under-lifted position of SNPC and the Congo is greater than 275,000 barrels. It is undisputed that, during the entire period from service of the writ through answer, SNPC and the Congo were in a combined over-lifted position and were not entitled to take any oil. As the Congo had no rights to take royalty oil during the relevant time period, the writ can give Af-Cap no greater rights, even if all of the other obstacles to garnishment are ignored.

-18-

effect of federal statutes. 28 U.S.C.A. §2072."); Wright & Miller, FEDERAL PRACTICE & PROCEDURE 2D §3012, at 142-143 ("if there is an applicable federal statute, it is controlling, as is any relevant Civil Rule, since those rules have the force of a statute").

The Seventh Circuit case relied on by Af-Cap, <u>Resolution Trust Corp. v. Ruggiero,</u> 994 F.2d 1221 (7th Cir. 1993), did not hold, as alleged by Af-Cap, that federal procedural rules are inapplicable in Rule 69 proceedings. To the contrary, the court stated that "we do not think that the draftsmen of Rule 69 meant to put the judge into a procedural straightjacket, whether of state or federal origin." 994 F.2d at 1226. Furthermore, nothing in any of the cases cited by Af-Cap suggests that the time for answering a garnishment writ is a substantive rule that preempts and renders inapplicable the provision in Rule 81(c) providing that the date for answer in a removed action is no earlier than five days after the timely filing of a notice of removal. CMS Nomeco's answer was timely.

Finally, as demonstrated in prior filings, the sole remedy under Delaware garnishment statutes for a garnishee's failure to file an answer is an order compelling the filing of an answer. Nothing in Delaware garnishment law authorizes the entry of a default money judgment against a garnishee for the amount of the judgment creditor's judgment against the debtor. For all of these reasons, Af-Cap's attempt to convert its baseless garnishment action into a multi-million dollar default judgment against CMS Nomeco fails as a matter of law.

<u>CONCLUSION</u>

CMS Nomeco respectfully requests that the Court grant its Cross-Motion for

Summary Judgment, dissolve the writ of garnishment, and dismiss this action.


Respectfully submitted,


OF COUNSEL:                              /s/ M. Duncan Grant
                                         M. Duncan Grant (Del. Bar No. 2994)
Guy S. Lipe                              James C. Carignan (Del. Bar No. 4230)
Jason M. Powers                          PEPPER HAMILTON LLP
VINSON & ELKINS L.L.P.                   Hercules Plaza, Suite 5100
First City Tower                         1313 N. Market Street
1001 Fannin Street, Suite 2300           P.O. Box 1709
Houston, TX  77002-6760                  Wilmington, DE  19899-1709
(713) 758-2222                           (302) 777-6500

Dated:  January 6, 2006                  Attorneys for Garnishee CMS Nomeco Inc.

1842718