IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONNECTICUT BANK OF COMMERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-762-SLR |
| ) | |
| THE REPUBLIC OF CONGO, ) | |
| ) | |
| Defendant. ) | |

Paul D. Brown, Esquire and Joseph B. Cicero, Esquire of Greenberg Traurig, LLP, Wilmington, Delaware. Counsel for Plaintiff's Assignee, Af-Cap, Inc.

M. Duncan Grant, Esquire and James C. Carignan, Esquire of Hamilton Pepper, LLP, Wilmington, Delaware. Counsel for Garnishee, CMS Nomeco Congo LLC.

**MEMORANDUM OPINION**

Dated: July 20, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Connecticut Bank of Commerce ("CBC") obtained a money judgment in March 2000 against defendant, the Republic of Congo ("the ROC"), in the Supreme Court of the State of New York.[1] (D.I. 1 at ¶ 3) CBC's assignee, Af-Cap, Inc. ("Af-Cap"), filed a judgment action in the State of Delaware on August 30, 2005, and garnishee, CMS Nomeco Congo LLC ("CMS"), removed. (D.I. 1) Presently before the court is Af-Cap's motion to remand. (D.I. 3)

## II. BACKGROUND

As a result of a default by the ROC, a money judgment exceeding 13 million dollars was entered against the ROC in New York. (D.I. 5, Ex. A) Although CBC is still named as plaintiff, Af-Cap has acted as plaintiff since being assigned the interest in the New York judgment, and CBC no longer plays an active role in the litigation. (D.I. 1 at ¶ 4) Af-Cap buys, at substantial discounts, distressed debt of foreign nations and pursues the collection of those debts. (D.I. 1 at ¶ 5) In the present action, Af-Cap seeks to seize the ROC's in-kind royalty interests in oil located in Congolese waters. (Id.)

Af-Cap seeks to garnish CMS to satisfy the judgment against

---

[1] Connecticut Bank of Commerce v. The Republic of Congo in the New York Supreme Court of the State of New York, County of Kings, Index No. 26671/99.

the ROC.[2]  (D.I. 1 at ¶ 7)  The in-kind royalty oil is produced in Congolese territorial waters, transported through an underwater pipeline system, and stored in a storage terminal operated by CMS.  (D.I. 5 at 1)  The ROC's state-owned oil company then takes possession of such oil.  (Id.)

According to orders issued by the Congolese court in December 2004 and July 2005, the ROC is entitled to take its in-kind royalty, notwithstanding the efforts of judgment creditors to garnish the royalty through the United States Courts.  (Id.)  The Congolese court has further ordered CMS to deliver the oil to the ROC's state-owned oil company and has held that any order interfering with the ROC's receipt of its royalty oil is contrary to the ROC's public order.  (D.I. 5 at 2)  The Congolese court directs the use of public force to enforce these orders in the event of noncompliance.  (Id.)

Af-Cap served a Notice/Praecipe for Issuance of a Writ of Garnishment upon CMS on September 1, 2005.  (D.I. 3 at 4)  Af-Cap obtained a Writ of Garnishment from the Delaware Superior Court and served it upon CMS on October 12, 2005.[3]  (D.I. 5 at 2)  CMS then filed its Notice of Removal on November 1, 2005.  (D.I. 1)

---

[2] Walker International Holdings, Ltd. has also filed an action against CMS as garnishee in the Court of Chancery of the State of Delaware, No. 1488-N.  (D.I. 1 at ¶ 7)

[3] The order directing the Prothonotary to issue the writ of garnishment was issued in accordance with 28 U.S.C. § 1610(c). (D.I. 5 ex. A at 32)

2

Af-Cap filed its motion to remand pursuant to 28 U.S.C. § 1447 on November 10, 2005. (D.I. 3)

## III. STANDARD OF REVIEW

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441. The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. Shamrock Oil & Gaz Corp. v. Sheets, 313 U.S. 100, 104 (1941). A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (2004). The party seeking removal bears the burden to establish federal jurisdiction. Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc., 809 F.2d 1006 (3d Cir. 1987); Zoren v. Genesis Engery, L.P., 195 F. Supp. 2d 598, 602 (D. Del. 2002). In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and assume all factual allegations therein as true. Id.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction and Removal Under the FSIA

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, is a "comprehensive statute containing a 'set of legal standards governing claims of immunity in every civil action

3

against a foreign state or its political subdivisions, agencies, or instrumentalities.'" Republic of Austria v. Altmann, 541 U.S. 677, 691 (2004) (quoting Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488 (1983)). The FSIA "'codifies as a matter of federal law, the restrictive theory of sovereign immunity,' and transfers primary responsibility for immunity determinations from the Executive to the Judicial branch." Id. Relevant to the present case, the FSIA "governs the extent to which a [foreign] state's property may be subject to attachment or execution." Republic of Austria, 541 U.S. at 691. See 28 U.S.C. §§ 1609-1611.

Federal and state courts possess concurrent jurisdiction under the FSIA pursuant to 28 U.S.C. § 1602, which states, "Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter." See also Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610 (1992) (finding the FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state"); Testa v. Katt, 330 U.S. 386 (1947) (requiring state courts of general jurisdiction to entertain claims predicated on federal law where Congress has conferred concurrent jurisdiction).

The FSIA also includes specific provisions conferring

4

subject matter jurisdiction to the federal courts, 28 U.S.C. § 1330(a),[4] and includes a removal provision, 28 U.S.C. § 1441(d), which states, "Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title **may be removed by the foreign state . . ..**" 28 U.S.C. § 1441(d) (emphasis added). See Republic of Austria, 541 U.S. at 691.

Af-Cap argues that, according to the plain language of § 1441(d), only the foreign state can remove to the district court and, consequently, garnishee CMS improperly removed the action. The court declines to so limit removal in the context at bar, a garnishment action where the defendant foreign state was never active in the litigation. Consequently, the court will examine whether this garnishment action, according to the facts, is a separate and distinct civil action appropriately removed.

B.   Civil Action

Section 1441(d) allows removal of "**any civil action** brought in a State court against a foreign state. . .." 28 U.S.C. § 1441(d). "A suit which is merely ancillary or supplemental to another action cannot be removed from state to federal court." Richmond v. Allstate Ins. Co., 624 F. Supp. 235, 236 (E.D. Pa.

---

[4] 28 U.S.C. § 1330(a) confers original jurisdiction upon the district courts where the foreign state is not entitled to immunity under 28 U.S.C. §§ 1605-1607. Neither party disputes the issue of immunity.

5

1985). The courts are divided over whether a garnishment action is a separate and distinct action for purposes of removal.[5]

The Third Circuit has not addressed whether a garnishment action in state court is merely ancillary, or whether it is a distinct civil action. Scanlin v. Utica First Ins. Co., 426 F. Supp. 2d 243, 247 (M.D. Pa. 2006). District courts in the Third Circuit have approached the issue in various ways.[6] Some courts in the Third Circuit have embraced a "flexible analysis" approach to determine whether garnishment proceedings have been properly removed by the garnishee and to determine whether the garnishment action is a separate and distinct civil action. Id. In addition, several flexible "ancillariness" tests have been articulated. Id.

---

[5] The Eighth Circuit has held definitively that a garnishment action is a separate and distinct civil action for purposes of removal. Randolph v. Employers Mut. Liability Ins. Co., 260 F.2d 461 (8th Cir. 1958); Stoll v. Hawkeye Cas. Co. Of Des Moines, 185 F.2d 96 (8th Cir. 1950). The Fifth Circuit has held that garnishment actions are not civil actions. Murray v. Murray, 621 F.2d 103 (5th Cir. 1980).

[6] The court in Kordus v. Biomark Intern. LLC, 224 F.R.D. 590, 593 (D. Del. 2004), found that a "garnishment against the United States is a 'civil action' within the meaning of § 1442." This finding may be distinguished from the present garnishment action because Kordus specifically concerned the United States as garnishee.

In Clarise Sportswear Co. v. U&W Mfg. Co., 223 F. Supp. 961 (E.D. Pa. 1963), the court found garnishment proceedings were civil actions, relying on the Randolph and Hawkeye decisions from the Eighth Circuit.

In <u>Scanlin</u>, for example, the court posed three questions to determine whether a garnishment action is removable: (1) Was the garnishment proceeding substantially a continuation of the prior state court suit?; (2) Was the issue in the garnishment action completely separate from the central issue in the state court proceeding?; (3) Was the true defendant the same in the garnishment action? <u>Id.</u> at 249 (citing <u>Haines by Midatlantic Bank, N.A. v. Donn's, Inc.</u>, No. 95-1025, 1995 WL 262534, at *2 (E.D. Pa. 1995)). The court in <u>Scanlin</u> found that the issue to be resolved in the garnishment action, whether defendant's parents' insurance policy would provide coverage for their son's judgment, was distinct from the issues of defendants' liability in the initial personal injury action. <u>Id.</u> at 250. In addition, the court found that defendant Brown was no longer a party in the garnishment litigation; only the garnishee UTICA was a named party, and defendant Brown had assigned his rights against UTICA to plaintiff. <u>Id.</u> Therefore, the court concluded that the garnishment action was a civil action appropriately removed. <u>Id.</u>

In <u>Graef v. Graef</u>, 633 F. Supp. 450 (E.D. Pa. 1986), the court applied an "independent federal analysis" in determining whether that particular garnishment action was a distinct civil action. <u>Id.</u> at 452. The district court considered the Pennsylvania state court's prior characterizations of garnishment actions as ancillary or independent, focusing on (1) whether an

7

issue of fact might be joined, and (2) whether the proceeding is adversary, calling for a judgment independent of the underlying cause. Id. The district court concluded that Pennsylvania's garnishment statutes had been interpreted as involving separate and distinct civil actions. See Shearer v. Reed, 428 A.2d 635 (Pa. Super. 1981) (the garnishment action subsequent to a tort judgment permitted a new claim for bad faith against the defendant's insurer).

In Richmond v. Allstate Ins. Co., 624 F. Supp. 235, 236 (E.D. Pa. 1985), the court considered whether it would be called upon to re-examine, in the garnishment action, issues of fact contested in and "inseparably tied to" the initial state action. Id. at 238. In its discussion of policies favoring remand, the court denounced relitigating the same issues of fact in federal court, bifurcating the trial by allowing execution of the judgment to take place in a different court, wasting federal resources in executing the judgment of a state court's action, and burdening the federal court with "minor" matters. Id. at 237. It concluded that plaintiff's garnishment action against defendant's insurer was supplemental to the original personal injury action because the insurer had raised the issue of payment in the state action, and it would be a "duplication of the function performed by the state court" to further determine whether defendant's insurer had previously paid the full proceeds

8

permitted by defendant's policy. Id. at 237-38. In addition, the Richmond court foresaw that it would be called upon to determine the facts giving rise to the defendant's liability in order to ascertain the extent of coverage. Id. Therefore, the court determined that the garnishment action was not a distinct civil action. Id.

Analyzing the facts at bar using factors identified in such cases as Scanlin, Graef, and Richmond, the court concludes that the instant garnishment action is a separate and independent civil action. First, although Delaware state courts have characterized garnishment proceedings as "ancillary" in nature, see J.G. Wentworth SSC Ltd. Partnership v. Crawford, No. 99J-07-010, 2002 WL 449701, at *1 (Del. Super. Mar. 21, 2002), the court in Schwander v. Feeney's, 29 A.2d 369 (Del. Super. 1942), explained that such a proceeding is a separate process to which the original debtor is not a party and the purpose of which is to determine the legality of the attachment: "When a garnishee appears according to his notice and answers or pleads, there comes into existence a new proceeding looking toward a new judgment." Id. at 373.

Second, the facts at bar presents several issues for resolution that are distinct from the original state action. The adjudication of the garnishment action will require the court to determine whether garnishment is available to Af-Cap, given

9

that enforcement of the garnishment writ could subject CMS to double liability.[7] The court must also determine whether the property of the ROC alleged to be held by CMS is an asset that may be garnished, since the ROC is entitled to take royalty oil produced and stored in Congolese waters. In addition, the court must determine whether CMS' incorporation in Delaware permits the court to garnish the ROC's in-kind royalty as property "in the United States" as required for garnishment of a foreign state's property under the FSIA. See 28 U.S.C. § 1609. Furthermore, the "true" defendant in the garnishment action is the garnishee, CMS; defendant the ROC defaulted and has not shown any interest in the outcome of the present action. Finally, the court will not engage in any "duplicate" function of the State courts in adjudicating this garnishment action because no issues of fact were litigated in the New York action, which resulted in a default judgment for the ROC.[8]

C.  **Timeliness**

Under 28 U.S.C. § 1446(b), removal of a civil action must

---

[7] In LNC Invs. LLC v. Republic of Nicaragua, No. 01-134-JJF, 2002 WL 32818644, at *1 (D. Del. Dec. 18, 2002), appeal dismissed, 396 F.3d 342 (3d Cir. 2005), the court quashed a Writ of Garnishment because of the risk of double liability.

[8] The court concludes that because the present garnishment action is a separate and distinct civil action, the unanimity requirement was fulfilled when garnishee, CMS, removed without the ROC.

occur "within thirty days after receipt by the defendant, through service or otherwise, of a copy of the **initial pleading** setting forth the claim for relief upon which such action or proceeding is based. . .." Af-Cap served a Notice/Praecipe for Issuance of a Writ of Garnishment upon CMS on September 1, 2005. Af-Cap obtained a Writ of Garnishment from the Delaware Superior Court and served CMS on October 12, 2005. CMS then filed its Notice of Removal on November 1, 2005. Af-Cap filed its motion to remand pursuant to 28 U.S.C. § 1447 on November 10, 2005.

The court concludes that CMS' removal was timely. The Supreme Court has stated, "[O]ne becomes a party officially, and is required to take action in that capacity only upon service of summons or other authority-asserting measure stating the time within which the party served must appear and defend according to Rule 4(a)." Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). The Court further indicated Congress' intent to eliminate the situation where a defendant, or in this case a garnishee, must decide whether to remove "before [it] knows what the suit is about." Id. at 352.

In Graphic Scanning Corp. v. Yampol, 677 F. Supp. 256 (D. Del. 1988), the court found that the thirty day removal period did not begin to run until the grounds for removal were clearly established. Id. at 258. The court concluded that filing a motion for realignment would not clearly identify the basis for

11

removal pursuant to 28 U.S.C. § 1441(a) until the court ruled on such a motion. Therefore, the thirty day removal period would not begin until such a decision was made. Id.

Likewise, the Motion/Praecipe for the Issuance of a Writ of Garnishment would not clearly establish the grounds for removal until the Writ was issued. Under Delaware State garnishment procedure, the Writ of Garnishment must "'bear the date of its issuance, be signed by the Prothonotary..., be under seal of the court, contain the name of the court and parties,...and the time within which these [Delaware Superior Court Civil] Rules require the defendant to appear and defend.'" LNC Invs., Inc. v. Democratic Republic of Congo, 69 F. Supp. 2d 607, 612 (D. Del. 1999) (quoting Del. Super. Ct. Civ. R. 4(c)). In addition, the Writ of Garnishment will "summon defendant's garnishees to appear within 20 days after service of the writ to answer or plead and shall notify them that, on failure to do so, they may be compelled by attachment." Id. After the garnishee receives the writ, it must also "'serve upon plaintiff a verified answer within 20 days after service of process, which shall specify what goods, chattels, rights, credits, money or effects of a defendant, if any, the garnishee has in its possession or custody. . ..'" Id. (quoting Del. Super. Ct. Civ. R. 5(aa)(2)). Thus, until the Writ of Garnishment was issued, CMS was not required to appear and answer. CMS' Notice of Removal, filed

within thirty days of the issuance of the Writ of Garnishment, was timely.

### D. Contractual Bar to Removal

Af-Cap asserts that garnishee CMS improperly removed the action because it was contractually barred from doing so according to a Loan Agreement between the ROC and Af-Cap's predecessor, The Equator Bank Limited. The contractual provision states that "nothing shall preclude [plaintiff] from bringing any proceeding arising out or in connection with this agreement in the courts of any . . . competent jurisdiction." (D.I. 3 at 5) Af-Cap proposes both that the language of the provision prevents removal and that garnishee's rights are limited such that it is bound by the ROC's contract with the Equator Bank Limited.[9] The court will consider each in turn.

#### 1. Language of the contractual provision

The Third Circuit has held that language similar to the contractual provision in the present case precludes removal. See Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1216-17 (3d Cir. 1991). In Foster, the court found that a contractual provision requiring a party to "submit to the jurisdiction of any court of competent jurisdiction within the United States" waived

---

[9] Neither party produced, nor has the court found, any authority establishing or refuting that, under garnishment law, the garnishee's rights are limited only to those available to the judgment debtor.

13

that party's right to remove. Id. at 1216-17. Therefore, the forum selection clause in the present case waived the ROC's right to remove.

### 2. Garnishee's right to remove

The court is not convinced that garnishee CMS has also waived its right to remove the garnishment action. Under well established principles of Delaware law,

> a creditor's right to recover from the garnishee is derived from, and no greater than, the debtor's right to recover from the garnishee in an action at law. As Judge Woolley stated: "An attaching creditor stands in no better position than the defendant in the judgment, as to the collection of a debt due to the latter from the garnishee. The right of such creditor to recover from the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment; and the test of the garnishee's liability is that he has funds, property or credits in his hands belonging to the debtor, for which the latter would have a right to sue. The garnishee stands in every respect in the same position as if the suit had been brought by his own creditor. When a debt is due from a garnishee to a judgment debtor by virtue of an agreement existing between them, the garnishee is entitled to avail himself of all the defenses that could be made against the party to whom the debt is owing and with whom the contract is was made. . . ."
>
> If a debtor cannot compel a third party to pay money or deliver certain property to him in an action at law, his creditor has no greater claim by way of garnishment against that third party. This, then, is the measure by which a garnishee's liability to the creditor is determined.

Wilmington Trust Co. v. Barron, 470 A.2d 257, 263 (Del. 1983). Therefore, consistent with the court's conclusion that garnishment proceedings are separate and distinct civil actions,

14

under Delaware law the garnishee's rights are determined by its relationship to the judgment debtor and not by the relationship between the judgment creditor and the judgment debtor. The contract containing the forum selection clause, executed by the Equator Bank Limited and the ROC, is not binding on garnishee CMS.

## V.  CONCLUSION

For the reasons stated above, Af-Cap's motion to remand is denied. An order shall issue.