OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT
DISTRICT OF Connecticut

CONNECTICUT BANK OF COMMERCE,

Plaintiff

V.

REPUBLIC OF CONGO,

Defendant

CMS NOMECO CONGO INC.,

Garnishee

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-762 (SLR)

TO: Trafigura AG
One Stamford Plaza
262 Tressler Blvd.
16th Floor
Stamford, CT 06901

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents listed on Exhibit "A"

| PLACE<br>Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attn: James Perkins, Esquire | DATE AND TIME<br>Friday, September 29, 2006 at 10:00 a.m. |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | September 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Dennis A. Meloro, Esquire
Greenberg Traurig, LLP
1007 N. Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE 9-22-06 | PLACE 263 TRESSER BLVD, STAMFORD, CT |
|---|---|

SERVED:

| SERVED ON (PRINT NAME) RICHARD FROMME, PRESIDENT | MANNER OF SERVICE IN-HAND |
|---|---|
| SERVED BY (PRINT NAME) ANTHONY D. VERRICO | TITLE CT STATE MARSHAL |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 9-22-06

*[signature]*
SIGNATURE OF SERVER
ANTHONY D. VERRICO
P.O. BOX 3011
ADDRESS OF SERVER STAMFORD, CT 06905

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONNECTICUT BANK OF COMMERCE<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF CONGO,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-762-SLR<br>)<br>)<br>)<br>)<br>) |

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1. "You" or "your" means the party to whom the attached subpoena is addressed and its directors, officers, employees, agents, representatives, attorneys, advisors and any other person who is acting or has acted on its behalf.

2. The term "Congo" refers to the Republique du Congo (a/k/a Republic of Congo, f/k/a People's Republic of Congo), its agencies, instrumentalities, ministries and political subdivisions, and any officials, employees, servants or agents thereof, and any governmental agency, including, but not limited to, Societé Nationale des Pétroles du Congo, and affiliates, parent companies, subsidiaries, predecessors, successors, employees, agents, officers, directors, representatives, and/or any other person acting on behalf of any of the foregoing entities or individuals, either directly or indirectly.

3. The term "Garnishees" refers to CMS Nomeco Congo Inc. (now known as CMS Nomeco Congo LLC), The Nuevo Congo Company (now known as The Nuevo Congo LLC), and Nuevo Congo Ltd., including but not limited to any of their affiliates, parent companies, subsidiaries, predecessors, successors, employees, agents, officers, directors, representatives, and/or any other person acting on behalf of any of the foregoing entities or individuals, either directly or indirectly.

4. "Perenco Group of Companies" has the meaning set forth in the Declaration of Roland Fox, dated October 25, 2004, which is attached hereto as Exhibit 1.

5. "Marine I Permit" refers to those certain oil fields, including the Yombo Field, the Masseko Field and the Youbi Field, located in the territorial waters of the Congo that are within the boundaries of the lands covered by Marine I Permit from the Congo, together with the production facilities and related equipment, including the Yombo terminal.

6. "Convention" means that certain agreement relating to the Marine I Permit dated on or about May 25, 1979, among the Congo, the Congolese Superior Oil Company, Cities Service Congo Petroleum Corporation, Canadian Superior Oil Ltd. and Societe Nationale de Recherches et d'Exploration Petrolieres, as amended.

7. The term "communication" means any meeting, conversation, discussion, conference, correspondence, message, or other written, oral or electronic transmission of information whether an original, a draft, or a copy, whether stored in hard copy, electronically, or digitally, either orally or in writing, including correspondence, electronic mail, telexes, facsimile transmissions, telecopies, recordings in any medium of oral communication, telephone and message logs, notes or memoranda relating to written or oral communications.

8. The term "document" has the widest meaning accorded to it under the Civil Practice Law and Rules, and includes, but is not limited to, paper, film, tape, slides, transparencies, diskettes, computer memory, or other material upon which verbal, graphic or pictorial information is written, printed, typed, drawn or reproduced in any fashion, including correspondence, electronic mail/messages and/or e-mail, electronically stored telephone messages and/or voice-mail, memoranda, notes, agreements, contracts, charts, and presentations (including presentations to the board of directors).

9. The term "concerning" means relating to, referring to, reflecting, constituting, containing, or describing the matter discussed. The term includes, but is not limited to, documents underlying, supporting, necessary for the understanding of, now or previously attached or appended to, or used in the preparation of any document called for by each request.

10. The terms "all," "each," and "any" shall be construed as all and any.

11. The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

12. The singular form of a word shall be interpreted as a plural and the plural form of a word shall be interpreted as a singular whenever appropriate in order to bring within the scope of these Requests any information that might otherwise be considered beyond its scope.

13. **Lost or Destroyed Documents.** If any requested document was at one time in existence, but was subsequently lost, discarded, or destroyed, identify such document as completely as possible, including the following information: (a) type of document and subject matter, (b) date and author of the document, (c) date when the document was lost, discarded or destroyed, (d) circumstances under which the document was lost, discarded or destroyed, and (e) identity of all persons having knowledge of the contents of the document.

14. <u>Privileged Material</u>.  If any document requested herein is withheld on the basis of any claim of privilege or work product, you are requested to submit in lieu of any such document a written statement: (a) identifying the person who prepared or authored the document and, if applicable, all persons to whom the document was sent or shown, (b) specifying the date on which the document was prepared or transmitted, (c) identifying the subject matter of the document, (d) describing the nature of the document (e.g., letter, telegram, etc.), (e) stating briefly why the document is claimed to be privileged or to constitute work product (including the nature of the privilege or doctrine or exemption you claim is applicable, the reason you invoke it, and, if applicable, the state rule or law governing such claim), and (f) identifying the paragraph of this request to which the document relates.  If any document in any way relates to a meeting or to any conversation, all participants in the meeting or conversation are to be identified.

## **DOCUMENTS REQUESTED**

You are requested to produce the following (including any and all such documents in your possession, custody or control):

1. All documents concerning or relating to the oil (or any portion thereof) to be lifted from the Marine I Permit or the storage vessel known as the "Conkouati" in or about April 2006 through the present, including, but not limited to, any documents concerning the lifting, transport, purchase, sale, pledge, consignment, or financing of such oil.

2. All documents concerning the nomination, shipper, vessel, purchases, consignee to be noted on the bill of lading, and any entities prepaying or otherwise financing the purchase of the oil (or any portion thereof) to be lifted from the Marine I Permit or the storage vessel known as the "Conkouati" in or about April 2006 through the present.

3. All documents concerning, reflecting, or arising out of any communications, negotiations, or other interactions of any kind by or among you, the Garnishee, any of the Perenco Group of Companies, Congo, and/or any third parties, including but not limited to the purchaser and any entities prepaying or otherwise financing the purchase of the oil, with respect to, or concerning, the lifting from the Marine I Permit or the storage vessel known as the "Conkouati" in or about April 2006 through the present, or the transport, purchase, sale, pledge, consignment, or financing of such oil (or any portion thereof).

- 3 -

IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. Plaintiff, | § § § | |
| v. | § § | |
| THE REPUBLIQUE DU CONGO, Defendant, | § § § | |
| and | § § | C. A. NO. H-02-4261 |
| CMS OIL AND GAS COMPANY, et.al., Garnishees. | § § § | |

### DECLARATION OF ROLAND FOX

I, Roland Fox, declare:

1. My name is Roland Fox. I am President of Nuevo Congo Ltd. and have held that position since July 30, 2004. I also am President of Perenco S.A., and have held that position since December 22, 1994. I have personal knowledge concerning the facts set out in this declaration.

2. On May 29, 2002, CMS Energy Corporation announced its intention to sell the stock of its indirectly owned oil and gas exploration and production affiliate, CMS Oil and Gas Company, and the subsidiaries of CMS Oil and Gas Company, and exit the exploration and production business. At that time, CMS Oil and Gas Company, its subsidiary CMS Oil and Gas (International) Company, and subsidiaries of those two companies owned exploration and production assets in the United States, Cameroon, Eritrea, Tunisia, Venezuela, Colombia, and the Republic of Congo. A copy of the press release announcing CMS Energy Corporation's intention to sell those companies is attached hereto as Exhibit 1.

3. At all times since CMS Energy Corporation announced its intention to sell the stock of CMS Oil and Gas Company, CMS Oil and Gas (International) Company, and their affiliates, Perenco S.A. and its affiliated companies have been a group of companies with headquarters in Paris, France, and London, England ("the Perenco Group of Companies"). On July 19, 2002, CMS Enterprises Company (a subsidiary of CMS Energy Corporation and the parent company of CMS Oil and Gas Company) signed a purchase and sale agreement whereby the stock of CMS Oil and Gas Company and its subsidiary, CMS Oil and Gas (International) Company, would be sold to companies within the Perenco Group of Companies. Because CMS Nomeco Congo Inc. was a subsidiary of CMS Oil

and Gas (International) Company, a closing of the sale would result in CMS Nomeco Congo Inc. becoming a part of the Perenco Group of Companies. The Venezuela subsidiary of CMS Oil and Gas Company was the subject of a separate agreement with Perenco Venezuela S.A. A copy of the press release announcing the sale of the stock of CMS Oil and Gas Company and CMS Oil and Gas (Interntaional) Company is attached hereto as Exhibit 2.

4.   Closing of the sale of the stock of CMS Oil and Gas Company and CMS Oil and Gas (International) Company occurred September 13, 2002. A copy of the press release announcing the closing of the sale is attached hereto as Exhibit 3. As a result of that sale, CMS Nomeco Congo Inc. became a member of the Perenco Group of Companies. Closing of the sale to Perenco Venezuela S.A. occurred September 19, 2002. A copy of the press release announcing the closing of that sale is attached hereto as Exhibit 4. The Colombia subsidiary of CMS Oil and Gas Company was the subject of a separate sale to Compania Espanola de Petroleos S.A. of Spain (CEPSA), which is unaffiliated with the Perenco Group of Companies. A copy of the press release announcing the closing of that sale is attached hereto as Exhibit 5.

5.   Following the acquisition by the Perenco Group of Companies of CMS Oil and Gas Company and CMS Oil and Gas (International) Company, there was a transition period during which activities relating to the operation of assets located outside the United States that had previously been performed in the United States were no longer performed in the United States. With regard to the assets of CMS Nomeco Congo Inc., performance responsibilities for all of the activities relating to the Congo assets eventually were moved to the Congo, with officers and directors of CMS Nomeco Congo Inc. located in Paris and London. This approach is consistent with the Perenco Group of Companies' approach to the operation and management of all subsidiaries of the Perenco Group of Companies, whereby operations occur at the local level with employees hired to work in the particular locale, and with officers and directors who reside and work either at the local level or in Paris, or London or Nassau, Bahamas. Following the sale of CMS Oil and Gas Company and CMS Oil and Gas (International) Company to the Perenco Group of Companies, there was no need for CMS Nomeco Congo, Inc. to have physical offices, employees, officers or directors in the United States. The employees currently working at the Perenco offices at 1021 Main Street in Houston, Texas, and at 6 Desta Drive in Midland, Texas, are not employees of CMS Nomeco Congo Inc. and have no responsibilities relating to any properties of CMS Nomeco Congo Inc. The Perenco employees who work in Houston and Midland are responsible only for activities relating to assets owned by other companies within the Perenco Group of Companies that have assets in Texas, New Mexico, and Louisiana, except that Sharon Rodgers and Alessandra Valentini (who are not employees of CMS Nomeco Congo Inc.) perform respectively contract legal services in connection with garnishment litigation pending in Texas and contract tax services.

6. On February 12, 2004, Plains Exploration & Production Company (publicly traded on the New York Stock Exchange with its core areas of operating being in the United States) announced its intention to merge with Nuevo Energy Company (also with assets primarily in the United States), with three affiliates (The Congo Holding Company, The Nuevo Congo Company, and Nuevo Congo Ltd.) being the only affiliates having a connection to international properties. Specifically, The Nuevo Congo Company and Nuevo Congo Ltd. own working interests in the Marine 1 permit (the same permit in which CMS Nomeco Congo Inc. owns a working interest and serves as operator) and The Congo Holding Company is a holding company that owns the stock of The Nuevo Congo Company. Attached hereto as Exhibit 6 are pertinent portions of the press release announcing the intent of Plains Exploration & Production Company to merge with Nuevo Energy Company. The transaction was completed on May 17, 2004. Attached hereto as Exhibit 7 are pertinent portions of the press release announcing the completion of the transaction. As a result of the closing of that transaction, The Congo Holding Company, The Nuevo Congo Company, and Nuevo Congo Ltd. became affiliates of Plains Exploration & Production Company.

7. On April 8, 2004, companies within the Perenco Group of Companies agreed to purchase the stock of The Congo Holding Company and Nuevo Congo Ltd. Attached hereto as Exhibit 8 is the French version of a press release announcing the transaction. Attached hereto as Exhibit 9 is an English translation of that press release. The acquisition of The Congo Holding Company and Nuevo Congo Ltd. by companies within the Perenco Group of Companies was closed on July 30, 2004, after the closing of the Nuevo/Plains merger. As a result of the closing of that transaction, The Congo Holding Company, The Nuevo Congo Company, and Nuevo Congo Ltd. became members of the Perenco Group of Companies.

8. Consistent with the approach of the Perenco Group of Companies to the management of assets owned by companies within the group, all of the officers and directors of The Congo Holding Company, The Nuevo Congo Company, and Nuevo Congo Ltd. have all been individuals residing and working in Paris, London and Nassau since July 30, 2004.

9. I declare under penalty of perjury, under the laws of the United States of America, that the foregoing statements are true and correct.

EXECUTED on the 25thd day of October, 2004, in London, England.

_____
Roland Fox

EXHIBIT 1

**CMS Energy Corporation Announces Plans to Sell Its Oil and Gas Exploration and Production Unit**

DEARBORN, Mich., May 29, 2002 /PRNewswire-FirstCall via COMTEX/ -- CMS Energy Corporation (NYSE: CMS) today announced it plans to put its oil and gas exploration and production unit, CMS Oil and Gas Company, up for sale and exit the exploration and production business.

CMS Energy said it expects to conduct a competitive auction process for its oil and gas company, and will provide details to interested parties in the near future to begin the sale process. CMS has engaged Randall & Dewey, Inc., a Houston-based oil and gas merger and acquisition consulting firm, to advise it in connection with the planned sale.

Proceeds from the sale will be additive to CMS Energy's current total of $2.4 billion of cash proceeds from asset sales, securitization proceeds and LNG monetization toward its $2.9 billion asset optimization goal by year-end 2002.

CMS Oil and Gas Co. is a developer of oil and natural gas supplies in the Permian Basin of west Texas and internationally in Cameroon, the Republic of Congo, Colombia, Eritrea, Tunisia and Venezuela.

CMS Energy Corporation is an integrated energy company, which has as its primary business operations an electric and natural gas utility, natural gas pipeline systems, independent power generation, oil and gas exploration and production, and energy marketing, services and trading.

For more information on CMS Energy, please visit our web site at: www.cmsenergy.com/

EXHIBIT 2

**CMS Energy Announces Definitive Agreement for Sale of CMS Oil and Gas Company**

DEARBORN, Mich., Jul 22, 2002 /PRNewswire-FirstCall via COMTEX/ -- CMS Energy Corporation (NYSE: CMS) today announced it has signed a definitive agreement and a letter of intent, which together provide for the sale of CMS' oil and gas exploration and production unit, CMS Oil and Gas Co., for approximately $232 million.

The buyers under the definitive agreement are Perenco S.A., a privately held exploration and production company, and its affiliated companies. The transaction under the definitive agreement accounts for a substantial part of the $232 million. Negotiation of a definitive agreement is actively underway with another party for CMS Oil and Gas Company's oil and gas assets in Colombia, which are covered by the letter of intent. CMS Energy expects the sales to close in the third quarter.

CMS Energy Corporation is an integrated energy company, which has as its primary business operations an electric and natural gas utility, natural gas pipeline systems, independent power generation, and energy marketing, services and trading.

For more information on CMS Energy, please visit our web site at: www.cmsenergy.com /

EXHIBIT 3

**CMS Energy Closes Initial $167 Million Oil and Gas Sale**

DEARBORN, Mich., Sep 16, 2002 /PRNewswire-FirstCall via COMTEX/ -- CMS Energy Corporation (NYSE: CMS) today announced it has closed a sale of the stock of CMS Oil and Gas Company and its affiliate, CMS Oil and Gas (International), for $167 million. The transaction is part of a previously announced sale of all of CMS Energy's exploration and production business for $232 million. Definitive agreements for sale of the $65 million balance cover stock and assets of CMS Oil and Gas affiliates with properties in Colombia and Venezuela. Closings of those sales, which are pending government approvals, are expected by early October.

"Net proceeds from this sale were used to retire the remaining balance on a $150 million CMS Enterprises term loan due in December 2002," said CMS Energy executive vice president and chief financial officer Tom Webb. "With this sale, CMS Energy has achieved $2.6 billion of asset optimization cash proceeds toward our $2.9 billion goal."

CMS Energy Corporation is an integrated energy company, which has as its primary business operations an electric and natural gas utility, natural gas pipeline systems, independent power generation, and energy marketing, services and trading.

For more information on CMS Energy, please visit our web site at:
www.cmsenergy.com/

EXHIBIT 4

**CMS Energy Closes Oil and Gas Sale**

DEARBORN, Mich., Sep 19, 2002 /PRNewswire-FirstCall via COMTEX/ -- CMS Energy Corporation (NYSE: CMS) today announced it has closed a sale of the stock of CMS Oil and Gas (Venezuela) LDC to an affiliate of Perenco SA. The transaction is part of a previously announced sale of all of CMS Energy's exploration and production business for approximately $232 million. With the closing of the primary CMS Oil and Gas Company stock sales to Perenco announced earlier this week, sales covering substantially all of CMS Energy's oil and gas properties have been completed. Closing of the sale of its Colombian oil and gas properties, which is pending government approval, is expected by early October.

CMS Energy Corporation is an integrated energy company, which has as its primary business operations an electric and natural gas utility, natural gas pipeline systems, independent power generation, and energy marketing, services and trading.

For more information on CMS Energy, please visit our web site at: www.cmsenergy.com /

EXHIBIT 5

**CMS Energy Announces Sale Closing of its Oil and Gas Assets in Colombia, Completing its Sale of CMS Oil and Gas Company**

DEARBORN, Mich., Oct 25, 2002 /PRNewswire-FirstCall via COMTEX/ -- CMS Energy Corporation (NYSE: CMS) today announced it has closed the sale of its oil and gas assets in Colombia to Compania Espanola de Petroleos S.A. of Spain (CEPSA) for an undisclosed price.

The transaction is part of a previously announced sale of all of CMS Energy's exploration and production business for approximately $232 million. The closing marks the completion of CMS Energy's exit from the oil and gas exploration and production business.

Cash proceeds from the sale will be used to continue paying down a $295.8 million revolving credit facility for CMS Energy due March 31, 2003. In September, CMS Energy paid off a $150 million CMS Enterprises term loan due in December 2002.

CMS Energy Corporation is an integrated energy company, which has as its primary business operations an electric and natural gas utility, natural gas pipeline systems, independent power generation, and energy marketing, services and trading.

For more information on CMS Energy, please visit our web site at: www.cmsenergy.com

EXHIBIT 6

Plains Exploration & Production Company
700 Milam, Suite 3100
Houston, TX 77002

NEWS RELEASE

Contact: Winston M. Talbert
Vice President – Finance & Investor Relations
(713) 739-6700 or (800) 934-6083

FOR IMMEDIATE RELEASE

PLAINS EXPLORATION ANNOUNCES AGREEMENT TO ACQUIRE NUEVO ENERGY IN A STOCK MERGER

Houston, Texas – February 12, 2004 - Plains Exploration & Production Company (NYSE: PXP) ("PXP" or the "Company") has entered into a definitive agreement to acquire Nuevo Energy Company ("Nuevo") (NYSE: NEV) in a stock for stock transaction valued at approximately $945 million, based on PXP's closing price on February 11, 2004. If completed, PXP will issue up to 37.4 million shares to Nuevo shareholders and assume $234 million of net debt (as of December 31, 2003) and $115 million of Trust Convertible Preferred Securities. Under the terms of the transaction, Nuevo stockholders will receive 1.765 shares of PXP's common stock for each share of Nuevo common stock. Following the acquisition, PXP will have a large proved reserve base of approximately 489 million barrels (349 million in the proved developed category), of which 97% are in the United States, a significantly improved balance sheet and an attractive growth profile.

\*\*\*

The size of PXP's Board of Directors will increase by two directors to be appointed by Nuevo. The transaction will be accounted for as a purchase of Nuevo by PXP under purchase accounting rules and PXP will continue to use the full cost method of accounting for its oil and gas properties.

\*\*\*

PXP is an independent oil and gas company primarily engaged in the upstream activities of acquiring, exploiting, developing and producing oil and gas in its core areas of operation: onshore California, primarily in the Los Angeles Basin, and offshore California in the Point Arguello unit, East Texas and the Gulf Coast region of the United States. PXP is headquartered in Houston, Texas.

Nuevo Energy Company is a Houston, Texas-based company primarily engaged in the acquisition, exploitation, development, exploration and production of crude oil and natural gas. Nuevo's domestic producing properties are located onshore and offshore California and in West Texas. Nuevo is the largest independent producer of crude oil and natural gas in California. The Company's international producing property is located offshore the Republic of Congo in West Africa.

EXHIBIT 7

**Plains Exploration & Production Company**
700 Milam, Suite 3100
Houston, TX 77002

NEWS RELEASE

**Contact:** Scott D. Winters
Director - Investor Relations
(832) 239-6190 or (800) 934-6083

**FOR IMMEDIATE RELEASE**

**PXP ANNOUNCES COMPLETION OF NUEVO ENERGY ACQUISITION
CREDIT RATINGS RAISED PXP ADDED TO S&P MIDCAP 400 INDEX**

Houston, Texas - May 17, 2004 - Plains Exploration & Production Company (NYSE:PXP) ("PXP") announced it has completed the acquisition of Nuevo Energy Company (NYSE:NEV). For financial reporting purposes the acquisition is effective May 14, 2004.

James C. Flores, PXP's chairman, president and CEO commented, "Completion of this acquisition positions PXP as a significant participant in the upstream oil and gas business in the United States. We are one of the largest producers in California and among the 11 largest independents in the U.S. based on proved reserves. The integration of Nuevo's assets and personnel with PXP is going very smoothly, which is a testament to our employees and the logic of the transaction."

\*\*\*

PXP is an independent oil and gas company primarily engaged in the upstream activities of acquiring, exploiting, developing and producing oil and gas in its core areas of operation: onshore and offshore California, West Texas, East Texas and the Gulf Coast region of the United States. PXP is headquartered in Houston, Texas.

EXHIBIT 8

Siège : BP 15457, Brazzaville, Congo Tel + fax : 242 81 28 13 - Directeur général : Jean-Paul Pigasse. Directrice-rédactrice en chef : Belinda Ayessa. - Bureaux en Europe : 6 rue de Luynes, Paris (7) - Tel + fax : 33 1 47 50 53 10 - Site Internet : www.brazzaville-adiac.com - E.mail : redaction@brazzaville-adiac.com

Flash
Mardi 8 Juin 2004 à 12:00:00
DB7453

**Perenco SA reprend les parts de Nuevo International INC**

La société Perenco SA a signé fin mai, en présence du ministre des Hydrocarbures, Jean Baptiste Tati-Loutard, un accord avec la société Nuevo International INC portant sur la reprise de la totalité des intérêts détenus par Nuevo dans le permis Yombo.

A travers cette acquisition, et compte tenu de la participation de 25% qu'elle détenait par l'intermédiaire de sa filiale CMS Nomeco Congo, Perenco SA porte ainsi à 50% sa participation totale dans ce permis, situé dans l'offshore nord du Congo. Elle s'inscrit dans la politique des dirigeants qui veulent continuer à investir au Congo et consolider leur place de troisième producteur du pays.

Rappelons que la société Perenco SA est implantée au Congo à travers ses filiales : Congorep (qui produit 7 500 barils par jour sur le champ Emeraude), CMS Nomeco INC (qui produit 13 500 barils par jour sur le champ Yombo) et Perenco Exploitation et Production Congo Ltd (en phase d'exploitation sur le permis Marine IV).

Retour

EXHIBIT 9

Headquarter : BP 15457, Brazzaville, Congo Tel + fax : 242 81 28 13 -- General Manager : Jean-Paul Pigasse. Editor in Chief : Belinda Ayessa. -- Offices in Europe Europe : 6 rue de Luynes, Paris (7) - Tel + fax : 33 1 47 50 53 10 -- Internet Site : www.brazzaville-adiac.com - E.mail : redaction@brazzaville-adiac.com

Flash
Tuesday June 8th, 2004 at 12:00:00
DB7453

**Perenco SA acquires Nuevo International INC's interests**

The company Perenco SA has signed, end of May, in the presence of the Secretary of Hydrocarbon, Jean Baptiste Tati-Loutard, an agreement with the company Nuevo International INC to acquire all Nuevos interests of the Yombo permit.

Thanks to this acquisition and adding the 25% of interests owned by its subsidiary CMS Nomeco Congo, Perenco SA increases now its participation to 50% for this permit located north of Congo. It confirms its position among the leaders who wish to continue investing in Congo and consolidate its place as the third larger producer in the country.

Perenco SA is present in Congo thru its subsidiaries Congorep (which produces 7500 barrels per day on the Emeraude Field), CMS Nomeco INC (which produces 13500 barrels per day on the Yombo field) and Perenco Exploitation et Production Congo Ltd (in exploration phase on the Marine IV permit).

Retour