# EXHIBIT O



RECEIVED
JUL 19 2005
By

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. Plaintiff, | § | |
| v. | § | |
| REPUBLIQUE DU CONGO Defendant, | § | CIVIL ACTION No. H-02-4261 |
| and | § | |
| CMS OIL AND GAS COMPANY, et. al., Putative Garnishees. | § | |

**NOTICE OF CMS NOMECO CONGO INC., THE NUEVO CONGO COMPANY, AND NUEVO CONGO LTD. OF ANTICIPATED SALE AND TRANSFER OF WORKING INTERESTS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Garnishees CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. ("the Working Interest Owner Garnishees"), in accordance with this Court's prior Order dated May 20, 2003, hereby give notice to the Court and to the parties of their intention to sell and transfer their working interests under the Convention dated May 29, 1979 ("the Convention") for the production of oil in The Republic of Congo ("the Congo") and the Marine 1 Permit relating thereto.

1. The Working Interest Owner Garnishees are holders of working interests under the Convention and Marine 1 Permit and are actively involved in the production of oil in Congolese waters pursuant thereto. CMS Nomeco Congo Inc. is the operator under the Convention and related Joint Operating Agreement.

2. As shown by the copy letter attached hereto as Exhibit A, the Congolese government has asserted that article 120 of the OHADA Uniform Act requires that the working interests under the Convention and Marine 1 Permit be held by Congolese companies. The

OHADA Treaty (Organisation for the Harmonisation of Business Law in Africa) is a regional treaty signed by 16 west African countries (including Congo) whose Uniform Acts prevail over individual national legislation. Under article 120 of the Uniform Act, a foreign company cannot continue to operate through a branch in the relevant OHADA country for more than 2 years without a Government waiver: the branch is thereafter required to be attached to a company governed by the laws of one of the countries which are party to the Treaty. Similar letters have been sent to other operators operating in the Congo. If the Working Interest Owner Garnishees fail to comply, there is the risk that the Congo will terminate the Convention, causing the Working Interest Owner Garnishees to lose their investment in the country.

3. Furthermore, beginning in January 2001 and continuing to the present, judgment creditors of the Congo have sought writs of garnishment against the Working Interest Owner Garnishees, seeking to garnish royalty obligations of the Working Interest Owner Garnishees to the Congo under the Convention. Additionally, judgment creditors in this and other litigation have sought to garnish the right of SNPC, the state-owned oil company of the Congo, to take working interest oil as a working interest owner under the Convention and Joint Operating Agreement.

4. On February 22, 2005, in Case No. A-01-CV-321-SS in the Western District of Texas ("the 321 Case"), a case in which the Working Interest Owner Garnishees are not parties, the Court entered a Turnover Order against the Congo (but not the Working Interest Owner Garnishees) which directed the Congo to issue an instruction letter to the Working Interest Owner Garnishees electing to take royalties under the Convention in cash and instructing the Working Interest Owner Garnishees to make royalty payments into the registry of the Court in the Western District. A copy of the Turnover Order entered in the 321 Case is attached hereto as

Exhibit B. A representative of the Congo notified the Court in the 321 Case by letter that the Congo considered the Turnover Order unenforceable under Congolese law and refused to sign the instruction letter. A copy of that letter is attached hereto as Exhibit C. Subsequently, the Court in the 321 Case entered an Order directing the clerk of the Court to sign the instruction letter on behalf of the Congo. A copy of that Order is attached hereto as Exhibit D. On April 8, 2005, the clerk of the Western District issued the instruction letter. A copy of the instruction letter is attached hereto as Exhibit E.

5. In addition to the turnover relief sought in the 321 Case in the Western District, FG Hemisphere also has sought a turnover order in this case, seeking the order not only against the Congo but also against the Working Interest Owner Garnishees.

6. On July 4, 2005, a court in the Congo entered Orders against CMS Nomeco Congo Inc., holding that the U.S. court orders do not relieve CMS Nomeco Congo of its obligation as operator to deliver oil. Specifically, the court in the Congo held that the U.S. court orders are not enforceable under Congolese law. Copies of the Congo court orders, with certified translations thereof, are attached hereto as Exhibits F and G

7. The facts and circumstances described above have caused CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. to decide to sell their working interests under the Convention. Specifically, if the status quo is maintained, they risk, through no fault of their own, not only double liability due to the conflicting court decisions in the Congo and U.S., but also the loss of their interests in the Convention and Permit (and thus the whole of their investment in Congo) either through a failure to comply with OHADA law or a failure to comply with the above-referenced Congo court orders. Accordingly, CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd., in order to protect their legitimate business

interests, intend to convey their working interests. The purchasers will be companies to be formed under Congolese law. The consideration to be paid for the sales will be cash. Upon closing of the conveyances, the working interests under the Convention will be owned by the Congolese purchasers of the working interests, and the rights and obligations under the Convention and Joint Operating Agreement previously held and owed by the Working Interest Owner Garnishees will be held and owed by the Congolese purchasers and not the Working Interest Owner Garnishees.

8. In compliance with the May 20, 2003 Order of this Court, the Working Interest Owner Garnishees give notice to the Court and the parties of their intention to consummate the transactions described in this notice no earlier than thirty days from the date of this notice.

Respectfully submitted,

GUY S. LIPE
State Bar No. 12394600
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin
Houston, Texas 77002-6760
(713) 758-1109
(713) 615-5607 fax

**Attorneys For CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd.**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2005, a true and correct copy of the foregoing instrument was delivered to the following in the manner indicated:

Dillon J. Ferguson (*Via Hand Delivery*)
Phillip G. Oldham
Andrews & Kurth L.L.P.
600 Travis, Suite 4200
Houston, Texas 77002

Andrew L. Jefferson, Jr. (*Via Hand Delivery*)
1314 Texas Street, Suite 500
Houston, Texas 77002-3513

Roland Garcia (*Via Hand Delivery*)
Greenberg Traurig, LLP
3200 Travis Street, Third Floor
Houston, Texas 77006

Danforth Newcomb (*Via Federal Express*)
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

Boaz S. Morag (*Via Federal Express*)
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, New York 10006

Guy S. Lipe

2283499_1.DOC

Received 07/12/2005 10:16AM in 01:18 on line [7] for GL0607 * Pg 2/3
12/07/2005 16:18 PAGE 02/03
12. JUL. 2005 17:07 0033153576332 N° 751 P. 2 P:2/2

MINISTERE DES HYDROCARBURES

MINISTERE DU COMMERCE DE LA CONSOMMATION ET DES APPROVISIONNEMENTS

N° 05 × 1 0431 /MHC-CAB

REPUBLIQUE DU CONGO
Unité – Travail – Progrès

Brazzaville, le 18 MAI 2005

Reçu le 27 MAI 2005

Les Ministres,

A

CMS Nomeco Congo
POINTE-NOIRE

Objet : Obligation de constitution d'une société de droit congolais

Monsieur le Directeur Général,

Suivant les dispositions de l'article 33 du Code des Hydrocarbures, la société étrangère titulaire d'un titre minier peut s'implanter au Congo sous les formes juridiques de société de droit congolais ou de succursale immatriculée au registre du commerce et du crédit mobilier.

Par ailleurs, l'article 120 de l'Acte uniforme relatif au droit des sociétés commerciales et du groupement d'intérêt économique requiert de la société étrangère implantée en zone OHADA sous forme de succursale d'apporter, après deux années, ladite succursale à une société de droit de l'Etat d'implantation.

Les dispositions des actes uniformes OHADA prévalant sur celles du Code des Hydrocarbures, et votre société étant représentée au Congo par une succursale depuis plus de deux ans, nous vous demandons par la présente de bien vouloir procéder, dans les meilleurs délais, au remplacement de la succursale actuelle par une société de droit congolais.

Nous vous prions d'agréer, Monsieur le Directeur Général, l'expression de nos sentiments distingués.

Le Ministre d'Etat,
Ministre des Hydrocarbures,

Jean-Baptiste TATI-LOUTARD

Le Ministre du Commerce,
de la Consommation
et des Approvisionnements,

Adélaïde MOUNDELE NGOLO

EXHIBIT A

Received 07/12/2005 10:16AM in 01:18 on line [7] for GL0607 * Pg 3/3
12/07/2005 16:18 8 PAGE 03/03
12. JUL. 2005 16:30 N° 750 P. 2

MINISTRY OF HYDROCRARBONS

MINISTRY OF COMMERCE, CONSUMPTION AND SUPPLIES

REPUBLIC OF CONGO
Unity-Work-Progress

Brazzaville, the 18 May 2005

N° 05 x 0431/MHC-CAB

The Ministers,
to
CMS Nomeco Congo

Pointe-Noire

*Subject: Legal obligation to set up a company governed by Congolese law*

To the attention of the Managing Director:

Pursuant to the provisions contained in article 33 of the Hydrocarbons Code a foreign company holding mining titles has the obligation to be domiciled in Congo either through a company governed by Congolese law or through a subsidiary of a foreign company registered with the Registry of Companies and Liens.

Furthermore, article 120 of the OHADA Uniform Act on commercial companies and commercial interest groupings requires a foreign company operating in the OHADA zone under the form of a subsidiary for more then two years to transform the said subsidiary into a company governed by the relevant local law.

Consequently, since the provisions of the OHADA Uniform Act prevail over any provision of the Hydrocarbons Code and your company has been present in Congo through a subsidiary for more than two years we herby request the replacement of your subsidiary by a company governed by Congolese law.

Sincerely yours,

Minister of Hydrocarbons

Minister of Commerce, Consumption and Supplies

Jean-Baptiste TATI-LOUTARD

Abdelaye WOUNDELE NGOLO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

AF-CAP, INC.,

Plaintiff,

v.

THE REPUBLIC OF CONGO,

Defendant.

Civil Action No. A-01-CA-321-SS

## TURNOVER ORDER

In accordance with the Court's February 4, 2005, Order granting Plaintiff Af-Cap's Motion for Turnover Order, the Court hereby makes the following findings and enters the following Order pursuant to Fed. R. Civ. P. 69(a) and Tex. Civ. Prac. & Rem. Code § 31.002:

WHEREAS:

A. The Connecticut Bank of Commerce (which assigned the judgment to Af-Cap and is referred to in the next two paragraphs as "Af-Cap") obtained a judgment from the Supreme Court of the State of New York, County of Kings on May 9, 2000, against the Defendant Republic of Congo ("Congo") in the amount of $13,628,340.11, plus interest;

B. Af-Cap registered its New York judgment as a Texas judgment pursuant to Tex. Civ. Prac. and Rem. Code § 35.003 on January 11, 2001;

C. Af-Cap obtained and subsequently served multiple garnishment writs on, *inter alia*, CMS Nomeco Congo, Inc., The Nuevo Congo Company, and Nuevo Congo Ltd.,

**EXHIBIT B**

(collectively the "Garnishees") in an effort to identify and execute on any amounts owed or to be owed to the Congo;

     D.    The Garnishees filed answers to the writs stating that the Garnishees are successors to original parties to, and are the current owner of interests in, a Convention for the production of oil and gas in the Congo dated May 25, 1979 (the "Convention");

     E.    Under the terms of the Convention, the Garnishees owe and pay oil royalties to the Congo;

     F.    The Fifth Circuit has ruled that the royalty obligations owed to the Congo are, under 28 U.S.C. § 16 10(a), "property in the United States of a foreign state...used for a commercial activity in the United States";

     G.    In December 1991, the Congo voluntarily agreed to the entry of a turnover order by the United States District Court for the Northern District of Illinois providing, in pertinent part, that a portion of the royalties, payable in cash or in kind, due and owing under the Convention would be paid to a judgment creditor and that the Congo would issue a payment instruction to the entities owing the royalty obligation directing such payment until satisfaction of the judgment, including interest;

     H.    ~~The Congo is contractually obligated to consent to the enforcement of the judgment against any of its property, wherever located and irrespective of its use or intended use;~~

     I.    A reasonable period of time has elapsed following the entry of judgment under 28 U.S.C. § 1610(c); and

     J.    Af-Cap has demonstrated to the Court's satisfaction that the royalty obligations: (1) cannot readily be attached or levied upon by ordinary legal process under Tex. Civ. Prac. &

Rem. Code § 31.002(a)(1); and (2) are not exempt from execution for the satisfaction of the Congo's debt under Tex. Civ. Prac. & Rem. Code § 3 1.002(a)(2).

It is hereby ORDERED that:

1. Af-Cap is entitled to this Turnover Order against the Congo for the payment of $13,628,340.11, plus post-judgment interest, from May 9, 2000 at a rate of nine percent (9%) per annum, as provided in the New York Civil Practice Law and Rules §§ 5003 & 5004.

2. The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share from the Garnishees or other parties.

3. The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute in three originals within three days the attached letter of instruction (Exhibit A) from the Congo to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of royalty and instructing that the royalty be paid in cash into the registry of the Court. One executed original of such letter shall be filed with the Court, one shall be served on counsel for Af-Cap, and one shall be served on counsel for the Garnishees.

4. Until such time as the executed letters of instruction are filed and served as directed above, the Congo and all persons acting in concert with it, together with all persons having actual knowledge of this Order, are restrained and enjoined from transferring, concealing, or otherwise disposing of the Congo's interest in the property.

5. All royalties paid into the registry of the Court shall be applied in favor of Af-Cap by the Clerk of the Court to satisfy the judgment in this case and any additional sums required to be paid by any Order of this Court.

6. The Court shall retain jurisdiction over this cause for the purpose of enforcing this Order.

SO ORDERED this 22nd day of February, 2005.

Sam Sparks

The Honorable Sam Sparks
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

AF-CAP, INC.,

Plaintiff,

v.

THE REPUBLIC OF CONGO,

Defendant.

Civil Action No. A-01-CA-321-SS

**EXHIBIT A TO TURNOVER ORDER**

CMS Nomeco Congo, Inc.
Nuevo Congo Company
Nuevo Congo, Ltd.
c/o Their Counsel
Mr. Guy S. Lipe
Vinson & Elkins, L.L.P.
1001 Fannin, Suite 2300
Houston, Texas 77002-6760

Ladies and Gentlemen:

Pursuant to the Turnover Order entered by the United States District Court, the Republic of Congo ("Congo"), on its own behalf or through its lawfully authorized designee, hereby demands, directs, and elects that you pay into the registry of the United States District Court for the Western District of Texas in cash all mineral royalty due under the Joint Operating Agreement ("JOA") dated May 25, 1979 to The Republic of Congo in accordance with Articles 7 and 4.11, respectively, of the Convention regarding the Marine I Field dated May 25, 1979 ("the Convention") and the JOA. Any previous elections with respect to the payment of such royalty in kind are hereby revoked.

The amounts to be paid pursuant to the preceding paragraph shall include all royalty amounts currently owed by either you, your successors and assigns, or your affiliates, to the Congo pursuant to the JOA and Convention in respect of all periods beginning ninety days from the date of this letter. The payments made to the registry of the Court shall, to the extent thereof, be considered by the Congo as in fulfillment of your obligations, and shall be treated by the Congo as payment of the royalty. ~~for tax and other purposes.~~ SS

This payment instruction shall be irrevocable except that it shall expire when payments to the Court's registry are no longer required by the terms of the attached Turnover Order entered by the U. S. District Court for the Western District of Texas.

Very truly yours,

By: ______________________________

Dated: ________________, 2005.

KERN

Global Language Services
Translations · Interpreting
DTP · Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@kerntranslations.com
www.e-kern.com

State of: New York
ss.:
County of: New York

## CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)*

**LETTER DATED MARCH 3, 2005 REGARDING AF-CAP, INC. V. REPUBLIC OF CONGO**

*from the* **FRENCH** *language into the* **ENGLISH** *language and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.*

Signed by: [signature]

KERN
Kern Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Subscribed to before me this 7

Day of March, 2005

[signature]
Notary Public

JOY N. WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 2, 2007

**EXHIBIT C**

San Francisco: The Russ Building · 235 Montgomery Street, Suite 946 · San Francisco, CA 94104
Tel. (415) 433 5376 · Fax (415) 433 5377 · kern.sf@kerntranslations.com
London: Tel. 011 44 (20) 78 31 56 00 · Frankfurt: Tel. 011 49 (69) 75 6073-0 · Berlin: Tel. 011 49 (30) 247212 50 · Paris: Tel. 011 33 (1) 53 93 85 20
Zurich: Tel. 011 41 (1) 261 1160 · Hong Kong: Tel. 011 (852) 28 50 44 55 · Amsterdam: Tel. 011 31 (20) 6 39 01 19 · Lyon: Tel. 011 33 (4) 783 783 73

MINISTER OF FOREIGN AFFAIRES
AND FRANCOPHONY

CABINET

REPUBLIC OF CONGO
Unité - Travail - Progrès

MAEF 0744 CAB.SP.

**Brazzaville, 03 March 2005**

MINISTER OF STATE

Re: Republic of Congo v. Af-Cap, Inc.

Dear Judge:

I refer to the order issued by this court on 22 February 2005 (the "Turnover Order"), which provides, *inter alia*:

- "The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention;
- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute . . . [a] letter of instruction . . . to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty . . . ."

This suit was initiated over four years ago with a view to persuading United States courts to authorize seizure of the Congo's rights to mining royalties, which it collects within its own territory, in satisfaction of a debt purchased by a creditor without any right to said mining royalties. The Congo has strongly objected to this litigation, which is unfounded. It is premised on the erroneous notion that an American court may transfer the right of a sovereign nation—the Republic of Congo—to dispose of its resources within its own borders. The Republic of Congo has thus far endeavored to cooperate with United States judicial authorities in the hope that United States courts would recognize their obligation to respect the Congo's sovereignty, as is mandated not only under Congolese and international law, but under United States law as well.

In light of the judgments of this Court and the Court of Appeals for the Fifth Circuit, the Congo is constrained to protest in the strongest possible terms the failure to

respect its sovereign rights and the resulting judicial measures that purport to dispossess the Congo of economic rights comprising its national patrimony and principal source of export revenue. It is an established principle of the law of nations that every state exercises full and permanent sovereignty over its natural resources and exclusive authority to control the economic exploitation thereof. The Congo's rights to the mining royalties within its territory are subject to its exclusive jurisdiction and sovereignty, which cannot be subordinated to the judicial measures of another state.

The Turnover Order issued by this Court is a clear violation by the United States of international law which recognizes the right for any sovereign State to exercise authority and control over its natural resources within its national territory. Such actions impact negatively on the relations between the United States and the Congo, undermining the concerted mutual efforts of both nations to encourage private United States entities to invest in the Congo, in particular in the oil sector. This unfortunate development requires the Congo to reassess its relations with the United States, particularly where other sources of trade and investment such as Canada, Europe, India and China continue to respect the sovereignty of the countries with which they maintain an economic relationship.

The Turnover Order is unenforceable in the Congo, and cannot supersede the Congo's sovereign authority to prescribe and enforce its own laws within its own territory. Regretfully, the Congo must hereby advise the Court that, for the reasons stated, the Congo will not implement the Turnover Order.

Please accept, Your Honor, the expression of my most distinguished consideration.

[seal: Minister of Foreign Affaires and
Francophony
Cabinet
Republic of Congo]

[signature]

Rodolphe Adada

**Hon. Sam Sparks**
**United States District Judge**
**United States District Court for**
**The Western District of Texas**
**Austin, Texas**

U.S.A.

copy: Hon. William H. Taft, IV
United States Department of State

MINISTERE DES AFFAIRES ETRANGERES
ET DE LA FRANCOPHONIE

CABINET

République du Congo
Unité – Travail - Progrès

MAEF 0 7 4 /CAB.SP.-

Brazzaville, le 03 MARS 2005

LE MINISTRE D'ETAT,

**Objet** : République du Congo c. Af-Cap.Inc

Monsieur le Juge,

Je me réfère à l'Ordonnance de votre tribunal rendue le 22 février 2005 (the « Turnover Order », qui décide notamment :

- « The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention ;
- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute...[a] letter of instruction ...to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty...

Cette procédure a été initiée par les demandeurs il y a plus de quatre ans dans le but de convaincre les tribunaux américains d'autoriser la saisie des droits du Congo sur la redevance minière qu'elle perçoit sur son propre territoire, en paiement de droits d'un créancier au titre d'une dette du Congo sans rapport avec un droit quelconque sur cette redevance minière. Le Congo a vigoureusement contesté cette action judiciaire, laquelle est sans aucun fondement. Elle repose sur l'hypothèse erronée qu'un tribunal américain pourrait aliéner le droit d'un Etat souverain, la République du Congo, de disposer de ses ressources à l'intérieur de son propre territoire. La République du Congo a jusqu'à présent coopéré avec les autorités judiciaires américaines dans l'espoir que les tribunaux américains admettraient leur obligation de respecter la souveraineté du Congo, comme le leur impose le droit international, le droit congolais ainsi que le droit des Etats-Unis d'Amérique.

Compte tenu des jugements rendus par votre tribunal et par la Court of Appeals for the Fifth Circuit, le Congo se voit contraint de protester vigoureusement contre le non-respect de ses droits souverains et contre les mesures judiciaires qui visent à le déposséder de droits économiques qui font partie de son patrimoine national et qui constituent sa principale source de revenus à l'exportation. Le droit international public établit clairement le principe selon lequel chaque Etat a le droit d'exercer une souveraineté entière et permanente sur ses ressources naturelles, et dispose du droit exclusif d'en contrôler l'utilisation économique. Les droits du Congo sur la redevance minière à l'intérieur de son territoire sont du ressort de sa souveraineté exclusive, laquelle ne peut en aucun cas faire l'objet de mesures judiciaires de la part d'un autre Etat.

Le Turnover Order émis par votre tribunal constitue une violation patente de la part des Etats-Unis du droit international, lequel consacre le droit pour chaque Etat souverain de gérer ses ressources naturelles à l'intérieur de son territoire national. De telles actions affectent négativement les relations entre les Etats-Unis et le Congo et les efforts mutuels de ces deux nations pour encourager les sociétés américaines à investir au Congo, en particulier dans le domaine pétrolier. Ce regrettable développement met le Congo dans l'obligation de réexaminer ses relations économiques avec les Etats-Unis en tenant compte notamment que d'autres pays partenaires commerciaux, au Canada, en Europe, en Inde et en Chine respectent la souveraineté des pays avec lesquels ils entretiennent des relations économiques.

Le Turnover Order est de nul effet au Congo et ne saurait prévaloir sur l'autorité souveraine de notre pays d'appliquer ses propres lois sur son territoire. J'ai donc le regret de vous informer que, pour les raisons indiquées dans la présente lettre, la République du Congo rejette le Turnover Order.

Veuillez agréer, Monsieur le Juge, l'expression de ma considération distinguée.

Rodolphe ADADA

**Hon. Sam Sparks**
**United States District Judge**
**United States District Court for**
**The Western District of Texas**
**Austin, Texas**

**U.S.A.**

Copie : Hon. William H. Taft, IV
United States Department of State

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION
2005 AP -6 AM 10: 44
WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE
BY: AF
DEPUTY

AF-CAP, INC.

Plaintiff,

-vs-

Case No. A-01-CA-321-SS

THE REPUBLIC OF CONGO,

Defendant.

**ORDER**

BE IT REMEMBERED on the 1st day of April 2005, the Court called the above-styled cause for a hearing on Plaintiff Af-Cap, Inc.'s ("Af-Cap") Motion for Issuance of a Show Cause Order [#129], and the parties appeared through counsel. On February 22, 2005, the Court entered a turnover order against Defendant Republic of Congo ("the Congo"), in which the Congo was ordered to execute, within three days of receiving the Court's order, certain letters of instruction addressed to third parties (specifically, CMS Nomeco Congo Inc., the Nuevo Congo Company, and Nuevo Congo, Ltd.) regarding its right to receive payment of royalty obligations under a May 25, 1979 Convention[1] for the production of oil and gas. The purpose of the letters was to redirect the Congo's interest in the Convention royalty obligations to the Clerk of this Court until a judgment held by Af-Cap against the Congo was satisfied. Because the Congo refused to execute the instruction letters, the Court subsequently ordered the Congo to appear at a hearing on April 1, 2005, at which time its authorized representative would be required to execute the letters of instruction and to show cause why the Congo should not be held in contempt of Court. No representative of the

[1] In 1979, the Congo issued a permit to drill offshore to its state-owned oil company, the Societe Nationale de Petrol du Congo ("SNPC"). On May 25, 1979, in order to exploit the permit, the Congo and SNPC entered into a joint venture with various oil companies to produce oil and gas ("the Convention").

EXHIBIT D

SS
AL

Congo capable of signing the letters of instruction appeared before the Court. However, counsel for the Congo did appear, both in person and by telephone, to argue on its behalf. Having considered the pleadings filed by the parties, the arguments of counsel at the hearing, the relevant law, and the case file as a whole, the Court now enters the following:

In light of the Congo's failure to comply with the February 22, 2005 Turnover Order entered by this Court, Af-Cap urges the Court to grant further appropriate relief to enforce the Court's Turnover Order. Although, in its papers, Af-Cap proposed multiple, alternative forms of relief for the Court's consideration (including contempt sanctions), at the hearing, Af-Cap took the position that an order pursuant to Rule 70 of the Federal Rules of Civil Procedure would be the most effective and efficient means of enforcing this Court's Turnover Order.

Under Rule 70, Af-Cap urges the Court to enter an order directing the Clerk of this Court to sign the required letters of instruction on the Congo's behalf. Rule 70 provides, in pertinent part:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

FED. R. CIV. P. 70. Under the plain language of the rule, the Court may order a third person to do the act which the Congo refuses to do. Other courts have granted similar relief. For instance, in a case arising in the Seventh Circuit, the Clerk of the District Court for the Northern District of Illinois executed real estate deeds after the defendant refused to comply with the district court's order requiring him to execute the deeds. *Varone v. Varone*, 392 F.2d 855, 856 (7th Cir. 1968). Similarly, in *United States v. Fitzgerald*, 109 F.3d 1339 (8th

Cir. 1997), the district court ordered the United States Marshal to convey a deed on foreclosed property belonging to the defendant in the case after the defendant refused to make the conveyance himself. *Id.* at 1341. In both cases, the Court was able to get around the recalcitrance of the individual defendant by ordering its own designee to perform the required ministerial act.

The Congo, for its part, indicated at the hearing it has no particular objection to the specific Rule 70 relief sought by Af-Cap. Instead, the Congo has made only general objections to the Court's entry of further relief in favor of Af-Cap, which are largely based on its continuing objections to the turnover order already entered in this case. First, the Congo argued the decision by the Fifth Circuit that the underlying property in this case is located in the United States was incorrect. Apparently convinced the Supreme Court would grant a writ of certiorari, the Congo urged the Court to await the outcome of its appeal of the Fifth Circuit's decision prior to taking further action. According to the Supreme Court's official website, on April 4, 2005, the Supreme Court denied the Congo's petition for certiorari. Thus, there is no doubt the Fifth Circuit's mandate will remain the final word on the location of the property at issue in this case.[2]

Second, the Congo argues the Court's Turnover Order itself is not entitled to legal force and effect because of sovereignty considerations and the act of state doctrine.

---

[2] The Congo has also argued "[t]his Court's turnover order directly against the Congo . . . lacks even the tenuous basis on which the Fifth Circuit deemed the property 'in the United States.'" Def.'s Opp. to Mot. for Issuance of a Show Cause Order at 4. The Congo's position is apparently that since the Fifth Circuit focused its opinion on the garnishment relief sought in A-01-CA-100-SS ("the 100 case"), rather than the turnover relief sought in this case, *see Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, 373 (5th Cir. 2004), its holding is somehow inapplicable to the latter form of relief. What the Congo fails to recognize, however, is that the Fifth Circuit's consolidation of the appeals of those two actions means the Fifth Circuit's conclusions about the location of the property are binding in both the 100 case and this case. *See id.* ("We also hold that the situs of these obligations is the United States.").

However, these arguments have already been made and rejected in connection with both the Court's initial issuance of the Turnover Order and the Court's denial of the Congo's recent motion for a stay. The Court sees no need to separately address these arguments again here.

Third, the Congo argues the act of state doctrine independently precludes the issuance of contempt sanctions against it. However, since the relief now urged by Af-Cap is an alternative to a contempt sanction, the Court need not address the merits of the Congo's last argument.

Accordingly:

IT IS ORDERED that the Clerk of the Court is hereby appointed pursuant to Rule 70 of the Federal Rules of Civil Procedure and directed to execute the letter of instruction appended to the Court's Turnover Order of February 22, 2005. One executed original of the letter shall be placed in the Court's file. Copies of the executed letter shall be served on counsel for the Congo. One executed original of the letter shall be delivered by the Clerk to Steve McConnico, counsel for Af-Cap. One executed original of the letter shall be delivered to Guy Lipe, counsel for CMS Nomeco Congo Inc., the Nuevo Congo Company, and Nuevo Congo, Ltd. The execution of the instruction letters by the Clerk shall have like effect as if done by the Congo as authorized by Rule 70.

SIGNED this the 6 day of April 2005.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
APR 11 2005
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______
DEPUTY CLERK

AF-CAP, INC.

Plaintiff,

-vs-

Case No. A-01-CA-321-SS

THE REPUBLIC OF CONGO,

Defendant.

---

CMS Nomeco Congo, Inc.
Nuevo Congo Company
Nuevo Congo, Ltd.
c/o Their Counsel
Mr. Guy S. Lipe
Vinson & Elkins, L.L.P.
1001 Fannin, Suite 2300
Houston, Texas 77002-6760

Ladies and Gentlemen:

Pursuant to the Turnover Order entered by the United States District Court for the Western District of Texas, the Republic of Congo ("Congo"), on its own behalf or though its lawfully authorized designee, hereby demands, directs, and elects that you pay into the registry of the United States District Court for the Western District of Texas in cash all mineral royalty due under the Joint Operating Agreement ("JOA") dated May 25, 1979 to the Republic of Congo in accordance with Articles 7 and 4.11, respectively, of the Convention regarding Marine I Field dated May 25, 1979 ("the Convention") and the JOA. Any previous elections with respect to the payment of such royalty in kind are hereby revoked.

The amounts to be paid pursuant to the preceding paragraph shall include all royalty amounts currently owed by either you, your successors and assigns, or your affiliates, to the Congo pursuant to the JOA and Convention in respect of all periods beginning ninety days from the date of this letter. The payments made to the registry of the Court shall, to the extent thereof, be considered by the Congo as fulfillment of your obligations, and shall be treated by the Congo as payment of the royalty.

**EXHIBIT E**

cc: Fox

**This payment instruction shall be irrevocable except that is shall expire when payments to the Court's registry are no longer required by the terms of the attached Turnover Order entered by the United States District Court for the Western District of Texas.**

**By order of the Court,**

[signature]

**William G. Putnicki,**
**Clerk of Court**

**Dated:** April 8, **2005**

# AU NOM DU PEUPLE CONGOLAIS

L'an deux mil [illegible]
Et le quatre du mois de [illegible];

Par-devant Nous, Norbert [illegible], Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître [illegible], Greffier en Chef dudit Tribunal;

Vu la requête en date à Pointe-Noire du [illegible] de la République du Congo, Ministère des Hydrocarbures, ayant pour conseils [illegible] et [illegible] à la Cour [illegible] Pointe-Noire;

Attendu qu'elle expose à l'appui de sa requête [illegible] qu'elles ont été saisies par la société [illegible] [illegible] [illegible] [illegible] [illegible] [illegible]

Que les [illegible] [illegible] [illegible] [illegible] [illegible] Congo;

Que ces décisions ne [illegible] [illegible]

[illegible] [illegible] [illegible] [illegible] [illegible]

Qu'en l'occurrence les décisions [illegible] ont été [illegible] à la République du Congo [illegible] [illegible] devant les tribunaux [illegible] nationales;

Que l'article 30 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution [illegible] par la loi nationale de chaque État [illegible] de saisie alors même qu'elle seraient détenus par un tiers;

Que la saisie ordonnée par la juridiction [illegible] à l'ordre Public international et à la souveraineté de la République du Congo en ce qu'elle vise des redevances fiscales par [illegible] porte atteinte à la République du Congo dans l'exercice de sa souveraineté fiscale;

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de

EXHIBIT F



Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions étrangères exécutées sur le territoire Congolais;

Que or, les décisions de la Cour de District des Etats-Unis, District de l'Ouest du Texas, ont été rendues, signifiées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au

...s/...

Congo à trouver la société CMS NOMECO CONGO INC;

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

Attendu également que les décisions judiciaires [illegible] de pétrole brut Congolais ne sont pas [illegible];

[illegible] étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolai-

.../...

Suivant les signatures illisibles
du Président et du Greffier

**EXECUTION COPY**

**ORDER** **F No. 251**

**CIVIL LIST No. 546**
**YEAR: 2005**

**REPUBLIC OF THE CONGO**
**ON BEHALF OF THE CONGOLESE PEOPLE**

**REGISTER No. 477**
**OF JULY 4, 2005**

**In the year two thousand five;**
**And on the fourth day of July;**

**Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;**

**With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;**

**With reference to the motion dated July 2, 2005 in Point Noire from the Republic of the Congo, Ministry of Hydrocarbons, with Irène Josiane Okoko, Hervé Obongui Ngnie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;**

**Whereas in support of its motion, it stated: whereas AF CAP (which holds a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;**

**Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;**

**But whereas these decisions could not be executed in the Republic of the Congo;**

**Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"**

**Whereas in this case, the Republic of the Congo was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;**

**Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each Contracting State may not be garnished even though it may be held by third parties;**

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with International Public Order and the Republic of the Congo's sovereignty in that it is aimed at tax royalties, by their nature not subject to garnishment, and it interferes with the Republic of the Congo's exercise of its sovereignty in matters of taxation;

Whereas, therefore, since the issue of the delivery of any operator designated by the Republic of the Congo's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver said shares of crude oil to any operator designated by the Republic of the Congo;

Whereas based on the foregoing, the Republic of the Congo is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction on the garnishment of the mining royalty owed to the Republic of the Congo's under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to any operator designated by the Republic of the Congo, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in briefs dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, P.O. Box 5316, Pointe-Noire, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to the Republic of the Congo held by CMS Nomeco Congo Inc;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that its delivery of the shares of crude oil to any operator designated by the Republic of the Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco to deliver shares of crude oil to any operator designated by the Republic of the Congo would render CMS Nomeco liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco would be forced to deliver shares of crude oil to any operator designated by the Republic of the Congo in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas CMS Nomeco is obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

Whereas Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this code it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas the Republic of the Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas under these conditions, the Republic of the Congo cannot make valid use of the argument that its obligee observed the procedure for the authority to execute as though it were executing its decision in Congolese Territory;

Whereas the Republic of the Congo further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the Republic of the Congo, pursuant to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, mainly AF-CAP Inc., the U.S. company, and the Republic of the Congo;

Whereas it is requesting that the Court: - find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco; - find that CMS Nomeco Congo is only a "third arty holder" of the immobilized shares of crude oil; - find that only the effects of this execution are felt in the Congo through CMS Nomeco; find that there is no instrument of execution whatsoever that has been carried out in Congolese territory;

Whereas consequently, find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and - order the Republic of the Congo to pay the costs;

<u>BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS</u>

Whereas the examination of the exhibits in the file shows that the U.S. court decisions that ordered the attachment of Congolese crude oil conflict with the Congolese laws in effect;

Whereas the Republic of the Congo is indeed a sovereign State and therefore a Government Corporation and Enterprise;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution which provides that "Compulsory distraint and preventive measures shall not apply to persons enjoying immunity from execution. However, any unquestionable debts due for payment belonging to public corporations or enterprises, regardless of their form and mission, may equally be compensated with unquestionable debts due for payment belonging to any person owing them, subject to reciprocity;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

Whereas furthermore, the decisions of the U.S. courts, including for the attachment of the Congolese crude oil, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas ultimately, there is therefore no reason to use the decisions of the U.S. courts as arguments against the Congolese State;

Whereas, moreover, Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution (UAOSRPME) provides that "property declared not subject to attachment by the national law of each Contracting State may not be attached, even if it is held by third parties;

Yet, whereas the oil royalties are declared not subject to attachment by Congolese law;

Whereas ultimately, it should be found that the attachment of the Congolese crude oil ordered by the U.S. courts is in conflict with public order and interferes with the sovereignty of the Congolese State;

Whereas with regard to the foregoing, there is reason to find that the Congolese Republic's motion is in order and admissible;

Whereas, in substance, it is grounded; whereas there is reason to accept it;

Whereas it is therefore essential to find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the CCCAFP;

<u>NOW THEREFORE</u>

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

<u>On the merits</u>, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

We find that the U.S. court decisions or decisions of other foreign jurisdictions may not be executed in Congolese territory without first having been the subject of the procedure of the authority to execute with the Congolese Courts and Tribunals. We find that the Congolese oil royalties cannot be attached according to Congolese law;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

We find that the U.S. court decisions that ordered the attachment of the Congolese crude oil are in conflict with the public order and interfere with the Republic of the Congo's national sovereignty;

Consequently;

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to any operator designated by the Republic of the Congo in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc. to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]



F°251

# REPUBLIQUE DU CONGO

## AU NOM DU PEUPLE CONGOLAIS

ROLE CIVIL N°547
ANNEE:2005

REPERTOIRE N°476
DU 04-07-05

L'an deux mil cinq;
Et le quatre du mois de juillet;

Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc EPIKI, Greffier en Chef des Chambres Civiles audit Tribunal;

Vu la requête en date à Pointe-Noire du 02 Juillet 2005 de la Société Nationale des Pétroles du Congo (SNPC), ayant pour conseils Maître Irène Josiane OKOKO, Hervé OBONGUI NGUIE et Nadia MACOSSO, Avocats à la Cour B.P 5137 Pointe-Noire;

Attendu qu'à l'appui de sa requête, elle expose: Que se prévalant de ce qu'elles ont été saisies par la société AF CAP (titulaire d'une créance sur la République du Congo suivant une décision de la Cour Suprême de l'Etat de New York du 9 Mai 2000) par les décisions des 4 et 22 février 2005 de la Cour du District de l'Ouest du Texas, Division Austin, Etats-Unis d'Amérique, les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited [illegible] de ses [illegible] les parts de pétrole brut correspondant aux [illegible] à la République du Congo au titre de la convention pour la production d'hydrocarbures du 25 Mai 1979;

Que les décisions des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales dues à la République du Congo, le versement desdites redevances en numéraire au Greffe de la Cour en faveur de AF CAP en règlement de la créance de celle-ci sur la République du Congo ainsi que [illegible] supplémentaire que la Cour ordonnera. Ces décisions interdisent également la République du Congo et toute personne ayant connaissance de ces décisions de transférer, dissimuler ou de disposer des intérêts de la République du Congo;

Que dans une lettre en date du 16 mai 2005, la société CMS Nomeco Inc déclare que les décisions américaines sont également applicables aux parts de pétrole brut revenant à la SNPC au titre de la convention du 25 Mai 1979;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

Qu'en effet, une décision de Justice rendue par une juridiction étrangère, même en présence de la renonciation par le débiteur de son immunité de juridiction et d'exécution ne peut pas s'exécuter de plein droit en territoire étranger qu'elle doit, pour recevoir exécution, être soumise à la procédure d'exequatur telle que prévue par l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière selon lequel: "sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente ratione materiae pour en connaître";

Qu'en l'occurrence, les décisions américaines des 4 et 22 février 2005 n'ont pas été notifiées à la SNPC et que ni la société AF CAP, prétendue créancière de la République du Congo, ni les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited, tiers saisis, n'ont formulé devant les Tribunaux Congolais une demande d'exequatur des mêmes décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à la législation en vigueur en République du Congo; l'article 97 de la loi N°13/81 du 14 ~~[illegible]~~ mars 1981 instituant la charte des Entreprises d'Etat dispose que les biens de

.../...

EXHIBIT G



l'entreprise - État sont insaisissables;

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de la SNPC détenues par les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain, d'ordonner aux minute que ces sociétés livrent à la SNPC ses parts de pétrole brut;

Qu'en conséquence de ce qui précède la SNPC sollicite que par décision de référé d'heure à heure, soit constaté que les tribunaux congolais ne sont saisis d'aucune décision rendue par une juridiction américaine et portant saisie des parts de pétrole brut de la SNPC au titre de la convention du 25 mai 1979; -dit que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les Cours et Tribunaux Congolais; -constaté que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise; -ordonné aux sociétés CMS Nomeco, Nuevo Congo Company et Nuevo Congo Limited de livrer à la SNPC les parts de pétrole brut lui revenant, conformément aux dispositions de la convention du 25 mai 1979; -ordonné l'exécution de droit de la décision à intervenir nonobstant toutes voies de recours; -statué ce que de droit sur les dépens;

Attendu que par écritures en date du 06 Juillet 2005, la société CMS NOMECO Congo Inc, ayant pour conseil Maître Sylvie Nicole MOUYECKET, a réagi en ces termes;

Qu'un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la Société Nationale des Pétroles du Congo entre les mains de la Société CMS NOMECO Congo Inc;

Que si la société CMS NOMECO Congo Inc est condamnée à livrer ces parts de pétrole brut à la Société Nationale des Pétroles du Congo au mépris du contenu de la décision d'une Cour Américaine, celle-ci risque de se trouver sous la contrainte d'une double obligation de paiement;

Que la société CMS Nomeco Congo Inc a introduit des requêtes de non lieu auprès de plusieurs Cours Américaines au motif que la livraison des parts de pétrole bruts à la Société Nationale des Pétroles du Congo serait obligatoire en Droit Congolais nonobstant l'existence d'une décision contraire émanant d'une juridiction Américaine et que l'une de ces Cours a rejeté cette requête, les autres ne s'étant pas prononcées sur le sujet;

Qu'enfin, compte tenu du fait que la société CMS NOMECO CONGO INC est une Société Américaine et que les procédures en cours sont des procédures Américaines, une décision émanant d'une juridiction Congolaise obligeant la Société CMS NOMECO Congo Inc à livrer des parts de pétrole brut à la SNPC exposerait la société CMS NOMECO CONGO INC au risque d'effectuer un double paiement;

Qu'en effet, si tel était le cas, la Société CMS NOMECO CONGO INC serait contrainte de livrer des parts de pétrole brut à la SNPC en conformité avec la décision du Tribunal de Grande Instance tout en courant le risque de devoir également effectuer un paiement aux Etats-Unis afin de se conformer à la décision de la Cour Américaine;

Que la Société NOMECO CONGO INC étant manifestement un tiers aux procédures mentionnées ci-dessus, elle ne devrait pas avoir à subir de telles conséquences;

Que l'article 299 du CPCCAF dispose: "Sauf conventions diplomatiques contraires les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente "ratione materiae" pour en connaître";

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions des juridictions étrangères exécutées sur le territoire Congolais;

Que or les décisions de la Cour de District des Etats-Unis, District de l'Ouest

du Texas, ont été rendues, signifiées et exécutées et exécutées aux Etats-Unis;

que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC;

que la Société Nationale des Pétroles du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP

que la SNPC sous-tend en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi, notamment des articles 30 de l'Acte Uniforme OHADA portant Organisation des Procédures Simplifiées de Recouvrement des Créances et des Voies d'Exécution et 77 de la Charte des Entreprises d'Etat;

que or, il a été rappelé supra que la société CMS NOMECO Congo Inc n'est que" tiers-détenteur" des parts de pétrole brut querellées entre la société Américaine AF-CAP Inc et la SNPC suite aux décisions Américaines en dates respectives du 04 et 22 Février 2005;

que le fait pour la société CMS NOMECO Congo Inc d'avoir immobilisé ces parts de pétrole brut, suite aux décisions des juridictions Américaines, ne signifie pas que la Société CMS NOMECO Congo Inc revêt la qualité de saisissant;

que la société CMS NOMECO Congo Inc ne saurait opiner sur cette question d'immunité de saisie qui intéresse les principales parties au litige, notamment la Société Américaine AF-CAP Inc et la SNPC;

Que le Juge saisi, constatera que un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO INC, que la Société CMS NOMECO CONGO INC n'est que"tiers-détenteur" des parts de pétrole brut immobilisées; dira que seuls les effets de cette exécution sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC, constatera l'absence d'un quelconque acte d'exécution accompli sur le territoire Congolais;

Qu'en conséquence, il dira n'y avoir lieu à ordonner la livraison des parts de pétrole brut sollicitée par la République du Congo; Condamnera la République du Congo aux dépens;

SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier: Que la Société Nationale des pétroles du Congo SNPC, est une entreprise d'Etat; Qu'à ce titre elle bénéficie de l'immunité de saisie prévue à l'article 77 de la charte nationale des entreprises d'Etat qui dispose que"les biens de l'entreprise d'Etat sont insaisissables sauf les cas prévus par la procédure de liquidation de l'entreprise";

Attendu que dans ces conditions, il y a lieu de faire application des dispositions de l'article 30 de l'Acte Uniforme portant Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Qu'en effet l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose que"l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient d'une immunité d'exécution";

Attendu qu'en l'espèce, la SNPC est une entreprise d'Etat et bénéficie de l'immunité d'exécution;

qu'il y a lieu de lui appliquer les dispositions de l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Attendu également que les décisions des Tribunaux Américains dont exécution, ne sont pas encore exéquaturées;

Attendu en effet que l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière(CPCCAF) dispose que " Sauf conventions diplomatiques con-

.../...

traires, les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione materiae pour en connaître";

Attendu qu'à ce jour, ni le bénéficiaire desdits jugements, ni la société NOMECO n'ont saisi la juridiction congolaise pour solliciter l'exéquatur desdites décisions;

Attendu en conséquence qu'il n'y a lieu donc à exécution desdites décisions américaines rendues;

Attendu qu'au regard de ce qui précède, il y a lieu de dire que la requête de la société SNPC est donc régulière et recevable;

Attendu au fond qu'elle est fondée;

Qu'il y a lieu d'y faire droit;

Attendu qu'il y a lieu de rejeter purement et simplement tous les arguments développés par la société NOMECO;

Attendu que la société NOMECO CONGO INC a succombé au procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du Code de Procédure Civile, Commerciale, Administrative et Financière;

PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé, en matière d'exécution et en premier ressort;

Au principal; Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent, vu l'urgence et par provision;

Constatons que la SNPC est bénéficiaire de l'immunité d'exécution;

Constatons que les décisions judiciaires américaines rendues en la matière ne sont pas encore exéquaturées au Congo;

Constatons que lesdites décisions sont contraires à l'ordre public;

En conséquence;

Ordonnons aux sociétés CMS NOMECO, Nuevo Congo Company et Nuevo Congo Limited de livrer les parts de pétrole brut revenant à la SNPC conformément aux dispositions de la convention du 25 Mai 1979;

Disons que la présente ordonnance sera exécutée en cas de résistance avec l'aide de la Force Publique;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours;

Mettons les dépens à la charge de la société CMS NOMECO CONGO INC;

.../...

-5-

Et avons signé notre Ordonnance avec le Greffier./.

Suivent les signatures(s) illisibles du Président et du Greffier suit la mention d'enregistrement. Enregistré à Pointe-Noire le 04 juillet 2005

Pour expédition collationnée, certifiée conforme à l'original établie en ........ 5 Pages.

POINTE-NOIRE, le 05 juillet 2005

Le Greffier en Chef

[illegible] République du Congo mande et ordonne à tous huissiers sur ce requis de mettre ledit jugement à exécution, aux Procureurs Généraux et aux Procureurs de la République près les Cours et Tribunaux de Grande Instance d'y tenir la main, à tous Commandants et officiers de la force publique de prêter main forte lorsqu'ils en seront légalement requis.

En foi de quoi la présente expédition a été signée et scellée par Monsieur le Greffier en Chef du tribunal de Grande Instance de POINTE-NOIRE et par [illegible] sous forme de [illegible].

Par [illegible]

[illegible]

Me R. KOUD-OKOUO
Gréffier en Chef

**EXECUTION COPY**

F No. 251

CIVIL LIST No. 547
YEAR: 2005

**REPUBLIC OF THE CONGO**
**ON BEHALF OF THE CONGOLESE PEOPLE**

REGISTER No. 476
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

With reference to a motion dated July 2, 2005 in Point Noire from Société Nationale des Pétroles du Congo (SNPC), with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

Whereas in support of its motion, it stated: whereas AF CAP (which held a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) carried out an attachment against Nuevo Congo Company and Nuevo Congo Limited, based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

Whereas in a letter dated May 16, 2005, CMS Nomeco Inc. represented that the U.S. decisions are applicable as well to the shares of crude oil due to the SNPC under the agreement of May 25, 1979;

But whereas these decisions could not be executed in the Republic of the Congo;

Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF), according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas in this case, the SNPC was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each State that is a Party may not be garnished even though it may be held by third parties;

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with the laws in effect in the Republic of the Congo; Article 77 of Law No. 13/81 of March 14, 1981, creating the Charter of Government Corporations, provides that the property of Government Corporations is not subject to garnishment;

Whereas, therefore, since the issue of the delivery of the SNPC's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver to the SNPC its shares of crude oil ;

Whereas consequently, based on the foregoing, the SNPC is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction and on the garnishment of the SNPC's shares of crude oil under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to the SNPC, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in documents dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to Société Nationale des Pétroles du Congo held by CMS Nomeco Congo Inc;

Whereas if CMS Nomeco Congo. Inc. is ordered to deliver these shares of crude oil to Société Nationale des Pétroles du Congo despite the content of the decision of a U.S. Court, the SNPC may find itself under the constraint of a dual obligation for payment;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that the delivery of the shares of crude oil to Société Nationale des Pétroles du Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco Congo Inc. is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco Congo Inc. to deliver shares of crude oil to the SNPC would render CMS Nomeco Congo Inc. liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco Congo Inc. would be forced to deliver shares of crude oil to the SNPC in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas Nomeco Congo Inc. was obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

Whereas Article 299 of the CPCCAF provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this text it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas Société Nationale des Pétroles du Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas the SNPC further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the SNPC, due to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco Congo Inc. has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, particularly AF-CAP Inc., the U.S. company, and the SNPC;

Whereas the Judge before whom the matter was brought shall find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco Congo Inc., whereas CMS Nomeco Congo Inc. is only a "third party holder" of the immobilized shares of crude oil; shall find that only the effects of this execution are felt in the Congo through CMS Nomeco Congo Inc., shall find that no execution whatsoever has been carried out in Congolese territory;

Whereas consequently, the Court shall find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and shall order the Republic of the Congo to pay the costs;

BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that Société Nationale des Pétroles du Congo SNPC is a Government Corporation; whereas consequently it enjoys the immunity from garnishment stipulated in Article 77 of the National Charter of Government Corporations that provides that "the property of government corporations may not be garnished except in cases provided for by the procedure for the liquidation of the corporation;"

Whereas under these conditions, there is reason to apply the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

Whereas Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution provides that "enforcement and precautionary measures are not applicable to persons that enjoy immunity from execution;"

Whereas in this instance, the SNPC is a Government Corporation and enjoys immunity from execution;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;

Whereas furthermore, the decisions of the U.S. courts, including execution, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas as of today, neither the beneficiary of said decisions nor Nomeco have come before the Congolese courts to solicit the authority to execute said decisions;

Whereas consequently, there is therefore no reason to execute said U.S. decisions that have been handed down;

Whereas with regard to the foregoing, there is reason to find that the SNPC's motion is in order and admissible;

Whereas, in substance, it is grounded;

Whereas there is reason to accept it;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

<u>NOW THEREFORE</u>

Ruling in public, based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

<u>On the merits</u>, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the SNPC does enjoy immunity from execution;

We find that the decisions of the U.S. Courts handed down in this matter have not yet been authorized for enforcement in the Congo;

We find that said decisions are in conflict with the public order;

Consequently;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to the SNPC in accordance with the provisions of the agreement of May 25, 1979;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]