# Pepper Hamilton LLP
##### Attorneys at Law

Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302.777.6500
Fax 302.421.8390

M. Duncan Grant
302.777.6544
grantm@pepperlaw.com

January 17, 2007

Via CM / ECF

Honorable Sue L. Robinson
United States District Court
844 King Street
Wilmington, DE  19801

      Re:    Connecticut Bank of Commerce v. Republic of Congo,
               Defendant, CMS Nomeco Congo, Inc., Garnishee
               Civil Action No. 05-762 SLR

Dear Judge Robinson:

      I write in advance of the discovery conference scheduled for 2:00 p.m. tomorrow, to provide the Court with garnishee CMS Nomeco's submission on the discovery disputes to be addressed by the Court at the conference. Although the scheduling order called for a joint submission, and although we prepared a joint version of the report (containing text that had been given to us by plaintiff Af-Cap's counsel), Af-Cap has just informed us that it will not agree to a joint filing. For that reason, we now submit this letter on behalf of CMS Nomeco alone.

      As will be explained further below, the discovery disputes at issue have been significantly affected by the plaintiff's recent "emergency" request for injunctive relief, which will require the Court to address certain merits issues in this case at an early date. To clarify those issues, CMS Nomeco separately submits a preliminary response to the request, a review of which may assist the Court in addressing the discovery issues discussed herein.

## Introduction and Background

      Before addressing the overbroad and improper discovery sought by the plaintiff in this case, and Af-Cap's refusal in most respects to provide meaningful information in response to CMS Nomeco's requests, CMS Nomeco submits the following introductory discussion of the nature of the case and description of identical litigation in Texas federal courts that has been the subject of important decisions of the Fifth Circuit Court of Appeals that reject that identical

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 2

litigation. CMS Nomeco respectfully submits that it is appropriate to evaluate the disputed discovery requests, and the burden that compliance with those requests would impose, in light of the insurmountable legal obstacles (based on the recent Fifth Circuit decisions and clear principles of Delaware garnishment law) that preclude any relief in this case, obstacles that must necessarily be considered in connection with the plaintiff's recent request for injunctive relief.

       This is a garnishment action filed by Af-Cap, Inc. ("Af-Cap") against CMS Nomeco, seeking to collect on a judgment against the Republic of Congo ("the Congo"). Af-Cap is in the business of acquiring the distressed debt of impoverished nations on "secondary" markets for pennies on the dollar; it then tries to collect those debts from companies doing business in the affected regions, such as CMS Nomeco. CMS Nomeco is the operator of an oil concession in the Congo pursuant to which the Congo is entitled to periodically take in-kind royalty oil that is produced, stored, and taken in Congolese territorial waters. Af-Cap asks this Court to uphold garnishment of the Congo's right to take oil in its own territorial waters. The Congo has refused to recognize the authority of U.S. courts to garnish its rights to take its own oil in its own territory and has obtained Congo court orders against CMS Nomeco requiring that CMS Nomeco permit it to take its royalty oil in the Congo, notwithstanding the then-pending garnishment writs in Texas. In connection with those Congo court orders, the Congo threatened to use and actually used public force to overcome CMS Nomeco's resistance. At the last Congo oil lifting that occurred in April 2006, armed police boarded the storage vessel, where the produced oil is stored, to ensure compliance with the Congo court's orders.

       ***Af-Cap's claims were defeated in Texas because the Congo's in-kind royalty is not subject to garnishment.*** Af-Cap's garnishment action filed in Superior Court and removed to this Court follows its defeat in identical litigation against CMS Nomeco in the United States District Court for the Western District of Texas. In that case, the Western District of Texas held that the Congo's in-kind royalty was not subject to garnishment because non-monetary obligations are not subject to garnishment as a matter of state garnishment law. Af-Cap appealed that decision, and while that appeal was pending, it filed this separate garnishment action, seeking the same relief that it was denied in Texas. On August 23, 2006, the Fifth Circuit affirmed the Western District's dismissal of the garnishment action, holding that the Congo's in-kind royalty is not subject to garnishment under state garnishment law. *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006).

       To prevail, Af-Cap must convince this Court either that the Fifth Circuit's decision that the Congo's in-kind royalty is not subject to garnishment as a matter of state law is wrong, or that the Delaware garnishment law is distinguishable from Texas garnishment law. Any such argument is untenable. The Delaware garnishment statute limits the categories of property subject to garnishment to "[g]oods, chattels, rights, credits, moneys, effects, lands and tenements." 10 *Del. C.* § 3508. With regard to the language in Section 3508 that potentially

Pepper Hamilton LLP
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 3

reaches obligations, i.e., "rights" and "credits," the Delaware Supreme Court has held that "'it is well settled that not all rights are subject to attachment'" *McNeilly v. Furman*, 95 A.2d 267, 271 (Del. 1953) (citations omitted). The Court emphasized that "[h]istorically attachment was strictly confined to a 'debt', that is, a liquidated claim," and that "[t]he word 'rights' is bracketed with the word 'credits', *which imports a fixed monetary obligation.*" *Id.* (emphasis added). Thus, the Delaware Supreme Court has already held that the type of obligation that is subject to garnishment in Delaware is a "fixed monetary obligation." *Id.*

In addition, the Fifth Circuit concluded that the Texas writs were void ab initio under the Foreign Sovereign Immunities Act for reasons equally applicable here. Additionally, in a separate Texas garnishment action brought against CMS Nomeco by another judgment creditor of the Congo (in which Af-Cap intervened), FG Hemisphere Associates L.L.C., in the Southern District of Texas, the Fifth Circuit issued a decision on July 10, 2006, reversing the district court's orders that had authorized the issuance of writs of garnishment against CMS Nomeco. The Fifth Circuit directed that the writs of garnishment be reversed under the Foreign Sovereign Immunities Act ("FSIA"). FG Hemisphere Associates L.L.C. v. Republique du Congo, 455 F.3d 575 (5th Cir. 2006). Specifically, the Fifth Circuit held that the FSIA requires a district court, before issuing a garnishment writ in a garnishment action involving property of a foreign state, to make specific and express findings that the foreign state's property is "in the United States" and "used for commercial activity in the United States" as required by the FSIA, based on the circumstances existing at the time the writ is authorized, as well as findings that the property is subject to garnishment as a matter of state law. 455 F.3d at 590-91, 595-96. The Fifth Circuit held that absent such findings in the authorizing court order, based on the circumstances existing at the time the writ is authorized, the order is void ab initio, and the writs must be dissolved. Thus, the Fifth Circuit held, as a matter of federal law, that the writs issued against CMS Nomeco in the litigation in the Southern District of Texas were improperly issued and ordered them dissolved.

It is beyond dispute that the writ that is the subject of this case, which was issued by the Superior Court, is void ab initio under the Fifth Circuit's analysis. The Order of the Superior Court authorizing the writ issued in October 2005 makes no findings concerning the "in the United States" and "commercial activity in the United States" requirements under the FSIA, nor does it make any findings regarding the amenability of the Congo's property to garnishment under state law. Af-Cap is left only with the argument that the Fifth Circuit is wrong on this threshold issue of federal law.

***When the writ in this case was served and answered, the Congo had no garnishable right to take oil.*** Another obstacle is the undisputed fact that under the agreements between CMS Nomeco and the Congo, the Congo had no right to take any oil as of the service and answer dates for the October 2005 writ. The Congo took a government oil lifting in

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 4

September 2005 and it and its state owned oil company, SNPC, were in a combined "over-lifted" position as of the service and answer dates and, pursuant to the pertinent agreements, they were not entitled to take a lifting of oil, as explained further in CMS Nomeco's preliminary response to AF-Cap's injunction motion. The Delaware Supreme Court has made it clear that a garnishor has no greater rights against the garnishee than the judgment debtor would have to recover against the garnishee in an action at law. *Wilmington Trust Co. v. Barron*, 470 A.2d 257, 263 (Del. 1983). Because the Congo had no right to recover oil as of the service and answer dates for the writ, Af-Cap can have no such rights, under controlling Delaware authority.

> ***Because CMS Nomeco faces double liability, this Court's prior decisions dictate that the writ may not be enforced.*** Even if Af-Cap could overcome these insurmountable legal obstacles to its case, it still must deal with this Court's prior decision in *LNC Investments, Inc. v. Nicaragua*, No. Misc. A. 01-134-JJF, 2002 WL 32818644 (D. Del. Dec. 18, 2002), in which Judge Farnan held that garnishment of a debt owed to a foreign government must be quashed if the garnishee may not be protected from double liability by virtue of the fact that the foreign state's law would not recognize the garnishment as a defense to performance of the obligation within the foreign state's territory. The Congo has taken all of the oil that Af-Cap could conceivably argue to be the subject of the writ issued by the Superior Court, under compulsion of Congolese court orders applying Congolese law that were obtained against CMS Nomeco, meaning that any judgment against CMS Nomeco in this case necessarily would impose double liability against CMS Nomeco. Af-Cap acknowledges that it is attempting to impose double liability on CMS Nomeco, asserting that CMS Nomeco should be required to pursue reimbursement from the Congo for its losses. That approach is inconsistent with the principles applied by Judge Farnan in *LNC Investments*, which acknowledge that garnishees are worthy of protection against double liability, as strangers to the underlying debt.

> ***Other defenses.*** In addition to the double liability issue, the Congo's action in obtaining court orders in its own territory requiring that it be allowed to take its oil notwithstanding U.S. garnishment writs also compels the conclusion that this case is barred by principles of foreign state compulsion and the act of state doctrine.

> ***Af-Cap's motion for injunctive relief omits facts and distorts the Fifth Circuit's rulings on these threshold issues.*** In its recent "Emergency Motion" seeking injunctive and other relief, Af-Cap fails to address these critical legal issues, other than to assert (wrongly) that the Fifth Circuit rejected defenses based on interference with the garnishment by the Congo or its courts. The Fifth Circuit made no such ruling; the opinion relied on by Af-Cap was issued months before the Congo ever sought or obtained any court orders against CMS Nomeco, and the opinion does not address those issues. With regard to the factual underpinnings of the Emergency Motion, Af-Cap complains that CMS Nomeco "violated" the October 2005 writ that is the subject of this case by making "royalty payments" to the Congo in April 2006, and that this

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 5

Court should impose contempt sanctions in the millions of dollars by virtue of CMS Nomeco's "payments" to the Congo. That motion fails to even mention the Congo court orders and the events surrounding the purported "payment" in April 2006, which in fact was a court-compelled lifting of oil by the Congo in its own waters, with the use of public force (boarding of the storage vessel by armed police) to ensure compliance. Apparently, Af-Cap is of the view that those facts are not relevant to its requests for millions of dollars in sanctions and injunctive relief against CMS Nomeco, in which Af-Cap seeks an order from the Court that would require CMS Nomeco to resist (exactly how, they do not say) the Congo's stated intention to take another lifting of oil in February 2007, as it is entitled to do under the terms of the concession agreement with CMS Nomeco.

*Af-Cap's approach to discovery ignores the relevant legal issues.* As the discussion of the relevant issues makes clear, the issues raised in this case are narrow. As discussed below, the broad discovery that Af-Cap seeks in this case relates primarily to its allegations that CMS Nomeco engaged in "collusion" with the Congo and that such "collusion" obviates the double liability and foreign state compulsion defenses arising out of the Congo court orders. While CMS Nomeco asserts that such "collusion" allegations are baseless, CMS Nomeco has no objection to appropriate discovery going to alleged "collusion" that would be relevant to the issues raised in this case. But to be relevant, such allegations necessarily must be directed to collusion relating to the Congo court orders, which were obtained by the Congo in December 2004, July 2005, and March 2006. Despite the narrow issues presented by the "collusion" allegations, and despite the fact that this case presents primarily if not exclusively legal issues, Af-Cap has sought broad deposition and document discovery, purportedly based on the alleged need for broad discovery going to the "relationship" between the Congo and CMS Nomeco, going back at least a decade. In light of the narrow (and primarily legal) issues presented in this case, Af-Cap's discovery is improper.

### Af-Cap's Improper Document Discovery to CMS Nomeco

The areas of dispute with regard to Af-Cap's document requests are as follows:

1. *Documents generated prior to September 2004.* Af-Cap's document requests are not limited as to time and many seek documents going back to the inception of the oil production concession (which was executed in 1979, and under which production started in 1991). In particular, despite the fact that this garnishment action is limited to Af-Cap's claim that it is entitled to garnish the Congo's right to take oil as it existed in October 2005, Af-Cap sought production of all documents concerning every tax and royalty payment made since the inception of the concession. Tax payments or royalty payments occurring over the many years that the concession has been in place have no bearing whatsoever on this proceeding.

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 6

There is no basis for Af-Cap to request documents going back so far. As noted above, any alleged "collusion" would have to relate to the Congo court orders issued in December 2004, July 2005, and March 2006 to have any bearing on this matter. The Congo only sought and obtained those Congo court orders after the Fifth Circuit had decided that the Congo had, for a period of time, used a portion of the royalty to pay another judgment creditor, and that the FSIA did not preclude garnishment based on the circumstances existing in early 2003. *See Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361 (5th Cir. Sept. 17, 2004), *clarified on reh'g*, 389 F.3d 503 (5th Cir. 2004). As a result of that decision, a number of courts in Texas issued garnishment writs against CMS Nomeco in October, November and December 2004, which led to the Congo court orders in December 2004, July 2005, and April 2006. While CMS Nomeco strongly disagrees that there is any reasonable basis on which to conclude that "collusion" has occurred, Af-Cap's bare suspicion of collusion is not a basis for imposing the burden of collecting and producing documents from periods long before that purported "collusion" would have allegedly begun. CMS Nomeco therefore has produced documents for the period beginning at the time of the Fifth Circuit decision (September 17, 2004) to the present.

    **2.** ***Documents generated in connection with the successful defense of the Texas litigation.*** Af-Cap sought production of all documents reflecting communications, including internal communications, relating to the successful defense of the Texas garnishment litigation brought by Af-Cap and other judgment creditors of the Congo, as well as documents relating to attorney's fees incurred in the Texas litigation. In essence, Af-Cap's request for production purported to require CMS Nomeco to gather and produce, or log as privileged, every communication generated over the course of almost six years of garnishment litigation in Texas in multiple courts, as well as their internal communications relating to attorney's fees in the Texas litigation. There is no legitimate basis for such expansive, overbroad, and harassing discovery. In response to these requests, CMS Nomeco has agreed to produce communications with Congolese government officials or with officials of the Congo's state-owned oil company, SNPC, relating to the Texas litigation, during the period following the Fifth Circuit's September 17, 2004 decision that ultimately led to the Congo court orders. That approach reasonably provides Af-Cap with discovery on alleged "collusion" pertaining to the Congo court orders.

A request for a fishing expedition through every communication generated over the course of six years of garnishment litigation is not a proper discovery request, as it does not specify with reasonable particularity the documents to be produced, and in any event, communications relating to the successful defense by CMS Nomeco and the Congo to garnishment writs found by the Fifth Circuit to be wrongfully issued have no bearing whatsoever on any allegations of collusion with regard to the December 2004, July 2005, and March 2006 Congo court orders.

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 7

      Much of the burden created by these requests relates to the review that would be required to identify the literally thousands of communications between CMS Nomeco business people and its in-house counsel; between CMS Nomeco and its outside counsel; and internal communications among CMS Nomeco's counsel during the years of litigation, for purposes of identifying privileged communications and logging those communications. Af-Cap's counsel has also suggested that CMS Nomeco should be required to wade through all of those communications, and identify and produce or log as privileged, every communication with a "third party" or between counsel for CMS Nomeco and Cleary Gottlieb, counsel for the Congo in the Texas litigation, regardless of subject matter. Af-Cap's counsel has yet to provide an explanation of why such communications would have any bearing on the narrow issues raised in this garnishment litigation. Though Af-Cap has claimed a willingness to negotiate over this issue, it has yet to identify a workable demarcation line between what it insists CMS Nomeco produce or log and what it need not produce or log. CMS Nomeco respectfully submits that a reasonable solution to this and the larger scope issue is to limit the discovery to those communications bearing on Af-Cap's purported "collusion" claim: the communications with the Congolese and SNPC government officials relating to the Texas litigation.

      3.    *E-mail collection method.* In the garnishment litigation in the Southern District of Texas, the plaintiff in that case sought the production of e-mails based on a group of search terms which produced a vast quantity of e-mail to be reviewed—literally hundreds of thousands of pages of e-mails and attachments. Complicating the review, the documents were in English, Spanish, French, and German, and many related to entirely irrelevant operations of CMS Nomeco's affiliates around the world, some as far away as Central and South America. Even after an in-house legal team of four lawyers and four support staff put in more than four thousand hours of review time to cull the resulting e-mail set for responsiveness and privilege, the task was less than half complete. A team of lawyers for CMS Nomeco's outside counsel was then assembled for the purpose of completing the massive privilege review that was required to complete the production. Much work still remained in that process when that process was stopped as a result of the decision by the Fifth Circuit in the FG Hemisphere case, holding that the writs were void *ab initio*.[1] The plaintiff in the Southern District of Texas litigation has now abandoned the claims and the discovery.

      To balance the burden of Af-Cap's document request with its need for discovery, CMS Nomeco proposed and undertook the following procedure: CMS Nomeco identified all of

---

[1] The "potentially privileged" set requiring careful review comprised nearly 60,000 e-mails. A multi-lingual team of twenty-four outside attorneys and paralegals had begun reviewing the culled documents for privilege during June and July of 2006. Though the task was less than halfway done by the time the Fifth Circuit's ruling shut down the case, it had already cost the client hundreds of thousands of dollars.

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 8

its employees who actually deal with or do business in the Congo; it asked those personnel to identify their Congolese government or SNPC contacts; and has searched those employee's e-mail accounts for e-mails to, from, or concerning those contacts. CMS Nomeco is reviewing those e-mails for documents responsive to Af-Cap's requests, subject to privilege and CMS Nomeco's other scope objections, and is in the process of turning over responsive documents. CMS Nomeco expects this method, in combination with its paper document production, to turn up all communications potentially relevant to Af-Cap's "collusion" allegations at a fraction of the cost of the Texas discovery.

Based on the conversations between counsel to date, the only disputes as to this method of searching email accounts concerns the accounts to be searched and the time period to be searched. Consistent with the discussion of relevant time period in point 1 above, CMS Nomeco is searching for the time period September 17, 2004 to present. Af-Cap demands that the search cover the email accounts on the Perenco email system for the entire period since Perenco acquired CMS Nomeco in September 2002. With regard to the issue of pertinent email accounts to be searched, CMS Nomeco submitted to Af-Cap for its comment the names of the employees whose Perenco email accounts were to be searched and the Congo/SNPC contacts for which searches would be completed. Af-Cap responded by requesting that one Congolese contact name be added to the list of search terms and that the search pool be expanded to include eight additional e-mail accounts.

CMS Nomeco has complied with the request to add a search term. Four of the additional accounts requested were those of employees who left before or shortly after CMS Nomeco was acquired by its present ultimate parent, Perenco S.A.; as to those accounts, CMS Nomeco has searched all e-mail that is available on the Perenco email system according to the protocol described above, and is in the process of reviewing same for potential production. The other four employees, not having responsibility for contact with the Congo or SNPC, are not reasonably relevant to the "collusion" inquiry, and Af-Cap has identified no basis on which to conclude that these four employees could have had any communications relevant to that inquiry (especially without those communications having already been captured in the e-mail accounts being searched). Therefore, CMS Nomeco has declined to add them to the search.

In summary, the disputes relating to the email search parameters relate to (1) Af-Cap's contention that the time period for the search of Perenco email accounts should go back to the Perenco acquisition, and CMS Nomeco's contention that it should be limited to the time period September 17, 2004 to present, and (2) Af-Cap's disputed request to include a search of Perenco email accounts of four individuals who were not involved in communications with Congolese officials. CMS Nomeco submits that there is no legitimate reason to require CMS Nomeco to engage in a search going back to September 2002, nor is there a reason to search the

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 9

email accounts of individuals having no contacts with Congolese officials for email containing the names of such officials.

      4.    ***Negotiation of the Amendment to Lifting Agreement.***  Af-Cap has sought discovery on the negotiation of the Amendment to Lifting Agreement, dated July 2001, which memorialized procedures relating to the Congo's in-kind election that was made in November 1999 and implemented shortly thereafter. Without explaining what possible bearing it could have on the issues raised in this garnishment litigation arising out of service of a garnishment writ in October 2005, Af-Cap has asserted in its recent Emergency Motion that "[d]uring the proceedings in Texas, CMS colluded with Congo to purport to restructure the form and location of payment of the royalties from cash paid in the United States to oil delivered in Congo, all expressly for the purpose of defeating or hindering Af Cap's ability to collect on its judgment." That factual allegation is frivolous, as the in-kind election was made by the Congo in November 1999, and the Congo has actually been taking its oil in-kind since the government oil lifting that occurred in early 2000, long before the Texas garnishment proceedings. The Fifth Circuit, in concluding that the in-kind nature of the Congo's royalty precluded garnishment, specifically held that "[s]ince 1999, the Congo has opted to receive 100 percent of its payments 'in kind.'" *Af-Cap III*, 462 F.3d at 422. Satellite litigation over the negotiation of the amendment to lifting agreement has nothing to do with the issues in this case.

      5.    ***Maritime taxes.***  Af-Cap requests documents relating to a dispute between CMS Nomeco and the Congolese government which led to a decision by CMS Nomeco, in the spring of 2001, to offset wrongful maritime taxes imposed by the Congolese government against the Congo's royalty entitlement. The Congo has not challenged that procedure. The maritime taxes were a subject of discovery in the Western District litigation, and Af-Cap has failed to provide any pertinent explanation of how communications relating to the maritime tax dispute in 2001 has any connection to the issues raised by the October 2005 garnishment writ.

      CMS Nomeco proposed, as a compromise on the issues relating to the amendment to lifting agreement and maritime taxes, that it would search for such documents in the personal files of three individuals formerly associated with CMS Nomeco who were involved in discussions with the Congo concerning those subjects, to the extent those personal files can be located. Af-Cap has refused to agree to that approach. CMS Nomeco suggests that if the Court determines that any discovery should be permitted on the issues of maritime taxes and the negotiation of the amendment to the lifting agreement, it should be limited, at least initially, to the review of the portions of the Ozturgut, Scrimgeour, and Marshall personal files relating to those topics. To the extent the review of those documents suggests the need for further discovery, that issue can be revisited at that time.

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 10

### Af-Cap's Improper Deposition Discovery

1. ***Rule 30(b)(6) Deposition.*** Af-Cap noticed a Rule 30(b)(6) deposition of CMS Nomeco, purporting to require a witness to testify concerning the negotiation of the concession and related agreements going back to 1979, all royalty payments over the entire life of the concession, all tax payments over the life of the concession, all purchases made in connection with operations over the life of the concession, and all activities of CMS Nomeco in the United States over the entire life of the concession. The impropriety of these overbroad, irrelevant, and harassing topics is further illustrated by the fact that CMS Nomeco was the subject of a stock acquisition transaction that occurred in September 2002, and as a result, none of the current officers, directors, or employees of CMS Nomeco, other than a handful of local operational personnel in the Congo, were involved with the company prior to the Perenco acquisition. The notice of deposition, as written, thus would have required substantial and burdensome work to learn the details of payments and activities that have no possible bearing on the narrow issues raised in this garnishment action. Af-Cap has stated in general terms that it disagrees with any restrictions on its noticed topics.

However, the previous dispute about the propriety of the original notice is moot. CMS Nomeco presented a corporate representative, Mr. Roland Fox, who was prepared to testify regarding those matters which were properly the subject of this case. Af-Cap deposed Mr. Fox for seven hours. Af-Cap has not identified any questions asked of Mr. Fox on which he was unable or unprepared to testify, other than questions relating to details regarding the negotiation of the amendment to lifting agreement, which, as discussed above, is not relevant to the claims and defenses raised in this case and which, having take place before the Perenco acquisition of CMS Nomeco, was not something in which any current CMS Nomeco employees participated. As such, CMS Nomeco objects to any request to resume the corporate representative deposition of CMS Nomeco.

2. ***Depositions of Maryse Bernard and Jean-Michel Runacher.*** On January 9, 2006, only seventeen days before the discovery deadline, and the day before Af-Cap filed its Emergency Motion, its counsel sent an email to CMS Nomeco's counsel requesting dates for the depositions of Maryse Bernard and Jean-Michel Runacher, two individuals who are from London. In seeking those depositions at that late date, Af-Cap was fully aware that the London depositions could not be scheduled within the discovery period, particularly in light of hearings scheduled in this litigation and related litigation in the Chancery Court during the week of January 15 and depositions noticed for that week and the following week. CMS Nomeco objected to the request for the depositions on the grounds that it was a de facto request for an extension of the discovery deadline. The impropriety of the late request is confirmed by the actual notices for those depositions issued by Af-Cap's counsel after CMS Nomeco communicated its objection to the depositions. Specifically, even though the deposition of

**Pepper Hamilton LLP**
_____ Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 11

Plaintiff's expert is scheduled for January 25, 2007 in Houston, Af-Cap noticed both Ms. Bernard's deposition and Mr. Runacher's deposition the next day, on January 26, 2007, in London, with both depositions to start simultaneously, at 9:00 a.m.

The noticing of the depositions under these circumstances is improper, and the notices should be stricken.

### Af-Cap's Improper Objections to CMS Nomeco's Written Discovery

Notwithstanding Af-Cap's expansive view of the discovery burdens imposed on an innocent third-party garnishee such as CMS Nomeco, it takes an extremely limited view of its own discovery obligations. Specifically, it takes the position that it has no obligation to provide any discovery beyond proof that it owns the debt of the Congo that is the subject of this proceeding. As a general matter, it has responded to CMS Nomeco's discovery requests consistent with that strident position, even though it is now asking this Court to grant injunctive relief that requires a showing of irreparable injury and other elements for such relief. Af-Cap—like any other plaintiff (particularly one requesting a temporary injunction)—is obligated to produce information supporting its claims and its allegations of irreparable harm. Both its general approach to the discovery and its specific responses are inconsistent with those obligations.

Set out below is a description of the significant areas of dispute regarding Af-Cap's discovery responses:

1. *Documents, interrogatories, and corporate representative topic related to Af-Cap's investment in the debt and the value of the debt.* CMS Nomeco has requested the production of information showing the consideration paid by Af-Cap to acquire the Congo's debt that is the subject of this proceeding and the value of the judgment that it claims to hold, and CMS Nomeco has also asked interrogatories on those topics and sought deposition testimony from a corporate representative of Af-Cap on those topics. While Af-Cap has now produced some documents relating to its investment, those documents are not complete. It also has not yet provided an interrogatory response on this issue, and it has continued to object to the portion of the corporate representative deposition notice for Af-Cap that addresses the investment in the debt. Af-Cap also has refused to produce documents relating to the value of the judgment. This information is pertinent in at least two significant areas. First, CMS Nomeco requests this discovery to probe Af-Cap's allegations concerning its alleged acquisition of the debt from the FDIC. It has taken the position in this and other litigation that it acquired the debt from the FDIC. In the proceedings in the Fifth Circuit, counsel for Af-Cap argued that the fact that the debt was acquired from the FDIC has legal significance. CMS Nomeco sought this discovery in part to test Af-Cap's assertions that it acquired its interest in the debt from the FDIC and not

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 12

previously. Second, the discovery is pertinent to the balance of potential harms that could arise from its request for injunctive relief. The amount of Af-Cap's investment in the debt and the value of the judgment that it allegedly holds is pertinent to the issue of alleged harm to Af-Cap, which in turn is pertinent to the irreparable injury issue raised by Af-Cap's Emergency Motion. As detailed in CMS Nomeco's preliminary response, CMS Nomeco faces the loss of an oil production concession valued in the tens of millions of dollars as well as other significant risks. Indeed, the Congo has already given a written warning to CMS Nomeco threatening confiscation of the concession rights if the Congo is not permitted to take its own oil. The amount of Af-Cap's investment and the value of the judgment that allegedly is at stake is relevant to the balancing of the equities. Af-Cap should be required to produce the documents showing the amount of that investment and how and when it was paid. It also should be required to produce documents relating to the value of the judgment, and it should be required to answer the interrogatories and provide corporate representative testimony prepared to address those topics.

        2.     *Documents, interrogatories, and corporate representative topics related to Af-Cap's other potential sources of collection.* CMS Nomeco has requested documents, interrogatory answers, and corporate representative testimony regarding Af-Cap's efforts to collect the Congolese debt at issue. Af-Cap has objected on relevance grounds. For the same reasons set out in paragraph 1 above, the information requested is pertinent to the balance of harms. CMS Nomeco is entitled to probe whether Af-Cap has other potential sources of collection that it can pursue without imperiling the economic interests of innocent third parties like CMS Nomeco. Af-Cap should be required to produce responsive documents and to provide a corporate representative prepared to address this topic in deposition.

        3.     *Documents and corporate representative testimony related to Af-Cap's failure to seek recognition of writs in the Congo.* CMS Nomeco has requested information evidencing any consideration given by Af-Cap to seeking recognition of garnishment writs in Congolese courts. The failure to obtain recognition is one of the grounds pointed to by the Congo court in holding that the writs are unenforceable under Congolese law. Af-Cap objects on relevance grounds. If Af-Cap has documents addressing the futility of efforts to obtain recognition of the writs in the Congo or to prevent the Congo from taking oil in its own territorial waters, such documents would belie Af-Cap's claims in this case and would support CMS Nomeco's position that the injunction sought imperils its interests. Af-Cap also should be required to provide a corporate representative prepared to address this topic.

        4.     *Interrogatories and corporate representative testimony directed to Af-Cap's ability and intentions with regard to payment of costs to CMS Nomeco.* Af-Cap, an offshore company that has been reluctant to disclose details of its operations, has refused to identify assets that would be available to satisfy an award of costs, including attorney's fees, and other losses and damages which CMS Nomeco may be entitled to recover from Af-Cap. 10

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 13

*Del. C.* § 3512 specifically gives this Court the authority to require the plaintiff to "provide approved security to indemnify the defendant for defendant's costs, losses and damages resulting from the attachment." Furthermore, this Court has the inherent authority to require security for costs, including attorney's fees, where the circumstances warrant. Aggarwal v. Ponce School of Medicine, 745 F.2d 723, 726 (1st Cir. 1984); Ehm v. Amtrak Board of Directors, 780 F.2d 516, 517 (5th Cir. 1986). In light of the risk of loss that CMS Nomeco faces by virtue of Af-Cap's efforts to interfere with the performance of its contract in the Congo by way of the garnishment writ and the injunctive relief that it seeks, and by virtue of the enormous attorney's fees that CMS Nomeco is incurring in this litigation, despite its lack of any involvement in the underlying debt transaction, CMS Nomeco has a substantial case for a request for an order requiring security. The discovery sought relates to Af-Cap's ability and intentions to pay CMS Nomeco's costs, losses, and damages in the event CMS Nomeco prevails in this action. The information obtained in such discovery will be pertinent to the Court's consideration of a request for security both under the Delaware statute and pursuant to the Court's inherent authority to require such security.

   5. ***Email discovery.*** Af-Cap has made no effort to search for or provide any emails that are responsive to CMS Nomeco's requests, and it has offered no proposal for searching to locate pertinent emails falling within the scope of CMS Nomeco's requests. Af-Cap should be required to include in its document production emails that are responsive to CMS Nomeco's requests, utilizing an appropriate search methodology for locating those emails.

   6. ***Deposition of James Perkins.*** Af-Cap recently filed an emergency motion, seeking to hold CMS Nomeco in contempt for "royalty payments" that Af-Cap asserts were made in April 2006, purportedly in violation of the October 2005 writ at issue in this case. As noted above, the emergency motion fails to disclose to the Court the facts surrounding the April 2006 oil lifting, which was taken by the Congo under compulsion of Congo court orders and through use of public force, with armed police boarding the storage vessel to ensure compliance with the Congo court's orders. The Affidavit provided in support of the motion, which contains 11 pages of factual allegations, many of which are demonstrably wrong, also fails to mention the Congolese court orders and the use by the Congo of public force. That Affidavit, on which the emergency motion is based for its factual support, was signed by James Perkins, a partner with Greenberg Traurig. The Affidavit states that the "factual statements made herein are based upon my personal knowledge obtained as counsel for the plaintiff in this action."

   Because Mr. Perkins was the factual witness providing the evidentiary support for Af-Cap's emergency motion, counsel for CMS Nomeco notified counsel for Af-Cap of its intention to take Mr. Perkins' deposition. Counsel for Af-Cap objected to the request, stating that the affidavit was simply a "transmittal affidavit." To the contrary, the affidavit constituted

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Sue L. Robinson
January 17, 2007
Page 14

the factual basis for the motion, and Mr. Perkins's affidavit makes him amenable to a deposition to test the factual statements in the submitted affidavit.

Because Af-Cap's counsel objected to the deposition, CMS Nomeco informed counsel for Af-Cap that it would notice the deposition for January 19 in New York (Mr. Perkins is in Greenberg Traurig's New York office), with the dispute over that deposition to be presented to the Court at the January 18 discovery conference for resolution.

CMS Nomeco respectfully submits that in light of Af-Cap's reliance on the fact testimony of Mr. Perkins in support of its emergency motion, CMS Nomeco is entitled to take the deposition of Mr. Perkins.

There is a very slight degree of non-overlap between the discovery issues identified by the opposing parties. Because we received Af-Cap's position paper only some 40 minutes before the 2:00 deadline for e-filing, time has not permitted CMS Nomeco to include a written response to those issues that it did not anticipate that Af-Cap would raise. CMS Nomeco will consider whether to make a short supplemental filing to address those issues in writing, and in any event, we will be prepared to discuss them at tomorrow afternoon's discovery conference.

CMS Nomeco appreciates the Court's attention to these matters and looks forward to the discovery conference, so that CMS Nomeco may answer any questions the Court may have.

Respectfully,

/s/ M. Duncan Grant

M. Duncan Grant (Del. Bar No. 2994)

cc: Dennis Meloro, Esq. (w/enc.) - Via CM / ECF