EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| REPUBLIQUE DU CONGO | § | |
| Defendant, | § | CIVIL ACTION No. H-02-4261 |
| | § | |
| and | § | |
| | § | |
| CMS OIL AND GAS COMPANY, et. al., | § | |
| | § | |
| Putative Garnishees. | § | |

## DECLARATION OF MARYSE BERNARD

I, Maryse Bernard, declare:

1.    My name is Maryse Bernard.  I am President of CMS Nomeco Congo LLC, which was formerly known as CMS Nomeco Congo Inc. ("CMS Nomeco").  I have held that position since 19 October 2004.  I am also President of The Nuevo Congo LLC, which was formerly known as The Nuevo Congo Company ("Nuevo Congo").  I have held that position since 19 October 2004.  I have personal knowledge concerning the facts set out in this declaration.

2.    CMS Nomeco, Nuevo Congo, and Nuevo Congo Ltd. (collectively "Garnishees") and Société Nationale des Pétroles du Congo ("SNPC," the Congolese state-owned oil company) are the current working interest owners under a Convention for oil production in Congolese waters originally entered into in May 1979 ("the Convention").  CMS Nomeco is the current operator under the Convention.

3.    The Convention entitles the Congo to receive royalties.  Under Article 7 of the Convention, the Congo may elect to receive royalties in cash or in-kind.  As stated in the

Amendment to Lifting Agreement, in 1999, the Congo changed its election to an in-kind election.

4.    The Convention was executed in the Congo in 1979 and is governed by Congolese law. The oil is extracted from the submerged seabed adjacent to the Congo's coast, in areas within the Congo's exclusive jurisdiction under Congolese and international law. The oil flows through a subsurface pipeline system to a storage vessel in Congolese coastal waters, known as the "Conkouati." A lifting occurs when oil is offloaded from the Conkouati onto a vessel nominated by the buyer of the oil. Garnishees, as working interest owners, take liftings of oil stored on the Conkouati for their own account, and sell 100% of the oil so lifted for their own account.

5.    CMS Nomeco, as operator, calculates the effect of liftings, on a barrel basis, on the over- or under-lifted position of SNPC and the Congo, and records that effect on an "over/under statement." As described in the Amendment to Lifting Agreement, once the combined under-lifted position of SNPC and the Congo reaches at least 275,000 barrels, SNPC may schedule and take the next lifting of oil for itself and the Congo. When SNPC takes a lifting, SNPC sells, for its own and the Congo's account, all the barrels that it lifts. The SNPC lifting satisfies the Congo's in-kind royalty and puts SNPC into an over-lifted position. Garnishees take liftings until the combined under-lifted position of SNPC and the Congo again exceeds 275,000 barrels, when SNPC may take and sell the next lifting oil for itself and the Congo, again satisfying the Congo's in-kind royalty and again putting SNPC into an over-lifted position.

6.    By letter dated 22 October 2004, CMS Nomeco gave formal notice to the Congo of court orders and writs issued in U.S. proceedings filed by the Congo's judgment creditors. A

2

true and correct copy of that letter is attached as Exhibit 1. The Congo's Minister of Hydrocarbons responded by letter dated 4 November 2004, threatening termination of the Convention if the Congo was not allowed to lift its royalty oil. A true and correct copy of that letter, along with an English translation, is attached hereto as Exhibit 2.

7.      The writs of garnishment issued in October and November 2004 only addressed the Congo's royalty and not SNPC's working interest. CMS Nomeco notified the Congo that a lifting of royalty oil would not be permitted, and that in connection with the next government lifting (which was expected to take place in late December 2004), only a partial lifting of SNPC working interest oil would be allowed. Arrangements for tugs and other logistics of the partial lifting were undertaken, but on 23 December 2004, the Court in Houston issued new writs of garnishment directed to the SNPC working interest. I was in Brazzaville, Congo on 28 December 2004 to inform government officials of the decision to not allow any lifting of oil in light of writs of garnishment issued by U.S. courts, including those issued on 23 December 2004. On 28 December 2004, a court sitting in the Congo, upon applications by the Congo and SNPC, entered two orders requiring that CMS Nomeco, as operator of the storage terminal, deliver working interest oil and royalty oil to SNPC. True and correct copies of those orders, with English translations thereof, are attached hereto as Exhibits 3 and 4. The Director General of the Congo's Ministry of Hydrocarbons showed me copies of the Congo court orders and told me that I would be detained until the lifting of oil was completed. I was told that public force would be used if the lifting of oil by SNPC was not allowed to take place. Based on these events, I authorized CMS Nomeco's operations manager to give instructions to permit the lifting of oil. On 28-29 December 2004, SNPC took a lifting of SNPC working interest oil and the Congo's

3

royalty oil. A true and correct copy of a memorandum that I prepared shortly after these events, which accurately describes the events, is attached hereto as Exhibit 5.

8.    On 3 March 2005, the Congo sent a letter to the United States District Court for the Western District of Texas taking the position that the U.S. courts do not have the authority to transfer the rights of the Congo to dispose of its resources within its own borders. A true and correct copy of the Congo's 3 March 2005 letter, with an English translation, is attached hereto as Exhibit 6.

9.    Subsequently, CMS Nomeco notified the Congo and SNPC that the next SNPC lifting of the Congo's royalty oil and SNPC's working interest oil would not be allowed in light of U.S. writs and orders. On 4 July 2005, a Congo court in Point Noire, Congo, upon applications filed by the Congo and SNPC, issued orders against CMS Nomeco directing CMS Nomeco to deliver the Congo's royalty oil and SNPC's working interest oil to SNPC. True and correct copies of the July 2005 Congo court orders are attached hereto as Exhibits 7 and 8. Subsequent to the issuance of the July 2005 Congo court orders, and in compliance therewith, CMS Nomeco made arrangements for tugs and other logistics associated with the lifting that the Congo court had ordered, under compulsion of the orders. In early September 2005, SNPC took a lifting of the Congo's royalty oil and SNPC's working interest oil under compulsion of the July 2005 court orders.

10.    Currently, the combined under-lifted position of the Congo and SNPC is in excess of 275,000 barrels. Under the terms of the Amendment to Lifting Agreement, SNPC has taken the position that it is entitled to take a lifting of oil in the Congo during the period 11-13 April 2006, or shortly thereafter. Under the terms of the Amendment to Lifting Agreement, certain events are required before the Congo and SNPC become entitled to take an oil lifting, and under

4

the terms of the Amendment to Lifting Agreement, the government lifting was not to take place until sometime in late March or early April 2006, at the earliest. Nonetheless, CMS Nomeco, as operator, sent a letter to SNPC notifying it that in light of the orders and writs issued by U.S. courts, it would not allow SNPC to take the April lifting. A true and correct copy of that letter, along with an English translation thereof, is attached as Exhibit 9. SNPC responded by way of a letter dated 20 March 20 2006. A true and correct copy of SNPC's 20 March 2006 letter, along with an English translation thereof, is attached hereto as Exhibit 10. SNPC's 20 March 2006 letter notified CMS Nomeco that the U.S. writs of garnishment were contrary to the Congo's public policy and international public policy and unenforceable, and it threatened court action in the Congo. By letter dated 24 March 2006, CMS Nomeco notified SNPC that it stood by its position set out in its prior letter. A true and correct copy of CMS Nomeco's 24 March 2006 letter, along with an English translation thereof, is attached hereto as Exhibit 11.

11.     On 27 March 2006, I learned that a summons was received by the secretary of CMS Nomeco's finance manager at CMS Nomeco's offices in Point Noire, Congo at approximately 10:45 a.m. that day, for a hearing to take place at 11:00 a.m. that day, on an application by SNPC for an order compelling CMS Nomeco to deliver the April 2006 lifting to SNPC. A true and correct copy of the summons is attached hereto as Exhibit 12. CMS Nomeco was unaware of any application filed by SNPC prior to service of the summons delivered to CMS Nomeco's offices in Point Noire, Congo at approximately 10:45 a.m. on 27 March 2006. CMS Nomeco had no opportunity to be heard at the hearing on 27 March 2006. CMS Nomeco's finance manager subsequently forwarded to me a copy of the order issued by the Court on the afternoon of 27 March 27 2006, which was served on him late that day. A true and correct copy of that order, with an English translation thereof, is attached hereto as Exhibit 13. I have read the

5

order, including the language in the order referencing a statement made by CMS Nomeco's "Counsel, Mr Mouyecket." CMS Nomeco did not retain a "Mr Mouyecket" to represent CMS Nomeco in connection with the SNPC application. In connection with the July 2005 court proceedings in the Congo, CMS Nomeco retained Ms. Mouyecket as its counsel to represent it in those proceedings but never contacted or hired her in connection with the March 2006 application. In anticipation that SNPC would seek court relief, CMS Nomeco had retained Mr. Jean Petro, a lawyer in Point Noire, Congo, to represent its interests in connection with any such application. When CMS Nomeco received notice of the hearing on March 27, at the time the summons was delivered at approximately 10:45 a.m. that day, CMS Nomeco attempted to contact Mr. Petro but was unable to reach him. CMS Nomeco never received any communication or information from Ms. Mouyecket concerning the application that was heard by the Congolese court on 27 March 2006, and CMS Nomeco never communicated any information to Ms. Mouyecket or gave her any instructions in connection with the application that was heard by the Congolese court on 27 March 2006. To the contrary, the first notice that CMS Nomeco had of the application was at approximately 10:45 a.m. on 27 March 2006, and CMS Nomeco had no opportunity to retain counsel or to present submissions to the Congolese court in connection with the hearing on that application.

12.    CMS Nomeco has filed appeals of the December 2004 and July 2005 orders, but those appeals have not yet been heard. CMS Nomeco intends to appeal the order entered by the Congolese court on 27 March 2006.

13.    CMS Nomeco has offices in The Republic of Congo, and its employees are all located and work in The Republic of Congo. None of the activities of CMS Nomeco Congo Inc. relating to the operation of the Marine I permit are carried out in the United States. In fact, for

6

more than two years, all of the business activities in which CMS Nomeco engages and has engaged are and have been outside the United States.

14.    CMS Nomeco is a Delaware limited liability company. CMS Nomeco is owned 100% by Perenco Oil and Gas (International) Company f/k/a CMS Oil and Gas (International) Company. On September 13, 2002, the stock of CMS Oil and Gas (International) Company was sold by CMS Oil and Gas Company (an affiliate of CMS Enterprises Company) to Lankan Inc. (an affiliate of Perenco S.A.). On that same day, the prior directors and officers of CMS Nomeco Congo Inc. resigned, and new directors and officers were appointed. Thereafter, new directors and officers were appointed from time to time. At all times since 12 February 2004, the directors and officers of CMS Nomeco are and have been individuals who reside outside of the United States, consistent with the fact that all of the business activities in which CMS Nomeco engages are outside of the United States. During the period after 12 February 2004 to the present, CMS Nomeco has had no offices, no directors, no officers, no employees, and no business activities in the United States.

15.    CMS Nomeco does not maintain a registered agent in the State of Texas. The writs of garnishment issued on October 26, 2005 have never been served on any officer of CMS Nomeco.

16.    Nuevo Congo is a non-operator working interest owner in the Marine I permit in Congolese waters. None of the activities of Nuevo Congo relating to the Marine I permit are carried out in the United States. In fact, since July 30, 2004, all of the business activities in which Nuevo Congo engages and has engaged are and have been outside the United States.

17.    Nuevo Congo is a Delaware limited liability company. Nuevo Congo is owned 100% by The Congo Holding Company. On 30 July 30 2004, the stock of The Congo Holding

Company was sold by Nuevo International, Inc. (an affiliate of Plains Exploration & Production Company) to Lankan Inc. (an affiliate of Perenco S.A.). On that same day, the prior directors and officers of Nuevo Congo resigned, and new directors and officers were appointed. The new directors and officers are and at all times since 30 July 2004 have been individuals who reside outside of the United States, consistent with the fact that all of the business activities in which Nuevo Congo engages are outside of the United States. During the period of time from 30 July 2004, to the present, Nuevo Congo has had no offices, no directors, no officers, no employees, and no business activities in the United States.

18.    Nuevo Congo does not maintain a registered agent in the State of Texas. The writs of garnishment issued on October 26, 2005 have never been served on any officer of Nuevo Congo.

19.    I declare under penalty of perjury, under the laws of the United States of America, that the foregoing statements are true and correct.

EXECUTED on the 3rd day of April, 2006, in London, United Kingdom.

Maryse Bernard

8

# EXHIBIT 1

# CMS NOMECO CONGO INC.

B.P. 212
Pointe Noire,
République du Congo

22 October 2004

M. Jean-Baptiste TATI LOUTARD
Ministre des Hydrocarbures

M. Rigobert Roger ANDELY
Ministre de l'Economie, des Finances et du
Budget

BP 2120 Brazzaville
République du Congo

BP 2083 Brazzaville
République du Congo

Monsieur le Ministre des Hydrocarbures,
Monsieur le Ministre de l'Economie, des Finances et du Budget,

The purpose of this letter is to inform you of the status of litigation in the United States brought by judgment creditors of The Republic of Congo to garnish royalty under the Convention and tax obligations owed by CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. in connection with the Marine I permit.

On September 17, 2004, the United States Court of Appeals for the Fifth Circuit issued a decision holding that royalty under the Convention and tax obligations to the Congo are subject to garnishment by Af-Cap, Inc., a judgment creditor of the Congo. Attorneys for CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd., together with the American lawyers for the Congo, filed petitions for rehearing with the Court of Appeals on October 1, 2004, asking that the September 17, 2004 decision be overturned. On October 13, 2004, the Court of Appeals directed Af-Cap, Inc. to file a response to the rehearing petitions, which it filed on October 18, 2004. The Court of Appeals has not yet rendered a decision on the petitions for rehearing, and those petitions remain pending. However, Af-Cap, Inc. is attempting to implement the decision of the Court of Appeals in the lower court in Austin, seeking issuance of new writs of garnishment. If such writs are issued, the writs will direct that CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. not pay any debt or deliver any property to the Congo pending further order of the Court. The lower court has not yet entered an order on Af-Cap's request for issuance of new writs of garnishment, but stated at a hearing conducted on October 15, 2004 that it intended to grant Af-Cap's request for new writs of garnishment.

Other judgment creditors of the Congo are also seeking to garnish obligations owed by CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. to the Congo, based

on the Court of Appeals' decision in the Af-Cap case. Specifically, FG Hemisphere Associates LLC obtained issuance of writs of garnishment by a district court in Houston, Texas, on October 5, 2004. Subsequently, FG Hemisphere Associates LLC made a filing with the court abandoning the writs to the extent they covered tax obligations, but the writs otherwise remain in effect. The answer to those writs of garnishment is due on October 26, 2004. Additionally, Walker International Holdings, Ltd. has filed a garnishment action against CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. in Austin, Texas. To our knowledge, no writs of garnishment have yet been issued by the court in that case.

Please advise if you have any questions concerning these developments.

Very truly yours,



RODRIGO MARQUEZ
Vice President

cc.     M. Nestor Tchissambot-Makosso
        Directeur Général des Hydrocarbures

# EXHIBIT 2



9-NOV-2004 16:33  DE:FONDS DPT GARANTIES 242 B1S216                    A:0033145636637              P:2/2

242 816216

MINISTERE DES HYDROCARBURES

---

MINISTERE DE L'ECONOMIE,
DES FINANCES ET DU BUDGET

N° 04 X 1 1072 /MHC-CAB

REPUBLIQUE DU CONGO
Unité – Travail – Progrès

Brazzaville, le 4 novembre 2004

Les Ministres,

A

CMS Nomeco Congo

Pointe-Noire

Par porteur

Messieurs,

Nous accusons réception de votre lettre du 22 Octobre 2004 par laquelle vous nous informez du jugement rendu le 17 septembre 2004 par la *United States Court of Appeals for the Fifth Circuit* ainsi que des actions judiciaires engagées par des créanciers de la République du Congo dans l'Etat du Texas.

Nous souhaitons, par la présente, vous rappeler les obligations de livraison de la redevance souscrites par les associés du permis Marine 1 aux termes de la Convention susvisée. La non-livraison de la redevance en nature par un associé constituerait un manquement majeur à une obligation contractuelle essentielle qui conduirait à une résiliation immédiate de la Convention aux torts et griefs de l'associé défaillant.

Compte tenu de ce qui précède, nous souhaitons que vous nous confirmiez par écrit le 12 novembre 2004 au plus tard que CMS Nomeco Congo se conformera strictement en toutes circonstances à ses obligations de livraison de la redevance minière en application des termes de la Convention, ainsi que de paiement de toute autre imposition exigible en République du Congo.

Veuillez adresser toute correspondance aux soussignés qui sont les seuls représentants autorisés de la République du Congo concernant ce dossier.

Veuillez agréer, Messieurs, l'expression de notre considération distinguée.

Le Ministre des Hydrocarbures                    Le Ministre de l'Economie et de Finances,
et du Budget,

Jean-Baptiste Toti-Loutard                          Rigobert Roger Andely



# Communication Alliance

1880 S. Dairy Ashford, # 215
Houston, Texas 77077
. . . . . . . . . .
Tel: 281-920-4802
Fax: 281-920-4803
Email: CommAll@aol.com

## Affidavit of Accuracy

This is to certify that to the best of my knowledge and ability, the attached translation is an

accurate, true and complete rendition into English of a letter from the Ministry

of Hydrocarbons of the Republic of the Congo

written in French and pertaining to Perenco LLC .

Michèle Tropée
Professional English/French Translator
ATA Accredited

Sworn to and subscribed before me on this 10th day of November 2004.



Notary Public – State of Texas

DANIELLE Y. PUNG
MY COMMISSION EXPIRES
June 12, 2006





MINISTRY OF HYDROCARBONS
--------------------------------

MINISTRY OF THE ECONOMY,
FINANCE AND THE BUDGET
--------------------------------

No. 04x11072/MHC-CAB

REPUBLIC OF THE CONGO
UNITY – WORK – PROGRESS
--------------------------------

Brazzaville, November 4, 2004

*The Ministers,*

To:
CMS Nomeco Congo
Pointe-Noire

<u>By courier</u>

Gentlemen:

We acknowledge receipt of your letter dated October 22, 2004 in which you informed us of the decision handed down on September 17, 2004 by the United States Court of Appeals for the Fifth Circuit as well as the legal actions filed by the creditors of the Republic of the Congo in the State of Texas.

We hereby wish to remind you of the obligations to deliver royalties incumbent on the Marine 1 permit associates in accordance with the above-mentioned agreement. Non-delivery of royalties in kind by an associate would constitute gross breach of a basic contractual obligation that would entail immediate termination of the agreement, entitling the injured party to sue the defaulting associate.

Taking the foregoing into account, we hope that you will confirm in writing by November 12, 2004 at the latest that CMS Nomeco Congo will strictly comply with its mining royalty delivery obligations under all circumstances, in application of the terms of the Agreement, as well as payment obligations for any other tax due in the Republic of the Congo.

Please address all correspondence to the undersigned, who are the sole authorized representatives of the Republic of the Congo with respect to this matter.

Sincerely,

Minister of Hydrocarbons

[signature]
[seal of the Ministry of Hydrocarbons]
Jean-Baptiste Tati-Loutard

Minister of the Economy, Finance and the Budget

[signature]
[seal of the Ministry of Economy, Finance and Budget]
Rigobert Roger Andely

# EXHIBIT 3

REPERTOIRE   N° 1131 /
DU 28 DECEMBRE 2004

REPUBLIQUE DU CONGO
AU NOM DU PEUPLE CONGOLAIS
- ORDONNANCE -
*=*=*=*=*=*=*=*

**GROSSE**



A F F A I R E :

REPUBLIQUE DU CONGO
MINISTERE DES HYDROCARBURES, Département du
KOUILOU (Me NISSIE)

C O N T R E :

C M S NOMECO INC (CONGO

O B J E T :   REFERE D'HEURE A HEURE.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

L'AN DEUX MIL QUATRE ;

ET, LE VINGT HUIT DU MOIS DE DECEMBRE ;

PAR DEVANT NOUS, Norbert ELENGA, Président du
Tribunal de Grande Instance de Pointe-Noire, tenant audience publi-
que des référés en notre Cabinet sis au Palais de Justice de cette
ville ;

A   C O M P A R U

Le République du Congo, Ministère des Hydrocarbu-
res agissant aux dilligences demon représentant légal ;

Qu'elle a été saisie par les créanciers américain
de l'Etat Congolais, la société NOMECO qui devait lui livrer une
cargaison de 550.000 barils de pétrole, refuse de s'exécuter au mo-
tif que cette cargaison fait l'objet d'une saisie suivant la déci-
sion du Tribunal de l'Etat de Texas du 17 Septembre 2004, rendant
possible la saisie attributive de la dite cargaison ;

Or une décision de Justice rendue par une juridic
tion étrangère, même en présence de la renonciation par le débiteur
de son immunité de juridiction et d'exécution ne peut pas s'exécuter
de plein droit en territoire étranger qu'elle doit, pour recevoir
exécution, être soumise à la procédure d'exéquatures telle que pré-
vue par l'article 299 du code de procédure civile, commerciale ad-
ministrative et financière selon lequel : "Sauf conventions diplo-
matiques contraires, les jugements rendus par les tribunaux étran-
gers et les actes par les officiers publics ou ministériels étran-
gers ne sont susceptibles d'exécution sur le territoire congolais
qu'après avoir été déclarés exécutoires par une juridiction congol-
lais qui aurais été compétente "ratione matériae " pour en connai-
tre :

Qu'en l'espèce et sans qu'il soit nécessaire de
débattre du bien fondé ou on de l'action en saisie des créanciers
d'origine américaine, il y a lieu de relever que la décision sur
laquelle se fonde la société NOMSCO n'a jamais été exéquaturée et ,
pire, les tribunaux congolais ne sont pas encore saisis d'une de-
mande en ce sens ;

Qu'il concient donc, la question de l'enlèvement de
la cargaison detenue par NOMECO étant urgente et comportant un péril
certain, d'ordonner sur minute que la NOMECO livre à tout opérateur
que lui désignera la SNPC ladite cargaison ;
                                        .../...

SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il resulte de l'examen des pièces du dossier que la société NOMECO a fait application d'un jugement américain rendu dans l'Etat du Texas en date du 17 Septembre 2004 à l'encontre de l'Etat Congolais ;

Attendu que ledit jugement n'a jamais été exéquaturé par les juridictions congolaises ;

Que dans ces conditions, ledit jugement ne satisfait pas aux dispositions légales notamment l'article 299 du code de procédure civile, commerciale, administrative et financière Congolais qui dispose que "sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente "ratione materise " pour en connaître ;

Attendu dès lors que la requête de l'Etat Congolais est donc regulière et recevable en outre de l'article 207 du code de Procédure civile, commerciale, administrative et financière ;

Attendu au fond qu'elle est fondée ;

Qu'il y a lieu d'y faire droit ;

Qu'il échet d'ordonner à la société NOMECO à livrer sans delai à tout opérateur que lui designera la SNPC toutes les quantités d'hydrocarbures lui appartenant et detenue par elle en vertu de leur contrat de partenariat ;

Attendu que la société NOMECO regulièrement convoquée a comparu par le biais du représentant du Directeur Général, Monsieur Benoît DE LA FOUCHARDIERE, Directeur des opérations ;

Qu'il y a lieu de lui donner acte ;

Attendu que la société NOMECO a succombé au procès ;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du code de procédure civile, commerciale, administrative et financière ;

PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé en matière civile, en premier ressort ;

AU PRINCIPAL

Renvoyons les parties à mieux se pourvoir ainsi qu' elles en aviseront ;

MAIS DES A PRESENT, VU L'URGENCE ET PAR PROVISION

Constatons que le jugement du 17 Septembre 2004 n' est pas été encore exéquaturé par les juridictions congolaises ;

Constatons que ledit jugement n'a jamais été signifié à l'Etat Congolais ;

...../...

Copie certifiée Conforme
à l'original par
Maître Joachim MITOLIO
Huissier de Justice Commissaire-Priseur
B.P. 1334  TEL: 94..51-29

EN  CONSEQUENCE ;

Ordonnons à la société NOMECO de livrer sans delais
tout opérateur que lui designera la SNPC, toutes les quantités
d'hydrocarbures lui appartenant et detenue par elle en vertu de leur
contrat de partenariat ;

Ordonnons l'exécution provisoire de la présente ordon
nance nonobstant toutes voies de recours ;

Mettons les dépens à la charge de la Société NOMECO

Et, avons signé notre Ordonnance aec le Greffier./-

uivent les signatures (s) initial
du Président et du Greffier
Suit le Mention d'Enregistrement
Enregistré à POINTE-NOIRE le 28 Décembre 2004
Pour expédition certifiée conforme
POINTE-NOIRE le 28 Décembre 2004

1.- Greffier en Chef

En conséquence : la République du Congo
mande et ordonne à tous huissiers sur ce
requis de mettre ledit jugement à exécution
aux Procureurs Généraux et aux Procureurs
de la République Près les Cours et Tribunaux
de Grande Instance d'y tenir la main à tous
Commandants et officiers de la force publique
de prêter main forte lorsqu'ils en seront
légalement requis

En foi de quoi la présente expédition
a été signée et scellée par Monsieur le
Greffier en chef du tribunal de Grande
Instance de POINTE-NOIRE et est lui
délivrée sous forme de grosse

Par le Tribunal
Collationné
Le Greffier  Chef

Me R. XOUD-OKOUO
Greffier en Chef

# Certification of Translation

*ATA Certified*
*Steven Sachs*

This is to certify that the following document:

Court Order in the matter of Republic of the Congo v. CMS NOMECO INC. CONGO.

is an accurate and true translation prepared by the undersigned from French into English. I am a translator certified by the American Translators Association for translation from French into English.

_____                                    1-10-05
Steven Sachs                                                            Date
1312 Harbor Road
Annapolis, MD 21403

E-mail: steven@stevensachs.com
Ph: (301) 261-1018
Fax: (509) 461-9020

Subscribed and sworn before me on this 10th day of January of 2005

[Notary stamp: GAIL DUBROCHING
Notary Public
Anne Arundel County
Maryland
My Commission Expires 9/8/2008]

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES   9/8/2008

## EXECUTION COPY

### REPUBLIC OF THE CONGO ON
### BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 1131 /
OF DECEMBER 28, 2004                    O R D E R

### IN THE MATTER OF:

THE REPUBLIC OF THE CONGO

MINISTRY OF HYDROCARBONS, Department of
Kouilou (Mr. Messie, Attorney)

### VERSUS:

CMS NOMECO INC. CONGO

### SUBJECT: IMMEDIATE SUMMONS

| | |
|---|---|
| [stamp: EXECUTION COPY<br>Certified True Copy<br>Joachim Mitolo, Attorney at Law<br>B.P. 1384 [Tel. 94 83 28] | [stamp: EXECUTION COPY<br>Certified True Copy<br>Joachim Mitolo, Attorney at Law<br>B.P. [Tel. 94 83 28] [signature] |

IN THE YEAR TWO THOUSAND AND FOUR:

AND ON THE TWENTY-EIGHTH DAY OF THE MONTH OF DECEMBER;

BEFORE US, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

### THE FOLLOWING APPEARED

The Republic of the Congo, Ministry of Hydrocarbons, filing through its legal representative;

Whereas it has been garnished by the American obligees of the Congolese State, NOMECO, which was to deliver to it a cargo of 550,000 barrels of oil, and refuses to do so on the grounds that said cargo has been garnished based on the decision of the Court of the State of Texas of September 17, 2004, making possible the garnishment of said cargo;




[stamp: EXECUTION COPY          [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

Yet a court decision handed down by a foreign jurisdiction, even when the obligor renounced its immunity from jurisdiction and execution, cannot be automatically executed abroad and that, to be executed, it is necessarily subject to an execution procedure as stipulated by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

That in this case and with no necessity of debating the merits or the lack thereof of the action to garnish by the U.S. obligees, there is reason to find that the decision that NOMECO is using as a basis has never been executed. Worse, the Congolese courts have not yet received an application for authority to enforce this judgment;

That therefore, the matter of removing the cargo in the possession of NOMECO is urgent and entails a certain peril, so that it should be made enforceable immediately that NOMECO delivers said cargo to any operator that the SNPC [Société nationale des pétroles du Congo – Congo National Petroleum Company] may designate;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that NOMECO has applied a U.S. judgment handed down in the State of Texas on September 17, 2004 against the Congolese State;

Whereas said judgment has never been executed by the Congolese jurisdictions;

That under these conditions, said judgment does not satisfy the statutory provisions of Article 299 in particular of the Congolese Code of Civil, Commercial, Administrative and Financial Procedure, which stipulates that "unless there are diplomatic conventions that stipulate otherwise, the judgments handed down by foreign courts and instruments received by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that was given *ratione materiae* jurisdiction to take cognizance of the matter;

Whereas since the application of the Congolese State is thus in order and admissible under Article 207 of the Code of Civil, Commercial, Administrative and Financial Procedure;

Whereas it has merit in terms of the substance;

Republic of the Congo 1                    2

[stamp: EXECUTION COPY                    [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

That there is reason to accept it;

That NOMECO is ordered to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and that are in NOMECO's possession pursuant to their partnership contract;

Whereas NOMECO, duly convened, has appeared through the representative of the Director General, Mr. Benoît de la Fouchardière, Operations Manager;

It is to be officially recorded;

Whereas NOMECO has lost the case;

That there is reason to hold NOMECO responsible for the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

## ON THE MERITS

We refer the parties to enter an appeal as they shall advise;

## BUT AT THIS TIME, GIVEN THE URGENCY AND BY WAY OF ADVANCE

We find that the judgment of September 17, 2004 No.      has not yet been confirmed by the Congolese jurisdictions;

We find that said judgment has never been served upon the Congolese State;

## CONSEQUENTLY;

We order NOMECO to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and in NOMECO's possession pursuant to their partnership contract;

We order the immediate execution of this order notwithstanding any appeals;

The costs shall be paid by NOMECO.

Republic of the Congo [                    3



[stamp: EXECUTION COPY
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[illegible signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

And, we have signed this Order with the Registrar.
The signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on <u>December 28, 2004</u>
Certified true execution copy, checked against the original
Pointe-Noire, <u>December 28, 2004</u>
Chief Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance to assist all commanders and law enforcement agencies to lend a hand when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

Republic of the Congo 1                    4

# EXHIBIT 4

ROLE CIVIL N° 1212                              F° 204              C 1212
A N N E E    2004                    **REPUBLIQUE DU CONGO**
REPERTOIRE N° 1130  / AU NOM DU PEUPLE CONGOLAIS
DU 28 DECEMBRE 2004.-           O R D O N N A N C E .



A F F A I R E :  LA S. N. P. C

C O N T R E  :  LA SOCIETE NOMECO

OBJET  :  REFERE D'HEURE A HEURE.-

L'AN DEUX MIL QUATRE ;

ET, LE VINGT HUIT DU MOIS DE DECEMBRE ;

PAR DEVANT NOUS, Norbert NIENGA, Président
du Tribunal de Grande Instance de Pointe-Noire, tenant audience
publique des référés en notre Cabinet sis au Palais de Justice
de cette ville ;

Assisté de Maître Catherine KEDDI ISSONGO, Gref-
fier Principal ;

A C O M P A R U

La Société Nationale des Pétroles du Congo, en
sigle SNPC, établissement public à caractère industriel et com-
mercial, dont le siège social à Brazzaville B.P. 88, agissant
aux diligences de son représentant légal ;

La SNPC a été saisie par les créanciers Amé-
ricains de l'Etat Congolais NOMECO qui devait lui livrer une car-
gaison de 550.000 barils de pétrole, refuse de s'exécuter en mo-
tif que cette cargaison fait l'objet d'une saisie suivant la déci-
sion du Tribunal de l'Etat de Tera du 31 Août 2000, rendant
possible la saisie attributive de la dite cargaison ;

Or une décision de justice rendue par une juridic-
tion étrangère, même en présence de la renonciation par le débi-
teur de son immunité de juridiction et d'exécution ne peut pas
s'exécuter de plein droit en territoire étranger qu'elle doit, pour
recevoir exécution, être soumise à la procédure d'exequatur, re-
telle que prévue par l'article 299 du code de procédure civile,
commerciale, administrative et financière selon lequel : "Sauf
conventions diplomatiques contraires, les jugements rendus par
les tribunaux étrangers et les actes reçus par les officiers pu-
blics ou ministériels étrangers ne sont susceptibles d'exécution
sur le territoire congolais qu'après avoir été déclarés exécutoi-
res par une juridiction congolaise qui aurais été compétente
ratione materiae " pour en connaître";

Qu'en l'espèce et sans qu'il soit nécessaire

de débattre du bien fondé ou non de l'action au moins des créan-
ciers d'origine Américaine; il y a lieu de relever que la déci-
sion sur laquelle se fonde la société NOMECO n'a jamais été exe-
quaturée et, pire, le tribunal congolais ne sont pas encore sai-
sis d'une demande en ce sens ;

Qu'il convient donc, la question de l'enlève-
ment de la cargaison détenue par NOMECO étant urgente et compor-
tant un péril certain, d'ordonner sur minute que la Société NOMECO
livre à tout opérateur que lui désignera la S.N.P.C ladite carga-
ison ;

...../...

- 3 -

## SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il resulte de l'examen des pièces du dossier que la société CMS NOMECO a fait application du jugement américain à l'encontre de la société SNPC rendu en date du 23 Décembre 2004 ;

Attendu que ledit jugement n'est pas encore exécutoire par les juridictions congolaises ;

Que dans ces conditions, ledit jugement ne saurait pas aux dispositions légales notamment l'article 399 du code de procédure civile, commerciale, administrative et financière qui dispose que " Sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les officiers publiques ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione materiae " pour en connaître ;

Attendu que ledit jugement n'a jamais été signifié à la S.N.P.C ;

Attendu que dans ces conditions, la requête de la société SNPC est donc régulière et recevable en vertu de l'article 57 du code de procédure civile, commerciale, administrative et financière ;

Attendu au fond qu'elle est fondée

Qu'il y a lieu d'y faire droit ;

Qu'il échet d'ordonner à la société NOMECO de délivrer à tout capitaine que lui désignera la SNPC, toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat ;

Attendu que la société CMS NOMECO bien que régulièrement convoquée, a comparu par le biais de Monsieur Benoît DE LA FOUCHARDIERE, Directeur des opérations, représentant le Directeur Général ;

Qu'il y a lieu de lui donner acte ;

Attendu que la société NOMECO a succombé au procès ;

Qu'il y a lieu de la condamner aux dépens conformément à l'article 57 du code de procédure civile, commerciale, administrative et financière ;

## PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé en matière civile et en premier ressort ;

## AU PRINCIPAL

Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront ;

## MAIS DES A PRESENT, VU L'URGENCE ET PAR PROVISION

Constatons que le jugement américain du 23 Décembre 2004 n'est pas exécutoire par les juridictions Congolaises ;

Constatons que ledit jugement n'a pas été signifié à la société SNPC ;

.../...

EN CONSEQUENCE :

Ordonnons à la société NOTCO de livrer sans délai à tout opérateur que lui désignera la SNPC, toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat ;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours ;

Mettons les dépens à la charge de la société NOTCO;

Et, avons Signé notre Ordonnance avec le Greffier.

Suivent les signatures en tête(?) du Président et du Greffier
Suit la mention d'Enregistrement
Enregistré à POINTE-NOIRE le ...
Pour expédition certifiée conforme
POINTE-NOIRE le ...

Greffier en Chef

Me R. YOUD-OKOKO
Greffier en Chef

## Certification of Translation

*ATA Certified*
*Steven Sachs*

This is to certify that the following document:

Court Order in the matter of SNPC v. NOMECO

is an accurate and true translation prepared by the undersigned from French into English. I am a translator certified by the American Translators Association for translation from French into English.

_____                    1-10-05
Steven Sachs                                  Date
1312 Harbor Road
Annapolis, MD 21403

e-mail: steven@stevensachs.com
Ph: (301) 261-1016
Fax: (509) 461-9020

Subscribed and sworn before me on this 10th day of January of 2005

GAIL BURROUGHS
Notary Public
Anne Arundel County
Maryland
My Commission Expires 9/8/2008

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES    9/8/2008

**EXECUTION COPY**           F. 204                    C 1212

## REPUBLIC OF THE CONGO ON
## BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 1212 /
OF DECEMBER 28, 2004                    O R D E R

IN THE MATTER OF: SNPC

VERSUS: NOMECO

SUBJECT: IMMEDIATE SUMMONS

[stamp: EXECUTION COPY
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28]        [signature]

IN THE YEAR TWO THOUSAND AND FOUR:

AND ON THE TWENTY-EIGHTH DAY OF THE MONTH OF DECEMBER;

BEFORE US, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

Assisted by Cathérine Kedet Issongo, Head Registrar;

THE FOLLOWING APPEARED

Société Nationale des Pétroles du Congo, (acronym: SNPC), a government-owned industrial and commercial enterprise, with headquarters at B.P. 88, Brazzaville, filing through it legal representative;

The SNPC has been garnished by the American obligees of the Congolese State, NOMECO, which was to deliver to it a cargo of 550,000 barrels of oil, and refuses to do so on the grounds that said cargo has been garnished based on the decision of the Court of the State of Texas of December 23, 2004, making possible the garnishment of said cargo;

Yet a court decision handed down by a foreign jurisdiction, even when the obligor renounced its immunity from jurisdiction and execution, cannot be automatically executed abroad and that, to be executed, it is necessarily subject to an execution procedure as stipulated by Article 299 of the Code of Civil, Commercial, Administrative



[stamp: EXECUTION COPY
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[illegible signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

and Financial Procedure, according to which: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

That in this case and with no necessity of debating the merits or the lack thereof of the action to seize by the U.S. obligees, there is reason to find that the decision that NOMECO is using as a basis has never been executed. Worse, the Congolese courts have not yet received an application for authority to enforce this judgment;

Therefore, the matter of removing the cargo in the possession of NOMECO is urgent and entails a certain peril, so that it should be made enforceable immediately that NOMECO deliver said cargo to any operator that the SNPC [Société nationale des pétroles du Congo – Congo National Petroleum Company] may designate;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that NOMECO has applied a U.S. judgment handed down in the State of Texas on December 23, 2004 against the SNPC;

Whereas said judgment has never been executed by the Congolese jurisdictions;

That under these conditions, said judgment does not satisfy the statutory provisions of Article 299 in particular of the Congolese Code of Civil, Commercial, Administrative and Financial Procedure, which stipulates that "unless there are diplomatic conventions to the contrary, the judgments handed down by foreign courts and instruments received by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that was given *ratione materiae* jurisdiction to take cognizance of the matter;

Whereas, said judgment has never been notified to the SNPC;

Whereas since the application of the SNPC is thus in order and admissible under Article 207 of the Code of Civil, Commercial, Administrative and Financial Procedure;

Whereas it has merit in terms of the substance;

That there is reason to accept it;

Republic of the Congo 3                    2




[stamp: EXECUTION COPY          [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

That NOMECO is ordered to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and that are in NOMECO's possession pursuant to their partnership contract;

Whereas NOMECO, duly convened, has appeared through the representative of the Director General, Mr. Benoît de la Fouchardière, Operations Manager;

It is to be officially recorded;

Whereas NOMECO has lost the case;

That there is reason to hold NOMECO responsible for the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

## ON THE MERITS

We refer the parties to enter an appeal as they shall advise;

## BUT AT THIS TIME, GIVEN THE URGENCY AND BY WAY OF ADVANCE

We find that the judgment of December 23, 2004 has not yet been confirmed by the Congolese jurisdictions;

We find that said judgment has never been served upon the SNPC;

CONSEQUENTLY;

We order NOMECO to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and in NOMECO's possession pursuant to their partnership contract;

We order the immediate execution of this order notwithstanding any appeals;

The costs shall be paid by NOMECO.

And, we have signed this Order with the Registrar.

Republic of the Congo 3                    3

 

[stamp: EXECUTION COPY        [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

The signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on December 28, 2004
Certified true execution copy, checked against the original
Pointe-Noire, December 28, 2004
Chief Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance to assist all commanders and law enforcement agencies to lend a hand when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okono, Attorney
Head Registrar

Republic of the Congo 3                4

# EXHIBIT 5



27 Décembre :

- Arrivée à Brazzaville – l'avion a une heure de retard

- J'ai rendez-vous avec B Itoua , Président de la SNPC , à 21 heures en principe. B Itoua est en Conseil d'Administration. On ne sait quand il sortira. Finalement, à 23h30 C Oba et S Poaty arrivent à l'hôtel. On commence la réunion. Apparemment, ils ne sont pas informés du dernier jugement US concernant la SNPC. Ils font copie du jugement. B Itoua arrive à 23h45

- B Itoua paraît catastrophé quand il apprend la décision du Tribunal Américain concernant la SNPC. Je lui confirme que j'ai donné instruction au terminal de ne pas charger.

- Entre temps, j'ai confirmé les réunions avec N Tchissambot, Directeur Général des Hydrocarbures, à 10h et le Ministre à 11h.

28 Décembre :

- 11 h : Je fais un point avec N Tchissambot (il n'était pas au courant du jugement concernant la SNPC) et fais des copies pour le Ministre et lui. Je l'informe de ma réunion avec B Itoua la veille. Il était au courant car S Poaty l'avait appelé. Pour lui, pas d'autre solution que charger : au besoin l'Etat enverra une vedette avec des militaires pour forcer le terminal à charger . Il va informer le ministre de la situation pendant que j'attends dans l'antichambre. Benoit m'a informée, entre temps, qu'il y a un problème technique sur le remorqueur.

- Meeting avec le Ministre : Présents : M Tati Loutard, M Delica, M Sokath (Conseiller), N Tchissambot, + JM Runacher/M Bernard, JM Runacher présente Maryse Bernard , Présidente de CMS Nomeco Congo  INC. Le Ministre  confirme sa lettre du 21 décembre 2004 et menace de retirer les droits si CMS Nomeco Congo Inc. refuse de charger. Je lui explique que malheureusement je ne peux pas faire autrement. N Tchissambot évoque à nouveau la possibilité d'une action militaire pour contraindre le terminal à charger. Le Ministre pose ensuite quelques questions sur la production actuelle, les investissements.

PER 0018182



Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 3/12
8. AVR. 2005 16:15      PERENCO                                          N° 096      P. 3



- Benoît appelle vers 13 h. C Oba et S Poaty et un envoyé du Tribunal sont dans son bureau et veulent lui signifier une notification comme quoi il est convoqué au Tribunal de Grande Instance de Pointe Noire. Il m' apprend que le problème du treuil du remorqueur est réglé. Je lui dit d'aller au tribunal puisqu'il est convoqué et ordre de ne pas charger le bateau.

- Dans l'après-midi, nombreux AR téléphoniques avec Benoît et R Marquez. Les jugements, semble-t-il, vont être prononcés, obligeant CMS Nomeco Congo Inc. à laisser charger.

- Vers 18h15, les jugements sont faxés à l'hôtel. N Tchissambot vient à l'hôtel accompagné d'un policier en uniforme et me convie à la réception en me montrant le jugement. Il m'intime l'ordre de charger. Je lui demande ce qui se passerait si je ne m'exécute pas : il répond en souriant que je serai l'hôte de la République jusqu'à ce que le bateau soit chargé.

- Je décide alors (18h45) de donner l'ordre de charger à Benoît et je rédige un résumé de la situation que j'essaye de faxer à R Marquez, copie R Fox. Après beaucoup d'efforts et de pages blanches car les Congolais mettaient les feuilles à l'envers, le fax passe.

06/01/205

PER 0018183

Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 4/12

8. AVR. 2005 16:15     PERENCO                                           N° 096        P. 4

## ENGLISH TRANSLATION

**27 December :**

- Arrival in Brazzaville – The plane is an hour late.

- I have an appointment with B. Itoua, the President of the SNPC, at 9 PM. B Itoua attends a Board meeting. No one knows when it will end. Finally, at 11:30 PM C. Oba and S. Poaty arrive at the hotel. The meeting begins. Apparently they have not been informed of the latest U.S. judgement regarding the SNPC. They make a copy of the judgement. B. Itoua arrives at 23:45 PM.

- B. Itoua seems to be stunned when he hears about the decision of the American Court regarding the SNPC. I confirm to him that I have instructed the terminal not to load.

- Meanwhile, I have been able to confirm meetings with N. Tchissambot, General Director of Hydrocarbons, at 10:00 AM and the Minister at 11:00 AM.

**28 December :**

- 11:00 AM: Review of the situation with N. Tchissambot (he was not aware of the decision regarding the SNPC) and copies the decision for the Minister as well as for himself. I inform him of my meeting with B. Itoua the day before. He was already informed since S. Poaty had called him. He sees no other solution than to proceed with the loading: If necessary the state will send a military vessel to force the terminal to load. He will inform the minister of the situation while I wait in his antechamber. Meanwhile, Benoît has informed me that there is a technical problem with the tug boat.

- Meeting with the Minister: Mr. Tati Loutard, Mr. Delica, Mr. Sokath (advisor), N. Tchissambot + J.-M. Runacher/M. Bernard. M. Runacher introduces Maryse Bernard, president of CMS Nomeco Congo INC. The minister confirms his letter dated 21 December 2004 and threatens to withdraw the rights if CMS Nomeco Congo Inc. refuses to load. I explain to him that I unfortunately cannot do otherwise. N. Tchissambot again mentions the possibility of a military action to force the terminal to load. The minister subsequently asks questions regarding the current production and investments.

- Benoît calls around 1:00 PM. C. Oba and S. Poaty as well as a person sent by the court are in his office to notify him of his summon to appear at the Pointe Noire District Court. He informs me that the problem relating to the winch of the tug boat is solved. I tell him that he should go to court since he has been summoned and order him not to load the boat.

- During the afternoon, a large number of telephone conversations with Benoît and R. Marquez. Apparently judgements will be rendered obliging CMS Nomeco Congo Inc. to let the loading take place.

- Around 18:15 PM the judgements are faxed to the hotel. N. Tchissambot comes to the hotel accompanied by a uniformed police officer and asks me to come to the reception desk while showing me the judgement. He orders me to load the vessel. I ask him what would happen if I don't follow his order: Smiling, he answers that in such case I will be the guest of the Republic until the vessel has been loaded.

PER 0018184

8. AVR. 2005 16:16     PERENCO     Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 5/12     N° 096     P. 5

- I then decide (18:45 PM) to give Benoit the order to load and prepare a summary of the situation which I try to fax to R. Marquez with a copy to R. Fox. After quite some efforts and white pages (the Congolese put the paper into the fax machine the wrong way) the fax is successfully sent.

(signature illegible)

06/01/2005

PER 0018185

# EXHIBIT 6



**KERN**

**Global Language Services**
Translations · Interpreting
DTP · Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@kerntranslations.com

www.e-kern.com

State of :    New York

County of:    New York

SS.:

## CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)*

### LETTER DATED MARCH 3, 2005 REGARDING
### AF-CAP, INC. V. REPUBLIC OF CONGO

*from the FRENCH language into the ENGLISH language and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.*

Signed by:

(Title Section)
for

**KERN**

Kern Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169
Tel: 212-953-2070
Fax: 212-953-2073

Subscribed to before me this

Day of March , 2005

Notary Public

JOY N. WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 2, 2007

San Francisco: The Russ Building · 235 Montgomery Street, Suite 946 · San Francisco, CA 94104
Tel. (415) 433 5376 · Fax (415) 433 5377 · kern.sf@kerntranslations.com

London: Tel. 011 44 (20) 78 31 56 00 · Frankfurt: Tel. 011 49 (69) 75 60 73-0 · Berlin: Tel. 011 49 (30) 2472 12 50 · Paris: Tel. 011 33 (1) 53 93 85 20
Zurich: Tel. 011 41 (1) 2 61 11 60 · Hong Kong: Tel. 011 (852) 28 50 44 55 · Amsterdam: Tel. 011 31 (20) 6 39 01 19 · Lyon: Tel. 011 33 (4) 783 783 73

MINISTER OF FOREIGN AFFAIRES
AND FRANCOPHONY

REPUBLIC OF CONGO
Unité - Travail - Progrès

**CABINET**

MAEF _0744_ CAB.SP.

Brazzaville, 03 March 2005

MINISTER OF STATE

Re: Republic of Congo v. Af-Cap, Inc.

Dear Judge:

I refer to the order issued by this court on 22 February 2005 (the "Turnover Order"), which provides, *inter alia*:

- "The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention;

- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute . . . [a] letter of instruction . . . to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty . . . ."

This suit was initiated over four years ago with a view to persuading United States courts to authorize seizure of the Congo's rights to mining royalties, which it collects within its own territory, in satisfaction of a debt purchased by a creditor without any right to said mining royalties. The Congo has strongly objected to this litigation, which is unfounded. It is premised on the erroneous notion that an American court may transfer the right of a sovereign nation—the Republic of Congo—to dispose of its resources within its own borders. The Republic of Congo has thus far endeavored to cooperate with United States judicial authorities in the hope that United States courts would recognize their obligation to respect the Congo's sovereignty, as is mandated not only under Congolese and international law, but under United States law as well.

In light of the judgments of this Court and the Court of Appeals for the Fifth Circuit, the Congo is constrained to protest in the strongest possible terms the failure to

1

respect its sovereign rights and the resulting judicial measures that purport to dispossess the Congo of economic rights comprising its national patrimony and principal source of export revenue. It is an established principle of the law of nations that every state exercises full and permanent sovereignty over its natural resources and exclusive authority to control the economic exploitation thereof. The Congo's rights to the mining royalties within its territory are subject to its exclusive jurisdiction and sovereignty, which cannot be subordinated to the judicial measures of another state.

The Turnover Order issued by this Court is a clear violation by the United States of international law which recognizes the right for any sovereign State to exercise authority and control over its natural resources within its national territory. Such actions impact negatively on the relations between the United States and the Congo, undermining the concerted mutual efforts of both nations to encourage private United States entities to invest in the Congo, in particular in the oil sector. This unfortunate development requires the Congo to reassess its relations with the United States, particularly where other sources of trade and investment such as Canada, Europe, India and China continue to respect the sovereignty of the countries with which they maintain an economic relationship.

The Turnover Order is unenforceable in the Congo, and cannot supersede the Congo's sovereign authority to prescribe and enforce its own laws within its own territory. Regretfully, the Congo must hereby advise the Court that, for the reasons stated, the Congo will not implement the Turnover Order.

Please accept, Your Honor, the expression of my most distinguished consideration.

[seal:    Minister of Foreign Affaires and
          Francophony
          Cabinet
          Republic of Congo]

[signature]

Rodolphe Adada

**Hon. Sam Sparks**
**United States District Judge**
**United States District Court for**
**The Western District of Texas**
**Austin, Texas**

U.S.A.

copy: Hon. William H. Taft, IV
      United States Department of State

2

MINISTERE DES AFFAIRES ETRANGERES
ET DE LA FRANCOPHONIE
--------------
**C A B I N E T**
--- -------

MAEF ___0 7 4 4___/CAB.SP.-

République du Congo
Unité -- Travail - Progrès
------------

Brazzaville, le **0 3 MARS 2005**

LE MINISTRE D'ETAT,

**Objet** : République du Congo c. Af-Cap.Inc

Monsieur le Juge,

Je me réfère à l'Ordonnance de votre tribunal rendue le 22 février 2005 (the
« Turnover Order », qui décide notamment :

- « The Court hereby takes possession and control of all future royalty
  obligations owed to the Congo under the Convention [for the production of oil
  and gas in the Congo dated May 25, 1979) and this Order shall constitute a
  judgment lien upon the Congo's property interests in, and its rights to receive
  payment of, its royalty share" from oil companies operating in the Congo
  under a concession granted by the Congo in the Convention ;

- "The Court further orders the Congo to turn over such royalty payments into
  the registry of the Court and to execute...[a] letter of instruction ...to the
  parties who pay royalties under the Convention to the Congo revoking prior
  instructions regarding payment of the royalty...

Cette procédure a été initiée par les demandeurs il y a plus de quatre ans dans le
but de convaincre les tribunaux américains d'autoriser la saisie des droits du
Congo sur la redevance minière qu'elle perçoit sur son propre territoire, en
paiement de droits d'un créancier au titre d'une dette du Congo sans rapport avec
un droit quelconque sur cette redevance minière. Le Congo a vigoureusement
contesté cette action judiciaire, laquelle est sans aucun fondement. Elle repose
sur l'hypothèse erronée qu'un tribunal américain pourrait aliéner le droit d'un Etat
souverain, la République du Congo, de disposer de ses ressources à l'intérieur de
son propre territoire. La République du Congo a jusqu'à présent coopéré avec les
autorités judiciaires américaines dans l'espoir que les tribunaux américains
admettraient leur obligation de respecter la souveraineté du Congo, comme le
leur impose le droit international, le droit congolais ainsi que le droit des Etats-
Unis d'Amérique.

Compte tenu des jugements rendus par votre tribunal et par la Court of Appeals for the Fifth Circuit, le Congo se voit contraint de protester vigoureusement contre le non-respect de ses droits souverains et contre les mesures judiciaires qui visent à le déposséder de droits économiques qui font partie de son patrimoine national et qui constituent sa principale source de revenus à l'exportation. Le droit international public établit clairement le principe selon lequel chaque Etat a le droit d'exercer une souveraineté entière et permanente sur ses ressources naturelles, et dispose du droit exclusif d'en contrôler l'utilisation économique. Les droits du Congo sur la redevance minière à l'intérieur de son territoire sont du ressort de sa souveraineté exclusive, laquelle ne peut en aucun cas faire l'objet de mesures judiciaires de la part d'un autre Etat.

Le Turnover Order émis par votre tribunal constitue une violation patente de la part des Etats-Unis du droit international, lequel consacre le droit pour chaque Etat souverain de gérer ses ressources naturelles à l'intérieur de son territoire national. De telles actions affectent négativement les relations entre les Etats-Unis et le Congo et les efforts mutuels de ces deux nations pour encourager les sociétés américaines à investir au Congo, en particulier dans le domaine pétrolier. Ce regrettable développement met le Congo dans l'obligation de réexaminer ses relations économiques avec les Etats-Unis en tenant compte notamment que d'autres pays partenaires commerciaux, au Canada, en Europe, en Inde et en Chine respectent la souveraineté des pays avec lesquels ils entretiennent des relations économiques.

Le Turnover Order est de nul effet au Congo et ne saurait prévaloir sur l'autorité souveraine de notre pays d'appliquer ses propres lois sur son territoire. J'ai donc le regret de vous informer que, pour les raisons indiquées dans la présente lettre, la République du Congo rejette le Turnover Order.

Veuillez agréer, Monsieur le Juge, l'expression de ma considération distinguée.

Rodolphe ADADA.

Hon. Sam Sparks
United States District Judge
United States District Court for
  The Western District of Texas
Austin, Texas

U.S.A.

Copie : Hon. William H. Taft, IV
        United States Department of State