# EXHIBIT 7



AU NOM DU PEUPLE CONGOLAIS

L'an deux mil cinq
Et le quatre du mois de Juillet;

Par-devant nous, Norbert BIENDA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre cabinet au Palais de Justice de cette ville;

Assisté de Maître Marc MIMI, Greffier en Chef des Chambres Civiles dudit Tribunal;

(/A) la requête en date à Pointe-Noire du 02 Juillet 2005 de la République du Congo, Ministère des Hydrocarbures, ayant pour conseils, Maîtres Irène Ja-Pointe-Noire;



Attendu qu'elle expose à l'appui de sa requête se prévalant de ce qu'elles ont été saisies par la société AF CAP (titulaire d'une créance sur la République du Congo suivant une décision de la Cour Suprême de l'Etat de New York du 5 mai 2000) par les décisions des 4 et 22 février 2005 de la Cour du District de l'Ouest du Texas plusieurs Justice, Etats-Unis d'Amérique, entendent ne pas permettre l'enlèvement des parts de pétrole brut correspondant aux redevances fiscales dues à la République du Congo au titre de la convention pour la promotion d'hydrocarbures du 25 mai 1979;

Que les jugements des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales, le versement des redevances fiscales au contraire au Greffe de la Cour en faveur de AF CAP en déclarant de la créance de celle-ci sur la République du Congo ainsi que toute personne physique ou morale... interdisent également au République du Congo et toute personne ayant connaissance de ces décisions de transférer, disséminer ou de déposer des intérêts de la République du Congo;

Mais que ces décisions ne pourraient être exécutées en République du Congo...

Qu'en effet, une décision de Justice rendue par une juridiction étrangère... en présence de la renonciation par le débiteur de son immunité de juridiction et d'exécution ne peut pas s'exécuter... immunité de toute étrangère, qu'elle doit pour recevoir exécution... droit matériel donne d'exequatur telle que prévue par l'article... du Code de Procédure Civile, Commerciale, Administrative et Financière selon lequel... hauts... contraire à jugements rendus par les Tribunaux... être ou... susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione materiae... pour en connaître;

Qu'en l'occurrence, les décisions américaines des 4 et 22 février 2005 n'ont pas été notifiées à la République du Congo et que ni la société AF CAP, Inc, Nuevo Congo Company et Nuevo Congo Limited, tiers saisis, n'ont formulé devant les Tribunaux Congolais une demande d'exequatur des dites décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'elle seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à l'ordre public international et à la souveraineté de la République du Congo en ce qu'elle vise des redevances fiscales, par nature insaisissables, et porte atteinte à la République du Congo dans l'exercice de sa souveraineté fiscale;

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de

la République du Congo détenues par les Sociétés CMS NOMECO Inc,Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain,si ordonner par simité que ces sociétés livrent à tout opérateur désigné par la République du Congo lesdites parts de pétrole brut;

Attendu en conséquence de ce qui précède,la République du Congo sollicite,par décision de référé d'heure à heure  des constater que les Tribunaux Congolais ne sont compétents d'aucune décision rendue par une juridiction américaine et portant celle de la redevance chiffre que à la République du Congo et partant celle du 25 mai 1979;-Dire que les décisions de la Cour du District de l'Ouest du Texas des 9 et 22 février 2005 ou autres décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les cours et tribunaux congolais;-constater que les décisions des 9 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise;-ordonner aux sociétés CMS Nomeco,Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut lui revenant,conformément aux dispositions de la convention du 25 mai 1979 et de la législation en vigueur;-Ordonner l'exécution de droit de la décision à intervenir nonobstant toutes voies de recours;,statuer ce que de droit sur les dépens;

Attendu que par conclusions en date du 12 juillet 2005,la Société CMS NOMECO Inc,ayant pour conseil,maître Sylvie Nicole BOUSSAMA,ayant à la Cour de SAS Pointe-Noire,soutient ce qui suit;

que un certain nombre de juridictions américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO Inc;

Que si la Société CMS NOMECO CONGO INC a introduit dans requêtes aux mains du juge de plusieurs Cours Américaines au motif que ce livraison des parts de pétrole brut à tout opérateur désigné par la République du Congo serait en droit Congolais constituant l'existence d'une décision contraire devant d'une juridiction Américaine et que l'une de ces Cours à rejeté cette requête,les autres ne s'étant pas prononcées sur le sujet;

Qu'enfin,compte-tenu du fait que la Société CMS NOMECO est une société Américaine et que les procédures en cours sont des procédures Américaines,une décision émanant d'une juridiction Congolaise et des parts de pétrole brut à tout opérateur désigné par la République du Congo obligerait la Société CMS NOMECO à livrer exposerait la Société CMS NOMECO au risque d'effectuer un double paiement;

Qu'en effet,si tel était le cas,la société CMS NOMECO serait contrainte de livrer des parts de pétrole brut à tout opérateur désigné par la République du Congo en conformité avec la décision du Tribunal de Grande Instance tout en courant le risque de devoir également effectuer un versement aux Etats-Unis afin de se conformer à la décision de la Cour Américaine;

que la Société CMS NOMECO étant manifestement un tiers aux procédures mentionnées ci-dessus vise,elle ne devrait pas avoir à subir de telles conséquences;

Que l'Article 299 du Code de Procédure Civile,Commerciale,Administrative et Financière dispose;"Sauf conventions diplomatiques contraires,les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics étrangers ne sont susceptibles d'exécution sur le territoire de la République Congolaise qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente,ratione materiae pour en connaître;

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions étrangères exécutées sur le territoire Congolais;

Que or,les décisions de la Cour de District des Etats-Unis,District de l'Ouest du Texas,ont été rendues,signifiées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etats-Unis sont ressentis au



.../...

-3-

Congo à travers la société CMS NOMECO CONGO INC;

Que la République du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par LA Société Américaine AF-CAP INC;

Que dans ces conditions la République du Congo ne peut valablement opposer à cet créancière de renvoyer la formalité d'exequatur comme si elle exécutait sa décision sur le territoire Congolais;

Que la République du Congo soutient en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi notamment des articles 50 du décret Uniforme OHADA portant organisation des Procédures Simplifiées de Recouvrement et des Voies d'Exécution et 77 de la charte des Entreprises d'Etat;

Que c'est à été rappelé alors que la société CMS NOMECO CONGO INC mentionnent des parts de pétrole brut querellés entre la société Américaine AF-CAP INC et la République du Congo, suite aux décisions Américaines en datée respectives du 04 et 22 Février 2003;

Que le fait pour la Société CMS NOMECO d'avoir identifié ces parts de pétrole brut soumis aux décisions des juridictions Américaines signifie pas que la société CMS NOMECO revêt la qualité de subrogeant;

Que la Société CMS NOMECO ne saurait opiner sur cette question différemment de celui qui intéresse les principaux parties au litige, notamment la Société Américaine AF-CAP Inc et la République du Congo;

Qu'elle sollicite constater que le certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation de parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO et que la Société CMS NOMECO CONGO n'est querellées d'aucun des parts de pétrole brut immobilisées et que seuls les effets de cette exécution sont essentiels en aucun à travers la Société CMS NOMECO représentant l'absence d'un quelconque acte d'exécution accompli sur le territoire Congolais;

Qu'en conséquence, il n'y avait lieu à ordonner la libération des parts de pétrole brut sollicitée par la République du Congo condamner la République du Congo aux dépens;

SUR L'AUTORITE JURE DES DETTES

Attendu qu'il résulte de l'examen des pièces du dossier que les décisions judiciaires Américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à la législation Congolaise en vigueur;

Attendu en effet que la République du Congo est un Etat souverain donc une personne morale de droit public;

Attendu qu'il y a lieu de lui faire application des dispositions de l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose que l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient de l'immunité d'exécution. Toutefois les dettes certaines, liquides et exigibles des personnes morales de droit public ou des entreprises publiques, quelles qu'en soient la forme et la mission, donnent lieu à compensation avec les dettes également certaines, liquides et exigibles dont quiconque sera tenu envers elles, sous réserve de réciprocité;

Attendu également que les décisions judiciaires américaines dont saisi du pétrole brut Congolais ne sont pas encore exequaturées;

Qu'en effet l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière (CPCCAF) dispose que sauf conventions diplomatiques contraires, les jugements rendus par les tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolai-

.../...

et qui auront été constituées matérielles pour en connaître";

Attendu en définitive qu'il n'y a donc lieu à opposer à l'Etat Congolais toutes les décisions judiciaires arbitraires;

Attendu également que l'article 50 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution prévoyant les procédures auxquelles viens d'être inapplicables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils peuvent détenus par des tiers;

Or Attendu que les redevances pétrolières sont déclarées insaisissables par la loi Congolaise;

Attendu en définitive qu'il sied de dire que la saisie du pétrole brut Congolais ordonnée par les Tribunaux Américains est contraire à l'ordre public et porte atteinte à la souveraineté de l'Etat Congolais;

Attendu qu'au regard de tout ce qui précède, il y a lieu de dire que la requête de l'Etat Congolais est donc régulière et recevable;

Attendu au fond que cette requête est fondée; qu'il y a lieu de faire droit à cette requête;

Qu'il échet donc de constater que les Tribunaux Congolais ne sont pas saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Attendu qu'il y a lieu donc de rejeter purement et simplement tous les arguments développés par la société CMS NOMECO CONGO INC;

Attendu que la société CMS NOMECO CONGO INC a succombé en procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 97 du CPCCAF;

## PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé, en matière d'exécution et en premier ressort;

Au principal renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Vois dès à présent, vu l'urgence et par provision;

Constatons que les Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Disons que les décisions judiciaires américaines ou d'autres juridictions étrangères ne peuvent s'exécuter sur le territoire Congolais sans avoir préalablement fait l'objet de la procédure d'exéquatur devant les Cours et Tribunaux Congolais; Disons que les redevances pétrolières Congolaises sont insaisissables selon la loi Congolaise;

Constatons que les décisions judiciaires Américaines ayant ordonné la saisie du pétrole brut Congolais sont contraires à l'ordre public et portent atteinte à la souveraineté nationale de la République du Congo;

En conséquence;

Ordonnons aux sociétés CMS NOMECO, Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les portions de pétrole brut revenant à la république du Congo, conformément aux dispositions de la convention du 25 Mai 1979; et de la législation en vigueur;

......./......



Me R. KOUB-OKOUO
Greffier en Chef

**EXECUTION COPY**

CIVIL LIST No. 546
YEAR: 2005

<u>REGISTER No. 477</u>
OF JULY 4, 2005

**ORDER**

F No. 251

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

In the year two thousand five;
And on the fourth day of July;

Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

With reference to the motion dated July 2, 2005 in Point Noire from the Republic of the Congo, Ministry of Hydrocarbons, with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

Whereas in support of its motion, it stated: whereas AF CAP (which holds a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

But whereas these decisions could not be executed in the Republic of the Congo;

Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas in this case, the Republic of the Congo was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each Contracting State may not be garnished even though it may be held by third parties;

2

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with International Public Order and the Republic of the Congo's sovereignty in that it is aimed at tax royalties, by their nature not subject to garnishment, and it interferes with the Republic of the Congo's exercise of its sovereignty in matters of taxation;

Whereas, therefore, since the issue of the delivery of any operator designated by the Republic of the Congo's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver said shares of crude oil to any operator designated by the Republic of the Congo;

Whereas based on the foregoing, the Republic of the Congo is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction on the garnishment of the mining royalty owed to the Republic of the Congo's under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to any operator designated by the Republic of the Congo, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in briefs dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, P.O. Box 5316, Pointe-Noire, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to the Republic of the Congo held by CMS Nomeco Congo Inc;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that its delivery of the shares of crude oil to any operator designated by the Republic of the Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco to deliver shares of crude oil to any operator designated by the Republic of the Congo would render CMS Nomeco liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco would be forced to deliver shares of crude oil to any operator designated by the Republic of the Congo in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas CMS Nomeco is obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

Whereas Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this code it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas the Republic of the Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas under these conditions, the Republic of the Congo cannot make valid use of the argument that its obligee observed the procedure for the authority to execute as though it were executing its decision in Congolese Territory;

Whereas the Republic of the Congo further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the Republic of the Congo, pursuant to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, mainly AF-CAP Inc., the U.S. company, and the Republic of the Congo;

Whereas it is requesting that the Court: - find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco; - find that CMS-Nomeco Congo is only a "third arty holder" of the immobilized shares of crude oil; - find that only the effects of this execution are felt in the Congo through CMS Nomeco; find that there is no instrument of execution whatsoever that has been carried out in Congolese territory;

Whereas consequently, find that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and - order the Republic of the Congo to pay the costs;

### BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that the U.S. court decisions that ordered the attachment of Congolese crude oil conflict with the Congolese laws in effect;

Whereas the Republic of the Congo is indeed a sovereign State and therefore a Government Corporation and Enterprise;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution which provides that "Compulsory distraint and preventive measures shall not apply to persons enjoying immunity from execution. However, any unquestionable debts due for payment belonging to public corporations or enterprises, regardless of their form and mission, may equally be compensated with unquestionable debts due for payment belonging to any person owing them, subject to reciprocity;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas furthermore, the decisions of the U.S. courts, including for the attachment of the Congolese crude oil, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas ultimately, there is therefore no reason to use the decisions of the U.S. courts as arguments against the Congolese State;

Whereas, moreover, Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution (UAOSRPME) provides that "property declared not subject to attachment by the national law of each Contracting State may not be attached, even if it is held by third parties;

Yet, whereas the oil royalties are declared not subject to attachment by Congolese law;

Whereas ultimately, it should be found that the attachment of the Congolese crude oil ordered by the U.S. courts is in conflict with public order and interferes with the sovereignty of the Congolese State;

Whereas with regard to the foregoing, there is reason to find that the Congolese Republic's motion is in order and admissible;

Whereas, in substance, it is grounded; whereas there is reason to accept it;

Whereas it is therefore essential to find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the CCCAFP;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

On the merits, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

We find that the U.S. court decisions or decisions of other foreign jurisdictions may not be executed in Congolese territory without first having been the subject of the procedure of the authority to execute with the Congolese Courts and Tribunals. We find that the Congolese oil royalties cannot be attached according to Congolese law;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We find that the U.S. court decisions that ordered the attachment of the Congolese crude oil are in conflict with the public order and interfere with the Republic of the Congo's national sovereignty;

Consequently;

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to any operator designated by the Republic of the Congo in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc. to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okono, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

# EXHIBIT 8

ROLE CIVIL N°547
ANNEE 2005

REPERTOIRE N°476
DU 04-07-05



**REPUBLIQUE DU CONGO**
N°251
**AU NOM DU PEUPLE CONGOLAIS**

L'an deux mil cinq;
Et le quatre du mois de juillet;

Par-devant nous,Norbert ELENGA,Président du Tribunal de Grande Instance de Pointe-Noire,tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maitre Marc ETIKI,Greffier en Chef des Chambres Civiles audit Tribunal;

(/u la requête en date à Pointe-Noire du 02 Juillet 2005 de la Société Nationale des Pétroles du Congo(SNPC),ayant pour conseils Maitre Irène Josiane OKOKO, Hervé OBONGUI NGUIE et Nadia MACOSSO,Avocats à la Cour B.P 5137 Pointe-Noire;

Attendu qu'à l'appui de sa requête,elle expose;Que se prévalant de ce qu'elles ont été saisies par la société AF CAP(titulaire d'une créance sur la République du Congo suivant une décision de la Cour Suprême de l'Etat de New York,du 9 Mai 2000) par les décisions des 4 et 22 février 2005 de la Cour du District de l'Ouest du Texas,Division Austin,Etats-Unis d'Amérique,les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited entendent ne pas permettre l'enlèvement des parts de pétrole brut correspondant aux redevances dues à la République du Congo au titre de la convention pour la production d'hydrocarbures du 25 Mai 1979;

Que les décisions des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales dues à la République du Congo;le versement desdites redevances en numéraire au Greffe de la Cour en faveur de AF CAP en règlement de la créance de celle-ci sur la République du Congo ainsi que toute somme supplémentaire que la Cour ordonnera;Ces décisions interdisent également la République du Congo et toute personne ayant connaissance de ces décisions de transférer ,dissimuler ou de disposer des intérêts de la République du Congo;

Que dans une lettre en date du 16 mai 2005,la société CMS Nomeco Inc déclare que les décisions américaines sont également applicables aux parts de pétrole brut revenant à la SNPC au titre de la convention du 25 Mai 1979;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

Qu'en effet,une décision de Justice rendue par une juridiction étrangère,même en présence de la renonciation par le débiteur de son immunité de juridiction et d'exécution ne peut pas s'exécuter de plein droit en territoire étranger qu' elle doit,pour recevoir exécution,être soumise à la procédure d'exéquatur telle que prévue par l'article 299 du Code de Procédure Civile,Commerciale,Administrative et Financière selon lequel:"sauf conventions diplomatiques contraires,les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente"ratione materiae"pour en connaître";

Qu'en l'occurrence,les décisions américaines des 4 et 22 février 2005 n'ont pas été notifiées à la SNPC et que ni la société AF CAP,prétendue créancière de la République du Congo,ni les sociétés CMS Nomeco Inc,Nuevo Congo Company et Nuevo Congo Limited,tiers saisis,n'ont formulé devant les Tribunaux Congolais une demande d'exéquatur des mêmes décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à la législation en vigueur en République du Congo;l'article 77 de la loi N°13/81 du 14
~~xxxxxxxxxxxx~~
mars 1981 instituant la charte des Entreprises d'Etat dispose que les biens de

.../...

-2-

l'entreprise - Etat sont insaisissables;

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de la SNPC détenues par les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain, d'ordonner sur minute que ces sociétés livrent à la SNPC ses parts de pétrole brut;

Qu'en conséquence de ce qui précède la SNPC sollicite que par décision de référé d'heure à heure, soit constaté que les tribunaux congolais ne sont saisis d'aucune décision rendue par une juridiction américaine et portant saisie des parts de pétrole brut de la SNPC au titre de la convention du 25 mai 1979, dit que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les Cours et Tribunaux Congolais, constaté que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise, ordonne aux sociétés CMS Nomeco Nuevo Congo Company et Nuevo Congo Limited de livrer à la SNPC les parts de pétrole brut lui revenant, conformément aux dispositions de la convention du 25 mai 1979, ordonne l'exécution de droit de la décision à intervenir nonobstant toutes voies de recours, statuo ce que de droit sur les dépens;

Attendu que par écritures en date du 02 Juillet 2005, la société CMS NOMECO Congo Inc, ayant pour conseil Maître Sylvie Nicole ROUYECKET, a réagi en ces termes;

Qu'un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la Société Nationale des Pétroles du Congo entre les mains de la Société CMS NOMECO Congo Inc;

Que si la société CMS NOMECO Congo Inc est condamnée à livrer ces parts de pétrole brut à la Société Nationale des Pétroles du Congo en dépit du contenu de la décision d'une Cour Américaine, celle-ci risque de se trouver sous la contrainte d'une double obligation de paiement;

Que la société CMS Nomeco Congo Inc a introduit des requêtes de non lieu auprès de plusieurs cours américaines au motif que sa livraison des parts de pétrole bruts à la Société Nationale des Pétroles du Congo serait obligatoire en Droit Congolais nonobstant l'existence d'une décision contraire émanant d'une juridiction Américaine et que l'une de ces Cours a rejeté cette requête, les autres ne s'étant pas prononcées sur le sujet;

Qu'enfin, compte tenu du fait que la société CMS NOMECO CONGO INC est une Société Américaine et que les procédures en cours sont des procédures Américaines, une décision émanant d'une juridiction Congolaise obligeant la Société CMS NOMECO Congo Inc à livrer des parts de pétrole brut à la SNPC exposerait la société CMS NOMECO CONGO INC au risque d'effectuer un double paiement;

Qu'en effet, si tel était le cas, la Société CMS NOMECO CONGO INC serait contrainte de livrer des parts de pétrole brut à la SNPC en conformité avec la décision du Tribunal de Grande Instance tout en courant le risque de devoir également effectuer un paiement aux Etats-Unis afin de se conformer à la décision de la Cour Américaine;

Que la Société NOMECO CONGO INC étant manifestement un tiers aux procédures mentionnées ci-dessus, elle ne devrait pas avoir à subir de telles conséquences;

Que l'article 299 du CPCCAF dispose; "Sauf conventions diplomatiques contraires les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente "ratione materiae" pour en connaître";

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions des juridictions étrangères exécutées sur le territoire Congolais;

Que or les décisions de la Cour de District des Etats-Unis, District de l'Ouest



-3-

du Texas, ont ... rendues, signifiées et exécutées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérée aux Etas-Unis sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC;

Que la Société Nationale des Pétroles du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP

Que la SNPC sous-tend en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi, notamment des articles 50 de l'Acte Uniforme OHADA portant Organisation des Procédures Simplifiées de Recouvrement des Créances et des Voies d'Exécution et 77 de la Charte des Entreprises d'Etat;

Que or, il a été rappelé supra que la société CMS NOMECO Congo Inc.n'est que"tiers-détenteur" des parts de pétrole brut querellées entre la Société Américaine AF-CAP Inc et la SNPC suite aux décisions Américaines en dates respectives du 04 et 22 Février 2005;

Que le fait pour la société CMS NOMECO Congo Inc d'avoir immobilisé ces parts de pétrole brut, suite aux décisions des juridictions Américaines, ne signifie pas que la Société CMS NOMECO Congo Inc revêt la qualité de saisissant;

Que la société CMS NOMECO Congo Inc ne saurait opiner sur cette question d'immunité de saisie qui intéresse les principales parties au litige, notamment la Société Américaine AF-CAP Inc et la SNPC;

Que le Juge saisi, constatera que un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO INC, que la Société CMS NOMECO CONGO INC n'est que"tiers-détenteur" des parts de pétrole brut immobilisées;dira que seuls les effets de cette exécution sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC, constatera l'absence d'un quelconque acte d'exécution accompli sur le territoire Congolais;

Qu'en conséquence, il dira n'y avoir lieu à ordonner la livraison des parts de pétrole brut sollicités par la République du Congo; Condamnera la République du Congo aux dépens;

### SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier: que la Société Nationale des pétroles du Congo SNPC, est une entreprise d'Etat; qu'à ce titre elle bénéficie de l'immunité de saisie prévue à l'article 77 de la charte nationale des entreprises d'Etat qui dispose qu'elle biens de l'entreprise d'Etat sont insaisissables sauf les cas prévus par la procédure de liquidation de l'entreprise;

Attendu que dans ces conditions, il y a lieu de faire application des dispositions de l'article 30 de l'Acte Uniforme portant Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Qu'en effet l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose qu'il"l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient d'une immunité d'exécution";

Attendu qu'en l'espèce, la SNPC est une entreprise d'Etat et bénéficie de l'immunité d'exécution;

Qu'il y a lieu de lui appliquer les dispositions de l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Attendu également que les décisions des Tribunaux Américains dont exécution, ne sont pas encore exéquaturées;

Attendu en effet que l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière(CPCCAF) dispose que " Sauf conventions diplomatiques con-

.../...

traires,les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione materiae pour en connaître;

Attendu qu'à ce jour,ni le bénéficiaire desdits jugements,ni la société NCMECO n'ont saisi la juridiction congolaise pour solliciter l'exequatur desdites décisions;

Attendu en conséquence qu'il n'y a lieu donc à exécution desdites décisions américaines rendues;

Attendu qu'au regard de ce qui précède,il y a lieu de dire que la requête de la société SNPC est donc régulière et recevable;

Attendu au fond qu'elle est fondée;

Qu'il y a lieu d'y faire droit;

Attendu qu'il y a lieu de rejeter purement et simplement tous les arguments développés par la société NCMECO;

Attendu que la société NCMECO CONGO INC a succombé au procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du Code de Procédure Civile,Commerciale,Administrative et Financière;

## PAR CES MOTIFS

Statuant publiquement,contradictoirement,en référé,en matière d'exécution et en premier ressort;

Au principal; Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent,vu l'urgence et par provision;

Constatons que la SNPC est bénéficiaire de l'immunité d'exécution;

Constatons que les décisions judiciaires américaines rendues en la matière ne sont pas encore exéquaturées au Congo;

Constatons que lesdites décisions sont contraires à l'ordre public;

En conséquence;

Ordonnons aux sociétés CMS NCMECO,Nuevo Congo Company et Nuevo Congo Limited de livrer les parts de pétrole brut revenant à la SNPC conformément aux dispositions de la convention du 25 Mai 1979;

Disons que la présente ordonnance sera exécutée en cas de résistance avec l'aide de la Force Publique;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours;

Mettons les dépens à la charge de la société CMS NCMECO CONGO INC;

.../...

-5-

Et avons signé notre Ordonnance avec le Greffier./-

Suivent les signatures(e) illisibles
du Président et du Greffier
suit la mention d'enregistrement
Enregistré à Pointe-Noire le *05 juillet 2005*
Pour expédition collationnée
certifiée conforme à l'original
établie en................. Pages;
POINTE-NOIRE, le *05 juillet 2005*
    Le Greffier en Chef

En conséquence la République du Congo
mande et ordonne à tous huissiers sur ce
requis de mettre ledit jugement à exécution
aux Procureurs Généraux et aux Procureurs
de la République Près les Cours et Tribunaux
de Grande instance d'y tenir la main à tous
commandants et officiers de la force publique
de prêter main forte lorsqu'ils en seront
légalement requis.

En foi de quoi la présente expédition
a été signée et scellée par Monsieur le Greffier en chef du tribunal de Grande
instance de POINTE-NOIRE et Par
.......... en bonne forme de droit.

Par

Me R. KOUD-OKOUO
Greffier en Chef

**EXECUTION COPY**

F No. 251

CIVIL LIST No. 547
YEAR: 2005

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 476
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

With reference to a motion dated July 2, 2005 in Point Noire from Société Nationale des Pétroles du Congo (SNPC), with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

Whereas in support of its motion, it stated: whereas AF CAP (which held a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) carried out an attachment against Nuevo Congo Company and Nuevo Congo Limited, based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

Whereas in a letter dated May 16, 2005, CMS Nomeco Inc. represented that the U.S. decisions are applicable as well to the shares of crude oil due to the SNPC under the agreement of May 25, 1979;

But whereas these decisions could not be executed in the Republic of the Congo;

Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF), according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas in this case, the SNPC was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

2

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each State that is a Party may not be garnished even though it may be held by third parties;

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with the laws in effect in the Republic of the Congo; Article 77 of Law No. 13/81 of March 14, 1981, creating the Charter of Government Corporations, provides that the property of Government Corporations is not subject to garnishment;

Whereas, therefore, since the issue of the delivery of the SNPC's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver to the SNPC its shares of crude oil ;

Whereas consequently, based on the foregoing, the SNPC is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction and on the garnishment of the SNPC's shares of crude oil under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to the SNPC, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in documents dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to Société Nationale des Pétroles du Congo held by CMS Nomeco Congo Inc;

Whereas if CMS Nomeco Congo. Inc. is ordered to deliver these shares of crude oil to Société Nationale des Pétroles du Congo despite the content of the decision of a U.S. Court, the SNPC may find itself under the constraint of a dual obligation for payment;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that the delivery of the shares of crude oil to Société Nationale des Pétroles du Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco Congo Inc. is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco Congo Inc. to deliver shares of crude oil to the SNPC would render CMS Nomeco Congo Inc. liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco Congo Inc. would be forced to deliver shares of crude oil to the SNPC in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas Nomeco Congo Inc. was obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]



3

Whereas Article 299 of the CPCCAF provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this text it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas Société Nationale des Pétroles du Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas the SNPC further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the SNPC, due to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco Congo Inc. has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, particularly AF-CAP Inc., the U.S. company, and the SNPC;

Whereas the Judge before whom the matter was brought shall find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco Congo Inc., whereas CMS Nomeco Congo Inc. is only a "third party holder" of the immobilized shares of crude oil; shall find that only the effects of this execution are felt in the Congo through CMS Nomeco Congo Inc.; shall find that no execution whatsoever has been carried out in Congolese territory;

Whereas consequently, the Court shall find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and shall order the Republic of the Congo to pay the costs;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that Société Nationale des Pétroles du Congo SNPC is a Government Corporation; whereas consequently it enjoys the immunity from garnishment stipulated in Article 77 of the National Charter of Government Corporations that provides that "the property of government corporations may not be garnished except in cases provided for by the procedure for the liquidation of the corporation;"

Whereas under these conditions, there is reason to apply the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution provides that "enforcement and precautionary measures are not applicable to persons that enjoy immunity from execution;"

Whereas in this instance, the SNPC is a Government Corporation and enjoys immunity from execution;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;

Whereas furthermore, the decisions of the U.S. courts, including execution, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas as of today, neither the beneficiary of said decisions nor Nomeco have come before the Congolese courts to solicit the authority to execute said decisions;

Whereas consequently, there is therefore no reason to execute said U.S. decisions that have been handed down;

Whereas with regard to the foregoing, there is reason to find that the SNPC's motion is in order and admissible;

Whereas, in substance, it is grounded;

Whereas there is reason to accept it;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

## NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

On the merits, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the SNPC does enjoy immunity from execution;

We find that the decisions of the U.S. Courts handed down in this matter have not yet been authorized for enforcement in the Congo;

We find that said decisions are in conflict with the public order;

Consequently;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to the SNPC in accordance with the provisions of the agreement of May 25, 1979;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof, the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

# EXHIBIT 9



# CMS NOMECO CONGO, LLC

BP 212
Pointe-Noire
République du Congo

Le 2 mars 2006

Monsieur le Directeur Général
Ministère des Hydrocarbures
Brazzaville

Monsieur le Président Directeur Général
Société Nationale des Pétroles du Congo
Pointe-Noire

Messieurs,

Dans le cadre des opérations effectuées sur le permis Marine 1 et conformément aux termes de l'Avenant à l'Accord d'Enlèvement, le prochain enlèvement par la SNPC du pétrole au titre de la redevance pétrolière et de sa participation est prévu pour fin avril. Comme vous le savez, des procédures judiciaires sont actuellement engagées par les créanciers judiciaires de la République du Congo à l'encontre de CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. ; ces procédures comprenant les actions engagées par Af-Cap Inc., Walker International Holdings Limited, FG Hemisphere Associates LLC et National Union Fire Insurance Company of Pittsburg, P.A. Dans le cadre de ces procédures, les créanciers judiciaires ont soutenu que les ordonnances de saisie-attribution et de remise (*garnishment writs* et *turnover orders*) délivrées par les juridictions américaines empêchent les sociétés concernées de permettre à la SNPC de prendre le pétrole au titre de la redevance pétrolière revenant au Congo ainsi que la part de pétrole revenant à la SNPC au titre de sa participation.

Le Congo et la SNPC ont obtenu en décembre 2004 et juillet 2005 des ordonnances judiciaires de la part d'un tribunal de Pointe-Noire, enjoignant CMS Nomeco Congo Inc., en tant qu'opérateur, de permettre à la SNPC à prendre le pétrole au titre de la redevance pétrolière revenant au Congo ainsi que le pétrole revenant à la SNPC au titre de sa participation. Ces enlèvements du pétrole revenant à la SNPC ordonnés par le tribunal congolais ont été effectués en décembre 2004 et en septembre 2005. La procédure judiciaire contestant les ordonnances de saisie-attribution et de remise (*garnishment writs* et *turnover orders*) est toujours en cours aux Etats-Unis et les demandeurs à ladite procédure soutiennent le fait que lesdites ordonnances empêchent CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. d'autoriser la SNPC à prendre, au terminal de stockage, le pétrole au titre de la redevance pétrolière revenant au Congo ainsi que le pétrole revenant à la SNPC au titre de sa participation, nonobstant les ordonnances délivrées par la juridiction congolaise en décembre 2004 et en juillet 2005. De surcroît, en septembre 2005, le tribunal

fédéral de première instance a autorisé, dans l'affaire FG Hemisphere, la délivrance de nouvelles ordonnances de saisie-attribution et de remise (*garnishment writs* et *turnover orders*) et ce en dépit des ordonnances délivrées par la juridiction congolaise et, le 14 février 2006, de nouvelles ordonnances de saisie-attribution et de remise (*garnisment writs* et *turnover orders*) ont été signifiées à CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd.

Nous avons interjeté appel des décisions autorisant la délivrance des ordonnances de saisie-attribution (*garnishment writs*) délivrées dans l'affaire FG Hemisphere en octobre 2004 et décembre 2005 devant la cour d'appel des Etats-Unis à la Nouvelle Orléans ; les plaidoiries ayant été présentées à la cour d'appel dans le cadre de cette procédure le 7 février 2006. Nous attendons actuellement une décision de la cour d'appel. De plus, nous avons interjeté appel contre les ordonnances rendues dans l'affaire FG Hemisphere en septembre 2005, autorisant la délivrance de nouvelles ordonnances de saisie-attribution (*garnishment writs*) devant la même cour d'appel. Cependant, il est peu probable qu'une décision soit rendue dans l'une des procédures d'appel avant que le prochain enlèvement de la SNPC n'ait lieu, ce qui est prévu dans le cadre de l'Avenant à l'Accord d'Enlèvement.

FG Hemisphere et Af-Cap ont adopté la position que la prise de pétrole par la SNPC en vertu des termes des ordonnances rendues par la juridiction congolaise en décembre 2004 et juillet 2005, rend CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. redevables du montant total de la valeur de pétrole enlevé par la SNPC. Nous nous attendons à ce que, dans l'hypothèse où la SNPC enlève du pétrole au titre de la redevance pétrolière et de sa participation en avril 2006, les créanciers judiciaires du Congo soutiennent le fait que CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. devraient être tenues responsables du montant total du pétrole enlevé par la SNPC à raison de cet enlèvement dans le cadre des procédures judiciaires américaines.

A la lumière de ce qui précède, nous devons respectueusement vous informer qu'à la suite des injonctions et ordonnances prises dans le cadre des procédures judiciaires américaines, nous ne pouvons pas autoriser l'enlèvement, à partir du navire de stockage, du pétrole au titre de la redevance pétrolière revenant au Congo ainsi que du pétrole revenant à la SNPC au titre de sa participation, dans la mesure où un tel enlèvement nous soumettrait à des actions en justice de la part des créanciers judiciaires du Congo aux fins de constater que nous sommes en violation des ordonnances des juridictions américaines et passibles de sanctions pour outrage à la cour ainsi que d'une condamnation à payer aux créanciers de la République un montant égal à la valeur totale du pétrole enlevé.

Nous apprécions l'attention que vous porterez aux éléments énoncés dans la présente lettre.

Dans l'attente de vous lire, nous vous prions d'agréer, Messieurs, l'expression de notre très haute considération.

Maryse Bernard
Président

# CMS NOMECO CONGO, LLC

## BP 212
### Pointe-Noire
### Republique du Congo

2 March 2006

The General Director
Ministry of Hydrocarbons
Brazzaville

The President and Chief Executive Officer
Société Nationale des Pétroles du Congo
Pointe-Noire

Dear Sirs,

In connection with operations on the Marine 1 permit, and pursuant to the terms of the Amendment to Lifting Agreement, the next oil lifting of royalty oil and working interest oil by SNPC would be expected to take place at the end of April. As you know, there is ongoing litigation brought against CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. by judgment creditors of the Republic of Congo, including litigation filed by Af-Cap, Inc., Walker International Holdings Limited, FG Hemisphere Associates LLC, and National Union Fire Insurance Company of Pittsburgh, P.A. In those proceedings, the judgment creditors have claimed that garnishment writs and turnover orders issued by the U.S. courts preclude the companies from permitting SNPC to take the Congo's royalty oil and SNPC's working interest oil.

The Congo and SNPC have obtained court orders in December 2004 and in July 2005 from a court in Point Noire that mandated that CMS Nomeco Congo Inc., as operator, permit SNPC to take the Congo's royalty oil and SNPC's working interest oil. The SNPC oil liftings that were ordered to take place by the Congolese court occurred in December 2004 and September 2005. The proceedings challenging the garnishment writs and turnover orders are still ongoing in the United States, and the claimants in those proceedings contend that the garnishment writs and turnover orders prevent CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. from permitting SNPC to take the Congo's royalty oil and SNPC's working interest oil from the storage terminal, despite the prior orders of the Congolese court in December 2004 and July 2005. Additionally, in September 2005, the district court in the FG Hemisphere case authorized the issuance of new garnishment writs, despite the court orders of the Congolese court, and on February 14, 2006, new writs of garnishment were served on CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd..



We have appealed to the U.S. Court of Appeals in New Orleans from the orders that allowed issuance of the garnishment writs in the FG Hemisphere case in October 2004 and December 2005, and arguments were presented to the Court of Appeals in those appeals on February 7, 2006. We are now awaiting a decision from the Court of Appeals. Additionally, we have appealed to that same appeals court the orders entered in the FG Hemisphere case in September 2005 that allowed issuance of the new garnishment writs. However, it is unlikely that a decision will be rendered in any of the appeals until after the next lifting by SNPC would be expected to take place under the terms of the Amendment to Lifting Agreement.

FG Hemisphere and Af-Cap have taken the position that SNPC's taking of oil under the terms of the Congo court orders in December 2004 and July 2005 renders CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. liable for the full amount of the value of the oil taken by SNPC in the SNPC liftings. It is our expectation that, in the event SNPC takes a lifting of royalty oil and working interest oil in April 2006, the judgment creditors of the Congo will contend that CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. should be held liable in the U.S. court proceedings for the full amount of the oil taken by SNPC in that lifting.

In light of the foregoing circumstances, we must respectfully notify you that in light of the writs and orders entered in the United States litigation, we cannot allow a lifting of the Congo's royalty oil and SNPC's working interest oil from the storage vessel, as such a lifting would subject us to claims by the Congo's judgment creditors that we are in violation of the U.S. writs and court orders and are subject to contempt sanctions and monetary liability for the full value of the oil lifted.

We appreciate your consideration of the matters set out herein and look forward to receiving your response.

Sincerely yours,

_____

Maryse Bernard
President

# EXHIBIT 10

24/03/2006   20:07   Received 03/   006 01:42PM in 00:58 on line [10] for GLOc   g 2/2        PAGE   02/02



JOPE
## SNPC

Société Nationale des Pétroles du Congo

ge social Brazzaville



ACCUSE DE RECEPTION

CMS NOMECO LLC
B.P : 212
Pointe-Noire

Madame Maryse BERNARD
Président

**Objet** : Votre lettre du 02 mars 2006

Pointe-Noire, le 20 mars 2006

Madame,

Nous accusons réception de votre lettre du 02 mars 2006 par laquelle vous nous informez que votre société ne peut autoriser l'enlèvement, courant avril 2006, à partir du navire de stockage, du pétrole revenant au Congo ainsi que du pétrole revenant de la SNPC, motif pris de ce que vous seriez en violation des ordonnances des juridictions Américaines vous interdisant de nous livrer du pétrole.

En réponse à cette lettre, nous voudrons vous faire noter que ces ordonnances ne nous sont en principe pas opposables, pour des raisons qui tiennent à la fois à l'ordre public interne et à l'ordre public international.

Aussi vous mettons-nous, par la présente, en demeure de nous livrer les quantités de pétrole nous revenant en même temps que celles revenant au Congo (dont nous détenons le mandat de commercialisation) selon les procédures habituelles au terminal de CONKOUATI.

De ce qui précède, si à la date du 25 mars 2006 nous n'avions aucune réponse de votre part nous adresserons une requête à la juridiction compétente aux fins de préservation de nos droits.

Nous osons espérer que vous ne nous y contraindrez pas.

Dans cette attente,

Veuillez agréer, Madame, l'expression de nos meilleures salutations.

Le Président Directeur Général

SNPC

Denis Auguste Marie GOKANA

Cc :   - Ministre des hydrocarbures
       - Ministre de l'Economie, des Finances et du Budget
       - Direction Générale des Hydrocarbures

Etablissement public à caractère industriel et commercial au capital de 81.334.664.844 francs CFA
Site Internet : www.snpc-group.com
B.P. : 188 – Brazzaville – Congo – Tél. 242.81.09.04   Fax . 242.81.04.92
B.P : 577 – Pointe-Noire – Congo – Tél : 242.94.87.48   Fax : 242. 94.92.24

## EXHIBIT A

Société Nationale des Pétroles du Congo

<div align="right">

CMS NOMECO LLC
B.B : 212
Pointe-Noire

*Mrs. Maryse BERNARD*
*President*

</div>

<u>Subject</u>: Your letter dated 02 March 2006        Pointe-Noirs, 20 March 2006

Dear Madame,

We hereby acknowledge the receipt of your letter dated 02 March 2006, by which you inform us that your company cannot authorise the April 2006 lifting of the Congo and the SNPC's share of oil from the storage vessel, due to the fact that your company allegedly is in violation of American court orders preventing your company of delivering such oil.

In response to your letter, please note that these court orders, in principle, are not binding upon us for reasons of public policy (*ordre public*) and international public policy (*ordre public international*).

Consequently, we hereby put you on notice of delivering the quantities of oil that we as well as the Congo are entitled to (which we are authorised to authorise on their behalf) pursuant to the standard procedures at the CONKOUATI terminal.

Following the above, if we do not receive a response to our letter by 25 March 2006, we inform you that we will commence judicial proceedings in front of the relevant jurisdictions in order to secure the protection of our rights.

We hope that you will not force us to take such action.

In expectation of your response,

Sinserely,

<div align="right">

The General Manager
Denis Auguste Marie GOKANA

</div>

<u>Cc</u> :  -    Minister of Hydrocarbons
       -    Minister of Economy, Finance and Budget
       -    General Management of Hydrocarbons

# EXHIBIT 11

Received 03/? ?6 08:05AM in 00:34 on line [11] for GL06L [ ? 2/2
29/03/2006  15:89    0                                                      PAGE  02

# CMS NOMÉCO CONGO, LLC

**BP 212**
**Pointe-Noire**
**République du Congo**

le 24 mars 2006

Société Nationale des Pétroles du Congo
BP 622
Pointe-Noire
Congo

Messieurs,

En réponse à votre lettre du 20 mars 2006 (que nous n'avons pas reçu avant le 24 mars), nous ne pouvons que confirmer les termes de notre lettre en date du 2 mars dernier. Nous regrettons vivement cette situation et espérons que vous comprendrez notre position.

Nous vous prions d'agréer, l'expression de notre haute considération.

Maryse Bernard
Président

PJ : lettre du 2 mars 2006

**EXHIBIT B**

Received 03    2006 12:19PM in 00:44 on line [6] for GL060    3/3
24/03/2006  18:44    8                                                                          PAGE  03

# CMS NOMECO CONGO, LLC

BP 212
Pointe-Noire
République du Congo

24 March 2006

Société Nationale des Pétroles du Congo
BP 622
Pointe-Noire
Congo

Gentlemen,

In response to your letter dated 20 March 2006 (which we did not receive until 24 March), we can only confirm the terms of our letter dated 2 March. We deeply regret this situation and hope that you will understand our position.

Sincerely yours,

_____

Maryse Bernard
President

Enc:   Letter of 2 March 2006

# EXHIBIT 12

COUR D'APPEL DE POINTE-NOIRE

TRIBUNAL DE GRANDE INSTANCE
DE POINTE-NOIR

REPUBLIQUE DU CONGO
Unité – Travail - Progrès

## NOTIFICATION DE L'ORDONNANCE
### (Article 40 à 42 du C.P.C.C.F)

L'an deux mil trois .... *Six* .... *et le* .... *........* .... *........*
.... *........* .... *........*

A la requête de *........* .... *........* .... *........* .... *........*
Et en vertu d'une ordonnance du Président du Tribunal de Grande Instance de Poin-
Noire, en date du .... *27 ........* .... *........*
Rendue à la suite d'une requête à lui présentée le .... *........* .... *........*
Desquelles requête, copie et ordonnance sont remises en temps que celles de présentes

J'ai .... *........................................................* .... Greffier près !
Tribunal de Céans, y demeurant soussigné ;

NOTIFIE OU ETANT ET PARLANT .... *Mme Élisabeth ........* .... *........*

Qui a reçu et visé l'original du présent acte ;

A comparaître devant le Tribunal de Grande Instance de Pointe-Noire à l'audien.
civile qui sera tenue au palais de justice dans la salle ordinaire des audiences
Le .... *27 Mars ........* .... à .... *........* .... Heures *........*
Précise pour entendre statuer sur les mérites de la requête dont s'agit ;

### A CE QU'IL N'EN IGNORE

Je lui ai, étant et parlant comme dessus, laissé copie tant des présentes que de la requê.
et de l'ordonnance dont le coût est de TROIS MILLE FRANCS CFA (3 000)

P.J.
*........*
*........*
*........*
*........*
*........*

Le Greffier Princip.

PER 20290
CONFIDENTIAL

COUR D'APPEL DE POINTE-NOIRE
TRIBUNAL DE GRANDE INSTANCE
DE POINTE-NOIRE

GREFFE-CIVIL

REPUBLIQUE DU CONGO
Unité*Travail*Progrès

ROLE CIVIL N° _____ /
REPERTOIRE N° _____ /
DU _____ /

## ORDONNANCE FIXANT LA DATE D'AUDIENCE
### (Article 33)

| Norbert ELENGA | la Société Nationale des Pétroles Du Congo dite SNPC
| MAGISTRAT |

Pointe-Noire

Nous .......................................... Président du Tribunal de Grande Instance de Pointe-Noire

Vu la requête de Mr, Mme ou Mlle ...................................................................................

Profession ........................................ Domicilié (e) à .............................................

Nationalité ............................................ et les pièces qui y sont jointes.

Fixons au 27/3/06 la CMS NOMECO Congo

à ...... 11 ...... heures, la date à laquelle sera appelée l'affaire

au lieu ordinaire de nos audiences aux fins de statuer sur les mérites de ladite requête.

Disons que Mr, Mme ou Mlle .......................................................................................

Profession ................................... Domicilié (e) .............................................

Devra produire ses moyens de défenses au Greffe huit (8) jours au plus tard avant l'audience.

Mandons le Greffier du Tribunal de Céans à l'effet de notifier la présente ORDONNANCE aux

parties accompagnées en ce qui concerne la partie défenderesse, d'une copie de la requête

introductive d'instance et de la liste des pièces déposées par le requérant.

27 Mars 2006

Fait à Pointe-Noire, le .............................

Norbert ELENGA
MAGISTRAT

PER 20291
CONFIDENTIAL

# EXHIBIT 13



# ETUDE MAITRE
# BERTRAND RODOLPHE MADASSOU
### HUISSIER DE JUSTICE
### COMMISSAIRE-PRISEUR



☎: 553-67-87  ✉: 911 P/Noire RC  Email: m.adassou @ hotmail.Com

Année: 2006
Rép: 022/06

Dossier 022/06

## SIGNIFICATION COMMANDEMENT D'UNE
## ORDONNANCE

L'an deux mil six

Et le _Vingt sept Jour à 14h30 mn._

A la requête de la Société Nationale des Pétroles du Congo en sigle S.N.P.C dont le siège est sis à Brazzaville, 146 Avenue Charles DE GAULLE, B.P 188, poursuites et diligences de son représentant légal ;

Elisant domicile en tant que de besoin pour les présentes en mon Etude;

J'ai, Maître Bertrand Rodolphe MADASSOU, Huissier de justice, Commissaire-Priseur, près la Cour d'Appel de Pointe-Noire et les Tribunaux y rattachés y demeurant BP. 911 Tél : 553.67.87 soussigné,

**Signifié** et en tête de celle des présentes laissé copie entière A :

**La Société CMS NOMECO**, dont le siège est sis à Pointe Noire, Centre-ville, République du Congo ;

OU ETANT ET PARLANT A : _ME IWOCHEWITSCH_

De la grosse en bonne et due forme exécutoire d'une ordonnance telle que rendue par Monsieur le Président du Tribunal de Grande Instance de Pointte-Noire en date du 27 mars 2006, répertoire n°275 et dont le dispositif est le suivant :

### « PAR CES MOTIFS:

_Statuant publiquement, par réputé contradictoire en référé en matière d'exécution et en premier ressort ;_

Etude située sur l'avenue Louis PORTELLA N°55, derrière l'Hôtel LA PONTENEGRINE

EXHIBIT C

*Au principal : Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront ;*

*Mais dès à présent, vu l'urgence et par provision ;*

*Constatons que les jugements américains du 23 décembre 2004, 17 septembre 2004, des 4 et 22 février 2005 et des ordonnances du 14 février 2006 n'ont jamais été exéquaturées par une juridiction compétente congolaise ;*

*En conséquence,*

*Disons que les présentes décisions ne sont pas exécutoires à l'encontre de la S.N.P.C, partenaire de CMS NOMECO ;*

*Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours ;*

*Mettons les dépens à la charge de NOMECO ».*

Et à même requête, demeure et élection que dessus,

j'ai, Huissier de justice susdit et soussigné

<u>FAIT COMMANDEMENT :</u> A la même

*Société CMS NOMECO*

De livrer sans délai à tous opérateurs que lui désignera la S.N.P.C, toutes les quantités d'hydrocarbures lui appartenant et détenues par elles en vertu de leur contrat de partenariat.

Lui déclarant que faute par lui de le faire, ma requérante usera de tous les moyens de droit à sa disposition pour entrer en possession de ses produits.

Lui déclarant enfin que la présente signification lui est faite à telles fins que de droit.

<div align="center">DONT ACTE</div>

<div align="center">A CE QU'ELLE N'EN IGNORE</div>

Et je lui ai, étant et parlant comme dessus, laissé copie tant de la grosse que celle des présentes dont le coût est de : CENT MILLE FRANCS CFA.

Employé pour copie deux feuilles au format du timbre à MILLE FRANCS CFA

L'Huissier de Justice

ORDONNANCE

N°57

RÔLE CIVIL N° 2RD
MARS 2006

RÉPERTOIRE N° 275

PUBLIQUE
AU NOM DU PEUPLE CONGOLAIS

GROSSE

L'an deux mil six;
Et le vingt sept du mois de Mars;

Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc ETIKI, Greffier en Chef des Chambres Civiles audit Tribunal;

Vu la requête en date à Pointe-Noire du 22 Mars 2006 de la Société Nationale des Pétroles du Congo dite SNPC;

Attendu qu'à l'appui de sa requête, elle expose: Que dans le cadre de ses opérations, elle est partenaire de la Société CMS NOMECO CONGO, LLC dans le permis Marine I;

Qu'à ce titre, il est prévu, au cours du mois d'avril 2006, l'enlèvement par elle, d'une cargaison de pétrole, au titre de la redevance pétrolière et de sa participation dans ledit permis;

Que or, elle a été saisi par la Société CMS NOMECO CONGO, LLC, par courrier en date du 02 Mars 2006, de ce qu'une série de décisions rendues par des juridictions américaines, prises dans le cadre des Procédures opposant la République du Congo à certains de ses créanciers, faisant injonction à cette société de ne pas permettre à elle de procéder à cet enlèvement;

Qu'elle tient à préciser que les décisions des juridictions américaines en faveur de AF-CAP Inc, Walker International Holdings Limited, FG Hemisphere Associates LLC et National Union Fire Insurance Company of Pittsburg, P.A, créanciers de la République du Congo, même prises à son encontre, doivent faire l'objet d'une procédure d'exéquatur, avant leur éventuelle exécution au Congo;

Que or, à ce jour, elle n'a été notifiée, ni d'aucune décision des juridictions américaines ordonnant la saisie attribution de ses cargaisons, encore moins d'une décision d'exéquatur, ordonnant l'exécution des décisions américaines au Congo;

Qu'à cet effet et, tenant compte de tout ce qui précède, elle demande qu'il plaise à Monsieur le Président du Tribunal de Grande Instance de Pointe-Noire, statuant suivant la procédure de référé d'heure à heure, d'ordonner: -Premièrement à la société CMS NOMECO CONGO, LLC de ne pas exécuter les décisions des juridictions américaines, qui faute d'exéquatur, ne peuvent pas s'exécuter au Congo;- Deuxièmement, le Tribunal devrait faire injonction à la Société CMS NOMECO CONGO, LLC d'autoriser et d'organiser l'enlèvement de la cargaison de pétrole de qualité Yombo prévu au mois d'Avril 2006, tel que convenu avec elle;

SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier qu'en l'espèce, il s'agit de l'exécution des décisions judiciaires rendues par les Tribunaux Américains en date du 14 Février 2006, notamment des ordonnances de saisie-attribution et de remise;

Que ces ordonnances ont été signifiées à CMS NOMECO Inc The NUEVO CONGO Company et NUEVO CONGO LTD;

Attendu qu'il est constant que ces décisions n'ont jamais été signifiées ni à l'Etat Congolais, ni à la SNPC;

Attendu que ces décisions n'ont jamais été exéquaturées au Congo conformément à

.../...

cont à la législation Congolaise;

Attendu qu'il y a lieu en l'espèce de faire application des dispositions de l'article 309 du Code de Procédure Civile,Commerciale,Administrative et Financière;

qu'en effet,l'article 309 dudit Code dispose que"Sauf conventions diplomatiques contraires,les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou Ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente"ratione materiae pour en connaître;

Attendu au regard de ce qui précède qu'il y a lieu de dire qu'il n'est pas loisible à la C.S NOTECO de faire application des décisions Américaines non exéquaturées à l'encontre de la SNPC;

Attendu que dans ces conditions il y a lieu de dire que la requête de la SNPC est donc régulière et recevable en la forme;

Attendu au fond qu'en vertu de l'article 309 du Code de Procédure Civile, Commerciale,Administrative et Financière;qu'il y a lieu de dire que cette requête est fondée;

qu'il y a lieu d'y faire droit;

Attendu qu'il échet d'ordonner à la Société C.S NOTECO de livrer sans délais à tout opérateur que lui désignera la SNPC toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat;

Attendu que la Société C.S NOTECO bien que régulièrement convoquée,a par le biais de son Conseil,Maître BOUTECKET,Avocat à la Cour,dit qu'elle ne pouvait pas conclure et qu'elle attendait les instructions du PDG de NOTECO depuis Londres,la capitale Anglaise,n'a ni déposer de mémoire pour sa défense;

Attendu qu'il y a lieu de donner défaut à son encontre et de mettre les dépens à sa charge;

PAR CES MOTIFS

Statuant publiquement,par réputé contradictoire en référé en matière d'exécution et en premier ressort;

Au principal;Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent,vu l'urgence et par provision;

Constatons que les jugements américains du 2X Décembre 2004,17 Septembre 2004,des 4 et 10 Février 2005 et des ordonnances du 14 Février 2006 n'ont jamais été exéquaturées par une juridiction compétente Congolaise;

En conséquence;

Disons que les présentes décisions ne sont pas exécutoires à l'encontre de la SNPC,partenaire de C.S NOTECO;

Ordonnons donc à la société C.S NOTECO de livrer sans délai à tous opérateurs que lui désignera la SNPC,toutes les quantités d'Hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat;

Ordonnons l'exécution provisoire de la présente Ordonnance nonobstant toutes voies de recours;

...../...

-'-

ettons les dé;ens à la charge de la ? · '? ECO;

't avons signé notre Ordonnance avec le Greffier./-

.N CONSEQUENCE LA REPUBLIQUE D  CONGO
MANDE ET ORDONNE  A TOUS HUISSIERS SUR CE REC'JI;
DE METTRE LEDIT  JUGEMENT A EXECUTION  AUX
PROCUREURS GENERAUX ET AUX PROCUREURS DE
LA REPUBLIQUE PRES LES COURS ET TRIBUNAUX DE
GRANDE INSTANCE D'Y TENIR LA MAIN A TOUS
COMMANDANTS ET OFFICIERS DE LA FORCE PUBLIQUE
DE PRETER MAIN FORCE LORSQU'ILS EN SERONT
LEGALEMENT  REQUIS

ET SCELLEE PAR NOUS...
PRES LE TRIBUNAL DE GRANDE INSTANCE
ET PAR LUI DELIVREE SOUS FORME DE GROSSE

:: ·····························les
········ ·· ·· du Greffier
·············· ············· ·········
·········· ···················· ·········
···· ······· ·········· ·········
·· ···· ··· ·· ··· ·· ········· ···
···· ······ ·S/b·· ·········Pages.

TE-NOSSE- le ·? -/ MAR - 2006 ·
Le Greffier en Chef

Maitre Ernest  LBOLA
Greffier en Chef

PAR LE TRIBUNAL
COLLATIONEE  2 7 MAR  2006
LE GREFFIER EN CHEF

Maitre Ernest  EBOLA
Greffier en Chef

 

*Etude Maitre Bertrand Rodolphe Madassou*
*Bailiff*
*Auctioneer*

Year 2006
Rep: 22/06
File 022/06

## SERVICE OF COURT ORDER AND SUMMONS

On 27 March 2006, at 5:30 pm

At the request of the **Société Nationale des Pétroles du Congo (SNPC)**, whose registered office is located at Brazzaville, 146 Avenue Charles de Gaulle, BP 188, represented by its legal representative, with address for service for the purposes hereof in my Offices;

**I, the Undersigned Process Server, Mr Bertrand Rodolphe Madassou, Bailiff (*huissier*) and auctioneer (*commissaire-priseur*) with the Court of Appeal of Pointe-Noire and Courts thereunder, there residing at BP 911, Tel 553.67.87**

Have served this execution copy and a full copy hereof to:

CMS Nomeco, whose registered office is located at Pointe-Noire, Centre-Ville, Republic of the Congo.

**Served in person to:** Mr Iwdchewitsch

The execution copy of the court order was thus duly served as handed down by the President of the Pointe Noire *Tribunal de Grande Instance* and dated 27 March 2006, with docket no. 275, and which operative part states as follows:

*"FOR THESE REASONS:*

*Ruling in the first instance on an urgent interlocutory petition regarding enforcement in a public session by way of a judgment deemed to have been given after a hearing of all sides;*

- *Hereby invite the parties to bring their action before the appropriate courts;*

*But in view of the urgency of the matter and as a provisional measure:*

*- Note that the U.S. rulings of 23 December 2004, 17 September 2004, [11] and 22 February 2005, and the court orders of 14 February 2006 have never been declared enforceable by a competent Congolese court;*

*Therefore,*

*Hold that such rulings are not enforceable against SNPC, partner of CMS Nomeco;*

1

*Hereby order the immediate enforcement of this order notwithstanding appeal;*

*Order Nomeco to pay the costs."*

And pursuant to this same request made by the petitioning party named above,

I, the undersigned Process Server as set out herein,

**Hereby summon CMS Nomeco** to immediately deliver, to any operators that the SNPC may designate, any and all amounts of hydrocarbons belonging to SNPC or in its possession under their partnership agreement.

**Declare** that subsequent to any failure on its part to comply with this demand, the petitioner will use all legal means available to obtain possession of its goods.

**Hereby declare** that this service is made for all such legal purposes

In witness whereof

May the party take notice hereof

I have delivered this execution copy and a copy hereof personally as set out above, for which costs were: ONE HUNDRED THOUSAND CFA Francs.

For copying two sheets stamped with a duty of 1000 CFA.

[Bailiff's signature]

2

## ORDER

Rendered on 27 March 2006,

Before the Honorable Norbert Elenga, President of the Pointe Noire *Tribunal de Grande Instance*, ruling in a public session for urgent interlocutory matters in chambers at the Court of Justice of that city,

Assisted by Mr. Marc Etiki, Head Court Clerk for the Civil Division of said Court,

Subsequent to a request made by the Société Nationale des Pétroles du Congo (SNPC) in Pointe-Noire and dated 22 March 2006;

Whereas in support of this request, SNPC states that as part of its business, it has a partnership with the Société CMS Nomeco Congo, LLC in the Marine 1 permit.

That in this capacity it had been planned that SNPC would pick up a cargo of petroleum in April 2006 as part of the oil royalty and for its participation in such permit.

SNPC was thus notified by CMS Nomeco Congo in a letter dated 02 March 2005 of a series of rulings handed down by courts in the United States and rendered in the proceedings between the Republic of Congo and some of the country's creditors, and ordering CMS Nomeco not to allow SNPC to pick up the cargo.

SNPC wishes to specify that even if such rulings of the United States courts are against the Republic of the Congo and in favor of AF-CAP Inc, Walker International Holdings Limited, FG Hemisphere Associates LLC, and National Union Fire Insurance Company of Pittsburg, PA, all of whom are creditors of the Republic of the Congo, the rulings must be the subject of an exequatur procedure before they can be enforced in Congo.

At present, SNPC has not been notified of any decision from the United States courts ordering the garnishment of its cargo, much less an exequatur decision ordering the enforcement of the U.S. court rulings in Congo.

That to that purpose and in light of the foregoing, SNPC requests that the President of the Pointe-Noire *Tribunal de Grande Instance*, ruling in a urgent interlocutory proceedings, order:

- first, that the company CMS Nomeco Congo, LLC not execute the rulings of the U.S. courts which, failing exequatur, cannot be enforced in Congo;

- second, that the Court order CMS Nomeco Congo LLC to authorize and arrange for the pick-up of the Yombo-quality petroleum cargo planned for April 2006 as agreed with SNPC;

## JUDGE'S FINDINGS

Whereas a review of the exhibits in the file show that this case involves the enforcement of court rulings handed down by the U.S. courts on 14 February 2006, and in particular garnishment and seizure orders;

These orders were served on CMS Nomeco Inc, The Nuevo Congo Company and Nuevo Congo Ltd.

Whereas it is clear that these rulings were never served on either the Congolese Government or SNPC;

 

Whereas these rulings have never received exequatur in Congo pursuant to applicable Congolese legislation;

Whereas in this case it is appropriate to implement the provisions of article [99] of the Civil, Commercial, Administrative and Financial Procedure Code;

Article [99] of that Code provides that save diplomatic agreements to the contrary, judgments handed down in foreign courts and documents received by public or ministerial officers from foreign countries may only be enforced upon Congolese territory after receiving exequatur from a Congolese court that has *ratione materiae* jurisdiction to hear the case.

Whereas in view of the foregoing, CMS Nomeco should not implement the U.S. court rulings against SNPC that have not received exequatur;

Whereas in these circumstances, we may hold that SNPC's request is duly formed and admissible;

Whereas on the merits, under article 307 of the Civil, Commercial, Administrative and Financial Procedure Code, there are grounds for granting the request;

Therefore the request should be granted.

Whereas CMS Nomeco should therefore be ordered to immediately deliver, to any operator SNPC may designate, any and all amounts of hydrocarbons belonging to and held by SNPC under their partnership agreement;

Whereas CMS Nomeco, duly summoned, has expressed via its Counsel, Mr Mouyecket, *Avocat à la Cour*, that it could not make submissions and was awaiting instructions from the Nomeco Chairman in London, and accordingly has not submitted any pleadings in its defense;

Whereas it is therefore appropriate to rule against it and sentence it to the costs;


### FOR THESE REASONS

Ruling in the first instance on an urgent interlocutory petition regarding enforcement, in a public session by way of a judgment deemed to have been given after a hearing of all sides;

Hereby **invite** the parties to bring their action before the appropriate courts;

But in view of the urgency of the matter and as a provisional measure:

– **Note** that the U.S. rulings of 23 December 2004, 17 September 2004, [11] and 22 February 2005, and the court order of 14 February 2006 have never been declared enforceable by a competent Congolese court;

Therefore,

**Hold** that such rulings are not enforceable against SNPC, partner of CMS Nomeco;

Hereby **order** CMS Nomeco to immediately deliver, to any operators that SNPC may designate, any and all amounts of hydrocarbons belonging to and held by SNPC under their partnership agreement

Hereby **order** the immediate enforcement of this order notwithstanding appeal;

**Order** Nomeco to pay the costs.

In consequence thereof the Republic of the Congo orders its bailiffs, based upon this application, to execute the said judgment with the Attorneys General and Prosecuting Attorneys of the courts of appeal and the district courts to assist all



commanders and law enforcement agencies to lend a hand when they are required to do so.

In witness whereof, this execution copy has been signed and sealed by the Chief Clerk of the Pointe-Noire District Court and delivered by him in the form of an execution copy.

Signed by the Chief Clerk

[Chief Clerk signature]

5