**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. §<br>　　　　　Plaintiff, §<br>　　　　　　　　　　　　　　　§<br>v.　　　　　　　　　　　　　　§<br>REPUBLIQUE DU CONGO　　　　§<br>　　　　　Defendant, §<br>and　　　　　　　　　　　　　　§<br>　　　　　　　　　　　　　　　§<br>CMS OIL AND GAS COMPANY, et. al., §<br>　　　　　　　　　　　　　　　§<br>　　　　　Putative Garnishees. § | CIVIL ACTION No. H-02-4261 |

## DECLARATION OF BERNARD CASTANET

I, Bernard Castanet, declare:

1.  My name is Bernard Castanet. I am presently a Safety Adviser for inter alia CMS Nomeco Congo LLC ("CMS Nomeco") and I have personal knowledge concerning the facts set out in this declaration. Set out below are facts relating to the April 2006 lifting of oil from the Conkouati in the Congo.

2.  On Friday 7 April 2006, Ms Maryse Bernard, President of CMS Nomeco explained to me by telephone that the General Manager, Mr Eric Faillenet, was under considerable pressure, had been threatened and wished to be replaced for the next 7 to 10 days. The President told me that she had decided to appoint me as Temporary General Manager for that period, subject to my agreement. It is my understanding that this decision was taken by the CMS Nomeco management on the basis of my past operational experience (in particular as Congolese General Manager in 2001) as well as my expertise on safety and environmental matters (see my Declaration dated 17 March 2006).

3. I travelled to Pointe Noire, Congo on 12 April 2006. On the morning of Thursday, 13 April I met the CMS Nomeco Operations Manager at the CMS Nomeco offices in order to get an update on current operations; I also met with the engineer in charge of the refurbishment work currently being carried out on the Conkouati terminal. I also reviewed the general Health and Safety actions currently in progress at CMS Nomeco.

4. At around 10am, on 13 April, 4 representatives of SNPC arrived at the CMS Nomeco offices : they told me that they expected CMS Nomeco to comply with the Congo court order requiring the lifting to take place. I pointed out that there was a US court order saying exactly the contrary and that I therefore would not allow the lifting to occur. SNPC informed me that they would return with the police to enforce their court order.

5. Just before midday a number of representatives of SNPC assisted by a bailiff (Mr Madassou), a Police Superintendent and 4 armed gendarmes entered the CMS Nomeco office. They delivered to me a "Requisition à Force Publique" (attached) that on its face showed that it was applied for by SNPC on 12 April and issued on 13 April. I told them we would not allow the lifting. SNPC then told me that they would take the lifting despite my objections and that the police would be sent on board the Conkouati to achieve this. The situation was menacing.

6. In view of the presence of the police and bailiff, I requested an opportunity to telephone the CMS Nomeco President in London. I discussed the situation with her. I stressed the fact that it was absolutely clear that SNPC would enforce the lifting whatever our objections

2

and that the Requisition could potentially involve a high risk to our employees, the environment as well as our assets in general.

7. The Congolese then requisitioned a transport vessel and at about 4pm on 13 April, the Police Superintendent, a number of gendarmes and various Congo officials set out for the Conkouati and boarded about 7pm, which was outside permitted lifting hours of the terminal.

8. The Operations Manager reported to me that the Congolese officials directed him that the lifting must occur : the Police Superintendent, the gendarmes and the Congo officials remained on the Conkouati throughout the whole of this period until the lifting was completed.

9. Given the pressure exercised by the Congolese authorities, the lifting commenced at around 2pm on Friday, 14 April, some 24 hours after SNPC had intended it to start. I was told that CMS Nomeco would have to pay the demurrage charges that SNPC would incur as a result of our refusal to co-operate.

10. The Operations Manager informed me that the presence of the police and gendarmes made the lifting operation very tense as the crew was very worried. About 27 hours after the start of the loading operation, the three forward mooring lines of the Conkouati to the "Senang Spirit" lifting vessel broke down. The two tug boats used to keep the "Senang Spirit" along the Conkouati could not manage to control the vessel as requested with the consequence that the loading hose became overstretched. The pilot, noticing the danger of the situation, requested that the loading be stopped. As the Conkouati export valve was being closed, the

3

loading hose flange connected to the "Senang Spirit" gave way and the loading hose released approximately 30 barrels of crude oil on the deck and at sea. The loading operation had to be stopped in view of this unsafe operational condition. This was the first time since we operated the terminal that such an accident occurred, this being mainly due to a lack of attention to the tensioning condition of the forward mooring lines and of poor co-ordination of the mooring tugs. Obviously one of the reasons, if not the main reason, for the accident was the stress experienced by the crew under these very unusual circumstances.

10. This highlights the risks attached to a normal lifting operation and the problems that can arise when unqualified personnel interfere with or are present during difficult operations.

11. In total 529,647 barrels of oil were lifted compared with the 600,000 barrels which SNPC had notified us that they wished to have delivered.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing statements are true and correct.

EXECUTED on the 25th day of April, 2006, in London, England.

_____
Bernard Castanet

4

**COUR D'APPEL DE POINTE-NOIRE**

**TRIBUNAL DE GRANDE INSTANCE DE POINTE-NOIRE**

PARQUET DE MONSIEUR LE PROCUREUR DE LA REPUBLIQUE

N°_____501_____/ C. 2006

Reçu le 1 3 AVR. 2006

**REQUISITIONS A FORCE PUBLIQUE**

**REPUBLIQUE DU CONGO**
Unité*Travail*Progrès

*[Handwritten annotations and stamps: "Mention: Avons laissé copie au commandement de la gendarmerie" / "Mention: Que quatre copies laissée à la CMS NOMECO" / Lieutenant Serge Coopell M'PIERE, Officier de Police Judiciaire, Commandant de la brigade plateau]*

Le Procureur de la République près le Tribunal de Grande Instance de Pointe-Noire ;

Vu la requête en date à Brazzaville du 12 Avril 2006 de la Société Nationale des Pétroles du Congo (SNPC) tendant à un recours à la force publique aux fins d'exécution de l'ordonnance n° 275 du 27 Mars 2006 de Monsieur le Président du Tribunal de Grande Instance de Pointe-Noire, dont le dispositif est libellé ainsi qu'il suit :

« Statuant publiquement, par réputé contradictoire en référé en matière d'exécution et en premier ressort ;

**AU PRINCIPAL :**

Renvoyant les parties à mieux se pourvoir ainsi qu'elles en aviseront ;

Mais dès à présent, vu l'urgence et par provision ;

Constatons que les jugements américains du 23 Décembre 2004, du 17 Septembre 2004, des 04 et 22 Février 2005 et des ordonnances du 14 Février 2006 n'ont jamais été exécutoires par une juridiction compétente congolaise ;

**EN CONSEQUENCE :**

Disons que les présentes décisions ne sont pas exécutoires à l'encontre de la SNPC partenaire de **CMS NOMECO** ;

Ordonnons à la Société **CMS NOMECO** de livrer sans délai à tous opérateurs que lui désignera la SNPC toutes les quantités d'hydrocarbures lui appartenant et détenue par elle en vertu de leur partenariat ;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours ;

Mettons les dépens à la charge de la CMS NOMECO ».

Attendu que malgré signification commandement de ladite ordonnance servie le 27 Mars 2006 à 17 heures 30minutes par Maître MADASSOU Bertrand Rodolphe, Huissier de Justice, la Société NOMECO ne s'exécute pas ;

Qu'elle entreprend tout ce qui est de son pouvoir pour faire échec à l'exécution de cette décision ;

Attendu que la décision sus évoquée est revêtue de la formule exécutoire et donc d'exécution immédiate nonobstant toutes voies de recours ;

Qu'il est donc opportun pour le ministère public chargé de l'exécution des décisions de justice de prêter main – forte à l'exécution sans faille de cette décision ;

Que pour y parvenir un recours à force publique s'avère nécessaire pour briser la résistance téméraire de CMS NOMECO .

### EN CONSEQUENCE :

Requiert Monsieur le Commissaire Central de Police et tous agents de la Force publique par lui désignés ; Prêter main – forte à **Maître Bertrand Rodolphe MADASSOU** dans l'exécution de la décision sus – vantée.

Fait au Parquet à Pointe-Noire, le 13 Avril 2006

Le Procureur de la République

André Charles LOEMBA