EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONNECTICUT BANK OF COMMERCE | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-762 SLR |
| THE REPUBLIC OF CONGO | ) ) ) | |
| Defendant, | ) ) | |
| CMS NOMECO CONGO, INC., | ) ) | |
| Garnishee. | ) | |

## PLAINTIFF'S RESPONSE TO GARNISHEE'S FIRST INTERROGATORIES

Plaintiff, Af-Cap, Inc. (successor in interest to Connecticut Bank of Commerce) ("Af-Cap") pursuant to Rule 33 of the Federal Rules of Civil Procedure, Rule 26.1 of the Local Rules of the United States District Court for the District of Delaware, and the Court's August 23, 2006 Joint Scheduling Order, by and through their undersigned attorneys, serves its Responses To Garnishee's First Interrogatories.

Notwithstanding the matter being a garnishment action, Garnishee CMS Nomeco Congo, Inc. has served Plaintiff Af-Cap with far ranging interrogatories. As is explained in its specific responses and objections to the interrogatories, Af-Cap objects to the interrogatories on the grounds that several interrogatories are, in whole or in part, overbroad and not reasonably calculated to lead to the discovery of admissible evidence because they seek information that is not relevant to the claims or defenses of any party or are outside the scope of discovery in this matter. In particular, CMS seeks information on topics that go beyond Af-Cap's lawful ownership of the judgment debt at issue in this case and appear solely designed to embarrass and

JAN 1 1 2007

harass Af-Cap. Under Delaware law, a plaintiff with a judgment in any court of record may seek to attach property of a judgment debtor held by a garnishee. *See* 10 Del. C. § 5031. Such a plaintiff's only burden is to establish the validity and the amount of the judgment it seeks to enforce, *i.e.*, that it qualifies as a garnishor under 10 Del. C. § 5031. To the extent CMS seeks discovery beyond that point or one of the issues identified in the Court's Scheduling Order, the local rules or the Federal Rules of Civil Procedure, its interrogatories constitute an improper use of discovery.

## **GENERAL OBJECTIONS**

1. Af-Cap objects to the Interrogatories to the extent that the Instructions and Definitions set forth therein seek to impose requirements beyond those contained in the Federal Rules of Civil Procedure, Local Rules of Civil Procedure, the Court's Joint Scheduling Order or the applicable Delaware Rules of Civil Procedure as incorporated in this proceeding by FRCP Rule 69.

2. Af-Cap objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege or the attorney work product doctrine. With respect to those Interrogatories to which Af-Cap does not otherwise specifically object and which seek the production of privileged information, Af-Cap will identify such information and documents in the manner and to the extent required under applicable rules.

3. In providing these responses, Af-Cap does not in any waive, but rather intends to preserve:

    a. All objections to vagueness and ambiguity;

    b. All rights to object on any grounds to the use of any of the Answers herein

or documents in any subsequent proceedings, including the trial of this or any other action;

      c.    All rights to object to any further Interrogatories or other discovery requests involving or related to any of these Interrogatories.

4.    Af-Cap objects to each Interrogatory to the extent that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks information that is not relevant to the claims or defenses of any party or are outside the scope of discovery set forth in the Court's Rule 26 Scheduling Order. In particular, CMS's requests for information that go beyond Af-Cap's lawful ownership of the judgment debt at issue in this case have no bearing on the matter. Such topics are designed to embarrass and harass Af-Cap, which constitutes an improper use of discovery. Furthermore, under Delaware law, a plaintiff who has a judgment in any court of record may seek to attach property of the judgment debtor by the garnishee. *See* 10 Del. C. § 5031. Nevertheless, subject to and without waiving this objection, Af-Cap will provide information that sustains its burden to demonstrate that it qualifies as a garnishor under 10 Del. C. § 5031.

5.    Af-Cap specifically objects to Definition 2 to the extent that it implies that Congo can claim sovereign immunity as a defense to Af-Cap garnishing the oil royalty debt at issue in this case. Congo is estopped from raising sovereign immunity as is CMS, who purports to stand in Congo's shoes, pursuant to *Af-Cap, Inc. v. Republic of Congo*, 383 F.3d 361, *amended on reh'g.*, 389 F.3d 503 (5th Cir. 2004) ("*Af-Cap II*"), *cert. denied*, 125 S.Ct. 1735 (2005).

6.    Af-Cap specifically objects to Definition 3 to the extent it questions Af-Cap's position as the real party in interest.

7.    Af-Cap specifically objects to Definition 6 to the extent that it implies CMS is not

3

a party to the Convention.

8. Af-Cap specifically objects to Definition 7 to the extent it suggests Af-Cap does not hold the judgment which it is enforcing in this case.

9. Af-Cap specifically objects to Definition 11 on the grounds that it misstates the basic concept of what constitutes "Royalty Oil" under the Oil Convention and Joint Operating Agreement at issue in this case as well as the widely accepted and commonly applied customs, traditions, and practice in International Petroleum Agreements.

10. The answers are based upon information known to Af-Cap as of this date. Af-Cap reserves it right to amend its responses.

11. To the extent that Af-Cap chooses to produce business records to answer an Interrogatory, Af-Cap does so because the information requested is contained within such documents and the burden of deriving or ascertaining the answer is substantially the same for Plaintiff as it is for Af-Cap. *See* Fed. R. Civ. P. 33(d).

12. Af-Cap objects on the grounds that Congo has waived its defenses to attachment and execution and, therefore, the requests are irrelevant.

13. Af-Cap objects on the ground that CMS lacks standing to object to attachment of Congo's assets, therefore, the requests are irrelevant.

4

## RESPONSE TO INTERROGATORIES

Subject to the foregoing general objections, Plaintiff responds to each of the individual interrogatories as follows:

## INTERROGATORY NO. 1:

Describe Af-Cap, Inc.'s investment in the debt that is the subject of this Proceeding or the Judgment that is the subject of this Proceeding, including the dates of each investment by Af-Cap in the debt that is the subject of this Proceeding or the Judgment that is the subject of this Proceeding, the nature of the investment, and the consideration paid, and identify the documents evidencing the investment and the consideration paid.

## RESPONSE:

Af-Cap objects to this interrogatory on the grounds that it is overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege or attorney work product doctrine. Furthermore, Af-Cap objects on the grounds that the interrogatory seeks information that is proprietary and commercially sensitive, which Af-Cap will provide only after entry of a Confidentiality Agreement. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general and specific objections, Af-Cap states that it holds title to the debt owed by Congo and a judgment thereon issued against the Republic of Congo by the High Court of the Queen's Bench in England on November 15, 1996. That judgment was registered in New York State Court and forms the basis for this action. Af-Cap will provide further information after entry of a Confidentiality Agreement. Documents evidencing the judgment and Congo's indebtedness are being produced pursuant to Af-Cap's response and objections to CMS's document request.

5

**INTERROGATORY NO. 2:**

Describe Af-Cap, Inc.'s acquisition of any interest in the debt that is the subject of this Proceeding or the Judgment that is the subject of this Proceeding or of any right to receive any portion of the proceeds of or payments on such debt or Judgment, including the dates of each such acquisition, the interests acquired, the manner in which the interests were acquired, and the consideration paid, and identify the documents evidencing the acquisitions and the consideration paid.

**RESPONSE:**

Af-Cap refers CMS to its objections and response to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

What is the current value of the Judgment that is the subject of this Proceeding?

**RESPONSE:**

The total value of the Judgment is $13,628,340.11 plus interest and costs up to the time the judgment is fully satisfied.

**INTERROGATORY NO. 4:**

Describe all steps taken by CBOC or Af-Cap, Inc. to collect the Judgment that is the subject of this Proceeding, other than the steps taken in this litigation and in Case Nos. A-01-CA-100-SS and A-01-CA-321-SS in the United States District Court for the Western District of Texas and in Case No. H-02-4261 in the United States District Court for the Southern District of Texas, and describe the results of those efforts.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds it is overbroad, not reasonably calculated to lead to the discovery of admissible evidence, seeks information that is not within the possession, custody and control of Af-Cap, and information protected by the attorney-client privilege or work product doctrine. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

6

Without waiving its general and specific objections, Af-Cap states that it originally attempted to settle this debt with Congo and, in fact, Congo signed a Protocol D'Accord to settle the debt with Af-Cap. However, after Congo signed the Protocol D'Accord, which included an agreement that Af-Cap would reinvest money in Congo and assist Congo in obtaining additional financing, Congo refused to honor the Protocol D'Accord. Af-Cap has also brought judgment enforcement actions in England, Monaco, France, the Cayman Islands, New York, and California. In none of these actions, has any party ever disputed that Af-Cap is the real party in interest.

**INTERROGATORY NO. 5:**

Identify each and every legal proceeding in which CBOC or Af-Cap has attempted to collect the Judgment that is the subject of this Proceeding by stating the parties to the proceeding, the nature of the proceeding, the current status of the proceeding, and the results of the proceeding.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it is overbroad, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, seeks information that is not within the possession, custody, or control of Af-Cap, and information that is protected by the attorney-client privilege or work product doctrine. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap refers Garnishee to Af-Cap's response to Interrogatory No. 4.

**INTERROGATORY NO. 6:**

Describe the assets of the Congo that you have identified as assets that should be available to you

7

to collect the Judgment that is the subject of this Proceeding, and describe the steps that you have taken or intend to take with regard to such assets.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it is overbroad, is not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is protected by the attorney-client privilege or attorney work product doctrine. Furthermore, in light of CMS's relationship with Congo and its willingness to assist Congo in hiding assets, if Af-Cap were to provide such information it would only aid CMS and Congo in evading other efforts to enforce the judgment. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Af-Cap seeks to garnish the royalty oil obligation that CMS admits it owes to Congo. The discovery provided by CMS to date shows beyond dispute that CMS continues to exploit oil under the Convention and thus owes royalties corresponding to the production to Congo, which is indisputably Af-Cap's judgment debtor. Af-Cap intends to pursue this action and any other actions necessary until its indisputable debt is recovered.

**INTERROGATORY NO. 7:**

Describe the actions, if any, that CMS Nomeco could have taken to prevent the Congo from taking the Royalty Oil that SNPC took in December 2004, September 2005, and April 2006, and explain why you believe that such actions, if any, would have been effective to prevent the Congo from taking its Royalty Oil, and identify the persons with knowledge of those facts.

**RESPONSE:**

Af-Cap objects to this interrogatory because it assumes that CMS had to take steps to prevent Congo from taking the Royalty Oil that SNPC supposedly took in December 2004,

8

September 2005 and April 2006 beyond informing Congo that it was subject to court orders requiring that CMS satisfy monetary judgment held by Af-Cap with the same Royalty Oil. Furthermore, Af-Cap objects to the interrogatory because it requires Af-Cap to reach a legal conclusion, and is not reasonably calculated to lead to the discovery of admissible evidence. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that it disputes CMS's contention underlying this request, namely that it had to take action to prevent Congo from taking an oil royalty in December 2004, September 2005 and April 2006. Furthermore, the supposed need of CMS to take action is not relevant to whether the royalty obligation between Congo and CMS is amenable to garnishment in Delaware. It is Af-Cap's position that the oil taken at those times was subject to either valid writs of garnishment or a Turnover Order. If Congo, or SNPC on Congo's behalf, took oil, then CMS has the option to bring a separate proceeding against Congo. By way of example, CMS could have availed itself of the dispute resolution and commercial stabilization provisions of the Convention. It also can bring an international arbitration proceeding. In addition, as it has in prior instances where it has taken exception to Congo's imposition of taxes, it could have formally protested the Congo's purported actions. Moreover, CMS could have sought assistance from the governments of the countries in which it or its ultimate parent, Perenco S.A., are incorporated or otherwise registered to do business. CMS also could have filed an interpleader action or paid money into the Court registry as is allowed under the Federal Rules of Civil Procedure. CMS has failed to take any of these

steps despite taking steps to counteract the Congo in other instances where its interests were at issue or it gained an advantage by not challenging Congo.

**INTERROGATORY NO. 8:**

Did the Congo have the right to take the Royalty Oil that SNPC took in December 2004, September 2005, and April 2006? If not, why not?

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it calls for a legal conclusion and is not reasonably calculated to lead to the discovery of admissible evidence. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that Congo and CMS were obligated to turn such royalties over to Af-Cap under a binding turnover order and under Af-Cap's writ of garnishment. However, CMS failed to abide by the court orders. Moreover, whether Congo had a right "to take the Royalty Oil" is not relevant to whether the royalty obligation between Congo and CMS is amenable to garnishment in Delaware. *See also* response to Interrogatory No. 7.

**INTERROGATORY NO. 9:**

Did Af-Cap, Inc. take any actions to seek recognition or enforcement in a Congolese court of orders or writs of garnishment issued by the United States District Court for the Western District of Texas in connection with Case Nos. A-01-CA-100-SS or A-01-CA-321-SS or the garnishment writ that is the subject of this case? If not, why not?

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Af-Cap also objects

10

because the interrogatory is based on the false premise that Af-Cap is required to seek enforcement in the Congo, which it does not. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that it is not required to seek enforcement in Congo because Congo has consented to jurisdiction and enforcement in the United States.

**INTERROGATORY NO. 10:**

At any time during the period October 12, 2005 through November 2, 2005, did the Congo have the right to take Royalty Oil? If so, state the volume of Royalty Oil that the Congo had the right to take during that time period, describe the facts giving rise to the Congo's right to take those volumes of Royalty Oil during that time period, and explain why the Amendment to Lifting Agreement did not preclude the Congo from taking Royalty Oil during that period.

**RESPONSE:**

Af-Cap objects to this interrogatory on the ground that it is based on the false premise concerning Congo's right "to take Royalty Oil." Af-Cap also objects to this interrogatory on the grounds that it calls for a legal conclusion, the information sought is not reasonably calculated to lead to the discovery of admissible evidence, and the information is not in Af-Cap's possession, custody, and control. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that CMS admits that it continues to hold the Oil Convention rights and that it continues to extract oil from the subject field. To the extent that CMS produced oil, it owed a debt, in the form of a royalty, to Congo

11

subject to Af-Cap's attachment. The royalty debt should have been paid to Af-Cap or at least into the Court because Af-Cap had valid writs of garnishment and a Turnover Order against the royalty obligation. Additionally, another creditor of Congo, Walker International Holdings, Inc., has a valid and enforceable turnover order which required Congo to pay the funds into Court. Further, both Mr. Fox's deposition testimony and documents produced by CMS in this litigation show beyond dispute that CMS held oil belonging to Congo during the time period in question. Congo's right "to take Royalty Oil" is irrelevant to whether the royalty oil is amenable to garnishment in Delaware.

**INTERROGATORY NO. 11:**

At any time during the period October 12, 2005 through November 2, 2005, were the Congo and SNPC in a combined under-lifted position of greater than 275,000 barrels for purposes of determining SNPC's right to take a lifting of working interest oil and Royalty Oil under the Amendment to Lifting Agreement?

**RESPONSE:**

Af-Cap objects to this interrogatory request on the grounds that it is based on two false premises. First, Congo's alleged right to take Royalty Oil has no impact on whether or not the oil royalty obligation CMS admits it held during this time period is amendable to garnishment in Delaware. Second, whether Congo or SNPC were in a combined under lifted position has no bearing on whether the oil royalty obligation CMS admits holding during this time period is subject to garnishment in Delaware. Af-Cap further objects to this interrogatory on the grounds that it calls for a legal conclusion, is not reasonably calculated to lead to the discovery of admissible evidence, and seeks information not within Af-Cap's possession, custody, and control. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of

discovery.

Without waiving its general and specific objections, Af-Cap states that the under-lift position of Congo cited by CMS has no bearing on whether the royalty obligation is subject to garnishment under Delaware law. The only relevant fact brought to light by the under-lift reference is that CMS has continually held property and, in at least two instances, disbursed that property to the Congo while this case was pending. Accordingly, the under-lift reference further demonstrates that CMS does not dispute its ongoing obligation to Congo. *See also* Response to Interrogatory No. 10 which is incorporated herein.

**INTERROGATORY NO. 12:**

At any time during the period October 12, 2005 through November 2, 2005, did the Congo have the right to receive cash royalty from CMS Nomeco? If so, state the factual basis for your contention that the Congo had elected to take cash royalty under the Convention as of the period October 12, 2005 through November 2, 2005, state the amount of the cash royalty that you contend that the Congo was entitled to receive from CMS Nomeco during that time period and the factual basis for that contention, and explain why the Amendment to Lifting Agreement did not preclude the Congo from receiving cash royalty during that period.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it is overbroad, requires Af-Cap to draw legal conclusions, and seeks information protected by the attorney-client privilege or attorney work product and doctrine. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that to the extent CMS purports to have paid royalties to Congo, CMS should have made such payments to Af-Cap or the Court for Af-Cap's benefit. In further response, Af-Cap refers CMS to its response to

13

Interrogatory No. 11.

**INTERROGATORY NO. 13:**

Did the April 2006 SNPC oil lifting satisfy the Congo's right to royalty oil liftings that occurred during the period September 2005 through March 2006? If not, why not?

**RESPONSE:**

Af-Cap incorporates herein its objections and responses Interrogatories Nos. 11 and 12.

**INTERROGATORY NO. 14:**

Describe how CMS Nomeco will have protection from double liability if Af-Cap, Inc. recovers a garnishment judgment against CMS Nomeco in this case.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it is based on the false premise that CMS could be subjected to double liability. Af-Cap further objects to this interrogatory on the grounds that it is overbroad, calls for a legal conclusion, and seeks information protected by the attorney-client privilege or attorney work product doctrine. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Caps states that CMS has formal and informal avenues based on the protections provided in the Convention, Joint Operating Agreement, the OHADA Treaty, its relationship with Congo, and in the Federal Rules of Civil Procedure, that protect it from the supposed double liability.

**INTERROGATORY NO. 15:**

Describe each act or omission of CMS Nomeco that you contend constitutes an act of collusion with the Congo in connection with the Congolese court proceedings in which SNPC and the Congo obtained Congolese court orders issued against CMS Nomeco in December 2004, July

14

2005, and April 2006, and explain the factual basis for your contention that such act or omission was an act of "collusion" with the Congo, and identify the persons with knowledge of those facts.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it is vague and ambiguous, overbroad, and seeks information protected by the attorney-client privilege or attorney work product doctrine. . Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that all persons with knowledge of the facts are either employees, officers or directors of CMS, CMS's controlling parent, Perenco, S.A., Congo or SNPC. Further, CMS's continued presence in Congo, combined with its willingness to manipulate the royalty payment obligation, and voluntary defense of Congo in this and other actions demonstrates the existence of the collusive relationship with Congo. Furthermore, Af-Cap has garnished the royalty debt itself and that once attached CMS had an affirmative obligation to pay Af-Cap or into the Court registry. If Congo then took illegal action in response, CMS has recourse under its agreements with the Congo, and in the Federal Rules of Civil Procedure. Otherwise, CMS would shift its known risk of doing business with Congo onto Congo's judgment creditor. *See also* response to Interrogatory No. 7.

**INTERROGATORY NO. 16:**

If you contend that CMS Nomeco was in collusion or colluded with, or is in collusion or is colluding with, the Congo, in any respect relevant to this lawsuit other than what you identified in your answer to Interrogatory No. 15, identify each act or omission of CMS Nomeco that you contend constitutes collusion with the Congo and explain the factual basis for your contention that such act or omission was an act of "collusion" with the Congo, and identify the persons with knowledge of those facts.

15

**RESPONSE:**

Af-Cap incorporates herein its objections and responses Interrogatory No. 15.

**INTERROGATORY NO. 17:**

If you contend that CMS Nomeco encouraged the Congo to take or to threaten to take action against CMS Nomeco in connection with writs of garnishment directed to the Congo's royalty under the Convention, describe the facts that support that contention and identify the persons with knowledge of those facts.

**RESPONSE:**

Af-Cap incorporates herein its objections and responses Interrogatory No. 15.

**INTERROGATORY NO. 18:**

For each asset of the Congo that you contend was captured or covered by the garnishment writ issued in this Proceeding, identify each such asset, state the amount or value thereof, and describe the facts, if any, that you rely on in contending that such asset of the Congo was in the possession of CMS Nomeco during the period October 12, 2005 through November 2, 2005.

**RESPONSE:**

Af-Cap objects to this interrogatory on the grounds that it calls for a legal conclusion and that it calls for information protected by the attorney-client privilege or the work product doctrine.

Without waiving its general and specific objections, Af-Cap states that CMS's records reflect that from September 2005 to the present CMS has paid to Congo or its alter ego, SNPC, between twenty-five and sixty-five million dollars of royalty oil and that at least a portion of the payments were covered by the valid garnishment writ issued in this proceeding. In further response, Af-Cap refers Garnishee to Af-Cap's response to Interrogatories Nos. 11 and 12 and incorporates its objections to those responses herein.

16

## INTERROGATORY NO. 19:

Identify all officers and directors of Af-Cap, Inc. for the period October 2005 to present, and state where their offices are located at which they conduct business of Af-Cap, Inc.

## RESPONSE:

Af-Cap objects to this interrogatory on the grounds that it is overbroad and not likely to lead to the discovery of admissible evidence. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

## INTERROGATORY NO. 20:

Where is Af-Cap, Inc.'s principal place of business? Describe the activities that occur there that support your position that Af-Cap, Inc.'s principal place of business is located there.

## RESPONSE:

Af-Cap objects to this interrogatory on the grounds that it is overbroad and seeks information not likely to lead to the discovery of admissible evidence. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

## INTERROGATORY NO. 21:

Does Af-Cap, Inc. have assets that will be available to satisfy a judgment for attorney's fees or other damages that may be rendered in favor of CMS Nomeco in this case? If so, identify those assets and describe any plan or intent that you may have to move or transfer any of those assets in any manner that would render them unavailable to satisfy a judgment for attorney's fees, costs, or other damages that may be rendered in favor of CMS Nomeco in this case.

## RESPONSE:

Af-Cap objects to this interrogatory because it is based on the false premise that CMS is entitled to recovery of legal fees in this action. Af-Cap further objects on the grounds that it is

overbroad, seeks proprietary and commercially sensitive information, is harassing, and is not likely to lead to the discovery of admissible evidence. Under 10 Del. C. § 5031, Af-Cap has to demonstrate that it has a judgment in any court of record. Any information sought beyond that defined scope exceeds the proper boundaries of discovery.

Without waiving its general or specific objections, Af-Cap states that CMS has no basis to seek fees in this action.

**INTERROGATORY NO. 22:**

State whether you are willing to voluntarily put up security for the payment of any judgment for attorney's fees, costs, or other damages that may be rendered against you in this action.

**RESPONSE:**

Af-Cap incorporates herein its objections to Interrogatory No. 21. Without waiving its general and specific objections, Af-Cap responds as follows: No. *See also* response to Interrogatory No. 21.

Dated: January 10, 2007                    Respectfully submitted,

GREENBERG TRAURIG, LLP

Donald J. Detweiler (No. 3087)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000

and

GREENBERG TRAURIG, LLP
Ronald W. Kleinman
Sanford M. Saunders, Jr.
Kenneth P. Kaplan
800 Connecticut Ave., N.W., Suite 500
Washington, DC 20006
(202) 331-3100

Attorneys for Plaintiff

19