IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------X
:
CONNECTICUT BANK OF COMMERCE,      :
:
Plaintiff,      :
:  Civil Action No. 05-762 SLR
- against -      :
:
THE REPUBLIC OF CONGO,      :
:
Defendant,      :
:
CMS NOMECO CONGO INC.,      :
:
Garnishee.      :
------------------------------------------------------------------X

**OPENING BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PROTECTIVE ORDER**

| | |
|---|---|
| GREENBERG TRAURIG, LLP<br>Donald J. Detweiler<br>Dennis A. Meloro<br>The Nemours Building<br>1007 North Orange Street, Suite 1200<br>Wilmington, Delaware 19801<br>(302) 661-7000 | GREENBERG TRAURIG, LLP<br>Kenneth P. Kaplan<br>800 Connecticut Avenue, N.W., Suite 500<br>Washington, D.C. 20006<br>(202) 331-3100<br><br>GREENBERG TRAURIG, LLP<br>James W. Perkins<br>200 Park Avenue<br>New York, New York 10166<br>(212) 801-9200 |

Dated: January 18, 2007

## PRELIMINARY STATEMENT

This is an enforcement proceeding brought by judgment creditor Af-Cap, Inc. to attach assets of defendant/judgment debtor the Republic of Congo ("Congo"). Congo has not appeared and is in default. Accordingly, the only material issues that must be decided in this litigation are: (1) whether Af-Cap is a judgment creditor of Congo; (2) whether Congo's assets are present in Delaware; (3) if so, whether Af-Cap may execute on those assets; and (4) whether the defenses that garnishee CMS Nomeco, Inc. ("CMS") has raised to enforcement are cognizable.

Nonetheless, CMS seeks to turn this enforcement proceeding into *Jarndyce v. Jarndyce* and bleed Af-Cap of fees that would be spent responding to the irrelevant and harassing discovery demands that CMS has propounded. For example, CMS seeks discovery of Af-Cap's other pending efforts to recover on its judgments against Congo *anywhere in the world*. CMS also seeks to depose Af-Cap's counsel in this case based on an attorney's affidavit which does nothing more than recount the procedural history of litigation between the parties, summarize CMS's efforts to remove itself from the United States and discuss royalty payments CMS made to its business partner, notwithstanding a writ of garnishment that prevented such a transfer. All of this information is based on public records and/or information in CMS's own files, substantially all of which is attached to the affidavits.

This broad brush discovery by a garnishee in this enforcement proceeding is irrelevant to the issues in this case, and, as such, is not a proper use of discovery. Accordingly, the Court should enter a protective order pursuant to Rule 26(c), limiting discovery to the issues of (a) Af-Cap's title to the judgment; (b) whether Congo's assets are present in this jurisdiction; and (c) CMS's defenses of "double liability" act of state and sovereign compulsion -- discovery that would be provided by CMS and quashing CMS's notice to take the deposition of James W. Perkins, one of plaintiffs' counsel in this case.

## STATEMENT OF FACTS

This is an action to enforce a $13,628,340.11, plus interest, money judgment (the "Judgment") that is registered in this District in favor of plaintiff and against Congo, as judgment debtor. On December 11, 2006, counsel for CMS served Af-Cap with: (i) interrogatories; (ii) requests for admissions; and (iii) requests for the production of documents. Copies of these discovery demands are attached hereto as Exhibits A, B and C, respectively. On January 10, 2007, Af-Cap, in turn, served its responses and objections to these discovery demands, also attached hereto respectively as Exhibits D, E and F.

On January 10, 2007, Af-Cap filed a Motion with the Court for an Order of Contempt, Sequestration and Preliminary Injunction. Submitted with this Motion was the Affidavit of James W. Perkins, a shareholder of the law firm of Greenberg Traurig, LLP, and counsel for Af-Cap in this Action (pro hac vice admission pending). A true and correct copy of Mr. Perkins' Affidavit is attached hereto as Exhibit G.

Mr. Perkins' Affidavit outlined the procedural history of litigation between CMS, Congo and Af-Cap, recent actions of CMS to remove itself from the jurisdiction of the United States and CMS's payment of royalties to Congo while the writ of attachment in this case that had been issued and served was in effect. The Affidavit also attaches or refers to documents that are either of public record, generated as part of this proceeding or produced by CMS in this litigation.

Only two days later, on January 12, 2007, counsel for CMS advised counsel for Af-Cap by email that CMS intended to take the deposition of Mr. Perkins. Later that day CMS served Af-Cap with deposition notices for Mr. Perkins, Michael Sheehan (the Director of Af-Cap) as well as an amended 30(b)(6) notice for the deposition of the "corporate representative" of Af-Cap. Copies of these deposition notices attached to this declaration as Exhibits H, I and J, respectively. On January 10, 2007, Af-Cap served its Responses and Objections to CMS's amended 30(b)(6) notice. A true and correct copy of these Responses and Objections is attached hereto as Exhibit K.

The particular items for which Af-Cap seeks a protective order are: (i) the deposition of Mr. James Perkins, Af-Cap's counsel; (ii) the deposition of Michael Sheehan in his individual capacity and to the extent that such deposition seeks information outside the scope of this proceeding; (iii) the 30(b)(6) notice of deposition to the extent CMS seeks discovery of information outside of the scope of this proceeding (*see* objections to 30(b)(6) notice attached as Exhibit K); (iv) CMS's First set of Interrogatories, to the extent that CMS seeks discovery of information outside the scope of this proceeding or are overbroad, including, but not limited to, No. 20 (*see* Responses and Objections to First Set of Interrogatories, attached as Exhibit D); and (v) CMS's First Requests for Production, including, but not limited to, items numbered 1 through 12, 19, and 29, to the extent that CMS seeks discovery of information outside the scope of this proceeding (*see* Responses and Objections to First Requests for Production, attached as Exhibit E).

## ARGUMENT

### POINT I
### A PROTECTIVE ORDER IS APPROPRIATE TO LIMIT THE OVERBROAD, BURDENSOME AND HARASSING DISCOVERY PROPOUNDED BY CMS

Rule 26(c) of the Federal Rules of Civil Procedure empowers the courts to issue protective orders "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). The protective order may direct, *inter alia,* that "the disclosure or discovery not be had" or "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." FED. R. CIV. P. 26(c)(1),(4). *See Pearson v. Miller*, 211 F.3d 57, 72-73 (3d Cir. 2000) ("[A] district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by a party seeking protection."). Accordingly, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

The court will apply a balancing test to evaluate the need for the information sought compared to the impact or harm upon the party from whom discovery is demanded. *Pansy v. Borough of Stroudsberg*, 23 F.3d 772, 787 (3d Cir. 1994); *DeMasi v. Weiss*, 669 F.2d 114, 120 (3d Cir. 1982). "[O]pen-ended fishing expeditions will not be tolerated. Discovery has limits and these limits grow more formidable as the showing of need decreases." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 111 (N.D. Ill. 2004) (granting protective order against plaintiffs' discovery requests relating to university's publication of books regarding antiquities in action brought under Foreign Sovereign Immunities Act by several American citizens severely injured as a result of Iran-sponsored terrorist group's suicide bombing; publications of books

relating to university's studies of antiquities did not constitute commercial activity by Iran in the United States).

A discovery demand should not be permitted if "it is clear that the information sought can have no possible bearing upon the subject matter of the action." *Dart Industries, Inc. v. Liquid Nitrogen Processing Corp.*, 50 F.R.D. 286, 292 (D. Del. 1970). *See also U.S. v. Federation of Physicians and Dentists, Inc.*, 63 F. Supp. 2d 475 (D. Del. 1999) (denying motion to compel discovery of non-party physician's individual financial information related to labor organization's recruitment of physicians during their fee negotiations with insurer in price-fixing matter where records sought were only remotely connected to government's claims); *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37 (D. Del. 1993) (denying motion to compel production of defendants in securities litigation with respect to investments they considered but did not make; request was in nature of "fishing expedition").

As explained below, the balancing of these factors weighs in favor of Af-Cap.

### A.  Many of The Garnishee's Discovery Requests Are Outside Of The Scope Of The Subject Matter Of This Proceeding

A garnishment proceeding is limited to determining the ability of a judgment creditor to seize a debtor's assets that are in the possession of a third party garnishee. *See* 10 Del. C. §§ 3506-3509; *Wilmington Trust Co. v. Barry*, 338 A.2d 575, 579 (Del. Super. Ct. 1975) (purpose of foreign attachment proceeding is "to coerce a non-resident defendant who owns property within the State to submit himself to personal jurisdiction upon pain of forfeiture of his seized property"). *See also Chrysler Corp. v. Dann*, 171 A.2d 223 (Del. Super. Ct. 1961) (confirming entrance of foreign attachment against defendant for purpose of gaining jurisdiction over defendant and securing property).

The limited issues before the court on an action for an attachment are, thus, (1) whether plaintiff is a judgment creditor of defendant; (2) whether the garnishee indeed holds the property of the judgment debtor; and (3) whether the Court has jurisdiction to enter a writ of attachment against the debtor's property in the hands of the garnishee. As stated by the Delaware Superior Court:

> In seeking to execute its judgment against the debtor corporation by attachment process, plaintiff has, in effect, elected to place himself in the debtor's shoes vis-à-vis the garnishees. Plaintiff's right to recover from the garnishees is derived from, and no greater than, the corporation's right to recover from [the judgment debtors] in an action in law. . . . The issue with respect to plaintiff's theories of assumption of liability and fraud is, in each case, whether the principal debtor could, in an action at law, recover from the garnishees' possession property or credits belonging to the debtor.

*John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 33 (Del. Super. Ct. 1973) (internal citations omitted).

Despite the limited scope of this enforcement proceeding, CMS has numerous overbroad, burdensome and harassing requests that seek information having nothing to do with the issues in this case. For example, CMS seeks the following[1]:

1. The efforts of Af-Cap anywhere to collect against the Judgment "other than the steps taken in this litigation" and those actions in the Texas District Courts (Ex. A at 6), and "each and every legal proceeding in which [Af-Cap] has attempted to collect the Judgment" including the nature, status and results of such proceedings (*id.* at 7);

2. Any assets of Congo that Af-Cap has identified as a result of its investigations "that should be available to you to collect the Judgment that is the subject of this Proceeding, and describe the steps that you have taken or intend to take with regard to such assets." (*id.* at 7-8); and

---

[1] These are only examples of the objectionable discovery demands propounded by CMS in its First Set of Interrogatories, Request for Admissions and Requests for the Production of Documents, attached hereto as Exhibits A-C, respectively. Af-Cap's objections are set forth in its respective Responses and Objections to the corresponding discovery requests. (*Id.*, Exhibits D-F.) Nonetheless, Af-Cap's objections that are the subject of this Motion may be modified depending upon the outcome of the Court conference scheduled by January 18, 2007.

3.  Whether Af-Cap "[has] assets that will be available to satisfy a judgment for attorney's fees or other damages that may be rendered in favor of CMS Nomeco" in this Action, including identification of such assets and Af-Cap's "plan or intent . . . to move or transfer any of those assets in any manner that would render them unavailable to satisfy a judgment for attorney's fees, costs, or other damages that may be rendered in favor of [CMS] in this case." (*Id.* at 21.)[2]

This requested information (in requests to admit, interrogatories and document demands) does not in any way pertain to whether CMS holds property of the Congo in Delaware or any of the defenses that CMS has raised. Rather, CMS seeks to act as Congo's proxy to find out information -- including privileged communications and work product -- about Af-Cap's efforts worldwide to collect on the Judgment that Congo has refused to pay. These requests are improper in a garnishment proceeding.

Likewise, CMS has propounded a 30(b)(6) deposition notice which also seeks discovery on these extraneous matters. The scope of the 30(b)(6) deposition should also be limited to questions of title and presence of an asset that is subject to garnishment and execution, and the so-called "double liability" defense that CMS has raised. Moreover, even though CMS has noticed a 30(b)(6) deposition of Af-Cap, it also seeks to take the deposition of Michael Sheehan in his individual capacity. (Ex. I.) Mr. Sheehan will be presented for deposition as the 30(b)(6) witness and the information that he will provide in such capacity is the only information that is relevant to this proceeding. Any effort to discover information beyond Af-Cap's capacity to bring this enforcement action is wholly improper.

A court's limiting the scope of discovery only to the issues that are relevant to the case is illustrated in *Killion v. Franklin Regional School Dist.*, 2001 WL 1561837 (W.D.Pa., Apr. 11,

---

[2] The only party who should be paying attorneys' fees in connection with this Action is CMS. *See* 28 U.S.C. § 1927. *See also Obert v. Republic Western Ins. Co.*, 264 F.Supp.2d 106, 124 (D.R.I. 2003), *modified* 121 Fed. Appx. 791 (citing *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990) ("Sanctions are to be imposed when, from an objective standpoint, counsel's conduct has multiplied the proceedings and in doing so, has been unreasonable and vexatious, in the sense of being harassing or annoying.").

8

2001). In *Killion*, an action under 42 U.S.C. § 1983 for a student's alleged wrongful suspension from school without due process, the defendant sought the disclosure of the identities of unnamed students who had participated with the plaintiff in preparing a list ridiculing the athletic director that resulted in the student's suspension. Defendant claimed disclosure of the information was relevant to the defense that the suspension was justifiable because the conduct was disruptive. The district court granted a protective order quashing the request on the ground that the subject list and its recipients were "irrelevant and neither necessary to the disruption defense nor likely to lead to admissible evidence as these contributions occurred off school grounds and in the sanctity of the unnamed students' homes." *Id.* at *1. The court held that the matters sought by this discovery were irrelevant "[g]iven the remote relevance of the information sought, the issues involved and the defenses asserted," and granted the plaintiff's motion for a protective order. *Id.*

The same justification for a protective order exists in the present matter. Although this is an enforcement proceeding in which the debtor has failed to appear, the garnishee now seeks discovery about plaintiff's collection efforts concerning the debt anywhere in the world. This is far beyond the scope of permitted discovery in an enforcement proceeding and the discovery demands referenced above should be quashed.

### POINT II
### CMS CANNOT SATISFY ITS BURDEN TO SHOW THAT IT IS ENTITLED TO TAKE THE DEPOSITION OF PLAINTIFF'S COUNSEL

"Deposing an opponent's attorney is a drastic measure. It not only creates a side-show and diverts attention from the merits of the case, its use also has a strong potential for abuse. Thus a motion to depose an opponent's attorney is viewed with a jaundiced eye and is infrequently proper." *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992).

The deposition of an attorney for the opposing party is only permitted in "some very rare cases." *Id.*; *see, e.g., Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4, 6 (W.D.N.Y. 1984); *Hunt Int'l Resources Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D. Ill. 1983)

Furthermore, because an attorney deposition can easily lead to invasions of the attorney-client privilege, harassment, disruption, and delay, courts routinely grant motions for Rule 26(c) protective orders prohibiting a party from deposing the adverse party's counsel. *See, e.g., Allergan Inc. v. Pharmacia Corp.*, 2002 WL 1268047 (D. Del. May 17, 2002) (Robinson, J.); *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995); *Corporation for Public Broadcasting v. American Automobile Centennial Commission*, 1999 WL 1815561 (D.D.C. Feb. 2, 1999); *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 310 (S.D. Fla. 1990) (party seeking deposition of counsel must overcome presumption against taking such depositions since such depositions inherently constitute invitation to harassment, disruption and delay, add costs to litigation, place burdens on attorneys, and threaten attorney-client privilege).

It is thus well recognized in this Circuit that before a party may depose an opposing party's counsel, it must demonstrate that: "(1) no other means exists to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Allergan*, 2002 WL 1268047, at *1 (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987) and denying demand for attorney's deposition). *See also W. Lewis Frame n Door, Inc. v. C & C Const. & Rehab. Specialist, Inc.*, 1999 WL 79502, at *1 (E.D. Pa. Feb. 4, 1999) (following *Shelton, supra*) (denying request to take attorney's deposition, finding that if plaintiff "intends to call [defendant's counsel] as a witness, it has not remotely shown that any factual information he might possess is relevant, non-privileged, critical to the plaintiff's preparation of its case and

unavailable from any other source."). *See also N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.d. 83, 85 (M.D.N.C. 987) ("the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c) protective order unless the party seeking the deposition can show both the propriety and need for the deposition"); *Cole v. Mousavi*, 1990 WL 63945 (Del. Super. Ct. Jan. 18, 1990) (applying standards in *Shelton, supra*, and holding that defendant failed to show how information sought is only available from plaintiff's counsel).

For example, in *Allergan*, this Court denied the requested attorney deposition because "the factual predicate to the issue . . . can be pursued independent" of the attorney's testimony. 2002 WL 1268047, at *1. As in *Allergan*, the factual predicate underlying the issue of the royalty obligations of CMS "can be pursued independent" of Mr. Perkins' deposition through CMS's own records as well as the additional 30(b)(6) deposition noticed by CMS. (Ex. J).

### A.   CMS Has Not Carried Its Burden to Show Entitlement To The Drastic Measure Of Deposing Af-Cap's Counsel.

CMS has failed to, and indeed cannot, overcome any of the threshold requirements listed above. According to CMS's counsel, CMS seeks the deposition of Mr. Perkins concerning the affidavit submitted in support of Af-Cap's motion for contempt, sequestration and preliminary injunction. This affidavit, however, clearly states that it is based on information obtained as counsel to Af-Cap and merely (a) recounts the public, procedural history of the lengthy litigation between CMS and Congo on the one hand and Af-Cap and other creditors on the other, (b) describes CMS's own documented efforts to leave the United States (c) describes CMS's recent payments of the royalty to Congo in violation of a writ -- which information is based on CMS's own sworn testimony and records attached to the affidavit; and (d) summarizes the requested relief. (Ex. G.) Thus, CMS cannot show that Mr. Perkins has crucial, discoverable information and has failed to meet any of the three elements of *Shelton*.

First, CMS cannot show that there is no other means to obtain the information requested. In fact, CMS can readily obtain such information from other sources, including *its own* documents and witnesses. Moreover, CMS has simultaneously noticed the 30(b)(6) deposition of the "corporate representative" of Af-Cap. (Ex. J.) Af-Cap has offered to present Mr. Sheehan, a director of Af-Cap, for deposition to cover the topics addressed in Mr. Perkins Affidavit. (*Id.* ¶ 8.) Demonstrating that CMS's desire to take the deposition of Mr. Perkins is nothing more than a desire to harass, CMS refused this offer outright. (*Id.* ¶ 9.)

Second, any information sought from Mr. Perkins beyond the matters of public record and information obtained in discovery that are clearly described in Mr. Perkins' affidavit, will likely be subject to the work product or attorney-client communication protections. (Ex. H.) Such a deposition of plaintiff's counsel is not calculated to lead to the discovery of relevant evidence, but will inevitably prompt frequent privilege objections and lead to future, protracted will motion practice. Perhaps this is CMS's objective, to create unnecessary burden and expense, to harass and to delay this enforcement proceeding.

Third, Mr. Perkins' testimony related to his affidavit is not remotely "crucial" to the preparation of the matter. Again, Mr. Perkins is not a percipient witness and does not purport to be. He is counsel of record and the information he has obtained is solely based on his involvement as a commercial litigator representing Af-Cap.

In sum, CMS's deposition notice of Mr. Perkins, Af-Cap's counsel, should be quashed since CMS has failed to establish any of the requirements necessary for such a drastic measure as a deposition of Af-Cap's own attorney.[3] *See M & R Amusements Corp.*, 142 F.R.D. at 305.

---

[3] The notice should be quashed for the additional reason that CMS has noticed Mr. Perkins for deposition as an individual, not as counsel for Af-Cap or in his capacity as a shareholder of the law firm of Greenberg Traurig LLP, counsel for CMS. (Ex. H.) Accordingly, as a third-party to these proceedings, any testimony of Mr. Perkins must be obtained through the proper issuance of a subpoena in accordance with Rule 45 of the Federal Rules of Civil

What is more, Rule 26(b) provides protection from the discovery of an attorney's "documents and tangible things otherwise discoverable," but which were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 127 (E.D. Pa. 1994). Plainly, Mr. Perkins' opinions, analyses and strategies, during pending litigation concerning Af-Cap's efforts to enforce its judgment against Congo in this and other litigations in the United States and beyond, qualify for treatment as opinion work product. Mr. Perkins' thought, opinion and conclusions regarding Af-Cap's enforcement of its judgment were made "in anticipation of litigation" – there is no reason but anticipation of litigation for Mr. Perkins to have been engaged in these enforcement efforts. Such thoughts, opinions and conclusions—not facts—are protected from discovery by the attorney work product doctrine and, thus, entitled to nearly absolute protection from discovery. *Id.*

---

Procedure. CMS's deposition notice is thus facially improper. Fed. R. Civ. Proc. 45(b); *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 136 F.R.D. 385 (E.D. Pa. 1991) (attendance of deponent who is not a party and does not consent to attend can be compelled only by subpoena); *Hay & Forage Industries v. Ford New Holland, Inc.*, 132 F.R.D. 687 (D. Kan. 1990) (deposition notice without subpoena is not proper procedure to depose non-party).

WHEREFORE, Af-Cap respectfully requests that this Court issue a protective order requiring CMS to appropriately focus the scope of the discovery requested and alleviate the significant burdens compliance with the Requests in its current form would impose upon Af-Cap; and such other and further relief as is just and proper.

Dated: Wilmington, Delaware  
      January 18, 2007

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____  
Donald Detweiler (No. 3087)  
Dennis A. Meloro (No. 4435)  
The Nemours Building  
1007 North Orange Street, Suite 1200  
Wilmington, Delaware 19801  
(302) 661-7000

And

GREENBERG TRAURIG LLP  
Kenneth Kaplan  
800 Connecticut Ave., N.W., Suite 500  
Washington, DC 20006  
(202) 331-3100

And

GREENBERG TRAURIG, LLP  
James W. Perkins  
200 Park Avenue  
New York, New York 10166  
(212) 801-9200

*Attorneys for the Plaintiff*