# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FG HEMISPHERE ASSOCIATES, L.L.C. | § | |
| Plaintiff, | § | |
| v. | § | |
| REPUBLIQUE DU CONGO | § | |
| Defendant, | § | CIVIL ACTION No. H-02-4261 |
| and | § | |
| | § | |
| CMS OIL AND GAS COMPANY, et. al., | § | |
| | § | |
| Putative Garnishees. | § | |

### DECLARATION OF MARYSE BERNARD

I, Maryse Bernard, declare:

1.    My name is Maryse Bernard.  I am President of CMS Nomeco Congo LLC, which was formerly known as CMS Nomeco Congo Inc. ("CMS Nomeco").  I have held that position since 19 October 2004.  I am also President of The Nuevo Congo LLC, which was formerly known as The Nuevo Congo Company ("Nuevo Congo").  I have held that position since 19 October 2004.   I have personal knowledge concerning the facts set out in this declaration.

2.    CMS Nomeco, Nuevo Congo, and Nuevo Congo Ltd. (collectively "Garnishees") and Société Nationale des Pétroles du Congo ("SNPC," the Congolese state-owned oil company) are the current working interest owners under a Convention for oil production in Congolese waters originally entered into in May 1979 ("the Convention").  CMS Nomeco is the current operator under the Convention.

3.    The Convention entitles the Congo to receive royalties.  Under Article 7 of the Convention, the Congo may elect to receive royalties in cash or in-kind.  As stated in the

Amendment to Lifting Agreement, in 1999, the Congo changed its election to an in-kind election.

    4.    The Convention was executed in the Congo in 1979 and is governed by Congolese law. The oil is extracted from the submerged seabed adjacent to the Congo's coast, in areas within the Congo's exclusive jurisdiction under Congolese and international law. The oil flows through a subsurface pipeline system to a storage vessel in Congolese coastal waters, known as the "Conkouati." A lifting occurs when oil is offloaded from the Conkouati onto a vessel nominated by the buyer of the oil. Garnishees, as working interest owners, take liftings of oil stored on the Conkouati for their own account, and sell 100% of the oil so lifted for their own account.

    5.    CMS Nomeco, as operator, calculates the effect of liftings, on a barrel basis, on the over- or under-lifted position of SNPC and the Congo, and records that effect on an "over/under statement." As described in the Amendment to Lifting Agreement, once the combined under-lifted position of SNPC and the Congo reaches at least 275,000 barrels, SNPC may schedule and take the next lifting of oil for itself and the Congo. When SNPC takes a lifting, SNPC sells, for its own and the Congo's account, all the barrels that it lifts. The SNPC lifting satisfies the Congo's in-kind royalty and puts SNPC into an over-lifted position. Garnishees take liftings until the combined under-lifted position of SNPC and the Congo again exceeds 275,000 barrels, when SNPC may take and sell the next lifting oil for itself and the Congo, again satisfying the Congo's in-kind royalty and again putting SNPC into an over-lifted position.

    6.    By letter dated 22 October 2004, CMS Nomeco gave formal notice to the Congo of court orders and writs issued in U.S. proceedings filed by the Congo's judgment creditors. A

true and correct copy of that letter is attached as Exhibit 1. The Congo's Minister of Hydrocarbons responded by letter dated 4 November 2004, threatening termination of the Convention if the Congo was not allowed to lift its royalty oil. A true and correct copy of that letter, along with an English translation, is attached hereto as Exhibit 2.

7. The writs of garnishment issued in October and November 2004 only addressed the Congo's royalty and not SNPC's working interest. CMS Nomeco notified the Congo that a lifting of royalty oil would not be permitted, and that in connection with the next government lifting (which was expected to take place in late December 2004), only a partial lifting of SNPC working interest oil would be allowed. Arrangements for tugs and other logistics of the partial lifting were undertaken, but on 23 December 2004, the Court in Houston issued new writs of garnishment directed to the SNPC working interest. I was in Brazzaville, Congo on 28 December 2004 to inform government officials of the decision to not allow any lifting of oil in light of writs of garnishment issued by U.S. courts, including those issued on 23 December 2004. On 28 December 2004, a court sitting in the Congo, upon applications by the Congo and SNPC, entered two orders requiring that CMS Nomeco, as operator of the storage terminal, deliver working interest oil and royalty oil to SNPC. True and correct copies of those orders, with English translations thereof, are attached hereto as Exhibits 3 and 4. The Director General of the Congo's Ministry of Hydrocarbons showed me copies of the Congo court orders and told me that I would be detained until the lifting of oil was completed. I was told that public force would be used if the lifting of oil by SNPC was not allowed to take place. Based on these events, I authorized CMS Nomeco's operations manager to give instructions to permit the lifting of oil. On 28-29 December 2004, SNPC took a lifting of SNPC working interest oil and the Congo's

3

royalty oil. A true and correct copy of a memorandum that I prepared shortly after these events, which accurately describes the events, is attached hereto as Exhibit 5.

8.      On 3 March 2005, the Congo sent a letter to the United States District Court for the Western District of Texas taking the position that the U.S. courts do not have the authority to transfer the rights of the Congo to dispose of its resources within its own borders. A true and correct copy of the Congo's 3 March 2005 letter, with an English translation, is attached hereto as Exhibit 6.

9.      Subsequently, CMS Nomeco notified the Congo and SNPC that the next SNPC lifting of the Congo's royalty oil and SNPC's working interest oil would not be allowed in light of U.S. writs and orders. On 4 July 2005, a Congo court in Point Noire, Congo, upon applications filed by the Congo and SNPC, issued orders against CMS Nomeco directing CMS Nomeco to deliver the Congo's royalty oil and SNPC's working interest oil to SNPC. True and correct copies of the July 2005 Congo court orders are attached hereto as Exhibits 7 and 8. Subsequent to the issuance of the July 2005 Congo court orders, and in compliance therewith, CMS Nomeco made arrangements for tugs and other logistics associated with the lifting that the Congo court had ordered, under compulsion of the orders. In early September 2005, SNPC took a lifting of the Congo's royalty oil and SNPC's working interest oil under compulsion of the July 2005 court orders.

10.      Currently, the combined under-lifted position of the Congo and SNPC is in excess of 275,000 barrels. Under the terms of the Amendment to Lifting Agreement, SNPC has taken the position that it is entitled to take a lifting of oil in the Congo during the period 11-13 April 2006, or shortly thereafter. Under the terms of the Amendment to Lifting Agreement, certain events are required before the Congo and SNPC become entitled to take an oil lifting, and under

the terms of the Amendment to Lifting Agreement, the government lifting was not to take place until sometime in late March or early April 2006, at the earliest. Nonetheless, CMS Nomeco, as operator, sent a letter to SNPC notifying it that in light of the orders and writs issued by U.S. courts, it would not allow SNPC to take the April lifting. A true and correct copy of that letter, along with an English translation thereof, is attached as Exhibit 9. SNPC responded by way of a letter dated 20 March 20 2006. A true and correct copy of SNPC's 20 March 2006 letter, along with an English translation thereof, is attached hereto as Exhibit 10. SNPC's 20 March 2006 letter notified CMS Nomeco that the U.S. writs of garnishment were contrary to the Congo's public policy and international public policy and unenforceable, and it threatened court action in the Congo. By letter dated 24 March 2006, CMS Nomeco notified SNPC that it stood by its position set out in its prior letter. A true and correct copy of CMS Nomeco's 24 March 2006 letter, along with an English translation thereof, is attached hereto as Exhibit 11.

11.    On 27 March 2006, I learned that a summons was received by the secretary of CMS Nomeco's finance manager at CMS Nomeco's offices in Point Noire, Congo at approximately 10:45 a.m. that day, for a hearing to take place at 11:00 a.m. that day, on an application by SNPC for an order compelling CMS Nomeco to deliver the April 2006 lifting to SNPC. A true and correct copy of the summons is attached hereto as Exhibit 12. CMS Nomeco was unaware of any application filed by SNPC prior to service of the summons delivered to CMS Nomeco's offices in Point Noire, Congo at approximately 10:45 a.m. on 27 March 2006. CMS Nomeco had no opportunity to be heard at the hearing on 27 March 2006. CMS Nomeco's finance manager subsequently forwarded to me a copy of the order issued by the Court on the afternoon of 27 March 27 2006, which was served on him late that day. A true and correct copy of that order, with an English translation thereof, is attached hereto as Exhibit 13. I have read the

5

order, including the language in the order referencing a statement made by CMS Nomeco's "Counsel, Mr Mouyecket." CMS Nomeco did not retain a "Mr Mouyecket" to represent CMS Nomeco in connection with the SNPC application. In connection with the July 2005 court proceedings in the Congo, CMS Nomeco retained Ms. Mouyecket as its counsel to represent it in those proceedings but never contacted or hired her in connection with the March 2006 application. In anticipation that SNPC would seek court relief, CMS Nomeco had retained Mr. Jean Petro, a lawyer in Point Noire, Congo, to represent its interests in connection with any such application. When CMS Nomeco received notice of the hearing on March 27, at the time the summons was delivered at approximately 10:45 a.m. that day, CMS Nomeco attempted to contact Mr. Petro but was unable to reach him. CMS Nomeco never received any communication or information from Ms. Mouyecket concerning the application that was heard by the Congolese court on 27 March 2006, and CMS Nomeco never communicated any information to Ms. Mouyecket or gave her any instructions in connection with the application that was heard by the Congolese court on 27 March 2006. To the contrary, the first notice that CMS Nomeco had of the application was at approximately 10:45 a.m. on 27 March 2006, and CMS Nomeco had no opportunity to retain counsel or to present submissions to the Congolese court in connection with the hearing on that application.

12.     CMS Nomeco has filed appeals of the December 2004 and July 2005 orders, but those appeals have not yet been heard. CMS Nomeco intends to appeal the order entered by the Congolese court on 27 March 2006.

13.     CMS Nomeco has offices in The Republic of Congo, and its employees are all located and work in The Republic of Congo. None of the activities of CMS Nomeco Congo Inc. relating to the operation of the Marine I permit are carried out in the United States. In fact, for

6

more than two years, all of the business activities in which CMS Nomeco engages and has engaged are and have been outside the United States.

14.    CMS Nomeco is a Delaware limited liability company. CMS Nomeco is owned 100% by Perenco Oil and Gas (International) Company f/k/a CMS Oil and Gas (International) Company. On September 13, 2002, the stock of CMS Oil and Gas (International) Company was sold by CMS Oil and Gas Company (an affiliate of CMS Enterprises Company) to Lankan Inc. (an affiliate of Perenco S.A.). On that same day, the prior directors and officers of CMS Nomeco Congo Inc. resigned, and new directors and officers were appointed. Thereafter, new directors and officers were appointed from time to time. At all times since 12 February 2004, the directors and officers of CMS Nomeco are and have been individuals who reside outside of the United States, consistent with the fact that all of the business activities in which CMS Nomeco engages are outside of the United States. During the period after 12 February 2004 to the present, CMS Nomeco has had no offices, no directors, no officers, no employees, and no business activities in the United States.

15.    CMS Nomeco does not maintain a registered agent in the State of Texas. The writs of garnishment issued on October 26, 2005 have never been served on any officer of CMS Nomeco.

16.    Nuevo Congo is a non-operator working interest owner in the Marine I permit in Congolese waters. None of the activities of Nuevo Congo relating to the Marine I permit are carried out in the United States. In fact, since July 30, 2004, all of the business activities in which Nuevo Congo engages and has engaged are and have been outside the United States.

17.    Nuevo Congo is a Delaware limited liability company. Nuevo Congo is owned 100% by The Congo Holding Company. On 30 July 30 2004, the stock of The Congo Holding

7

Company was sold by Nuevo International, Inc. (an affiliate of Plains Exploration & Production Company) to Lankan Inc. (an affiliate of Perenco S.A.). On that same day, the prior directors and officers of Nuevo Congo resigned, and new directors and officers were appointed. The new directors and officers are and at all times since 30 July 2004 have been individuals who reside outside of the United States, consistent with the fact that all of the business activities in which Nuevo Congo engages are outside of the United States. During the period of time from 30 July 2004, to the present, Nuevo Congo has had no offices, no directors, no officers, no employees, and no business activities in the United States.

18.     Nuevo Congo does not maintain a registered agent in the State of Texas. The writs of garnishment issued on October 26, 2005 have never been served on any officer of Nuevo Congo.

19.     I declare under penalty of perjury, under the laws of the United States of America, that the foregoing statements are true and correct.

EXECUTED on the 3rd day of April, 2006, in London, United Kingdom.

_____
Maryse Bernard

8

# EXHIBIT 1

# CMS NOMECO CONGO INC.

B.P. 212
Pointe Noire,
République du Congo

22 October 2004


M. Jean-Baptiste TATI LOUTARD
Ministre des Hydrocarbures

M. Rigobert Roger ANDELY
Ministre de l'Economie, des Finances et du
Budget


BP 2120 Brazzaville
République du Congo

BP 2083 Brazzaville
République du Congo

Monsieur le Ministre des Hydrocarbures,
Monsieur le Ministre de l'Economie, des Finances et du Budget,

The purpose of this letter is to inform you of the status of litigation in the United States brought by judgment creditors of The Republic of Congo to garnish royalty under the Convention and tax obligations owed by CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. in connection with the Marine 1 permit.

On September 17, 2004, the United States Court of Appeals for the Fifth Circuit issued a decision holding that royalty under the Convention and tax obligations to the Congo are subject to garnishment by Af-Cap, Inc., a judgment creditor of the Congo. Attorneys for CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd., together with the American lawyers for the Congo, filed petitions for rehearing with the Court of Appeals on October 1, 2004, asking that the September 17, 2004 decision be overturned. On October 13, 2004, the Court of Appeals directed Af-Cap, Inc. to file a response to the rehearing petitions, which it filed on October 18, 2004. The Court of Appeals has not yet rendered a decision on the petitions for rehearing, and those petitions remain pending. However, Af-Cap, Inc. is attempting to implement the decision of the Court of Appeals in the lower court in Austin, seeking issuance of new writs of garnishment. If such writs are issued, the writs will direct that CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. not pay any debt or deliver any property to the Congo pending further order of the Court. The lower court has not yet entered an order on Af-Cap's request for issuance of new writs of garnishment, but stated at a hearing conducted on October 15, 2004 that it intended to grant Af-Cap's request for new writs of garnishment.

Other judgment creditors of the Congo are also seeking to garnish obligations owed by CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. to the Congo, based

on the Court of Appeals' decision in the Af-Cap case. Specifically, FG Hemisphere Associates LLC obtained issuance of writs of garnishment by a district court in Houston, Texas, on October 5, 2004. Subsequently, FG Hemisphere Associates LLC made a filing with the court abandoning the writs to the extent they covered tax obligations, but the writs otherwise remain in effect. The answer to those writs of garnishment is due on October 26, 2004. Additionally, Walker International Holdings, Ltd. has filed a garnishment action against CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. in Austin, Texas. To our knowledge, no writs of garnishment have yet been issued by the court in that case.

Please advise if you have any questions concerning these developments.

Very truly yours,

RODRIGO MARQUEZ
Vice President

cc.    M. Nestor Tchissambot-Makosso
       Directeur Général des Hydrocarbures

# EXHIBIT 2

9-NOV-2004 16:33    DE:FONDS DPT GARANTIES 242 815246                    A:0033145636637        P:2/2

242 815246

**MINISTERE DES HYDROCARBURES**
————————————
**MINISTERE DE L'ECONOMIE,**
**DES FINANCES ET DU BUDGET**

N° 04 X 1 1072 /MHC-CAB

**REPUBLIQUE DU CONGO**
Unité – Travail – Progrès

Brazzaville, le 4 novembre 2004

*Les Ministres,*

A

CMS Nomeco Congo

Pointe-Noire

Par porteur

Messieurs,

Nous accusons réception de votre lettre du 22 Octobre 2004 par laquelle vous nous informez du jugement rendu le 17 septembre 2004 par la *United States Court of Appeals for the Fifth Circuit* ainsi que des actions judiciaires engagées par des créanciers de la République du Congo dans l'Etat du Texas.

Nous souhaitons, par la présente, vous rappeler les obligations de livraison de la redevance souscrites par les associés du permis Marine 1 aux termes de la Convention susvisée. La non-livraison de la redevance en nature par un associé constituerait un manquement majeur à une obligation contractuelle essentielle qui conduirait à une résiliation immédiate de la Convention aux torts et griefs de l'associé défaillant.

Compte tenu de ce qui précède, nous souhaitons que vous nous confirmiez par écrit le 12 novembre 2004 au plus tard que CMS Nomeco Congo se conformera strictement en toutes circonstances à ses obligations de livraison de la redevance minière en application des termes de la Convention, ainsi que de paiement de toute autre imposition exigible en République du Congo.

Veuillez adresser toute correspondance aux soussignés qui sont les seuls représentants autorisés de la République du Congo concernant ce dossier.

Veuillez agréer, Messieurs, l'expression de notre considération distinguée.

Le Ministre des Hydrocarbures                    Le Ministre de l'Economie et de Finances,
et du Budget,

Jean Baptiste Tati-Loutard                        Rigobert Roger Andely



# Communication Alliance

1880 S. Dairy Ashford, # 215
Houston, Texas 77077
Tel: 281-920-4802
Fax: 281-920-4803
Email: CommAll@aol.com

## Affidavit of Accuracy

This is to certify that to the best of my knowledge and ability, the attached translation is an accurate, true and complete rendition into English of a letter from the Ministry of Hydrocarbons of the Republic of the Congo

written in French and pertaining to Perenco LLC

Michèle Tropée
Professional English/French Translator
ATA Accredited

Sworn to and subscribed before me on this 10th day of November 2004.

Notary Public – State of Texas



DANIELLE Y. PUNG
MY COMMISSION EXPIRES
June 12, 2006

MINISTRY OF HYDROCARBONS
———————————
MINISTRY OF THE ECONOMY,
FINANCE AND THE BUDGET
———————————
No. 04x11072/MHC-CAB

REPUBLIC OF THE CONGO
UNITY – WORK – PROGRESS
———————————

Brazzaville, November 4, 2004

*The Ministers,*

To:
CMS Nomeco Congo
Pointe-Noire

By courier

Gentlemen:

We acknowledge receipt of your letter dated October 22, 2004 in which you informed us of the decision handed down on September 17, 2004 by the United States Court of Appeals for the Fifth Circuit as well as the legal actions filed by the creditors of the Republic of the Congo in the State of Texas.

We hereby wish to remind you of the obligations to deliver royalties incumbent on the Marine 1 permit associates in accordance with the above-mentioned agreement. Non-delivery of royalties in kind by an associate would constitute gross breach of a basic contractual obligation that would entail immediate termination of the agreement, entitling the injured party to sue the defaulting associate.

Taking the foregoing into account, we hope that you will confirm in writing by November 12, 2004 at the latest that CMS Nomeco Congo will strictly comply with its mining royalty delivery obligations under all circumstances, in application of the terms of the Agreement, as well as payment obligations for any other tax due in the Republic of the Congo.

Please address all correspondence to the undersigned, who are the sole authorized representatives of the Republic of the Congo with respect to this matter.

Sincerely,

Minister of Hydrocarbons

[signature]
[seal of the Ministry of Hydrocarbons]
Jean-Baptiste Tati-Loutard

Minister of the Economy, Finance and the Budget

[signature]
[seal of the Ministry of Economy, Finance and Budget]
Rigobert Roger Andely

# EXHIBIT 3



REPERTOIRE   N° 1131 /
DU 28 DECEMBRE 2004

REPUBLIQUE DU CONGO
AU NOM DU PEUPLE CONGOLAIS
—     ORDONNANCE —
*=*=*=*=*=*=*=*=*=*=*=*

A F F A I R E :

REPUBLIQUE DU CONGO
MINISTERE DES HYDROCARBURES, Département du
KOUILOU (Me MISSIE)

C O N T R E :

C M S  NOMECO  INC  CONGO

OBJET : REFERE D'HEURE A HEURE

L'AN DEUX MIL QUATRE ;

ET, LE VINGT HUIT DU MOIS DE DECEMBRE ;

PAR DEVANT NOUS, Norbert ELENGA, Président du
Tribunal de Grande Instance de Pointe-Noire, tenant audience publi-
que des référés en notre Cabinet sis au Palais de Justice de cette
ville ;

A   C O M P A R U

Le République du Congo, Ministère des Hydrocarbu-
res agissant aux dilligences de son représentant légal ;

Qu'elle a été saisie par les créanciers américain
de l'Etat Congolais, la société NOMECO qui devait lui livrer une
cargaison de 550.000 barils de pétrole, refuse de s'exécuter au mo-
tif que cette cargaison fait l'objet d'une saisie suivant la déci-
sion du Tribunal de l'Etat de Texas du 17 Septembre 2004, rendant
possible la saisie attributive de la dite cargaison ;

Or une décision de justice rendue par une juridic-
tion étrangère, même en présence de la renonciation par le débiteur
de son immunité de juridiction et d'exécion ne peut pas s'exécuter
de plein droit en territoire étranger qu'elle doit, pour recevoir
exécution, être soumise à la procédure d'exéquatures telle que pré-
vue par l'article 299 du code de procédure civile, commerciale ad-
ministrative et financière selon lequel : "Sauf conventions diplo-
matiques contraires, les jugements rendus par les tribunaux étran-
gers et les actes par les officiers publics ou ministériels étran-
gers ne sont susceptibles d'exécution sur le territoire congolais
qu'après avoir été déclarés exécutoires par une juridiction congo-
lais qui aurais été compétente "ratione matériae " pour en connaî-
tre :

Qu'en l'espèce et sans qu'il soit nécessaire de
débattre du bien fondé ou on de l'action en saisie des créanciers
d'origine américaine, il y a lieu de relever que la décision sur
laquelle se fonde la société NOMECO n'a jamais été exéquaturée et
pire, les tribunaux congolais ne sont pas encore saisis d'une de-
mande en ce sens ;

Qu'il convient donc, la question de l'enlèvement de
la cargaison detenue par NOMECO étant urgente et comportant un péril
certain, d'ordonner sur minute que la NOMECO livre à tout opérateur
que lui désignera la SNPC ladite cargaison ;                    .../...

SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il resulte de l'examen des pièces du dossier que la société NOMECO a fait application d'un jugement américain rendu dans l'Etat du Texas en date du 17 Septembre 2004 à l'encontre de l'Etat Congolais ;

Attendu que ledit jugement n'a jamais été exéquaturé par les juridictions congolaises ;

Que dans ces conditions, ledit jugement ne satisfait aux dispositions légales notamment l'article 299 du code de procédure civile, commerciale, administrative et financière Congolais qui dispose que "sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétante "ratione materiae " pour en connaître ;

Attendu dès lors que la requête de l'Etat Congolais est donc regulière et recevable en outre de l'article 207 du code de procédure civile, commerciale, administrative et financière ;

Attendu au fond qu'elle est fondée ;

Qu'il y a lieu d'y faire droit ;

Qu'il échet d'ordonner à la société NOMECO à livrer sans delai à tout opérateur que lui designera la SNPC toutes les quantités d'hydrocarbures lui appartenant et detenue par elle en vertu de leur contrat de partenariat ;

Attendu que la société NOMECO regulièrement convoquée a comparu par le biais du représentant du Directeur Général, Monsieur Benoît DE LA FOUCHARDIERE, Directeur des opérations ;

Qu'il y a lieu de lui donner acte ;

Attendu que la société NOMECO a succombé au procès ;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du code de procédure civile, commerciale administrative et financière ;

P A R    C E S    M O T I F S

Statuant publiquement, contradictoirement, en référé en matière civile, en premier ressort ;

AU PRINCIPAL

Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront ;

MAIS DES A PRESENT, VU L'URGENCE ET PAR PROVISION

Constatons que le Jugement du 17 Septembre 2004 n'est pas été encore exéquaturé par les juridictions congolaises ;

Constatons que ledit jugement n'a jamais été signifié à l'Etat Congolais ;

...../...

EN   CONSEQUENCE ;

Ordonnons à la société NOMECO de livrer sans délais tout opérateur que lui désignera la SNPC, toutes les quantités d'hydrocarbures lui appartenant et détenue par elle en vertu de leur contrat de partenariat ;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours ;

Mettons les dépens à la charge de la Société NOMECO

Et, avons signé notre Ordonnance aec le Greffier./-



Suivent les signatures les intéres...
du Président et du Greffier
Suit le Mention d'Enregistrement
Enregistré à POINTE-NOIRE le 28 Décembre 2000
Pour expédition certifiée conforme
POINTE-NOIRE le 28 Décembre 2000

1.- Greffier en Chef

En conséquence : la République du Congo mande et ordonne à tous huissiers sur ce requis de mettre ladit jugement à exécution aux Procureurs Généraux et aux Procureurs de la République Près les Cours et Tribunaux de Grande Instance d'y tenir la main à tous Commandants et officiers de la force publique de prêter main forte lorsqu'ils en seront légalement requis

Et foi de quoi la présente expédition a été signée et scellée par Monsieur le Greffier en chef du tribunal de Grande Instance de POINTE-NOIRE et par lui délivrée sous forme de grosse

Par le Tribunal
Collationné
Le Greffier en Chef

Me R. XOUD-OKOUO
Greffier en Chef

# Certification of Translation

*ATA Certified*
*Steven Sachs*

This is to certify that the following document:

Court Order in the matter of Republic of the Congo v. CMS NOMECO INC. CONGO.

is an accurate and true translation prepared by the undersigned from French into English. I am a translator certified by the American Translators Association for translation from French into English.

_____                              1-10-05
Steven Sachs                                             Date
1312 Harbor Road
Annapolis, MD 21403

e-mail: steven@stevensachs.com
Ph: (301) 261-1016
Fax: (509) 461-9020

Subscribed and sworn before me on this 10th day of January of 2005.

                                                    _____
                                                    NOTARY PUBLIC

MY COMMISSION EXPIRES   9/8/2008

**EXECUTION COPY**

## REPUBLIC OF THE CONGO ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 1131 /
OF DECEMBER 28, 2004                    O R D E R

### IN THE MATTER OF:

THE REPUBLIC OF THE CONGO

MINISTRY OF HYDROCARBONS, Department of
Kouilou (Mr. Messie, Attorney)

### VERSUS:

CMS NOMECO INC. CONGO

### SUBJECT: IMMEDIATE SUMMONS

| | |
|---|---|
| [stamp: EXECUTION COPY<br>Certified True Copy<br>Joachim Mitolo, Attorney at Law<br>B.P. 1384 [Tel. 94 83 28] | [stamp: EXECUTION COPY<br>Certified True Copy<br>Joachim Mitolo, Attorney at Law<br>B.P. [Tel. 94 83 28] [signature] |

IN THE YEAR TWO THOUSAND AND FOUR:

AND ON THE TWENTY-EIGHTH DAY OF THE MONTH OF DECEMBER;

BEFORE US, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First
Instance, holding an urgent public hearing in our Chambers in the Courthouse of said
city;

### THE FOLLOWING APPEARED

The Republic of the Congo, Ministry of Hydrocarbons, filing through its legal
representative;

Whereas it has been garnished by the American obligees of the Congolese State,
NOMECO, which was to deliver to it a cargo of 550,000 barrels of oil, and refuses to do
so on the grounds that said cargo has been garnished based on the decision of the Court
of the State of Texas of September 17, 2004, making possible the garnishment of said
cargo;

[stamp: EXECUTION COPY            [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

Yet a court decision handed down by a foreign jurisdiction, even when the obligor renounced its immunity from jurisdiction and execution, cannot be automatically executed abroad and that, to be executed, it is necessarily subject to an execution procedure as stipulated by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

That in this case and with no necessity of debating the merits or the lack thereof of the action to garnish by the U.S. obligees, there is reason to find that the decision that NOMECO is using as a basis has never been executed. Worse, the Congolese courts have not yet received an application for authority to enforce this judgment;

That therefore, the matter of removing the cargo in the possession of NOMECO is urgent and entails a certain peril, so that it should be made enforceable immediately that NOMECO delivers said cargo to any operator that the SNPC [Société nationale des pétroles du Congo – Congo National Petroleum Company] may designate;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that NOMECO has applied a U.S. judgment handed down in the State of Texas on September 17, 2004 against the Congolese State;

Whereas said judgment has never been executed by the Congolese jurisdictions;

That under these conditions, said judgment does not satisfy the statutory provisions of Article 299 in particular of the Congolese Code of Civil, Commercial, Administrative and Financial Procedure, which stipulates that "unless there are diplomatic conventions that stipulate otherwise, the judgments handed down by foreign courts and instruments received by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that was given *ratione materiae* jurisdiction to take cognizance of the matter;

Whereas, since the application of the Congolese State is thus in order and admissible under Article 207 of the Code of Civil, Commercial, Administrative and Financial Procedure;

Whereas it has merit in terms of the substance;

Republic of the Congo 1                    2

[stamp: EXECUTION COPY
Certified True Copy                          [illegible signature]
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

That there is reason to accept it;

That NOMECO is ordered to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and that are in NOMECO's possession pursuant to their partnership contract;

Whereas NOMECO, duly convened, has appeared through the representative of the Director General, Mr. Benoît de la Fouchardière, Operations Manager;

It is to be officially recorded;

Whereas NOMECO has lost the case;

That there is reason to hold NOMECO responsible for the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

<u>NOW THEREFORE</u>

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

<u>ON THE MERITS</u>

We refer the parties to enter an appeal as they shall advise;

<u>BUT AT THIS TIME, GIVEN THE URGENCY AND BY WAY OF ADVANCE</u>

We find that the judgment of September 17, 2004 No.    has not yet been confirmed by the Congolese jurisdictions;

We find that said judgment has never been served upon the Congolese State;

CONSEQUENTLY;

We order NOMECO to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and in NOMECO's possession pursuant to their partnership contract;

We order the immediate execution of this order notwithstanding any appeals;

The costs shall be paid by NOMECO.

Republic of the Congo I                          3

[stamp: EXECUTION COPY
Certified True Copy                          [illegible signature]
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]


And, we have signed this Order with the Registrar.
The signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on December 28, 2004
Certified true execution copy, checked against the original
Pointe-Noire, December 28, 2004
Chief Registrar

In consequence thereof: the Republic of the Congo orders its registrars,
based upon this application, to execute said judgment with the Attorneys
General and Prosecuting Attorneys of the Appeals Courts and Courts of
First Instance to assist all commanders and law enforcement agencies to
lend a hand when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar
of the Pointe-Noire Court of First Instance and delivered by him in the form of an
execution copy.

[signed]


By the Court
Document Checked against the Original
The Head Registrar


R. Koud-Okouo, Attorney
Head Registrar


Republic of the Congo 1                    4

# EXHIBIT 4

ROLE CIVIL N° 1212      F° 204      C 1212
A N N E E   2004

REPERTOIRE N° 1130
DU 28 DECEMBRE 2004.-

# REPUBLIQUE DU CONGO
## AU NOM DU PEUPLE CONGOLAIS
- O R D O N N A N C E -



A F F A I R E : LA S.N.P.C

C O N T R E : LA SOCIETE NOMECO

OBJET : REFERE D'HEURE A HEURE.-

L'AN DEUX MIL QUATRE
ET, LE VINGT HUIT DU MOIS DE DECEMBRE ;

PAR DEVANT NOUS, NGIMBI NTENGA, Président
du Tribunal de Grande Instance de Pointe-Noire, tenant audience
publique des référés en notre Cabinet sis au Palais de Justice
de cette ville ;

Assisté de Maître Catherine KENDI ISSONGO, Gref-
fier Principal ;

A   C O M P A R U :

La Société Nationale des Petroles du Congo, en
sigle SNPC, établissement public à caractère Industriel et com-
mercial, dont le Siège social à Brazzaville B.P. 98, agissant
aux diligences de son représentant légal ;

La SNPC a été saisie par les congolais Améri-
cains de l'Etat congolais NOMECO qui devait lui livrer une car-
gaison de 250.000 barils de Pétrole, refuse de s'exécuter au mo-
tif que cette cargaison fait l'objet d'une saisie suivant la déci-
sion du Tribunal de l'Etat de Texas du 14 Avril 2004, rendant
possible la saisie attributive de la dite cargaison ;

Or une décision de justice rendue par une juri-
diction étrangère, même en présence de la renonciation par le débi-
teur de son immunité de juridiction ou d'exécution ne peut pas
s'exécuter de plein droit en territoire étranger quelle soit, pou
recevoir exécution, être soumise à la procédure d'exequatur; le
telle que prévue par l'article 299 du code de procédure civile,
commerciale, administrative et financière selon lequel : Sous
conventions diplomatiques contraires, les jugements rendus par
les tribunaux étrangers et les actes reçus par les officiers pu-
blics ou ministériels étrangers ne sont susceptibles d'exécution
sur le territoire congolais qu'après avoir été déclarés exécutoi-
res par une juridiction congolaise qui aurait été compétente
ratione materiae pour en connaître ;

Qu'en l'espèce et sans qu'il soit nécessaire
de débattre du bien fondé ou on de l'action en saisie des créan-
ciers d'origine Américaine, il y a lieu de relever que la déci-
sion sur laquelle se fonde la Société NOMECO à jamais été exe-
quaturée et, plus, le tribunaux congolais ne sont pas encore sai-
sis d'une demande en ce sens ;

Qu'il convient donc, la question de l'enlève-
ment de la cargaison détenue par NOMECO étant urgente et composan
un péril certain, d'ordonner sur minute que le Société NOMECO
livre à tout opérateur que lui désignera la S.N.P.C ladite carga
son ;

..../...



- 3 -

## SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier que la société CMS NOMECO a fait application du jugement américain à l'encontre de la société SNPC rendu en date du 23 Décembre 2004 ;

Attendu que ledit jugement n'est pas encore exécutoire par les juridictions congolaises ;

Que dans ces conditions, ledit jugement ne saurait par aux dispositions légales notamment l'article 599 du code de procédure civile, commerciale, administrative et financière qui dispose que " Seul conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les officiers publiques ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui serait été compétente ratione materiae " pour en connaître ;

Attendu que ledit jugement n'a jamais été signifié à la S.N.P.C ;

Attendu que dans ces conditions, la requête de la société SNPC est donc régulière et recevable en vertu de l'article 207 du code de procédure civile, commerciale, administrative et financière ;

Attendu qu'au fond qu'elle est fondée ;

Qu'il y a lieu d'y faire droit ;

Qu'il échet d'ordonner à la société NOMECO de délivrer sous délais à tout opérateur que lui, détiennent le SNPC, toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat ;

Attendu que la société CMS NOMECO bien que régulièrement convoquée, à comparu par le biais de Monsieur Benoît DE LA POUCHARDIERS, Directeur des opérations, représentant le Directeur Général ;

Qu'il y a lieu de lui donner acte ;

Attendu que la société NOMECO a succombé au procès ;

Qu'il y a lieu de la condamner aux dépens conformément à l'article 57 du code de procédure civile, commerciale, administrative et financière ;

## PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé en matière civile et en premier ressort ;

### AU PRINCIPAL

Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront ;

### MAIS DES A PRESENT, VU L'URGENCE ET PAR PROVISION

Constatons que le jugement américain du 23 Décembre 2004 n'est pas exécutoire par les juridictions Congolaise ;

Constatons que ledit jugement n'a pas été signifié à la société SNPC ;

.../...



EN CONSEQUENCE :

Ordonnons à la société NOTICO de livrer sans delai à tout opérateur que lui désignera la SNBC, toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat ;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours ;

Mettons les dépens à la charge de la société NOTICO;

Et, avons Signé notre Ordonnance avec le Greffier.

# Certification of Translation

ATA Certified
Steven Sachs

This is to certify that the following document:

Court Order in the matter of SNPC v. NOMECO

is an accurate and true translation prepared by the undersigned from French into English. I am a translator certified by the American Translators Association for translation from French into English.

_____
Steven Sachs
1312 Harbor Road
Annapolis, MD 21403

e-mail: steven@stevensachs.com
Ph: (301) 261-1016
Fax: (509) 461-9020

_____1-10-05_____
Date.

Subscribed and sworn before me on this 10th day of January of 2005

GAIL BURROUGHS
Notary Public
Anne Arundel County
Maryland
My Commission Expires 9/8/2008

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES   9/8/2008

**EXECUTION COPY**         F. 204                    C 1212

## REPUBLIC OF THE CONGO ON
## BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 1212 /
OF DECEMBER 28, 2004              O R D E R

### IN THE MATTER OF: SNPC

### VERSUS: NOMECO

### SUBJECT: IMMEDIATE SUMMONS

[stamp: EXECUTION COPY
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28]      [signature]

IN THE YEAR TWO THOUSAND AND FOUR:

AND ON THE TWENTY-EIGHTH DAY OF THE MONTH OF DECEMBER;

·BEFORE US, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First
Instance, holding an urgent public hearing in our Chambers in the Courthouse of said
city;

Assisted by Cathérine Kedet Issongo, Head Registrar;

### THE FOLLOWING APPEARED

Société Nationale des Pétroles du Congo, (acronym: SNPC), a government-owned
industrial and commercial enterprise, with headquarters at B.P. 88, Brazzaville, filing
through it legal representative;

The SNPC has been garnished by the American obligees of the Congolese State,
NOMECO, which was to deliver to it a cargo of 550,000 barrels of oil, and refuses to do
so on the grounds that said cargo has been garnished based on the decision of the Court
of the State of Texas of December 23, 2004, making possible the garnishment of said
cargo;

Yet a court decision handed down by a foreign jurisdiction, even when the obligor
renounced its immunity from jurisdiction and execution, cannot be automatically
executed abroad and that, to be executed, it is necessarily subject to an execution
procedure as stipulated by Article 299 of the Code of Civil, Commercial, Administrative

[stamp: EXECUTION COPY                [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

and Financial Procedure, according to which: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

That in this case and with no necessity of debating the merits or the lack thereof of the action to seize by the U.S. obligees, there is reason to find that the decision that NOMECO is using as a basis has never been executed. Worse, the Congolese courts have not yet received an application for authority to enforce this judgment;

Therefore, the matter of removing the cargo in the possession of NOMECO is urgent and entails a certain peril, so that it should be made enforceable immediately that NOMECO deliver said cargo to any operator that the SNPC [Société nationale des pétroles du Congo – Congo National Petroleum Company] may designate;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that NOMECO has applied a U.S. judgment handed down in the State of Texas on December 23, 2004 against the SNPC;

Whereas said judgment has never been executed by the Congolese jurisdictions;

That under these conditions, said judgment does not satisfy the statutory provisions of Article 299 in particular of the Congolese Code of Civil, Commercial, Administrative and Financial Procedure, which stipulates that "unless there are diplomatic conventions to the contrary, the judgments handed down by foreign courts and instruments received by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that was given *ratione materiae* jurisdiction to take cognizance of the matter;

Whereas, said judgment has never been notified to the SNPC;

Whereas since the application of the SNPC is thus in order and admissible under Article 207 of the Code of Civil, Commercial, Administrative and Financial Procedure;

Whereas it has merit in terms of the substance;

That there is reason to accept it;

Republic of the Congo 3                    2

[stamp: EXECUTION COPY
Certified True Copy                    [illegible signature]
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

That NOMECO is ordered to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and that are in NOMECO's possession pursuant to their partnership contract;

Whereas NOMECO, duly convened, has appeared through the representative of the Director General, Mr. Benoît de la Fouchardière, Operations Manager;

It is to be officially recorded;

Whereas NOMECO has lost the case;

That there is reason to hold NOMECO responsible for the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

### NOW THEREFORE

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

### ON THE MERITS

We refer the parties to enter an appeal as they shall advise;

### BUT AT THIS TIME, GIVEN THE URGENCY AND BY WAY OF ADVANCE

We find that the judgment of December 23, 2004 has not yet been confirmed by the Congolese jurisdictions;

We find that said judgment has never been served upon the SNPC;

CONSEQUENTLY;

We order NOMECO to deliver without delay to any operator that the SNPC designates all quantities of hydrocarbons that belong to it and in NOMECO's possession pursuant to their partnership contract;

We order the immediate execution of this order notwithstanding any appeals;

The costs shall be paid by NOMECO.

And, we have signed this Order with the Registrar.

Republic of the Congo 3                    3



[stamp: EXECUTION COPY                    [illegible signature]
Certified True Copy
Joachim Mitolo, Attorney at Law
B.P. 1384 [Tel. 94 83 28] [signature]

[seal: POINTE-NOIRE COURT OF FIRST INSTANCE]

The signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on December 28, 2004
Certified true execution copy, checked against the original
Pointe-Noire, December 28, 2004
Chief Registrar

In consequence thereof: the Republic of the Congo orders its registrars,
based upon this application, to execute said judgment with the Attorneys
General and Prosecuting Attorneys of the Appeals Courts and Courts of
First Instance to assist all commanders and law enforcement agencies to
lend a hand when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar
of the Pointe-Noire Court of First Instance and delivered by him in the form of an
execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

Republic of the Congo 3                    4

# EXHIBIT 5

Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 2/12

8. AVR. 2005 16:15    PERENCO                                      N° 096    P. 2

**27 Décembre :**

- Arrivée à Brazzaville – l'avion a une heure de retard

- J'ai rendez-vous avec B Itoua , Président de la SNPC , à 21 heures en principe. B Itoua est en Conseil d'Administration. On ne sait quand il sortira. Finalement, à 23h30 C Oba et S Poaty arrivent à l'hôtel. On commence la réunion. Apparemment, ils ne sont pas informés du dernier jugement US concernant la SNPC. Ils font copie du jugement. B Itoua arrive à 23h45

- B Itoua paraît catastrophé quand il apprend la décision du Tribunal Américain concernant la SNPC. Je lui confirme que j'ai donné instruction au terminal de ne pas charger.

- Entre temps, j'ai confirmé les réunions avec N Tchissambot, Directeur Général des Hydrocarbures, à 10h et le Ministre à 11h.

**28 Décembre :**

- 11 h : Je fais un point avec N Tchissambot (il n'était pas au courant du jugement concernant la SNPC) et fais des copies pour le Ministre et lui. Je l'informe de ma réunion avec B Itoua la veille. Il était au courant car S Poaty l'avait appelé. Pour lui, pas d'autre solution que charger : au besoin l'Etat enverra une vedette avec des militaires pour forcer le terminal à charger . Il va informer le ministre de la situation pendant que j'attends dans l'antichambre. Benoît m'a informée, entre temps, qu'il y a un problème technique sur le remorqueur.

- Meeting avec le Ministre : Présents : M Tati Loutard, M Delica, M Sokath (Conseiller), N Tchissambot, + JM Runacher/M Bernard, JM Runacher présente Maryse Bernard , Présidente de CMS Nomeco Congo INC. Le Ministre confirme sa lettre du 21 décembre 2004 et menace de retirer les droits si CMS Nomeco Congo Inc. refuse de charger. Je lui explique que malheureusement je ne peux pas faire autrement. N Tchissambot évoque à nouveau la possibilité d'une action militaire pour contraindre le terminal à charger. Le Ministre pose ensuite quelques questions sur la production actuelle, les investissements.

PER 0018182

Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 3/12

8. AVR. 2005  16:15      PERENCO                                    Nº 096      P. 3

- Benoît appelle vers 13 h. C Oba et S Poaty et un envoyé du Tribunal sont dans son bureau et veulent lui signifier une notification comme quoi il est convoqué au Tribunal de Grande Instance de Pointe Noire. Il m' apprend que le problème du treuil du remorqueur est réglé. Je lui dit d'aller au tribunal puisqu'il est convoqué et ordre de ne pas charger le bateau.

- Dans l'après-midi, nombreux AR téléphoniques avec Benoît et R Marquez. Les jugements, semble-t-il, vont être prononcés, obligeant CMS Nomeco Congo Inc. à laisser charger.

- Vers 18h15, les jugements sont faxés à l'hôtel. N Tchissambot vient à l'hôtel accompagné d'un policier en uniforme et me convie à la réception en me montrant le jugement. Il m'intime l'ordre de charger. Je lui demande ce qui se passerait si je ne m'exécute pas : il répond en souriant que je serai l'hôte de la République jusqu'à ce que le bateau soit chargé.

- Je décide alors (18h45) de donner l'ordre de charger à Benoît et je rédige un résumé de la situation que j'essaye de faxer à R Marquez, copie R Fox. Après beaucoup d'efforts et de pages blanches car les Congolais mettaient les feuilles à l'envers, le fax passe.

06/01/2005

PER 0018183

Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 4/12

8. AVR. 2005 16:15     PERENCO                                    Nº 096     P. 4

## ENGLISH TRANSLATION

**27 December :**

- Arrival in Brazzaville – The plane is an hour late.

- I have an appointment with B. Itoua, the President of the SNPC, at 9 PM. B Itoua attends a Board meeting. No one knows when it will end. Finally, at 11:30 PM C. Oba and S. Poaty arrive at the hotel. The meeting begins. Apparently they have not been informed of the latest U.S. judgement regarding the SNPC. They make a copy of the judgement. B. Itoua arrives at 23:45 PM.

- B. Itoua seems to be stunned when he hears about the decision of the American Court regarding the SNPC. I confirm to him that I have instructed the terminal not to load.

- Meanwhile, I have been able to confirm meetings with N. Tchissambot, General Director of Hydrocarbons, at 10:00 AM and the Minister at 11:00 AM.

**28 December :**

- 11:00 AM: Review of the situation with N. Tchissambot (he was not aware of the decision regarding the SNPC) and copies the decision for the Minister as well as for himself. I inform him of my meeting with B. Itoua the day before. He was already informed since S. Poaty had called him. He sees no other solution than to proceed with the loading. If necessary the state will send a military vessel to force the terminal to load. He will inform the minister of the situation while I wait in his antechamber. Meanwhile, Benoit has informed me that there is a technical problem with the tug boat.

- Meeting with the Minister: Mr. Tati Loutard, Mr. Delica, Mr. Sokath (advisor), N. Tchissambot + J.-M. Runacher/M. Bernard. M. Runacher introduces Maryse Bernard, president of CMS Nomeco Congo INC. The minister confirms his letter dated 21 December 2004 and threatens to withdraw the rights if CMS Nomeco Congo Inc. refuses to load. I explain to him that I unfortunately cannot do otherwise. N. Tchissambot again mentions the possibility of a military action to force the terminal to load. The minister subsequently asks questions regarding the current production and investments.

- Benoit calls around 1:00 PM. C. Oba and S. Poaty as well as a person sent by the court are in his office to notify him of his summon to appear at the Pointe Noire District Court. He informs me that the problem relating to the winch of the tug boat is solved. I tell him that he should go to court since he has been summoned and order him not to load the boat.

- During the afternoon, a large number of telephone conversations with Benoit and R. Marquez. Apparently judgements will be rendered obliging CMS Nomeco Congo Inc. to let the loading take place.

- Around 18:15 PM the judgements are faxed to the hotel. N. Tchissambot comes to the hotel accompanied by a uniformed police officer and asks me to come to the reception desk while showing me the judgement. He orders me to load the vessel. I ask him what would happen if I don't follow his order: Smiling, he answers that in such case I will be the guest of the Republic until the vessel has been loaded.

PER 0018184

Received 04/08/2005 10:16AM in 05:44 on line [5] for GL0607 * Pg 5/12
8. AVR. 2005 16:16    PERENCO                                N° 096    P. 5

–   I then decide (18:45 PM) to give Benoit the order to load and prepare a summary of the situation which I try to fax to R. Marquez with a copy to R. Fox. After quite some efforts and white pages (the Congolese put the paper into the fax machine the wrong way) the fax is successfully sent.

(signature illegible)

*06/01/2005*

PER 0018185

# EXHIBIT 6



**Global Language Services**
Translations - Interpreting
DTP - Localization

KERN Corporation
The Helmsley Building
230 Park Avenue, Suite 1517
New York, NY 10169

Tel. (212) 953 2070
Fax (212) 953 2073
kern.ny@kerntranslations.com

www.e-kern.com

State of :    New York

County of :    New York     ss.:

## CERTIFICATE OF ACCURACY

*IT IS HEREBY CERTIFIED, that KERN Corporation, a corporation organized and existing under the laws of the State of New York, is professionally engaged in the rendering of foreign language translation services; that it has translated the following document(s)*

### LETTER DATED MARCH 3, 2005 REGARDING
### AF-CAP, INC. V. REPUBLIC OF CONGO

*from the FRENCH language into the ENGLISH language and that the said translation is a true and correct rendering of the said document to the best of our knowledge and belief.*

Signed by: _____

Subscribed to before me this   7

Day of March , 2005

Notary Public

JOY N. WILTERMUTH
NOTARY PUBLIC, State of New York
No. 01WI - 6093589
Qualified in New York County
My Commission Expires June 2, 2007

San Francisco: The Russ Building - 235 Montgomery Street, Suite 846 - San Francisco, CA 94104
Tel. (415) 433 5376 - Fax (415) 433 5377 - kern.sf@kerntranslations.com

London: Tel. 011 44 (20) 78 31 56 00 - Frankfurt: Tel. 011 49 (69) 75 60 73-0 - Berlin: Tel. 011 49 (30) 24 72 12 50 - Paris: Tel. 011 33 (1) 53 93 85 20
Zurich: Tel. 011 41 (1) 2 61 11 60 - Hong Kong: Tel. 011 (852) 28 50 44 55 - Amsterdam: Tel. 011 31 (20) 6 39 01 19 - Lyon: Tel. 011 33 (4) 783 783 73

MINISTER OF FOREIGN AFFAIRES
AND FRANCOPHONY

—————

**CABINET**

———

REPUBLIC OF CONGO
Unité - Travail - Progrès

—————

MAEF  0744   CAB.SP.

Brazzaville, 03 March 2005

MINISTER OF STATE

Re: <u>Republic of Congo v. Af-Cap, Inc.</u>

Dear Judge:

I refer to the order issued by this court on 22 February 2005 (the "Turnover Order"), which provides, *inter alia*:

- "The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention;

- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute . . . [a] letter of instruction . . . to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty . . . ."

This suit was initiated over four years ago with a view to persuading United States courts to authorize seizure of the Congo's rights to mining royalties, which it collects within its own territory, in satisfaction of a debt purchased by a creditor without any right to said mining royalties. The Congo has strongly objected to this litigation, which is unfounded. It is premised on the erroneous notion that an American court may transfer the right of a sovereign nation—the Republic of Congo—to dispose of its resources within its own borders. The Republic of Congo has thus far endeavored to cooperate with United States judicial authorities in the hope that United States courts would recognize their obligation to respect the Congo's sovereignty, as is mandated not only under Congolese and international law, but under United States law as well.

In light of the judgments of this Court and the Court of Appeals for the Fifth Circuit, the Congo is constrained to protest in the strongest possible terms the failure to

1

respect its sovereign rights and the resulting judicial measures that purport to dispossess the Congo of economic rights comprising its national patrimony and principal source of export revenue. It is an established principle of the law of nations that every state exercises full and permanent sovereignty over its natural resources and exclusive authority to control the economic exploitation thereof. The Congo's rights to the mining royalties within its territory are subject to its exclusive jurisdiction and sovereignty, which cannot be subordinated to the judicial measures of another state.

The Turnover Order issued by this Court is a clear violation by the United States of international law which recognizes the right for any sovereign State to exercise authority and control over its natural resources within its national territory. Such actions impact negatively on the relations between the United States and the Congo, undermining the concerted mutual efforts of both nations to encourage private United States entities to invest in the Congo, in particular in the oil sector. This unfortunate development requires the Congo to reassess its relations with the United States, particularly where other sources of trade and investment such as Canada, Europe, India and China continue to respect the sovereignty of the countries with which they maintain an economic relationship.

The Turnover Order is unenforceable in the Congo, and cannot supersede the Congo's sovereign authority to prescribe and enforce its own laws within its own territory. Regretfully, the Congo must hereby advise the Court that, for the reasons stated, the Congo will not implement the Turnover Order.

Please accept, Your Honor, the expression of my most distinguished consideration.

[seal:   Minister of Foreign Affaires and
         Francophony
         Cabinet
         Republic of Congo]

[signature]

Rodolphe Adada

Hon. Sam Sparks
United States District Judge
United States District Court for
    The Western District of Texas
Austin, Texas

U.S.A.

copy: Hon. William H. Taft, IV
        United States Department of State

MINISTERE DES AFFAIRES ETRANGERES
ET DE LA FRANCOPHONIE

**République du Congo**
Unité -- Travail - Progrès

# C A B I N E T

MAEF_0 7 4 /CAB.SP.-

Brazzaville, le 0 3 MARS 2005

LE MINISTRE D'ETAT,

**Objet :** République du Congo c. Af-Cap. Inc

Monsieur le Juge,

Je me réfère à l'Ordonnance de votre tribunal rendue le 22 février 2005 (the « Turnover Order », qui décide notamment :

- « The Court hereby takes possession and control of all future royalty obligations owed to the Congo under the Convention [for the production of oil and gas in the Congo dated May 25, 1979] and this Order shall constitute a judgment lien upon the Congo's property interests in, and its rights to receive payment of, its royalty share" from oil companies operating in the Congo under a concession granted by the Congo in the Convention »

- "The Court further orders the Congo to turn over such royalty payments into the registry of the Court and to execute...[a] letter of instruction ...to the parties who pay royalties under the Convention to the Congo revoking prior instructions regarding payment of the royalty...

Cette procédure a été initiée par les demandeurs il y a plus de quatre ans dans le but de convaincre les tribunaux américains d'autoriser la saisie des droits du Congo sur la redevance minière qu'elle perçoit sur son propre territoire, en paiement de droits d'un créancier au titre d'une dette du Congo sans rapport avec un droit quelconque sur cette redevance minière. Le Congo a vigoureusement contesté cette action judiciaire, laquelle est sans aucun fondement. Elle repose sur l'hypothèse erronée qu'un tribunal américain pourrait aliéner le droit d'un Etat souverain, la République du Congo, de disposer de ses ressources à l'intérieur de son propre territoire. La République du Congo a jusqu'à présent coopéré avec les autorités judiciaires américaines dans l'espoir que les tribunaux américains admettraient leur obligation de respecter la souveraineté du Congo, comme le leur impose le droit international, le droit congolais ainsi que le droit des Etats-Unis d'Amérique.

Compte tenu des jugements rendus par votre tribunal et par la Court of Appeals for the Fifth Circuit, le Congo se voit contraint de protester vigoureusement contre le non-respect de ses droits souverains et contre les mesures judiciaires qui visent à le déposséder de droits économiques qui font partie de son patrimoine national et qui constituent sa principale source de revenus à l'exportation. Le droit international public établit clairement le principe selon lequel chaque Etat a le droit d'exercer une souveraineté entière et permanente sur ses ressources naturelles, et dispose du droit exclusif d'en contrôler l'utilisation économique. Les droits du Congo sur la redevance minière à l'intérieur de son territoire sont du ressort de sa souveraineté exclusive, laquelle ne peut en aucun cas faire l'objet de mesures judiciaires de la part d'un autre Etat.

Le Turnover Order émis par votre tribunal constitue une violation patente de la part des Etats-Unis du droit international, lequel consacre le droit pour chaque Etat souverain de gérer ses ressources naturelles à l'intérieur de son territoire national. De telles actions affectent négativement les relations entre les Etats-Unis et le Congo et les efforts mutuels de ces deux nations pour encourager les sociétés américaines à investir au Congo, en particulier dans le domaine pétrolier. Ce regrettable développement met le Congo dans l'obligation de réexaminer ses relations économiques avec les Etats-Unis en tenant compte notamment que d'autres pays partenaires commerciaux, au Canada, en Europe, en Inde et en Chine respectent la souveraineté des pays avec lesquels ils entretiennent des relations économiques.

Le Turnover Order est de nul effet au Congo et ne saurait prévaloir sur l'autorité souveraine de notre pays d'appliquer ses propres lois sur son territoire. J'ai donc le regret de vous informer que, pour les raisons indiquées dans la présente lettre, la République du Congo rejette le Turnover Order.

Veuillez agréer, Monsieur le Juge, l'expression de ma considération distinguée.

Rodolphe ADADA

Hon. Sam Sparks
United States District Judge
United States District Court for
  The Western District of Texas
Austin, Texas

U.S.A.

Copie : Hon. William H. Taft, IV
           United States Department of State

# EXHIBIT 7



AU NOM DU PEUPLE CONGOLAIS

L'an deux mil cinq
Et le quatre du mois de juillet;

Par-devant nous, Norbert BIENDA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc MIKI, Greffier en Chef des Chambres Civiles dudit Tribunal;

(/Ai la requête en date à Pointe-Noire du 02 juillet 2005 de la République du Congo, Ministère des Hydrocarbures, ayant pour conseils, Maîtres Irène Ja... nlène OKOKO, Hervé OBENGUI NGUIE et Nadia MACOSSO, Avocats à la Cour à ... Pointe-Noire;

Attendu qu'elle expose à l'appui de sa requête; Que se prévalant de ce qu'elles ont été saisies par la société AF CAP (...) d'une créance sur la République du Congo suivant une décision de la Cour Suprême de l'Etat de New York du 9 mai 2000) par les décisions des 4 et 22 février 2005 de la Cour du District de Houston du Texas, Division Justice, autorisant d'Amérique ... ler société CMS Nomec Inc, Nuevo Congo Company et Nuevo Congo Limited entendant se les permettre l'enlèvement des parts de pétrole brut revenant ... pondant aux redevances fiscales dues à la République du Congo au titre de la convention pour la production d'hydrocarbures du 25 mai 1979;

Que les jugements des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales, le versement des redevances fiscales en ...tière au Greffe de la Cour au profit de AF CAP en règlement de sa créance de celle-ci sur la République du Congo ainsi que toute somme supplémentaire que la Cour ordonnera, ces décisions interdisent également à la République du Congo et toute personne ayant connaissance de ces décisions de transférer, distribuer ou de disposer des intérêts de la République du Congo;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

Qu'en effet, une décision de Justice rendue par une juridiction étrangère est en présence de l'annulation par le détenteur de son immunité de juridiction et d'exécution ne peut pas s'exécuter de plein droit en territoire étranger; qu'elle doit pour recevoir exécution être donnée à la procédure d'exequatur telle que prévue par les articles 450 du Code de Procédure civile, Commerciale, Administrative et financière lequel dispose (... lions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise, qui aurait été compétente à raison (...) jour en connaître;

Qu'en l'occurrence, les décisions américaines des 4 et 22 février 2005 n'ont pas été notifiées à la République du Congo et que si la société AF CAP, Inc, Nuevo Congo Company et Nuevo Congo Limited, tierces saisies, ont formulé devant les Tribunaux Congolais une demande d'exequatur des susdites décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les procédures simplifiées de recouvrement et des voies d'exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à l'ordre Public international et à la souveraineté de la République du Congo en ce qu'elle vise des redevances fiscales, par nature insaisissables, et porte atteinte à la République du Congo dans l'exercice de sa souveraineté fiscale;

Qu'ainsi, il sied, la question de livraison des parts de pétrole brut de



la République du Congo distraue par les sociétés CMS NOMECO Inc, Nuevo Congo Company et Nuevo Congo Limited étant urgent et comportant un péril certain, si Ordonner par référé que ces sociétés livrent à tout opérateur désigné par la République du Congo lesdites parts de pétrole brut;

Qu'en conséquence de ce qui précède la République du Congo sollicitera par décision du référé, Monsieur à haute... que constatez que les Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction américaine et partant saisie de la redevance arbitrale que à la République du Congo au titre de la convention du 25 mai 1979 - Dire que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les cours et tribunaux congolais; constater que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise; Ordonner aux sociétés CMS Nomeco, Nuevo Congo Company et Nuevo Congo Limited de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut lui revenant conformément aux dispositions de la convention du 25 mai 1979 et de la législation en vigueur; Ordonner l'exécution de droit de la décision à intervenir nonobstant toutes voies de recours; Statuer ce que de droit sur les dépens.

Attendu que par conclusions en date du 02 juillet 2005 la société CMS NOMECO Inc ayant pour conseil, Maître Sylie Pierre KOUECKAM, avocat à la Cour par Me Politolaires, a soutenu ce qui suit;

que un certain nombre de juridictions Américaines ont rendu des décisions ordonnant la mobilisation des parts de pétrole brut revenant à la République du Congo entre les mains de la société CMS NOMECO CONGO Inc;

Que si la société CMS NOMECO CONGO INC a introduit des requêtes de conciliation auprès de plusieurs Cours Américaines au motif que la livraison des parts de pétrole brut à tout opérateur désigné par la République du Congo serait obligatoire en droit Congolais nonobstant l'existence d'une décision contraire émanant d'une juridiction Américaine et que l'une de ces cours a rejeté cette requête, les autres ne seront pas prononcées sur le sujet;

qu'en outre compte tenu du fait que la société CMS NOMECO est une société Américaine et que les procédures en cours sont des procédures Américaines, une injonction émanant d'une juridiction Congolaise obligeant la société CMS NOMECO à livrer des parts de pétrole brut à tout opérateur désigné par la République du Congo, exposerait la société CMS NOMECO au risque d'effectuer un double paiement;

qu'en effet, et tel était le cas si la société CMS NOMECO se voit contrainte de livrer des parts de pétrole brut à tout opérateur désigné par la République du Congo en conformité avec la décision du Tribunal de Grande Instance tout en courant le risque de devoir également effectuer un paiement aux Etats Unis afin de se conformer à la décision de la Cour Américaine;

que la société CMS NOMECO étant manifestement au tiers aux procédures américaines ci-dessus cité, elle ne devrait pas avoir à subir de telles conséquences;

Que l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière dispose: Sauf conventions diplomatiques contraires, les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente ratione materiae pour en connaître;

qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions étrangères exécutées sur le territoire Congolais;

Que or, les décisions de la Cour de District des Etats-Unis, District de l'Ouest du Texas, ont été rendues, signifiées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opère aux Etats-Unis sont ressentis au



... / ...

et qui aurait été comptabilisée matérielle pour en connaître;

Attendu en définitive qu'il n'y a donc lieu à opposer à l'Etat Congolais tou- tes les décisions judiciaires Américaines;

Attendu également que l'article 50 de l'Acte Uniforme sur les Procédures Sim- plifiées de Recouvrement et des Voies d'Exécution(OHADA) du l'OHADA dispose ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Or attendu que les redevances pétrolières sont déclarées insaisissables par la loi congolaise;

Attendu en définitive qu'il sied de dire que la saisie du pétrole brut Congo- lais ordonnée par les Tribunaux Américains est contraire à l'ordre public et porte atteinte à la souveraineté de l'Etat Congolais;

Attendu qu'en regard de tout ce qui précède,il y a lieu de dire que la requête de l'Etat Congolais est donc régulière et recevable;

Attendu au fond que cette requête est fondée,il y a lieu de faire droit à cette requête;

qu'il échet donc de constater que les Tribunaux Congolais ne sont pas saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance pétrolière due à la République du Congo au titre de la convention du 25 Mai 1979;

Attendu qu'il y a lieu donc de rejeter purement et simplement tous les moyens ainsi développés par la société CMS NOMECO CONGO INC;

Attendu que la société CMS NOMECO CONGO INC a succombé au procès;

qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du CPCCAF;

## PAR CES MOTIFS

Statuant publiquement,contradictoirement,en référé,en matière d'exécution et en premier ressort;

Au principal,renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent,vu l'urgence et par provision;

Constatons que les Tribunaux Congolais ne sont saisis d'aucune décision rendue par une juridiction Américaine et portant saisie de la redevance Pétro- lière due à la République du Congo au titre de la convention du 25 Mai 1979;

Disons que les décisions judiciaires américaines en aucune juridiction étrangères ne peuvent exécuter sur le territoire Congolais sans avoir préalablement fait l'objet de la procédure d'exequatur devant les Cours et Tribunaux Congolais,Disons que les redevances pétrolières Congolaises sont insaisissables selon la loi Congolaise;

Constatons que les décisions judiciaires Américaines ayant ordonné la sai- sie du pétrole brut Congolais sont contraires à l'ordre public et portent atteinte à la souveraineté nationale de la République du Congo;

En conséquence;



Ordonnons aux sociétés CMS NOMECO,Nuevo Congo Company et Nuevo Congo limi- ted de livrer à tout opérateur désigné par la République du Congo les parts de pétrole brut revenant à la République du Congo,conformément aux disposi- tions de la convention du 25 Mai 1979,et de la législation en vigueur;

.../...

Disons que la présente ordonnance sera exécutée en cas de résistance de la société des UNICO avec l'aide et assistance de la force publique

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant tout les voies de recours

Mettons les dépens à la charge de la société des UNICO comme être

Et avons repou créu notre ordonnance avec le greffier.

Suivent les signatures lisibles
du Président et du Greffier
sur la mention d'enregistrement
enregistré à Pointe-Noire le 28 Juillet 2004
Pour expédition certifiée
certifiée conforme à l'original
établie en ... DEUX pages.

POINTE-NOIRE, le 28 Juillet 2004
Le Greffier en Chef

Me K. KOUA-OKOUO
Greffier en Chef

**EXECUTION COPY**

**ORDER**

F No. 251

CIVIL LIST No. 546
YEAR: 2005

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 477
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

 Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

 With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

 With reference to the motion dated July 2, 2005 in Point Noire from the Republic of the Congo, Ministry of Hydrocarbons, with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

 Whereas in support of its motion, it stated: whereas AF CAP (which holds a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

 Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

 But whereas these decisions could not be executed in the Republic of the Congo;

 Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure, according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

 Whereas in this case, the Republic of the Congo was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

 Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each Contracting State may not be garnished even though it may be held by third parties;

2

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with International Public Order and the Republic of the Congo's sovereignty in that it is aimed at tax royalties, by their nature not subject to garnishment, and it interferes with the Republic of the Congo's exercise of its sovereignty in matters of taxation;

Whereas, therefore, since the issue of the delivery of any operator designated by the Republic of the Congo's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver said shares of crude oil to any operator designated by the Republic of the Congo;

Whereas based on the foregoing, the Republic of the Congo is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction on the garnishment of the mining royalty owed to the Republic of the Congo's under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to any operator designated by the Republic of the Congo, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in briefs dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, P.O. Box 5316, Pointe-Noire, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to the Republic of the Congo held by CMS Nomeco Congo Inc;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that its delivery of the shares of crude oil to any operator designated by the Republic of the Congo would be compulsory under Congolese law, notwithstanding the existence of a decision from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco to deliver shares of crude oil to any operator designated by the Republic of the Congo would render CMS Nomeco liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco would be forced to deliver shares of crude oil to any operator designated by the Republic of the Congo in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas CMS Nomeco is obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

Whereas Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this code it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas the Republic of the Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas under these conditions, the Republic of the Congo cannot make valid use of the argument that its obligee observed the procedure for the authority to execute as though it were executing its decision in Congolese Territory;

Whereas the Republic of the Congo further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the Republic of the Congo, pursuant to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, mainly AF-CAP Inc., the U.S. company, and the Republic of the Congo;

Whereas it is requesting that the Court: - find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco; - find that CMS Nomeco Congo is only a "third arty holder" of the immobilized shares of crude oil; - find that only the effects of this execution are felt in the Congo through CMS Nomeco; find that there is no instrument of execution whatsoever that has been carried out in Congolese territory;

Whereas consequently, find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and - order the Republic of the Congo to pay the costs;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that the U.S. court decisions that ordered the attachment of Congolese crude oil conflict with the Congolese laws in effect;

Whereas the Republic of the Congo is indeed a sovereign State and therefore a Government Corporation and Enterprise;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution which provides that "Compulsory distraint and preventive measures shall not apply to persons enjoying immunity from execution. However, any unquestionable debts due for payment belonging to public corporations or enterprises, regardless of their form and mission, may equally be compensated with unquestionable debts due for payment belonging to any person owing them, subject to reciprocity;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas furthermore, the decisions of the U.S. courts, including for the attachment of the Congolese crude oil, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas ultimately, there is therefore no reason to use the decisions of the U.S. courts as arguments against the Congolese State;

Whereas, moreover, Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution (UAOSRPME) provides that "property declared not subject to attachment by the national law of each Contracting State may not be attached, even if it is held by third parties;

Yet, whereas the oil royalties are declared not subject to attachment by Congolese law;

Whereas ultimately, it should be found that the attachment of the Congolese crude oil ordered by the U.S. courts is in conflict with public order and interferes with the sovereignty of the Congolese State;

Whereas with regard to the foregoing, there is reason to find that the Congolese Republic's motion is in order and admissible;

Whereas, in substance, it is grounded; whereas there is reason to accept it;

Whereas it is therefore essential to find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the CCCAFP;

<u>NOW THEREFORE</u>

Ruling in public based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

<u>On the merits</u>, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the Congolese Courts have not received any decision handed down by a U.S. jurisdiction on the attachment of the oil royalty owed to the Republic of the Congo under the convention of May 25, 1979;

We find that the U.S. court decisions or decisions of other foreign jurisdictions may not be executed in Congolese territory without first having been the subject of the procedure of the authority to execute with the Congolese Courts and Tribunals. We find that the Congolese oil royalties cannot be attached according to Congolese law;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We find that the U.S. court decisions that ordered the attachment of the Congolese crude oil are in conflict with the public order and interfere with the Republic of the Congo's national sovereignty;

Consequently;

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to any operator designated by the Republic of the Congo in accordance with the provisions of the agreement of May 25, 1979 and the laws in effect;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc. to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okouo, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

# EXHIBIT 8

ROLE CIVIL N°547
ANNEE: 2005

REPERTOIRE N°496
DU 04-07-05

# REPUBLIQUE DU CONGO

F°251

## AU NOM DU PEUPLE CONGOLAIS

L'an deux mil cinq;
Et le quatre du mois de juillet;

Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis au Palais de Justice de cette ville;

Assisté de Maître Marc ETIKI, Greffier en Chef des Chambres Civiles audit Tribunal;

(/u la requête en date à Pointe-Noire du 02 Juillet 2005 de la Société Nationale des Pétroles du Congo(SNPC), ayant pour conseils Maître Irène Josiane OKOKO, Hervé OBONGUI NGUIE et Nadia MACOSSO, Avocats à la Cour B.P 5137 Pointe-Noire;

Attendu qu'à l'appui de sa requête, elle expose: Que se prévalant de ce qu'elles ont été saisies par la société AF CAP(titulaire d'une créance sur la République du Congo suivant une décision de la Cour Suprême de l'Etat de New York, du 9 Mai 2000) par les décisions des 4 et 22 février 2005 de la Cour du District de l'Ouest du Texas, Division Austin, Etats-Unis d'Amérique, les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited entendent ne pas permettre l'enlèvement des parts de pétrole brut correspondant aux redevances dues à la République du Congo au titre de la convention pour la production d'hydrocarbures du 25 Mai 1979;

Que les décisions des 4 et 22 février 2005 prévoient le contrôle de la Cour sur les redevances fiscales dues à la République du Congo, le versement desdites redevances en numéraire au Greffe de la Cour en faveur de AF CAP en règlement de la créance de celle-ci sur la République du Congo ainsi que toute somme supplémentaire que la Cour ordonnera. Ces décisions interdisent également la République du Congo et toute personne ayant connaissance de ces décisions de transférer, dissimuler ou de disposer des intérêts de la République du Congo;

Que dans une lettre en date du 16 mai 2005, la société CMS Nomeco Inc déclare que les décisions américaines sont également applicables aux parts de pétrole brut revenant à la SNPC au titre de la convention du 25 Mai 1979;

Mais que ces décisions ne pourraient être exécutées en République du Congo;

Qu'en effet, une décision de Justice rendue par une juridiction étrangère, même en présence de la renonciation par le débiteur de son immunité de juridiction et d'exécution ne peut pas s'exécuter de plein droit en territoire étranger qu'elle doit, pour recevoir exécution, être soumise à la procédure d'exéquatur telle que prévue par l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière selon lequel: "sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente "ratione materiae" pour en connaître";



Qu'en l'occurence, les décisions américaines des 4 et 22 février 2005 n'ont pas été notifiées à la SNPC et que ni la société AF CAP, prétendue créancière de la République du Congo, ni les sociétés CMS Nomeco Inc, Nuevo Congo Company et Nuevo Congo Limited, tiers saisis, n'ont formulé devant les Tribunaux Congolais une demande d'exéquatur des mêmes décisions américaines;

Que l'article 50 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution dispose que les biens déclarés insaisissables par la loi nationale de chaque Etat Partie ne sont pas susceptibles de saisie alors même qu'ils seraient détenus par des tiers;

Que la saisie ordonnée par la juridiction américaine est contraire à la législation en vigueur en République du Congo; l'article 77 de la loi N°13/81 du 14 ~~xxxxxxxxxxx~~ mars 1981 instituant la charte des Entreprises d'Etat dispose que les biens de

.../...

-2-

l'entreprise-État sont insaisissables;

Qu'ainsi,il sied,la question de livraison des parts de pétrole brut de la SNPC détenues par les sociétés CMS Nomeco Inc,Nuevo Congo Company et Nuevo Congo Limited étant urgente et comportant un péril certain,d'ordonner sur minute que ces sociétés livrent à la SNPC des parts de pétrole brut;

Qu'en conséquence de ce qui précède la SNPC sollicite que par décision de référé d'heure à heure,soit constaté que les tribunaux congolais ne sont saisis d'aucune décision rendue par une juridiction américaine et portant saisie des parts de pétrole brut de la SNPC au titre de la convention du 25 mai 1979,-dit que les décisions de la Cour du District de l'Ouest du Texas des 4 et 22 février 2005 ou qu'une décision d'une juridiction étrangère ne peut s'exécuter sur le territoire congolais sans avoir préalablement fait l'objet de la procédure d'exsaquatur devant les Cours et Tribunaux Congolais,-constaté que les décisions des 4 et 22 février 2005 sont contraires à l'ordre public et ne sauraient être déclarées exécutoires par une juridiction congolaise,-ordonné aux sociétés CMS Nomecc Nuevo Congo Company et Nuevo Congo Limited de livrer à la SNPC les parts de pétrole brut lui revenant,conformément aux dispositions de la convention du 25 mai 1979,-ordonné l'exécution de droit de la décision à intervenir nonobstant toutes voies de recours,-statué ce que de droit sur les dépens;

Attendu que par écritures en date du 02 Juillet 2005,la Société CMS NOMECO Congo Inc,ayant pour conseil Maître Sylvie Nicole ROUTCHET,a réagi en ces termes;

Qu'un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la Société Nationale des Pétroles du Congo entre les mains de la Société CMS NOMECO Congo Inc;

Que si la société CMS NOMECO Congo Inc est condamnée à livrer ces parts de pétrole brut à la Société Nationale des Pétroles du Congo en vertu du contenu de la décision d'une Cour Américaine,celle-ci risque de se trouver sous la contrainte d'une double obligation de paiement;

Que la société CMS Nomeco Congo Inc a introduit des requêtes de non lieu auprès de plusieurs cours américaines au motif que sa livraison des parts de pétrole bruts à la Société Nationale des Pétroles du Congo serait obligatoire en Droit Congolais nonobstant l'existence d'une décision contraire émanant d'une juridiction Américaine et que l'une de ces Cours a rejeté cette requête,les autres ne s'étant pas prononcées sur le sujet;

Qu'enfin,compte tenu du fait que la société CMS NOMECO CONGO INC est une Société Américaine et que les procédures en cours sont des procédures Américaines,une décision émanant d'une juridiction Congolaise obligeant la Société CMS NOMECO Congo Inc à livrer des parts de pétrole brut à la SNPC exposerait la société CMS NOMECO CONGO INC au risque d'effectuer un double paiement;

Qu'en effet,si tel était le cas,la Société CMS NOMECO CONGO INC serait contrainte de livrer des parts de pétrole brut à la SNPC en conformité avec la décision du Tribunal de Grande Instance tout en courant le risque de devoir également effectuer un paiement aux Etats-Unis afin de se conformer à la décision de la Cour Américaine;

Que la Société NOMECO CONGO INC étant manifestement un tiers aux procédures mentionnées ci-dessus,elle ne devrait pas avoir à subir de telles conséquences;

Que l'article 299 du CPCCAF dispose:"Sauf conventions diplomatiques contraires les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente"rations materiae" pour en connaître";

Qu'il ressort de ce texte que l'exequatur n'est requis que pour les décisions des juridictions étrangères exécutées sur le territoire Congolais;

Que or les décisions de la Cour de District des Etats-Unis,District de l'Ouest



-3-

du Texas, ont été rendues, signifiées et exécutées et exécutées aux Etats-Unis;

Que seuls les effets de cette exécution opérés aux Etats-Unis sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC;

Que la Société Nationale des Pétroles du Congo ne saurait rapporter la preuve d'un quelconque acte d'exécution accompli au Congo par la Société Américaine AF-CAP;

Que la SNPC sous-tend en outre sa demande par l'immunité de saisie dont elle bénéficie de la loi, notamment des articles 30 de l'Acte Uniforme OHADA portant Procédures Simplifiées de Recouvrement des Créances et des Voies d'Exécution et 77 de la Charte des Entreprises d'Etat;

Que or, il a été rappelé supra que la société CMS NOMECO Congo Inc n'est que "tiers-détenteur" des parts de pétrole brut querellées entre la société Américaine AF-CAP Inc et la SNPC suite aux décisions Américaines en dates respectives du 04 et 22 Février 2005;

Que le fait pour la société CMS NOMECO Congo Inc d'avoir immobilisé ces parts de pétrole brut, suite aux décisions des juridictions Américaines, ne signifie pas que la Société CMS NOMECO Congo Inc revêt la qualité de saisissant;

Que la société CMS NOMECO Congo Inc ne saurait opiner sur cette question d'immunité de saisie qui intéresse les principales parties au litige, notamment la Société Américaine AF-CAP Inc et la SNPC;

Que le Juge saisi, constatera que un certain nombre de juridictions Américaines ont rendu des décisions ordonnant l'immobilisation des parts de pétrole brut revenant à la République du Congo entre les mains de la Société CMS NOMECO CONGO INC, que la Société CMS NOMECO CONGO INC n'est que "tiers-détenteur" des parts de pétrole brut immobilisées, dira que seuls les effets de cette exécution sont ressentis au Congo à travers la Société CMS NOMECO CONGO INC, constatera l'absence d'un quelconque acte d'exécution accompli sur le territoire Congolais;

Qu'en conséquence, il dira n'y avoir lieu à ordonner la livraison des parts de pétrole brut sollicitée par la République du Congo; Condamnera la République du Congo aux dépens;

## SUR QUOI, NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier; Que la Société Nationale des Pétroles du Congo SNPC, est une entreprise d'Etat; Qu'à ce titre elle bénéficie de l'immunité de saisie prévue à l'article 77 de la charte nationale des entreprises d'Etat qui dispose que "les biens de l'entreprise d'Etat sont insaisissables sauf les cas prévus par la procédure de liquidation de l'entreprise;

Attendu que dans ces conditions, il y a lieu de faire application des dispositions de l'article 30 de l'Acte Uniforme portant Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Qu'en effet l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA qui dispose que "l'exécution forcée et les mesures conservatoires ne sont pas applicables aux personnes qui bénéficient d'une immunité d'exécution";



Attendu qu'en l'espèce, la SNPC est une entreprise d'Etat et bénéficie de l'immunité d'exécution;

Qu'il y a lieu de lui appliquer les dispositions de l'article 30 de l'Acte Uniforme sur les Procédures Simplifiées de Recouvrement et des Voies d'Exécution de l'OHADA;

Attendu également que les décisions des Tribunaux Américains dont exécution, ne sont pas encore exéquaturées;

Attendu en effet que l'article 299 du Code de Procédure Civile, Commerciale, Administrative et Financière (CPCCAF) dispose que " sauf conventions diplomatiques con-

...../...

traires, les jugements rendus par les tribunaux étrangers et les actes reçus par les officiers publics ou ministériels étrangers ne sont susceptibles d'exécution sur le territoire congolais qu'après avoir été déclarés exécutoires par une juridiction congolaise qui aurait été compétente ratione matériae pour en connaître;

Attendu qu'à ce jour, ni le bénéficiaire desdits jugements, ni la société NOMECO n'ont saisi la juridiction congolaise pour solliciter l'exéquatur desdites décisions;

Attendu en conséquence qu'il n'y a lieu donc à exécution desdites décisions américaines rendues;

Attendu qu'au regard de ce qui précède, il y a lieu de dire que la requête de la société SNPC est donc régulière et recevable;

Attendu au fond qu'elle est fondée;

Qu'il y a lieu d'y faire droit;

Attendu qu'il y a lieu de rejeter purement et simplement tous les arguments développés par la société NOMECO;

Attendu que la société NOMECO CONGO INC a succombé au procès;

Qu'il y a lieu de mettre les dépens à sa charge conformément à l'article 57 du Code de Procédure Civile, Commerciale, Administrative et Financière;

## PAR CES MOTIFS

Statuant publiquement, contradictoirement, en référé, en matière d'exécution et en premier ressort;

Au principal: Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent, vu l'urgence et par provision;

Constatons que la SNPC est bénéficiaire de l'immunité d'exécution;

Constatons que les décisions judiciaires américaines rendues en la matière ne sont pas encore exéquaturées au Congo;

Constatons que lesdites décisions sont contraires à l'ordre public;

En conséquence;

Ordonnons aux sociétés CMS NOMECO, Nuevo Congo Company et Nuevo Congo Limited de livrer les parts de pétrole brut revenant à la SNPC conformément aux dispositions de la convention du 25 Mai 1979;

Disons que la présente ordonnance sera exécutée en cas de résistance avec l'aide de la Force Publique;

Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voies de recours;

Mettons les dépens à la charge de la société CMS NOMECO CONGO INC;

...//...

-5-

Et avons signé notre Ordonnance avec le Greffier./-

Suivent les signatures (e) illisibles
du Président et du Greffier
suit la mention d'enregistrement
Enregistré à Pointe-Noire le 04 Juillet 2005
Pour expédition collationnée
certifiée conforme à l'original
établie en................... 01 Pages.

POINTE-NOIRE, le 05 Juillet 2005
Le Greffier en Chef

En conséquence la République du Congo
mande et ordonne à tous huissiers sur ce
requis de mettre ledit jugement à exécution
aux Procureurs Généraux et aux Procureurs
de la République Près les Cours et Tribunaux
de Grande Instance d'y tenir la main à tous
commandants et officiers de la force publique
de prêter main forte lorsqu'ils en seront
légalement requis.

En foi de quoi la présente expédition
a été signée et scellée par Monsieur le Greffier en chef du tribunal de Grande Instance de POINTE-NOIRE et par nous sous forme de scellé.

Par

Me R. KOUD-OKOUO
Gréffier en Chef

**EXECUTION COPY**

CIVIL LIST No. 547
YEAR: 2005

F No. 251

**REPUBLIC OF THE CONGO**
ON BEHALF OF THE CONGOLESE PEOPLE

REGISTER No. 476
OF JULY 4, 2005

In the year two thousand five;
And on the fourth day of July;

     Before us, Norbert Elanga, Presiding Judge of the Pointe-Noire Court of First Instance, holding an urgent public hearing in our Chambers in the Courthouse of said city;

     With assistance from Marc Etiki, Attorney, Head Registrar of the Civil Sections of said Court;

     With reference to a motion dated July 2, 2005 in Point Noire from Société Nationale des Pétroles du Congo (SNPC), with Irène Josiane Okoko, Hervé Obongui Nguie and Nadia Macosso as Legal Counsel, Attorneys at Law, B.P. 5137, Pointe-Noire;

     Whereas in support of its motion, it stated: whereas AF CAP (which held a claim against the Republic of the Congo according to a decision of the Supreme Court of the State of New York of May 9, 2000) carried out an attachment against Nuevo Congo Company and Nuevo Congo Limited, based on the decisions of February 4 and 22, 2005 of the District Court, Western District of Texas, Austin Division, United States of America, CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited do not intend to allow the removal of the shares of crude oil that correspond to the royalties owed to the Republic of the Congo under the hydrocarbons production agreement of May 25, 1979;

     Whereas the decisions of February 4 and 22, 2005 provide for the Court's control over the tax royalties owed to the Republic of the Congo, the payment of said royalties in cash to the Registrar of the Court in favor of AF CAP as payment of AF CAP's claim against the Republic of the Congo and of any additional sum the Court may order. These decisions also prohibit the Republic of the Congo and any person with knowledge of these decisions from conveying, concealing or alienating the Republic of the Congo's interests;

     Whereas in a letter dated May 16, 2005, CMS Nomeco Inc. represented that the U.S. decisions are applicable as well to the shares of crude oil due to the SNPC under the agreement of May 25, 1979;

     But whereas these decisions could not be executed in the Republic of the Congo;

     Whereas, actually, a court decision handed down by a foreign jurisdiction, even when the obligor has renounced its immunity of jurisdiction and execution, cannot be executed *ipso jure* in a foreign country; whereas, to be executed, it must be submitted to the procedure for authorizing execution as provided for by Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF), according to which: "unless there are diplomatic conventions that stipulate otherwise, decisions handed down by foreign courts and instruments received by foreign public or ministerial officers can be executed in the territory of the Congo only after having been declared enforceable by a Congolese jurisdiction that had *ratione materiae* jurisdiction to take cognizance thereof;"

     Whereas in this case, the SNPC was not notified of the U.S. decisions of February 4 and 22, 2005, and whereas neither AF CAP, alleged obligee of the Republic of the Congo, nor CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited, third parties garnished, filed a motion with the Congolese Courts for the authority to execute the same U.S. decisions;

2

Whereas Article 50 of the Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution stipulates that property declared not subject to garnishment by the national law of each State that is a Party may not be garnished even though it may be held by third parties;

Whereas the garnishment ordered by the U.S. jurisdiction is in conflict with the laws in effect in the Republic of the Congo; Article 77 of Law No. 13/81 of March 14, 1981, creating the Charter of Government Corporations, provides that the property of Government Corporations is not subject to garnishment;

Whereas, therefore, since the issue of the delivery of the SNPC's shares of crude oil held by CMS Nomeco Inc., Nuevo Congo Company and Nuevo Congo Limited is urgent and contains a certain peril, it is important to immediately order these companies to deliver to the SNPC its shares of crude oil ;

Whereas consequently, based on the foregoing, the SNPC is requesting that, by urgent decision, the Court: - find that the Congolese Courts have not received any decision from a U.S. jurisdiction and on the garnishment of the SNPC's shares of crude oil under the agreement of May 25, 1979; - find that the decisions of the District Court, Western District of Texas, of February 4 and 22, 2005 or that a decision from a foreign jurisdiction cannot be executed in Congolese territory without first having been the subject of the procedure of authority to execute before the Courts and Tribunals of the Congo; - find that the decisions of February 4 and 22, 2005 conflict with the public order and could not be declared enforceable by a Congolese jurisdiction; - order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil to the SNPC, which is owed those shares in accordance with the provisions of the agreement of May 25, 1979; - order the *ipso jure* execution of the decision to be handed down notwithstanding any appeals; - rule on the costs as required by law;

Whereas in documents dated July 2, 2005, CMS Nomeco Congo Inc., with Sylvie Nicole Mouyecket as Legal Counsel, reacted as follows:

Whereas a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of shares of crude oil owed to Société Nationale des Pétroles du Congo held by CMS Nomeco Congo Inc;

Whereas if CMS Nomeco Congo. Inc. is ordered to deliver these shares of crude oil to Société Nationale des Pétroles du Congo despite the content of the decision of a U.S. Court, the SNPC may find itself under the constraint of a dual obligation for payment;

Whereas CMS Nomeco Congo. Inc. filed motions to have the proceedings terminated with several U.S. courts on the grounds that the delivery of the shares of crude oil to Société Nationale des Pétroles du Congo would be compulsory under Congolese law, notwithstanding the existence of a decision to the contrary from a U.S. jurisdiction, and whereas one of the Courts has dismissed this motion, and the others have not ruled on the subject;

Whereas finally, in view of the fact that CMS Nomeco Congo Inc. is a U.S. company, and that the proceedings in progress are U.S. proceedings, a decision from a Congolese jurisdiction requiring CMS Nomeco Congo Inc. to deliver shares of crude oil to the SNPC would render CMS Nomeco Congo Inc. liable to the risk of remitting double payment;

Whereas in fact, if such were the case, CMS Nomeco Congo Inc. would be forced to deliver shares of crude oil to the SNPC in accordance with the decision of the Court of First Instance and would run the risk of also having to remit a payment to the United States to be in compliance with the decision of the U.S. Court;

Whereas Nomeco Congo Inc. was obviously a third party to the proceedings mentioned above, it should not have to be subjected to such consequences;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

3

Whereas Article 299 of the CPCCAF provides that: "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas from this text it emerges that authority to execute is required only for decisions of foreign jurisdictions executed in Congolese territory;

Whereas the decisions of the District Court of the United States, Western District of Texas, were handed down, served and executed in the United States;

Whereas only the effects of this execution, carried out in the United States, are felt in the Congo through CMS Nomeco Congo Inc.;

Whereas Société Nationale des Pétroles du Congo could not provide evidence of any instrument of execution whatsoever carried out in the Congo by AF-CAP, the U.S. company;

Whereas the SNPC further supports its motion by the immunity from garnishment it enjoys under the law, in particular from Article 50 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution and Article 77 of the Charter of Government Corporations;

Whereas, however, it was noted above that CMS Nomeco Congo Inc. is only "a third party holder" of the shares of crude oil disputed by AF-CAP Inc., the U.S. Company, and the SNPC, due to the U.S. decisions dated February 4 and 22, 2005, respectively;

Whereas the fact that CMS Nomeco Congo Inc. has immobilized these shares of crude oil due to the decisions of the U.S. jurisdictions does not mean that CMS Nomeco Congo Inc. is a party effecting a garnishment;

Whereas CMS Nomeco Congo Inc. could not agree on this issue of immunity of garnishment that involves the main parties to the dispute, particularly AF-CAP Inc., the U.S. company, and the SNPC;

Whereas the Judge before whom the matter was brought shall find that a certain number of U.S. jurisdictions have handed down decisions ordering the immobilization of the shares of crude oil owed to the Republic of the Congo, now held by CMS Nomeco Congo Inc., whereas CMS Nomeco Congo Inc. is only a "third party holder" of the immobilized shares of crude oil; shall find that only the effects of this execution are felt in the Congo through CMS Nomeco Congo Inc.; shall find that no execution whatsoever has been carried out in Congolese territory;

Whereas consequently, the Court shall find that that there is no reason to order the delivery of the shares of crude oil requested by the Republic of the Congo; and shall order the Republic of the Congo to pay the costs;

## BASED UPON WHICH, WE, THE JUDGE FOR URGENT MATTERS

Whereas the examination of the exhibits in the file shows that Société Nationale des Pétroles du Congo SNPC is a Government Corporation; whereas consequently it enjoys the immunity from garnishment stipulated in Article 77 of the National Charter of Government Corporations that provides that "the property of government corporations may not be garnished except in cases provided for by the procedure for the liquidation of the corporation;"

Whereas under these conditions, there is reason to apply the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;"

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

4

Whereas Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution provides that "enforcement and precautionary measures are not applicable to persons that enjoy immunity from execution;"

Whereas in this instance, the SNPC is a Government Corporation and enjoys immunity from execution;

Whereas there is reason to apply to it the provisions of Article 30 of the OHADA Uniform Act Organizing Simplified Recovery Procedures and Measures of Execution;

Whereas furthermore, the decisions of the U.S. courts, including execution, have not yet been authorized for execution;

Whereas in fact Article 299 of the Code of Civil, Commercial, Administrative and Financial Procedure (CPCCAF) provides that "Unless there are diplomatic conventions that stipulate otherwise, judgments handed down by foreign courts and official instruments by foreign public or ministerial officers may not be executed in the Congo until they have been declared enforceable by a Congolese jurisdiction that has *ratione materiae* jurisdiction to take cognizance thereof;"

Whereas as of today, neither the beneficiary of said decisions nor Nomeco have come before the Congolese courts to solicit the authority to execute said decisions;

Whereas consequently, there is therefore no reason to execute said U.S. decisions that have been handed down;

Whereas with regard to the foregoing, there is reason to find that the SNPC's motion is in order and admissible;

Whereas, in substance, it is grounded;

Whereas there is reason to accept it;

Whereas there is reason to unconditionally dismiss all the arguments made by Nomeco;

Whereas Nomeco Congo Inc. has lost the proceedings;

Whereas there is reason to require that it pay the costs in accordance with Article 57 of the Code of Civil, Commercial, Administrative and Financial Procedure;

<u>NOW THEREFORE</u>

Ruling in public, based on the arguments of both parties on an urgent basis in a civil matter in the first instance;

<u>On the merits</u>, we refer the parties to enter an appeal as they shall advise;

But at this time, given the urgency and by way of advance;

We find that the SNPC does enjoy immunity from execution;

We find that the decisions of the U.S. Courts handed down in this matter have not yet been authorized for enforcement in the Congo;

We find that said decisions are in conflict with the public order;

Consequently;

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

5

We order CMS Nomeco, Nuevo Congo Company and Nuevo Congo Limited to deliver the shares of crude oil that are owed to the SNPC in accordance with the provisions of the agreement of May 25, 1979;

We require that this order be executed, and with the assistance of the law enforcement authorities in the event there is resistance;

We order the provisional execution of this order notwithstanding any appeals;

We order CMS Nomeco Congo Inc to pay the costs.

And we have signed our Order with the Clerk,

The illegible signatures of the Presiding Judge and the Registrar follow.
The recording follows.
Recorded in Pointe-Noire on July 4, 2005
Certified true execution copy, checked against the original, 5 pages
Pointe-Noire, July 5, 2005
Head Registrar

In consequence thereof: the Republic of the Congo orders its registrars, based upon this application, to execute said judgment with the Attorneys General and Prosecuting Attorneys of the Appeals Courts and Courts of First Instance and to assist all commanders and law enforcement agencies and to assist them when they are required by law to do so.

In witness whereof, this execution copy has been signed and sealed by the Head Registrar of the Pointe-Noire Court of First Instance and delivered by him in the form of an execution copy.

[signed]

By the Court
Document Checked against the Original
The Head Registrar

R. Koud-Okono, Attorney
Head Registrar

[stamp: POINTE-NOIRE COURT OF FIRST INSTANCE Head Registrar]

# EXHIBIT 9

# CMS NOMECO CONGO, LLC

**BP 212
Pointe-Noire
République du Congo**

Le 2 mars 2006

Monsieur le Directeur Général
Ministère des Hydrocarbures
Brazzaville

Monsieur le Président Directeur Général
Société Nationale des Pétroles du Congo
Pointe-Noire

Messieurs,

Dans le cadre des opérations effectuées sur le permis Marine 1 et conformément aux termes de l'Avenant à l'Accord d'Enlèvement, le prochain enlèvement par la SNPC du pétrole au titre de la redevance pétrolière et de sa participation est prévu pour fin avril. Comme vous le savez, des procédures judiciaires sont actuellement engagées par les créanciers judiciaires de la République du Congo à l'encontre de CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. ; ces procédures comprenant les actions engagées par Af-Cap Inc., Walker International Holdings Limited, FG Hemisphere Associates LLC et National Union Fire Insurance Company of Pittsburg, P.A. Dans le cadre de ces procédures, les créanciers judiciaires ont soutenu que les ordonnances de saisie-attribution et de remise (*garnishment writs* et *turnover orders*) délivrées par les juridictions américaines empêchent les sociétés concernées de permettre à la SNPC de prendre le pétrole au titre de la redevance pétrolière revenant au Congo ainsi que la part de pétrole revenant à la SNPC au titre de sa participation.

Le Congo et la SNPC ont obtenu en décembre 2004 et juillet 2005 des ordonnances judiciaires de la part d'un tribunal de Pointe-Noire, enjoignant CMS Nomeco Congo Inc., en tant qu'opérateur, de permettre à la SNPC à prendre le pétrole au titre de la redevance pétrolière revenant au Congo ainsi que le pétrole revenant à la SNPC au titre de sa participation. Ces enlèvements du pétrole revenant à la SNPC ordonnés par le tribunal congolais ont été effectués en décembre 2004 et en septembre 2005. La procédure judiciaire contestant les ordonnances de saisie-attribution et de remise (*garnishment writs* et *turnover orders*) est toujours en cours aux Etats-Unis et les demandeurs à ladite procédure soutiennent le fait que lesdites ordonnances empêchent CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. d'autoriser la SNPC à prendre, au terminal de stockage, le pétrole au titre de la redevance pétrolière revenant au Congo ainsi que le pétrole revenant à la SNPC au titre de sa participation, nonobstant les ordonnances délivrées par la juridiction congolaise en décembre 2004 et en juillet 2005. De surcroît, en septembre 2005, le tribunal

fédéral de première instance a autorisé, dans l'affaire FG Hemisphere, la délivrance de nouvelles ordonnances de saisie-attribution et de remise (*garnishment writs* et *turnover orders*) et ce en dépit des ordonnances délivrées par la juridiction congolaise et, le 14 février 2006, de nouvelles ordonnances de saisie-attribution et de remise (*garnisment writs* et *turnover orders*) ont été signifiées à CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd.

Nous avons interjeté appel des décisions autorisant la délivrance des ordonnances de saisie-attribution (*garnisment writs*) délivrées dans l'affaire FG Hemisphere en octobre 2004 et décembre 2005 devant la cour d'appel des Etats-Unis à la Nouvelle Orléans ; les plaidoiries ayant été présentées à la cour d'appel dans le cadre de cette procédure le 7 février 2006. Nous attendons actuellement une décision de la cour d'appel. De plus, nous avons interjeté appel contre les ordonnances rendues dans l'affaire FG Hemisphere en septembre 2005, autorisant la délivrance de nouvelles ordonnances de saisie-attribution (*garnishment writs*) devant la même cour d'appel. Cependant, il est peu probable qu'une décision soit rendue dans l'une des procédures d'appel avant que le prochain enlèvement de la SNPC n'ait lieu, ce qui est prévu dans le cadre de l'Avenant à l'Accord d'Enlèvement.

FG Hemisphere et Af-Cap ont adopté la position que la prise de pétrole par la SNPC en vertu des termes des ordonnances rendues par la juridiction congolaise en décembre 2004 et juillet 2005, rend CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. redevables du montant total de la valeur de pétrole enlevé par la SNPC. Nous nous attendons à ce que, dans l'hypothèse où la SNPC enlève du pétrole au titre de la redevance pétrolière et de sa participation en avril 2006, les créanciers judiciaires du Congo soutiennent le fait que CMS Nomeco Congo Inc., The Nuevo Congo Company et Nuevo Congo Ltd. devraient être tenues responsables du montant total du pétrole enlevé par la SNPC à raison de cet enlèvement dans le cadre des procédures judiciaires américaines.

A la lumière de ce qui précède, nous devons respectueusement vous informer qu'à la suite des injonctions et ordonnances prises dans le cadre des procédures judiciaires américaines, nous ne pouvons pas autoriser l'enlèvement, à partir du navire de stockage, du pétrole au titre de la redevance pétrolière revenant au Congo ainsi que du pétrole revenant à la SNPC au titre de sa participation, dans la mesure ou un tel enlèvement nous soumettrait à des actions en justice de la part des créanciers judiciaires du Congo aux fins de constater que nous sommes en violation des ordonnances des juridictions américaines et passibles de sanctions pour outrage à la cour ainsi que d'une condamnation à payer aux créanciers de la République un montant égal à la valeur totale du pétrole enlevé.

Nous apprécions l'attention que vous porterez aux éléments énoncés dans la présente lettre.

Dans l'attente de vous lire, nous vous prions d'agréer, Messieurs, l'expression de notre très haute considération.

Maryse Bernard
Président

# CMS NOMECO CONGO, LLC

**BP 212**
**Pointe-Noire**
**Republique du Congo**

2 March 2006

The General Director
Ministry of Hydrocarbons
Brazzaville

The President and Chief Executive Officer
Société Nationale des Pétroles du Congo
Pointe-Noire

Dear Sirs,

In connection with operations on the Marine 1 permit, and pursuant to the terms of the Amendment to Lifting Agreement, the next oil lifting of royalty oil and working interest oil by SNPC would be expected to take place at the end of April. As you know, there is ongoing litigation brought against CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. by judgment creditors of the Republic of Congo, including litigation filed by Af-Cap, Inc., Walker International Holdings Limited, FG Hemisphere Associates LLC, and National Union Fire Insurance Company of Pittsburgh, P.A. In those proceedings, the judgment creditors have claimed that garnishment writs and turnover orders issued by the U.S. courts preclude the companies from permitting SNPC to take the Congo's royalty oil and SNPC's working interest oil.

The Congo and SNPC have obtained court orders in December 2004 and in July 2005 from a court in Point Noire that mandated that CMS Nomeco Congo Inc., as operator, permit SNPC to take the Congo's royalty oil and SNPC's working interest oil. The SNPC oil liftings that were ordered to take place by the Congolese court occurred in December 2004 and September 2005. The proceedings challenging the garnishment writs and turnover orders are still ongoing in the United States, and the claimants in those proceedings contend that the garnishment writs and turnover orders prevent CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. from permitting SNPC to take the Congo's royalty oil and SNPC's working interest oil from the storage terminal, despite the prior orders of the Congolese court in December 2004 and July 2005. Additionally, in September 2005, the district court in the FG Hemisphere case authorized the issuance of new garnishment writs, despite the court orders of the Congolese court, and on February 14, 2006, new writs of garnishment were served on CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd..

We have appealed to the U.S. Court of Appeals in New Orleans from the orders that allowed issuance of the garnishment writs in the FG Hemisphere case in October 2004 and December 2005, and arguments were presented to the Court of Appeals in those appeals on February 7, 2006. We are now awaiting a decision from the Court of Appeals. Additionally, we have appealed to that same appeals court the orders entered in the FG Hemisphere case in September 2005 that allowed issuance of the new garnishment writs. However, it is unlikely that a decision will be rendered in any of the appeals until after the next lifting by SNPC would be expected to take place under the terms of the Amendment to Lifting Agreement.

FG Hemisphere and Af-Cap have taken the position that SNPC's taking of oil under the terms of the Congo court orders in December 2004 and July 2005 renders CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. liable for the full amount of the value of the oil taken by SNPC in the SNPC liftings. It is our expectation that, in the event SNPC takes a lifting of royalty oil and working interest oil in April 2006, the judgment creditors of the Congo will contend that CMS Nomeco Congo Inc., The Nuevo Congo Company, and Nuevo Congo Ltd. should be held liable in the U.S. court proceedings for the full amount of the oil taken by SNPC in that lifting.

In light of the foregoing circumstances, we must respectfully notify you that in light of the writs and orders entered in the United States litigation, we cannot allow a lifting of the Congo's royalty oil and SNPC's working interest oil from the storage vessel, as such a lifting would subject us to claims by the Congo's judgment creditors that we are in violation of the U.S. writs and court orders and are subject to contempt sanctions and monetary liability for the full value of the oil lifted.

We appreciate your consideration of the matters set out herein and look forward to receiving your response.

Sincerely yours,


_____

Maryse Bernard
President

# EXHIBIT 10

24/03/2006   20:07         Received 03/   006 01:42PM in 00:58 on line [10] for GL0c       g 2/2
                                       0
                                                                              PAGE   02/02



**SNPC**                Société Nationale des Pétroles du Congo

ge social Brazzaville



ACCUSE DE RECEPTION

CMS NOMECO LLC
B.P :  212
Pointe-Noire

*Madame Maryse BERNARD*
*Président*

𝄢 **Objet** : Votre lettre du 02 mars 2006                Pointe-Noire, le 20 mars 2006

Madame,

Nous accusons réception de votre lettre du 02 mars 2006 par laquelle vous nous informez que votre société ne peut autoriser l'enlèvement, courant avril 2006, à partir du navire de stockage, du pétrole revenant au Congo ainsi que du pétrole revenant de la SNPC, motif pris de ce que vous seriez en violation des ordonnances des juridictions Américaines vous interdisant de nous livrer du pétrole.

En réponse à cette lettre, nous voudrons vous faire noter que ces ordonnances ne nous sont en principe pas opposables, pour des raisons qui tiennent à la fois à l'ordre public interne et à l'ordre public international.

Aussi vous mettons-nous, par la présente, en demeure de nous livrer les quantités de pétrole nous revenant en même temps que celles revenant au Congo (dont nous détenons le mandat de commercialisation) selon les procédures habituelles au terminal de CONKOUATI.

De ce qui précède, si à la date du 25 mars 2006 nous n'avions aucune réponse de votre part nous adresserons une requête à la juridiction compétente aux fins de préservation de nos droits.

Nous osons espérer que vous ne nous y contraindrez pas.

Dans cette attente,

Veuillez agréer, Madame, l'expression de nos meilleures salutations.

Le Président Directeur Général

Denis Auguste Marie GOKANA

Cc :  -  Ministre des hydrocarbures
       -  Ministre de l'Economie, des Finances et du Budget
       -  Direction Générale des Hydrocarbures

Etablissement public à caractère industriel et commercial au capital de 81.334.654.844 francs CFA
Site internet : www.snpc-group.com
B.P. : 188 – Brazzaville – Congo – Tél. : 242.81.09.34   Fax : 242.81.04.82
B.P. : 622 – Pointe-Noire – Congo – Tél. : 242.94.87.48   Fax : 242.94.02.24

**EXHIBIT A**

Société Nationale des Pétroles du Congo

CMS NOMECO LLC
B.B : 212
Pointe-Noire

*Mrs. Maryse BERNARD*
*President*

**Subject:** Your letter dated 02 March 2006                Pointe-Noirs, 20 March 2006

Dear Madame,

We hereby acknowledge the receipt of your letter dated 02 March 2006, by which you inform us that your company cannot authorise the April 2006 lifting of the Congo and the SNPC's share of oil from the storage vessel, due to the fact that your company allegedly is in violation of American court orders preventing your company of delivering such oil.

In response to your letter, please note that these court orders, in principle, are not binding upon us for reasons of public policy (*ordre public*) and international public policy (*ordre public international*).

Consequently, we hereby put you on notice of delivering the quantities of oil that we as well as the Congo are entitled to (which we are authorised to authorise on their behalf) pursuant to the standard procedures at the CONKOUATI terminal.

Following the above, if we do not receive a response to our letter by 25 March 2006, we inform you that we will commence judicial proceedings in front of the relevant jurisdictions in order to secure the protection of our rights.

We hope that you will not force us to take such action.

In expectation of your response,

Sinserely,

The General Manager
Denis Auguste Marie GOKANA

**Cc** :  - Minister of Hydrocarbons
         - Minister of Economy, Finance and Budget
         - General Management of Hydrocarbons

# EXHIBIT 11

# CMS NOMÉCO CONGO, LLC

**BP 212**
**Pointe-Noire**
**République du Congo**

le 24 mars 2006

Société Nationale des Pétroles du Congo
BP 622
Pointe-Noire
Congo

Messieurs,

En réponse à votre lettre du 20 mars 2006 (que nous n'avons pas reçu avant le 24 mars), nous ne pouvons que confirmer les termes de notre lettre en date du 2 mars dernier. Nous regrettons vivement cette situation et espérons que vous comprendrez notre position.

Nous vous prions d'agréer, l'expression de notre haute considération.

Maryse Bernard
Président

PJ : lettre du 2 mars 2006

**EXHIBIT B**

Received 03    006 12:19PM in 00:44 on line [6] for GL060    3/3

24/03/2006   18:44    8                                                              PAGE   03

# CMS NOMECO CONGO, LLC

**BP 212**
**Pointe-Noire**
**République du Congo**

24 March 2006

Société Nationale des Pétroles du Congo
BP 622
Pointe-Noire
Congo

Gentlemen,

In response to your letter dated 20 March 2006 (which we did not receive until 24 March), we can only confirm the terms of our letter dated 2 March. We deeply regret this situation and hope that you will understand our position.

Sincerely yours,

_____
Maryse Bernard
President

Enc:   Letter of 2 March 2006

# EXHIBIT 12

COUR D'APPEL DE POINTE-NOIRE

REPUBLIQUE DU CONGO
Unité – Travail - Progrès

TRIBUNAL DE GRANDE INSTANCE
DE POINTE-NOIR

## NOTIFICATION DE L'ORDONNANCE
(Article 40 à 42 du C.P.C.C.F)

L'an deux mil trois *Six Ème le Mact et 27 17 mois de Mars*

A la requête de *SIE Hationale des Petroles du Congo*
Et en vertu d'une ordonnance du Président du Tribunal de Grande Instance de Poin-
Noire, en date du *27 Mars 2006*
Rendue à la suite d'une requête à lui présentée le *27 Mars 2006*
Desquelles requête, copie et ordonnance sont remises en temps que celles de présentes

J'ai ........................................................................... Greffier près l.
Tribunal de Céans, y demeurant soussigné ;

NOTIFIE OU ÉTANT ET PARLANT *Mme Elisabeth Bongo Mayga Pdt.*

Qui a reçu et visé l'original du présent acte ;

A comparaître devant le Tribunal de Grande Instance de Pointe-Noire à l'audien.
civile qui sera tenue au palais de Justice dans la salle ordinaire des audiences
Le *27 Mars 2006* à *11* Heures *00*
Précise pour entendre statuer sur les mérites de la requête dont s'agit ;

## A CE QU'IL N'EN IGNORE

Je lui ai, étant et parlant comme dessus, laissé copie tant des présentes que de la requê.
et de l'ordonnance dont le coût est de TROIS MILLE FRANCS CFA (3 000)

*P.J.*
*Copie de requete*
*Copie d'ordonnance*
*Copie de l'assignation*
*Extrait de role d'audience*
*Copie de procuration*

Le Greffier Princip.

PER 20290
CONFIDENTIAL

COUR D'APPEL DE POINTE-NOIRE
TRIBUNAL DE GRANDE INSTANCE
DE POINTE-NOIRE

REPUBLIQUE DU CONGO
Unité*Travail*Progrès
--------------------

GREFFE-CIVIL

ROLE CIVIL N° _____/
REPERTOIRE N° _____/
DU _____/

## ORDONNANCE FIXANT LA DATE D'AUDIENCE
### (Article 33)

Nerbert ELENGA
MAGISTRAT

la Société Nationale des Pétroles Du Congo dite SNPC
Pointe-Noire

Nous ......................................................... Président du Tribunal de Grande Instance de Pointe-Noire

Vu la requête de Mr, Mme ou Mlle ....................................................................................

Profession ............................................ Domicilié (e) à ..........................................................

Nationalité ................................................. et les pièces qui y sont jointes.

Fixons au 27/3/06 ...... à 11 ............... heures, la date à laquelle sera appelée l'affaire

la CMS NORECO Congo

au lieu ordinaire de nos audiences aux fins de statuer sur les mérites de ladite requête.

Disons que Mr, Mme ou Mlle .......................................................................................

Profession ............................................ Domicilié (e) ..........................................................

Devra produire ses moyens de défenses au Greffe huit (8) jours au plus tard avant l'audience.

Mandons le Greffier du Tribunal de Céans à l'effet de notifier la présente ORDONNANCE aux

parties accompagnées en ce qui concerne la partie défenderesse, d'une copie de la requête

introductive d'instance et de la liste des pièces déposées par le requérant.

27 Mars 2006

Fait à Pointe-Noire, le ..............................

Nerbert ELENGA
MAGISTRAT

PER 20291
CONFIDENTIAL

# EXHIBIT 13




# ETUDE MAITRE
# BERTRAND RODOLPHE MADASSOU
### HUISSIER DE JUSTICE
### COMMISSAIRE-PRISEUR

☎: 553-67-87  ✉: 911 P/Noire RC   Email: m.adassou @ hotmail.Com

Année: 2006
Rép: 022/06

Dossier 022/06

## SIGNIFICATION COMMANDEMENT D'UNE
## ORDONNANCE

L'an deux mil six

Et le Vingt sept Jour à 17h30 mn.

A la requête de la Société Nationale des Pétroles du Congo en sigle S.N.P.C dont le siège est sis à Brazzaville, 146 Avenue Charles DE GAULLE, B.P 188, poursuites et diligences de son représentant légal ;

Elisant domicile en tant que de besoin pour les présentes en mon Etude;

J'ai, Maître Bertrand Rodolphe MADASSOU, Huissier de justice, Commissaire-Priseur, près la Cour d'Appel de Pointe-Noire et les Tribunaux y rattachés y demeurant BP. 911 Tél : 553.67.87 soussigné,

**Signifié** et en tête de celle des présentes laissé copie entière A :

**La Société CMS NOMECO**, dont le siège est sis à Pointe-Noire, Centre-ville, République du Congo ;

OU ETANT ET PARLANT A : Me IWOCHEWITSCH

De la grosse en bonne et due forme exécutoire d'une ordonnance telle que rendue par Monsieur le Président du Tribunal de Grande Instance de Pointe-Noire  en date du 27 mars 2006, répertoire n°275 et dont le dispositif est le suivant :

« **PAR CES MOTIFS**:

Statuant publiquement, par réputé contradictoire en référé en matière d'exécution et en premier ressort ;

Etude située sur l'avenue Louis PORTELLA N°55, derrière l'Hôtel LA PONTENEGRINE

**EXHIBIT C**

*Au principal : Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront ;*

*Mais dès à présent, vu l'urgence; et par provision ;*

*Constatons que les jugements américains du 23 décembre 2004, 17 septembre 2004, des 4; et 22 février 2005 et des ordonnances du 14 février 2006 n'ont jamais été exaquaturées par une juridiction compétente congolaise ;*

*En conséquence,*

*Disons que les présentes décisions ne sont pas exécutoires à l'encontre de la: S.N.P.C, partenaire de CMS NOMECO ;*

*Ordonnons l'exécution provisoire de la présente ordonnance nonobstant toutes voiies de recours ;*

*Mettons les dépens à la charge die NOMECO ».*

Et à même requête, demeure et élection que dessus,

j'ai, Huissier de justice susdit et soussigné

<u>FAIT COMMANDEMENT</u> : A la même

*Société CMS NOMECO*

De livrer sans délai à tous opérateurs que lui désignera la S.N.P.C, toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat.

Lui déclarant que faute par lui de le faire, ma requérante usera de tous les moyens de droit à sa disposition pour entrer en possession de ses produits.

Lui déclarant enfin que la présente signification lui est faite à telles fins que de droit.

DONT ACTE

A CE QU'ELLE N'EN IGNORE

Et je lui ai, étant et parlant comme dessus, laissé copie tant de la grosse que celle des présentes dont le coût est de : CENT MILLE FRANCS CFA.

Employé pour copie deux feuilles au format du timbre à MILLE FRANCS CFA

L'Huissier de Justice

ORDONNANCE                                      F°57

LE CIVIL N° 2RD
N°3:2006

REPTOILE N° 279

L'an deux mil six;
Et le vingt sept du mois de Mars;

Par-devant nous, Norbert ELENGA, Président du Tribunal de Grande Instance
de Pointe-Noire, tenant audience publique des référés en notre Cabinet sis
au Palais de Justice de cette ville;

Assisté de Maître Marc ETIKI, Greffier en Chef des Chambres Civiles audit
Tribunal;

Vu la requête en date à Pointe-Noire du 22 Mars 2006 de la Société Na-
tionale des Pétroles du Congo dite SNPC;

Attendu qu'à l'appui de sa requête, elle expose;Que dans le cadre de ses
opérations,elle est partenaire de la Société CMS NOMECO CONGO,LLC dans le
permis Marine 1;

Qu'à ce titre,il est prévu,au cours du mois d'avril 2006,l'enlèvement par
elle,d'une cargaison de pétrole,au titre de la redevance pétrolière et de
sa participation dans ledit permis;

Que or, elle a été saisi par la Société CMS NOMECO CONGO,LLC,par courrier
en date du 02 Mars 2006,de ce qu'une série de décisions rendues par des
juridictions américaines,prises dans le cadre des Procédures opposant la
République du Congo à certains de ses créanciers,faisant injonction à cette
société de ne pas permettre à elle de procéder à cet enlèvement;

Qu'elle tient à préciser que les décisions des juridictions américaines
en faveur de AF-CAP Inc,Walker International Holdings Limited,FG Hemisphere
Associates LLC et National Union Fire Insurance Company of Pittsburg,P.A.
créanciers de la République du Congo,même prises à l'encontre son encontre,
doivent faire l'objet d'une procédure d'exéquatur,avant leur éventuelle
exécution au Congo;

Que or,à ce jour,elle n'a été notifiée,ni d'aucune décision des juridic-
tions américaines ordonnant la saisie attribution de ses cargaisons,encore
moins d'une décision d'exéquatur,ordonnant l'exécution des décisions améri-
caines au Congo;

Qu'à cet effet et,tenant compte de tout ce qui précède,elle demande qu'il
plaise à Monsieur le Président du Tribunal de Grande Instance de Pointe-
Noire,statuant suivant la procédure de référé d'heure à heure,d'ordonner;
-Premièrement à la société CMS NOMECO CONGO,LLC de ne pas exécuter les déci-
sions des juridictions américaines,qui faute d'exéquatur,ne peuvent pas m'
exécuter au Congo;- Deuxièmement,le Tribunal devrait faire injonction à la
Société CMS NOMECO CONGO,LLC d'autoriser et d'organiser l'enlèvement de la
cargaison de pétrole de qualité Yombo prévu au mois d'Avril 2006,tel que con-
venu avec elle;

SUR QUOI,NOUS JUGE DES REFERES

Attendu qu'il résulte de l'examen des pièces du dossier qu'en l'espèce,il
s'agit de l'exécution des décisions judiciaires rendues par les Tribunaux
Américains en date du 14 Février 2006,notamment des ordonnances de saisie-
attribution et de remise;

Que ces ordonnances ont été signifiées à CMS NOMECO Inc The NUEVO CONGO
Company et NUEVO CONGO LTD;

Attendu qu'il est constant que ces décisions n'ont jamais été signifiées
ni à l'Etat Congolais,ni à la SNPC;

Attendu que ces décisions n'ont jamais été exéquaturées au Congo conformé-
ment à

.../...

cont à la législation Congolaise;

Attendu qu'il y a lieu en l'espèce de faire application des dispositions de l'article 199 du Code de Procédure Civile, Commerciale, Administrative et Financière;

Qu'en effet, l'article 199 dudit Code dispose que "Sauf conventions diplomatiques contraires, les jugements rendus par les Tribunaux étrangers et les actes reçus par les Officiers publics ou Ministériels étrangers ne sont susceptibles d'exécution sur le territoire Congolais qu'après avoir été déclarés exécutoires par une juridiction Congolaise qui aurait été compétente "ratione materiae"g pour en connaître";

Attendu au regard de ce qui précède qu'il y a lieu de dire qu'il n'est pas loisible à la C.S NOFECO de faire application des décisions Américaines non exéquaturées à l'encontre de la SNFC;

Attendu que dans ces conditions il y a lieu de dire que la requête de la SNFC est donc régulière et recevable en la forme;

Attendu au fond qu'en vertu de l'article 307 du Code de Procédure Civile, Commerciale, Administrative et Financière; qu'il y a lieu de dire que cette requête est fondée;

Qu'il y a lieu d'y faire droit;

Attendu qu'il échet d'ordonner à la Société C.S NOFECO de livrer sans délais à tout opérateur que lui désignera la SNFC toutes les quantités d'hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat;

Attendu que la Société C.S NOFECO bien que régulièrement convoquée, a par le biais de son Conseil Maître BOUTECHET, Avocat à la Cour, dit qu'elle ne pouvait pas conclure et qu'elle attendait les instructions du PDG de NOFECO depuis Londres, la capitale anglaise, n'a ni déposer de mémoire pour sa défense;

Attendu qu'il y a lieu de donner défaut à son encontre et de mettre les dépens à sa charge;

PAR CES MOTIFS

Statuant publiquement, par réputé contradictoire en référé en matière d'exécution et en premier ressort;

Au principal; Renvoyons les parties à mieux se pourvoir ainsi qu'elles en aviseront;

Mais dès à présent, vu l'urgence et par provision;

Constatons que les jugements américains du 20 Décembre 2004, 17 Septembre 2004, des 4 et 10 Février 2005 et des ordonnances du 14 Février 2006 n'ont jamais été exéquaturés par une juridiction compétente Congolaise;

En conséquence;

Disons que les présentes décisions ne sont pas exécutoires à l'encontre de la SNFC, partenaire de C.S NOFECO;

Ordonnons donc à la société C.S NOFECO de livrer sans délai à tous opérateurs que lui désignera la SNFC, toutes les quantités d'Hydrocarbures lui appartenant et détenues par elle en vertu de leur contrat de partenariat;

Ordonnons l'exécution provisoire de la présente Ordonnance nonobstant toutes voies de recours;

.../...

-2-

... ettons les dépens à la charge de la .......... BCC;

... avons signé notre Ordonnance avec le Greffier./-

EN CONSEQUENCE LA REPUBLIQUE D   CONGO
MANDE ET ORDONNE A TOUS HUISSIERS SUR CE REQUIS
DE METTRE LEDIT JUGEMENT A EXECUTION AUX
PROCUREURS GENERAUX ET AUX PROCUREURS DE
LA REPUBLIQUE PRES LES COURS ET TRIBUNAUX DE
GRANDE INSTANCE D'Y TENIR LA MAIN A TOUS
COMMANDANTS ET OFFICIERS DE LA FORCE PUBLIQUE
DE PRETER MAIN FORCE LORSQU'ILS EN SERONT
LEGALEMENT REQUIS

... reproduite(s) lisibles
... du Greffier
... de ......
... à ......
... en ... de ...
le ... ... ...
en ... ... ...Pages.
TE-NOIRE le ... 27 MAR 2006
Le Greffier en Chef

PAR LE TRIBUNAL
COLLATIONNE 27 MAR 2006
LE GREFFIER EN CHEF

**Maitre Ernest EBOLA**
**Greffier en Chef**

**Maitre Ernest EBOLA**
**Greffier en Chef**

*Etude Maitre Bertrand Rodolphe Madassou*

*Bailiff*

*Auctioneer*

Year 2006

Rep: 22/06

File 022/06

## SERVICE OF COURT ORDER AND SUMMONS

On 27 March 2006, at 5:30 pm

At the request of the **Société Nationale des Pétroles du Congo (SNPC)**, whose registered office is located at Brazzaville, 146 Avenue Charles de Gaulle, BP 188, represented by its legal representative, with address for service for the purposes hereof in my Offices;

**I, the Undersigned Process Server, Mr Bertrand Rodolphe Madassous, Bailiff (*huissier*) and auctioneer (*commissaire-priseur*) with the Court of Appeal of Pointe-Noire and Courts thereunder, there residing at BP 911, Tel 553.67.87**

**Have served** this execution copy and a full copy hereof to:

**CMS Nomeco**, whose registered office is located at Pointe-Noire, Centre-Ville, Republic of the Congo.

**Served in person to:** Mr Iwdchewitsch

The execution copy of the court order was thus duly served as handed down by the President of the Pointe Noire *Tribunal de Grande Instance* and dated 27 March 2006, with docket no. 275, and which operative part states as follows:

*"FOR THESE REASONS:*

*Ruling in the first instance on an urgent interlocutory petition regarding enforcement in a public session by way of a judgment deemed to have been given after a hearing of all sides;*

- *Hereby invite the parties to bring their action before the appropriate courts;*

*But in view of the urgency of the matter and as a provisional measure:*

*- Note that the U.S. rulings of 23 December 2004, 17 September 2004, [11] and 22 February 2005, and the court orders of 14 February 2006 have never been declared enforceable by a competent Congolese court;*

*Therefore,*

*Hold that such rulings are not enforceable against SNPC, partner of CMS Nomeco;*

*Hereby order the immediate enforcement of this order notwithstanding appeal;*

*Order Nomeco to pay the costs."*

And pursuant to this same request made by the petitioning party named above,

I, the undersigned Process Server as set out herein,

**Hereby summon CMS Nomeco** to immediately deliver, to any operators that the SNPC may designate, any and all amounts of hydrocarbons belonging to SNPC or in its possession under their partnership agreement.

**Declare** that subsequent to any failure on its part to comply with this demand, the petitioner will use all legal means available to obtain possession of its goods.

**Hereby declare** that this service is made for all such legal purposes

<div align="center">

In witness whereof

May the party take notice hereof

</div>

I have delivered this execution copy and a copy hereof personally as set out above, for which costs were: ONE HUNDRED THOUSAND CFA Francs.

For copying two sheets stamped with a duty of 1000 CFA.

[Bailiff's signature]

## ORDER

Rendered on 27 March 2006,

Before the Honorable Norbert Elenga, President of the Pointe Noire *Tribunal de Grande Instance*, ruling in a public session for urgent interlocutory matters in chambers at the Court of Justice of that city,

Assisted by Mr. Marc Etiki, Head Court Clerk for the Civil Division of said Court,

Subsequent to a request made by the Société Nationale des Pétroles du Congo (SNPC) in Pointe-Noire and dated 22 March 2006;

Whereas in support of this request, SNPC states that as part of its business, it has a partnership with the Société CMS Nomeco Congo, LLC in the Marine 1 permit.

That in this capacity it had been planned that SNPC would pick up a cargo of petroleum in April 2006 as part of the oil royalty and for its participation in such permit.

SNPC was thus notified by CMS Nomeco Congo in a letter dated 02 March 2005 of a series of rulings handed down by courts in the United States and rendered in the proceedings between the Republic of Congo and some of the country's creditors, and ordering CMS Nomeco not to allow SNPC to pick up the cargo.

SNPC wishes to specify that even if such rulings of the United States courts are against the Republic of the Congo and in favor of AF-CAP Inc, Walker International Holdings Limited, FG Hemisphere Associates LLC, and National Union Fire Insurance Company of Pittsburg, PA, all of whom are creditors of the Republic of the Congo, the rulings must be the subject of an exequatur procedure before they can be enforced in Congo.

At present, SNPC has not been notified of any decision from the United States courts ordering the garnishment of its cargo, much less an exequatur decision ordering the enforcement of the U.S. court rulings in Congo.

That to that purpose and in light of the foregoing, SNPC requests that the President of the Pointe-Noire *Tribunal de Grande Instance*, ruling in a urgent interlocutory proceedings, order:

-   first, that the company CMS Nomeco Congo, LLC not execute the rulings of the U.S. courts which, failing exequatur, cannot be enforced in Congo;

-   second, that the Court order CMS Nomeco Congo LLC to authorize and arrange for the pick-up of the Yombo-quality petroleum cargo planned for April 2006 as agreed with SNPC;

## JUDGE'S FINDINGS

Whereas a review of the exhibits in the file show that this case involves the enforcement of court rulings handed down by the U.S. courts on 14 February 2006, and in particular garnishment and seizure orders;

These orders were served on CMS Nomeco Inc, The Nuevo Congo Company and Nuevo Congo Ltd.

Whereas it is clear that these rulings were never served on either the Congolese Government or SNPC;

Whereas these rulings have never received exequatur in Congo pursuant to applicable Congolese legislation;

Whereas in this case it is appropriate to implement the provisions of article [99] of the Civil, Commercial, Administrative and Financial Procedure Code;

Article [99] of that Code provides that save diplomatic agreements to the contrary, judgments handed down in foreign courts and documents received by public or ministerial officers from foreign countries may only be enforced upon Congolese territory after receiving exequatur from a Congolese court that has *ratione materiae* jurisdiction to hear the case.

Whereas in view of the foregoing, CMS Nomeco should not implement the U.S. court rulings against SNPC that have not received exequatur;

Whereas in these circumstances, we may hold that SNPC's request is duly formed and admissible;

Whereas on the merits, under article 307 of the Civil, Commercial, Administrative and Financial Procedure Code, there are grounds for granting the request;

Therefore the request should be granted.

Whereas CMS Nomeco should therefore be ordered to immediately deliver, to any operator SNPC may designate, any and all amounts of hydrocarbons belonging to and held by SNPC under their partnership agreement;

Whereas CMS Nomeco, duly summoned, has expressed via its Counsel, Mr Mouyecket, *Avocat à la Cour*, that it could not make submissions and was awaiting instructions from the Nomeco Chairman in London, and accordingly has not submitted any pleadings in its defense;

Whereas it is therefore appropriate to rule against it and sentence it to the costs;

## FOR THESE REASONS

Ruling in the first instance on an urgent interlocutory petition regarding enforcement, in a public session by way of a judgment deemed to have been given after a hearing of all sides;

Hereby **invite** the parties to bring their action before the appropriate courts;

But in view of the urgency of the matter and as a provisional measure:

- **Note** that the U.S. rulings of 23 December 2004, 17 September 2004, [11] and 22 February 2005, and the court order of 14 February 2006 have never been declared enforceable by a competent Congolese court;

Therefore,

**Hold** that such rulings are not enforceable against SNPC, partner of CMS Nomeco;

Hereby **order** CMS Nomeco to immediately deliver, to any operators that SNPC may designate, any and all amounts of hydrocarbons belonging to and held by SNPC under their partnership agreement

Hereby **order** the immediate enforcement of this order notwithstanding appeal;

**Order** Nomeco to pay the costs.

In consequence thereof the Republic of the Congo orders its bailiffs, based upon this application, to execute the said judgment with the Attorneys General and Prosecuting Attorneys of the courts of appeal and the district courts to assist all

commanders and law enforcement agencies to lend a hand when they are required to do so.

In witness whereof, this execution copy has been signed and sealed by the Chief Clerk of the Pointe-Noire District Court and delivered by him in the form of an execution copy.

Signed by the Chief Clerk

[Chief Clerk signature]