IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONNECTICUT BANK OF COMMERCE, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 05-762 SLR ) |
| THE REPUBLIC OF CONGO, | ) ) |
| Defendant; | ) ) |
| CMS NOMECO CONGO INC., | ) ) |
| Garnishee. | ) |

**GARNISHEE CMS NOMECO'S OPENING BRIEF IN SUPPORT OF MOTION FOR ORDER AWARDING ATTORNEY'S FEES AND OTHER COSTS**

OF COUNSEL:

Guy S. Lipe
Jason M. Powers
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002-6760
(713) 758-2222

M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Dated: March 23, 2007

Attorneys for Garnishee CMS Nomeco Congo Inc.

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ...................................................................... 1

ARGUMENT ........................................................................................................................ 4

    I.   CMS Nomeco is Entitled to Recover its Attorney's Fees and Other Costs of this Litigation ........................................................................................................................ 4

        A.   Federal courts follow state law with respect to the rights of garnishees to recover attorney's fees arising out of improper garnishment. .......................................... 4

        B.   Delaware law recognizes that garnishees are entitled to recover as "costs" their attorney's fees incurred in defending against an improper garnishment. ............. 4

        C.   Af-Cap's Attempted Voluntary Dismissal on the Eve of a Ruling By This Court on the Merits Does Not Deprive CMS Nomeco of its Right to Attorney's Fees and Other Costs .... 6

    II.   CMS Nomeco's fee request is reasonable. ................................................................. 8

        A.   The Standards Applicable to CMS Nomeco's Fee Request ............................... 8

        B.   CMS Nomeco's Evidence Establishes the Reasonableness of its Fee Request ....... 9

    III.   CMS Nomeco is entitled to fees incurred in litigating its fee application. .............. 10

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

## CASES

*Af-Cap, Inc. v. Republic of Congo,*
  462 F.3d 417 (5th Cir. 2006) ...................................................................................... 2

*Amico v. New Castle County,*
  654 F. Supp. 982 (D. Del. 1987) ................................................................................. 9

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384 (1990) ..................................................................................................... 7

*Evans v. Port Authority of New York and New Jersey,*
  273 F.3d 346 (3d Cir. 2001) ................................................................................... 8, 9

*FG Hemisphere Associates LLC v. Republique du Congo,*
  455 F.3d 575 (5th Cir. 2006) ...................................................................................... 2

*Fantasy Shipping Pool, Ltd. v. Simatech Marine S.A.,*
  No. 01 CIV 107251CSH, 2002 WL. 1733662 (S.D.N.Y. July 25, 2002) .......... 6, 7, 8

*Interfaith Community Organization v. Honeywell International, Inc.,*
  426 F.3d 694 (3d Cir. 2005) ....................................................................................... 8

*Johnson v. Georgia Highway Express Inc.,*
  488 F.2d 714 (5th Cir. 1974) ...................................................................................... 9

*Johnson v. State of Mississippi,*
  606 F.2d 635 (5th Cir. 1979) .................................................................................... 10

*Kingsland Holdings Inc. v. Bracco,*
  No. 14817, 1996 WL. 104257 (Del. Ch. March 5, 1996) .......................................... 5

*LNC Investments v. Republic of Nicaragua,*
  No. 01-134-JJF (D. Del. 2002), *appeal dism'd*, 396 F.3d 342 (3d Cir. 2005). ........ 2

*McKnatt v. Delaware,*
  369 F. Supp. 2d 521 (D. Del. 2004) ........................................................................... 9

*Prandini v. National Tea Co.,*
  585 F.2d 47 (3rd Cir. 1978) ...................................................................................... 10

*Public Interest Research Group of New Jersey, Inc. v. Windall,*
  51 F.3d 1179 (3d Cir. 1995) ....................................................................................... 9

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990) ......................................................................................... 8

*Sequa Corp. v. Cooper*,
    245 F.3d 1036 (8th Cir. 2001) ......................................................................................... 6

*Stanford v. Zurcher*,
    64 F.R.D. 680 (N.D. Cal. 1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977) ........................... 10

*Walker International Holdings, Ltd. v. Republic of Congo*,
    415 F.3d 413 (5th Cir. 2005) ........................................................................................... 4

*Walsh v. Hotel Corporation of America*,
    231 A.2d 458 (Del. 1967) ............................................................................................ 4, 5

## STATUTES AND RULES

Fed. R. Civ. P. 69(a) ................................................................................................................. 3

Garnishee CMS Nomeco Congo Inc. ("CMS Nomeco") submits this Opening Brief in Support of its Motion for Order Awarding Attorney's Fees and Other Costs.

## NATURE AND STAGE OF PROCEEDINGS

For more than six years, Af-Cap, Inc. ("Af-Cap") and its predecessor-in-interest, Connecticut Bank of Commerce, pursued garnishment litigation in Texas against CMS Nomeco, attempting to garnish in-kind royalty of the Republic of Congo taken by the Congo in its own territorial waters, under an oil concession agreement governed by Congolese law. That litigation was dismissed by the federal district court in Austin, and the Fifth Circuit Court of Appeals affirmed that dismissal.

Not content to accept its defeat in Texas, Af-Cap filed a new garnishment action in Delaware Superior Court and obtained issuance of a garnishment writ by that Court. Af-Cap obtained issuance of the writ by failing to disclose to the Superior Court the rulings by the Austin court that the Congo's in-kind royalty was not subject to garnishment, and misrepresenting to the Superior Court that the application for a garnishment writ was "unopposed." Af-Cap also failed to inform the Superior Court that the Fifth Circuit had held in the litigation in Texas that the Foreign Sovereign Immunities Act ("FSIA") required that the court determine whether the property in question was "in the United States" and "used for a commercial activity in the United States" before a writ of garnishment could properly issue. Having not been informed of those requirements, and based on Af-Cap's misrepresentation that the application was unopposed, the Superior Court issued the writ.

Following removal to this Court, Af-Cap has pursued a claim for millions of dollars in monetary liability against Garnishee CMS Nomeco, despite the fact that CMS Nomeco is a stranger to the Congo's debt allegedly owed to Af-Cap. The purported basis of its claim is

that CMS Nomeco was purportedly obligated, as garnishee, to not "pay" the Congo its royalty while the writ issued by the Superior Court was in place, despite the fact that the Congo took its royalty oil in the Congo under compulsion of Congo court orders, threats of use and actual use of the public force of the Congo, with armed gendarmes boarding the storage vessel to insure compliance with the Congo's court orders. These events were wholly beyond the control of CMS Nomeco. In seeking recovery of millions of dollars from CMS Nomeco, Af-Cap disregarded the established law in this Court that a writ of garnishment cannot be used to impose double liability on the garnishee. *See LNC Investments v. Republic of Nicaragua*, No. 01-134-JJF (D. Del. 2002) (unpublished decision), *appeal dism'd*, 396 F.3d 342 (3d Cir. 2005).

At the hearing conducted before this Court on January 18, 2007, this Court directed the parties to brief two key, threshold legal issues that, if resolved against Af-Cap, would require dissolution of the writ and dismissal of the case: (1) whether the writ was valid under the FSIA, and (2) whether non-monetary obligations are subject to garnishment in Delaware. The Fifth Circuit has already held that (1) a writ issued pursuant to an authorizing order that contains no findings on the requirements of the FSIA (like the writ in this case) is void *ab initio*,[1] and (2) the Congo's in-kind royalty is not subject to garnishment because it is a non-monetary obligation.[2] To overcome these threshold obstacles to its case, Af-Cap had to convince this Court that the Fifth Circuit was wrong.

After CMS Nomeco had submitted its briefs on these threshold issues, CMS Nomeco learned that Af-Cap had entered into a settlement with the Congo and intended to dismiss its garnishment case against CMS Nomeco. When CMS Nomeco informed Af-Cap's

---

[1] *See FG Hemisphere Associates LLC v. Republique du Congo*, 455 F.3d 575 (5th Cir. 2006).

[2] *See Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006)

counsel that it intended to seek recovery of its fees and costs in this litigation, Af-Cap unilaterally (and improperly) filed a notice of dismissal of the case, attempting to avoid an award of fees and costs to CMS Nomeco. As shown herein, CMS Nomeco is entitled to an award of its fees and costs under Delaware law, and Af-Cap cannot avoid such an award by unilaterally attempting to dismiss the case.

## ARGUMENT

I.  **CMS Nomeco is Entitled to Recover its Attorney's Fees and Other Costs of this Litigation**

   *A.   Federal courts follow state law with respect to the rights of garnishees to recover attorney's fees arising out of improper garnishment.*

The Federal Rules of Civil Procedure adopt state procedures with respect to execution and other procedures related to the enforcement of judgments, *see* FED. R. CIV. P. 69(a), which includes state procedures relating to the entitlement of garnishees to monetary relief for their attorney's fees. As such, federal courts turn to state law.

The Fifth Circuit has specifically held that state law governs the right of a garnishee to recover attorney's fees in an action seeking to garnish the property of a foreign sovereign. *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413 (5th Cir. 2005). In *Walker*, an Af-Cap affiliate sought to garnish obligations owed by an oil company to the Congo, but the district court dissolved the writ and dismissed the garnishment action because the writ violated the FSIA. The court then ordered Af-Cap's affiliate to pay the garnishee's attorney's fees for the entire litigation. The Fifth Circuit affirmed the award of fees and costs, which exceeded $500,000, holding that Federal Rule 69 mandated the application of state attachment law providing for the protection of garnishees. *See id.* at 414-16. The same approach applies in this case, as shown below.

   *B.   Delaware law recognizes that garnishees are entitled to recover as "costs" their attorney's fees incurred in defending against an improper garnishment.*

The Delaware Supreme Court has recognized a narrow exception to the general Delaware rule that "costs" do not include attorney's fees, in circumstances where the fees were incurred in defending against an improper attachment. In *Walsh v. Hotel Corporation of*

*America*, 231 A.2d 458 (Del. 1967), a Delaware injury plaintiff obtained jurisdiction over a New York hotelier by attaching the hotelier's stock in two Delaware corporations. The Superior Court required the plaintiff to post a bond in an amount that the supreme court observed was justified on the basis of the attorney's fees the hotelier had incurred. *See id.* at 462. The plaintiff appealed, arguing that the hotelier's defense—that it was not the operator of the hotel at which the plaintiff had been injured—was a merits defense, not a defense related to the attachment procedure to which the bond related. The supreme court said that attorney's fees are allowable as costs for a successful attack on an improper attachment:

> We are of the opinion that ***counsel fees should be allowed, in the absence of abuse of process, only for a victorious attack upon the attachment itself***, and not for the presentation of defenses not predicated upon defects in the process.

*See id.* (emphasis added).

Similarly, in *Kingsland Holdings Inc. v. Bracco*, No. 14817, 1996 WL 104257 (Del. Ch. March 5, 1996), the chancery court recognized that attorney's fees are recoverable by a garnishee upon a successful attack on a garnishment, holding that a bond may be required to secure payment of such fees to the garnishee. Specifically, in that case, the garnishees requested a bond that would compensate it for its attorney's fees in the event of a successful attack on the garnishment, as well as for anticipated injury to their business and reputation. *See id.* at *7. Although the court concluded that the garnishees' assertions of injury to business and reputation were too "general" to justify a bond, the court still required the garnishing plaintiff to post a $200,000 bond "because of Garnishees' attack on the sequestration process itself" which it expected would involve a "vigorous dispute." *See id.* at *8.

These authorities demonstrate that under Delaware law, a garnishees' attorney's fees incurred in attacking an improper garnishment writ are included in "costs" to be awarded to

the garnishee upon conclusion of the case. That rule makes eminent sense from a policy standpoint. A garnishee is a stranger to the underlying debt who has been pulled into the litigation due to no fault of its own. Just as a garnishee is entitled to protection against double liability, a garnishee deserves protection against substantial costs incurred in the garnishment process. Where, as here, the plaintiff seeks substantial monetary liability against the garnishee, requiring the garnishee to incur enormous expense in the form of attorney's fees and other costs, the garnishee deserves protection against all such expenses. Otherwise, the garnishee emerges from the proceedings have suffered substantial monetary loss, despite its status as a stranger to the underlying debt. Having chosen to pursue recovery against CMS Nomeco, as a garnishee, at great expense to CMS Nomeco, Af-Cap should be required to reimburse CMS Nomeco for all of its costs, including its attorney's fees.

    C.    *Af-Cap's Attempted Voluntary Dismissal on the Eve of a Ruling By This Court on the Merits Does Not Deprive CMS Nomeco of its Right to Attorney's Fees and Other Costs*

The fact that Af-Cap has chosen to voluntarily dismiss its action before a final decision cannot defeat CMS Nomeco's right to its fees. As the Eighth Circuit held in *Sequa Corp. v. Cooper*, 245 F.3d 1036 (8th Cir.2001), a district court has the inherent authority to award costs to a defendant when the plaintiff voluntarily dismisses its case.

Af-Cap has asserted in a letter written to the Court that it is entitled to unilaterally dismiss this proceeding and avoid an award of attorney's fees, based on a ruling in an unreported decision in another district court, *Fantasy Shipping Pool, Ltd. v. Simatech Marine S.A.*, No. 01 CIV 107251CSH, 2002 WL 1733662 (S.D.N.Y. July 25, 2002). Not only does the *Fantasy Shipping* opinion not support Af-Cap's position, it refutes it.

-6-

In holding that the plaintiff was entitled to unilaterally dismiss that case by notice under Rule 41, the *Fantasy Shipping* court held that the garnishees in that case were not "adverse" to the plaintiffs in that case based on the specific facts of that case. As the court put it, the garnishees and plaintiff at issue there were not 'adverse parties' because "garnishees were entirely indifferent to the underlying issues between Fantasy and defendant . . . The resolution of those issues, by litigation or settlement, would have no impact upon the property or any other interest of the garnishees." *Fantasy Shipping*, Mem. Op. at * 2. That was not the case here, where Af-Cap sought to impose significant and independent liability upon CMS Nomeco. As stated in CMS Nomeco's Answer To Writ of Garnishment (D.I. 2), Af-Cap sought to impose liability on CMS Nomeco despite the orders of Congolese courts directing CMS Nomeco to deliver the oil that Af-Cap sought to garnish and the Congo's enforced taking of that oil, and despite the fact that the Congo had threatened to terminate CMS Nomeco's concession to produce oil in the region. Because CMS Nomeco's own interests, separate and independent of the Congo's, were at risk, CMS Nomeco is an "adverse party" for purposes of Federal Rule 41(a)(1), both by a common-sense reading of the rule and under the analysis employed in *Fantasy Shipping*.

Second, conspicuously absent from Af-Cap's discussion of *Fantasy Shipping* is the court's ruling in that case that dismissal of that action did not divest the court of jurisdiction to consider the garnishees' claim to recover fees and expenses. *Fantasy Shipping*, Mem. Op. at * 3 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (holding that voluntary dismissal of complaint did not divest court of jurisdiction to decide Rule 11 motion)). Rather, the court stated that it retained jurisdiction to consider a fee application (in that case, as to a limited discovery point) and gave the garnishees a period of time to file motion papers

supporting such an application. Af-Cap's suggestion that dismissal of the underlying action prevents CMS Nomeco from recovering their attorney's fees in this matter is directly contrary to the holding of *Fantasy Shipping*.

## II. CMS Nomeco's fee request is reasonable.

### A. The Standards Applicable to CMS Nomeco's Fee Request

"To fix the size of a prevailing party's fee award, a court must determine the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005); *see also Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 358 (3d Cir. 2001) (" . . . We use the 'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate.") (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 176 (3d Cir. 2001)).

In determining the appropriate hourly rate, the Court determines the rate "with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." *Evans*, 273 F.3d at 360-61 (citing *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1450 (3d Cir. 1988)). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community . . . Thus, the Court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

In determining the appropriate number of hours with which to multiply the applicable rate, in reaching the lodestar, the Court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described

and then exclude those that are excessive, redundant, or otherwise unnecessary." *Evans*, 273 F.3d at 362 (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)); *see also Rode*, 892 F.2d at 1183.

The Third Circuit and this Court have also recognized that the determination of the lodestar "does not end the district court's inquiry . . ." and that "[t]he factors commonly considered [in a district court's exercise of discretion in assessing a fee request] are set out in the United States Court of Appeals for the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). They include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of alternative employment; (5) the customary fee for similar work; (6) the nature of the fee payment arrangement; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the attorney-client relationship; and (12) fee awards in similar cases." *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995); *see also Amico v. New Castle County*, 654 F. Supp. 982, 995 (D. Del. 1987) (applying *Johnson* factors); *McKnatt v. Delaware*, 369 F.Supp.2d 521, 524 (D. Del. 2004) (same).

B.   *CMS Nomeco's Evidence Establishes the Reasonableness of its Fee Request*

As shown by the declarations of M. Duncan Grant, Guy S. Lipe, and William Katz, attached hereto as Exhibits A, B, and C, consideration of the factors discussed above shows that a reasonable fee for the work performed by CMS Nomeco's counsel in this case is $495,995.75. Additionally, as shown by those same declarations, CMS Nomeco has incurred $28,920.97 in reasonable expenses in this matter.

**III.    CMS Nomeco is entitled to fees incurred in litigating its fee application.**

CMS Nomeco is further entitled to recover for costs, fees, and expenses incurred and to be incurred in litigating their entitlement to recover fees and costs. As the Third Circuit wrote, "[T]he time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award." *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3rd Cir. 1978). The court explained, "If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased." *Id. Accord Johnson v. State of Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979) ("We conclude that attorney's fees may be awarded for time spent litigating the fee claim."); *Stanford v. Zurcher*, 64 F.R.D. 680, 683-84 (N.D. Cal. 1974) ("[D]enying fees for time spent obtaining fees would 'dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.'"), *aff'd*, 550 F.2d 464 (9th Cir. 1977).

CMS Nomeco's time spent to date in researching and preparing their fee application is included in the fees described in the attachments to the Lipe, Katz, and Grant declarations, and those fees are properly compensable under the governing law. CMS Nomeco is also entitled to recover fees and expenses that are incurred hereafter in litigating the fee application, including but not limited to fees and expenses incurred by CMS Nomeco in connection with any discovery that Af-Cap may seek in responding to the fee application and in any appeal of a fee award. CMS Nomeco will promptly supplement its application to include additional time spent and expenses incurred in proceedings and discovery relating to the fee application in this Court. The Lipe declaration establishes that a fee of $50,000 would be a reasonable fee for the handling of any appeal of a fee award.

## CONCLUSION

For the reasons set out above, Garnishee CMS Nomeco requests that the Court order Plaintiff Af-Cap to pay to CMS Nomeco the sum of $495,995.75 in attorney's fees incurred to date (the total of the fees referenced in the Lipe, Katz, and Grant Declarations attached hereto), the sum of $28,920.97 in expenses incurred to date (the sum of the expenses referenced in the Lipe, Katz, and Grant Declarations attached hereto), additional fees and expenses that may be incurred by CMS Nomeco in litigating its entitlement to fees and expenses (as may be shown in a supplemental application hereafter filed with the Court), and a conditional award of attorney's fees and expenses in the event of an unsuccessful appeal of the fee award, in the amount of $50,000. CMS Nomeco also requests such other relief to which it may be entitled.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL: | /s/ M. Duncan Grant |
| | M. Duncan Grant (Del. Bar No. 2994) |
| Guy S. Lipe | James C. Carignan (Del. Bar No. 4230) |
| Jason M. Powers | PEPPER HAMILTON LLP |
| VINSON & ELKINS L.L.P. | Hercules Plaza, Suite 5100 |
| First City Tower | 1313 N. Market Street |
| 1001 Fannin Street, Suite 2300 | P.O. Box 1709 |
| Houston, TX 77002-6760 | Wilmington, DE 19899-1709 |
| (713) 758-2222 | (302) 777-6500 |
| | |
| Dated: March 23, 2007 | Attorneys for Garnishee CMS Nomeco Congo Inc. |