IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x
:
CONNECTICUT BANK OF COMMERCE,
:
Plaintiff,
:
- against -                                        :    Civil Action No. 05-762 SLR

:
THE REPUBLIC OF CONGO,
:
Defendant,
:
CMS NOMECO CONGO INC.,
:
Garnishee.
:
----------------------------------------------------------------- x

## PLAINTIFF AF-CAP'S BRIEF IN OPPOSITION
## TO MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

GREENBERG TRAURIG, LLP              GREENBERG TRAURIG, LLP
Donald J. Detweiler                 Sanford M. Saunders, Jr.
Dennis A. Meloro                    Kenneth P. Kaplan
The Nemours Building                800 Connecticut Avenue, N.W., Suite 500
1007 North Orange Street, Suite 1200    Washington, D.C. 20006
Wilmington, Delaware 19801          (202) 331-3100
(302) 661-7000

                                    GREENBERG TRAURIG, LLP
                                    James W. Perkins
                                    200 Park Avenue
                                    New York, New York 10166
                                    (212) 801-9200

Dated: April 12, 2007

# Table of Contents

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

PROCEDURAL BACKGROUND........................................................................................1

PRELIMINARY STATEMENT .........................................................................................4

ARGUMENT .......................................................................................................................6

POINT I CMS HAS PROVIDED NO BASIS TO ABROGATE THE AMERICAN
    RULE GOVERNING FEE AWARDS ...................................................................6

POINT II THE POWER OF THIS COURT TO REVIEW A FEE APPLICATION
    DOES NOT ENTITLE CMS TO FEES ...............................................................11

POINT III THERE IS NO BASIS FOR AN AWARD AGAINST AF-CAP,
    A PREVAILING PARTY......................................................................................13

CONCLUSION....................................................................................................................15

**Federal Cases**

Action v. Pierce, 789 F.2d 1016 (3d Cir. 1986)............................................................ 13

Af-Cap, Inc. v. Repub. of Congo, 383 F.3d 361 (5th Cir.) .......................................... 2

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (U.S. 1975)................................. 6

Cooter & Gell v. Hartmax Corp., 496 U.S. 384 (U.S. 1990)........................................... 12

Dillard v. City of Foley, 995 F. Supp. 1358 (M.D. Ala. 1998) ...................................... 14

Disabled in Action v. Pierce, 789 F.2d 1016 (3d Cir. 1986) ……………….........………....13, 14

Fantasy Shipping Pool, Ltd. v. Simatech Marine S.A., C.A. No. 10725ICSH, 2002 WL 1733662 (S.D.N.Y. July 25, 2002) .......................................................................... 11, 12

Hensley v. Eckerhart, 461 U.S. 424 (U.S. 1983) ...................................................... 13

In re Fleming Cos., Inc., 316 B.R. 809 (D. Del. 2004)............................................... 6, 7

Institutionalized Juveniles v. Sec'y of Public Welfare, 758 F.2d 897 (3d Cir. 1985).................. 13

LNC Investments, Inc. v. Democratic Republic of Congo, 69 F.Supp.2d 607 (D. Del. 1999) ...... 8

Maher v. Gagne, 448 U.S. 122 (U.S. 1980)............................................................. 14

Metropolitan Life Ins. Co. v. Kubichek, C.A. No. 02-4254, 2003 WL 22904540 (3d Cir. Dec. 10, 2003) ................................................................................................... 10

Napier v Thirty or More Unidentified Federal Agents, Employees, et al., 855 F.2d 1080 (3d Cir. 1988) .................................................................................................. 14

Pagliaro Inc. v. Zimbo, 1987 WL 10275 (Del. Super. Ct. Apr. 16, 1987) ........................... 10, 12

Rollison v. Biggs, 656 F. Supp. 1204 (D. Del. 1987)................................................... 14

Rubin v. Islamic Rep. of Iran, 408 F. Supp. 2d 549 (N.D. Ill. 2005) ............................... 10

Sequa Corp. v. Cooper, 245 F.3d 1036 (8th Cir. 2001).................................................. 11

Walker Int'l. Holdings, Ltd. v. Republic of Congo, 415 F.3d 413 (5th Cir. 2005) ...................... 11

Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128 (3d Cir. 1992)........................................ 6, 13

**State Cases**

Kingsland Holdings Inc. v. Bracco, C.A. No. 14817, 1996 WL 104257

(Del.Ch. Mar. 5, 1996) ................................................................................. 8, 9

Walsh v. Hotel Corp. of Am., 231 A.2d 458 (Del. 1967)................................................ 7

**Federal Rules**

Federal Rule of Civil Procedure Rule 41 .............................................................. 1

Federal Rule of Civil Procedure Rule 54(d)(1)......................................................... 7

Af-Cap, Inc. (assignee of Connecticut Bank of Commerce) ("Af-Cap") files its Answering Brief in opposition to garnishee's CMS Nomeco Inc.'s ("CMS") Motion for Order Awarding Attorney's Fees and Other Costs. As demonstrated below, CMS's motion lacks a statutory, decisional law, or factual basis and must be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

This debt enforcement proceeding is over. Af-Cap and its judgment debtor, the Republic of Congo ("Congo") have settled the underlying claim by Congo paying on the Af-Cap judgment. Since Congo, the defendant, had not yet filed an answer or otherwise appeared in this action, Af-Cap filed a Notice of Dismissal pursuant to Federal Rule of Civil Procedure Rule 41. Yet, CMS after claiming in this proceeding that it is "an innocent third party" garnishee now objects to Af-Cap's dismissal on the grounds that it is an "adverse party" within the meaning of Rule 41. *Compare* CMS Answer to Writ of Garnishment at 2 ("CMS Ans."), *and* CMS Answering Brief in Opp. to Af-Cap's Motion for Summary Judgment and Opening Brief in Support of Cross Motion at 4 ("CMS Summary Judgment Br."), *with* CMS Counsel's Letter to the Court dated March 12, 2007 at ¶ 2). Based on its new-found status, by this motion, CMS seeks fees and costs associated with its conduct in a lawsuit that it voluntarily and needlessly proliferated by asserting the defenses of the judgment debtor, which the judgment debtor ultimately did not raise. CMS's request for fees is just another example of its senseless litigation tactics, which this Court should reject.

## PROCEDURAL BACKGROUND

The facts of this judgment enforcement proceeding have been fully briefed to the Court and can be summarized as follows. Af-Cap was a creditor of Congo based upon a judgment rendered in the United Kingdom, domesticated in the United States by the Supreme Court of New York, King's County, and to start this action was registered in the Superior Court of New

Castle, County. Af-Cap initiated this action when it simultaneously registered its judgment in the Superior Court for New Castle County and sought a writ of garnishment against Congo's property held by CMS. Af-Cap sought a writ against CMS based upon CMS's long-time business affiliation with Congo under an Oil Convention that obligates CMS to pay Congo an oil royalty at regular intervals. CMS and Congo have been business venture partners since the 1990s.

Af-Cap, CMS, and Congo had been litigating in the federal court for the Western District of Texas since 2001.[1] In 2004, Af-Cap successfully appealed the Western District of Texas's decision that the oil royalty obligation between CMS and Congo was not subject to execution in the United States. The Fifth Circuit held that Congo's property was subject to execution in the United States under the Foreign Sovereign Immunities Act ("FSIA") wherever CMS could be found. *See Af-Cap, Inc. v. Repub. of Congo*, 383 F.3d 361, 372 (5th Cir.), *modified* 389 F.3d 503 (2004), *cert. denied* 125 S.Ct. 1735 (2005).[2] CMS was located in Delaware in the summer of 2005 after fleeing Texas (it has since withdrawn from Delaware and reincorporated offshore to avoid future garnishment proceedings) and, therefore, Af-Cap domesticated its judgment here and sought a writ of garnishment from the Superior Court.

Under section 1610(c) of FSIA, the party requesting a writ of garnishment must obtain a court order. After registering its judgment, Af-Cap served both Congo <u>and CMS</u> with its request for a writ of garnishment. *See* Exh. A attached hereto. Neither CMS nor Congo appeared at the

---

[1]    Congo and Af-Cap have stipulated to dismissal of those cases. CMS, the garnishee, has not lodged any objection to the dismissal. Similarly, another judgment creditor of Congo, FG Hemisphere, has filed an Agreed Motion to Dismiss its action pending in the Southern District of Texas. There again, CMS has not objected and actually consented to the Motion. CMS's failure to object in these other cases, and its consent in the FG Hemisphere case, demonstrates that CMS knows its objection to Af-Cap's stipulation in this case lacks merit.

[2]    The Fifth Circuit subsequently ruled that Texas law did not allow recovery. Af-Cap's Petition for Certiorari was withdrawn when Congo and Af-Cap settled the judgment debt. CMS had opposed certiorari. CMS did not oppose Af-Cap's dismissal.

hearing. Accordingly, Af-Cap's request for the writ was unopposed, which was noted on the order granting its request for the writ of garnishment. CMS has made much of a notation on the court order issuing the writ and asserts that the Superior Court was deceived by Af-Cap into believing that that the application was "unopposed." (CMS Br. at 1.) The fact that CMS and Congo were both served with the request for the writ and both failed to appear at the hearing belies CMS's false assertions.

Af-Cap served the writ upon CMS, which subsequently removed the case to federal court. Af-Cap sought remand, but the Court denied Af-Cap's request. Additionally, CMS filed a procedurally deficient Answer raising, *inter alia*, the same rejected defenses from Western District of Texas and Fifth Circuit cases.[3] Af-Cap and CMS cross-moved for summary judgment, CMS arguing, *inter alia*, that the defenses of act of state, sovereign compulsion and double liability precluded a recovery by Af-Cap as a matter of law. The Court denied both cross-motions.

The case proceeded into discovery, which, by raising Congo's defenses, CMS made contentious and costly. Discovery disclosed that, notwithstanding issuance and service of the writ, CMS had been paying to Congo the very oil royalty obligation that the writ had captured and prevented CMS from paying. Given these developments, Af-Cap sought additional provisional relief by filing a motion for an order of contempt (given CMS's violation of the writ) sequestration of an expected royalty payment, and related injunctive relief. Prior to a hearing on discovery and Af-Cap's motion, the parties, with the assistance of the Court, agreed to brief threshold legal questions. During that briefing, Congo settled its debt with Af-Cap, whereby Congo agreed to pay Af-Cap on the judgment recorded in this District. A copy of the Settlement

---

[3]    Af-Cap contended that CMS's failure to file a proper Answer entitled it to judgment against CMS, but that request was based solely on its procedurally flawed Answer.

Agreement referenced as Exhibit A to the Declaration of Patrick H. Mitchell, Esq. (the "Mitchell Decl.") filed herewith will be submitted to the Court for an in camera review.

Based upon the settlement, which thereby mooted this proceeding, and since the defendant Congo never appeared, Af-Cap filed its Notice of Dismissal pursuant to Rule 41. This filing led CMS to send a series of letters to the Court claiming that it was an "adverse party" and, therefore, Af-Cap's Notice was improper. CMS's conduct has needlessly prolonged a litigation that the real party in interest, Congo, decided not to contest and, instead, to settle. Now, CMS wants this Court to order Af-Cap to pay for CMS's voluntary decision to litigate this case on Congo's behalf (despite serious questions whether it had standing to do so), even though such an award is unfounded under Delaware law and the long-standing American Rule concerning fee-shifting.

## PRELIMINARY STATEMENT

Throughout this case, CMS routinely represented that Af-Cap's claim and arguments were "frivolous" or "baseless." Despite these representations, CMS employed three different law firms that, in turn, fed the case to twelve lawyers -- eight of whom were partners-- and two billing professionals. *See* CMS Summary Judgment Br. at 4, 5, 7, 8, 15, and 16. CMS certainly employed a significant amount of legal fire power to defend a case that it contended was "an identical garnishment action filed by the Plaintiffs in Texas" and had no merit. *See* CMS Ans. at 2. This legal power included the use of six lawyers, including partners of all three law firms, on preparing the Notice of Removal. Now, it asks the Court to require Af-Cap to pay the fees and costs accumulated by those professionals, even though CMS provides no factual or legal basis for its request. The Court should summarily reject this request.[4]

---

[4] If the Court does not reject CMS's request out of hand, then Af-Cap will seek discovery on the reasonableness of CMS's fees. Af-Cap will also need to brief the merits of the underlying matter, including CMS's lack of standing

Af-Cap brought this case against Congo to collect on a long-overdue and undisputed debt. CMS was and still is a business venture partner with Congo under the Oil Concession. There is no dispute that CMS routinely pays Congo an oil royalty. There is no dispute that the oil royalty is Congo's property held by CMS. There is no dispute that the Fifth Circuit held that this very property was subject to execution in the United States under the FSIA. The dispute was simply over whether Af-Cap was entitled to garnish that property under Delaware law.

Throughout this litigation, CMS cast itself in various roles. At times, it represented that it was an "innocent third party" at other times it claimed that it was "unfairly caught between a sovereign rock -- the Congo -- and multiple hard places -- multiple U.S. Courts." *Compare* CMS Ans. at 2, *with* CMS Summary Judgment Br. at 1. In its fee filing, CMS has assigned itself a new role. CMS now contends that Af-Cap pursued CMS on "a claim for millions of dollars in monetary liability." *See* CMS Opening Br. In Support of Motion for Order Awarding Attorney's Fees and Other Costs ("CMS Br."). CMS's metamorphosis into the party whose property was at issue in this case is merely a convenient artifice designed, it would seem, to deflect the Court's attention from the fact that Congo, whose property CMS indisputably held, settled its debt with Af-Cap. CMS voluntarily, but with specious standing, took on the issues in this case that were the purview of a sovereign state (even though Congo had not appeared) and CMS now wants to shift the burden of paying for that gambit onto Af-Cap.

CMS is not, and never has been, an "adverse party" in this action. Indeed, Af-Cap maintained in its briefing that CMS possessed neither Article III nor representational standing to raise Congo's defenses in this action. CMS held property that belonged to Congo and Af-Cap sought that property to satisfy its judgment-debt against the Congo. The Court should ignore

---

to raise the defenses for which it now seeks compensation. To the extent CMS claims entitlement to fees under Rule 54 of the Federal Rules of Civil Procedure, Af-Cap requests, pursuant to Rule 54(d)(2)(C), that the Court first determine liability for fees before receiving submissions concerning the alleged "reasonableness" of CMS's fees.

CMS's attempt to recast itself as the party whose property was at stake. CMS's inherently inconsistent positions underscore the wasteful nature of its motion.

Finally, as explained below, there simply is no legal basis for CMS to be awarded fees or costs in this action. It is not a prevailing party under any definition, Delaware law provides no cognizable basis for a fee award to CMS and CMS is unable to cite to any other basis for its meritless claim. If anything, since Af-Cap was ultimately paid on its debt by the judgment debtor, Af-Cap is the prevailing party and if an award of fees were appropriate, it would be in favor of Af-Cap. It is time for the Court to put an end to CMS's shenanigans.

## ARGUMENT

### POINT I

### CMS HAS PROVIDED NO BASIS TO ABROGATE
### THE AMERICAN RULE GOVERNING FEE AWARDS

Under the "American Rule" that applies in federal and state courts, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (U.S. 1975). The Supreme Court acknowledged the sanctity of the American Rule when noting that "the rule followed in our courts with respect to attorneys' fees has survived. It is deeply rooted in our history and in congressional policy; and it is not for us to invade the legislature's province by redistributing litigation costs..." *Alyeska*, 421 U.S. at 271. Thus, in the absence of statute or contract, an award of fees is not appropriate. *See In re Fleming Cos., Inc.*, 316 B.R. 809, 816 (D. Del. 2004) (denying fee application of certain plaintiffs "because there is no contractual or statutory basis for such an award").

Even when there is a recognized basis for fee shifting, the party to whom fees or costs are to be awarded must be a prevailing party. *See Wheeler v. Towanda Area Sch. Dist.*, 950 F.2d 128, 131 (3d Cir. 1992) (noting that party seeking recovery of fees as prevailing party must

establish success on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit"); *In re Fleming*, 316 B.R. at 815 (recognizing that under the American Rule, "a winning party is not automatically entitled to fees"). *See also* Federal Rule of Civil Procedure Rule 54(d)(1) (providing that costs are awarded to prevailing party).

Here, CMS does not claim it is a prevailing party or that it is otherwise entitled to fees or costs under any federal statute or by contract. Nor can CMS cite to any Delaware statute under Federal Rule 69 that would authorize the award of fees it seeks. For these reasons alone, CMS's request is facially deficient and it should be rejected out of hand. *See In re Fleming*, 316 B.R. at 816.

CMS ignores these fundamental flaws and relies on two Delaware state court cases that are inapposite to the procedural posture of this case. In *Walsh v. Hotel Corp. of Am.*, 231 A.2d 458, 462-63 (Del. 1967), the sole question before the Supreme Court of Delaware was the appropriate amount of bond to be fixed in favor of a defendant, <u>not</u> a garnishee, under Superior Court Rule 4(b)(2); the court did not address the question of liability on the bond. Significantly, the court did address the statutory preconditions for an award under Rule 4(b)(2) -- only "if plaintiffs fail to prosecute their suit with effect or if judgment be rendered for defendant...." 231 A.2d at 462. Equally significant, the court articulated when a <u>defendant</u> should be entitled to a fee award, "[w]e are of the opinion that counsel fees should be allowed, in the absence of abuse of process, <u>only for a victorious attack on the attachment itself</u>, and not for the presentation of defenses not predicated upon defects in the process." *Id.* (emphasis added).

None of these preconditions to an award of fees is present here. First, Af-Cap has prosecuted its suit with effect: it has received a favorable settlement as a result of the various enforcement proceedings it commenced against Congo, including this action. Mitchell Decl. ¶ 3.

Second, there has been no judgment rendered in favor of the defendant Congo. Even if there were, it might entitle Congo to a fee award, not CMS, as garnishee. Third, CMS does not and cannot argue abuse of process; nor has it obtained a "victorious attack on the attachment itself." This Court denied CMS's motion for summary judgment and, as of Af-Cap's settlement with Congo (thereby mooting this proceeding), the writ of attachment remained in place. Thus, Superior Court Rule 4(b)(2) cannot be a source for a fee award in favor of CMS in this case.

The second case CMS relies upon, *Kingsland Holdings Inc. v. Bracco*, C.A. No. 14817, 1996 WL 104257 (Del. Ch. Mar. 5, 1996), is also inapposite. *Kingsland* concerns the availability of fees under the Delaware sequestration statute and the Chancery Court rules; however, this case was removed from Delaware Superior Court and involved garnishment proceedings.[5] Thus, the sequestration statute and Chancery court rules cannot serve as a basis for a fee award here. *See LNC Investments, Inc. v. Democratic Republic of Congo,* 69 F.Supp.2d 607, 611-13 (D. Del. 1999) (rejecting contention that state procedural rules other than Delaware Superior Court and Delaware attachment statute apply to Delaware District Court attachment proceedings).

Even assuming, *arguendo*, that sequestration rules could serve as a basis for a fee award, *Kingsland* illustrates why CMS still cannot recover such an award here. *Kingsland* addressed the question of the bond amount to be fixed before the court would order seizure of stock under the sequestration statute. Significantly, the court never addressed whether (much less held that) garnishees were entitled to attorneys fees. Rather, the court merely acknowledged garnishees' argument that they might get an award of fees "should they successfully attack the sequestration." *Id.* at *7 (emphasis added). Ultimately, the court rejected the garnishees'

---

[5]    It is true that earlier this year, Af-Cap filed a motion seeking an order of sequestration, but the Court ordered withdrawal of that application without prejudice to refile. Docket Entry No. 87.

argument that a "substantial bond" should be posted in their favor, reasoning that there was no factual basis for such a bond: "General assertions of harm that offer no measurable indication of economic injury do not provide justification for a substantial bond." *Id.* at \*8.

CMS's claimed entitlement to relief is even less compelling. As discussed above, CMS has not satisfied the condition that it "successfully" attack the writ. Moreover, CMS has provided absolutely no factual support for its alleged entitlement to a fee award. First, although it uses a lot of adjectives and adverbs to describe its alleged plight with the Congo, none of the supposed facts are supported by affidavit or admissible proof. Congo's alleged treatment of CMS is belied by the ongoing and expanding business relationship between Congo and CMS.[6] In fact, CMS does not claim any harm from its alleged "double liability": the only affidavits submitted by CMS concern the alleged amount of its legal fees and costs purportedly incurred in this proceeding.[7] And, in fact, CMS is hard pressed to demonstrate any harm, as it ignored the writ and it continues, at substantial profit, to pump millions of dollars of oil from Congolese oil fields.

Second, CMS plainly misstates the record when asserting that "[f]ollowing removal to this Court, Af-Cap has pursued a claim for millions of dollars in monetary liability against Garnishee CMS Nomeco...." (CMS Br. at 1.) To the contrary, this is a garnishment proceeding where Af-Cap has sought to attach only the judgment debtor's property, not CMS's property, all

---

[6]     While this case was pending, CMS negotiated a new oil exploration permit with Congo and maintained a business called Congorep, which is a joint venture between CMS and Congo's alter-ego, Societe Nationales des Petroles du Congo.

[7]     At page 2 of its brief, CMS refers to *LNC Investments v. Republic of Nicaragua*, No. 01-134-JJF (D. Del. 2002) (unpublished decision), *appeal dism'd*, 396 F.3d 342 (3d Cir. 2005), as if it controls the outcome under the facts of this case. Not so. Judge Farnan found double liability based on the particular evidentiary submission in *LNC*. This Court rejected CMS's "evidence" as dispositive of the issue when it denied CMS's motion for summary judgment. Moreover, the dearth of any supporting facts on this motion underscores the sharp difference between *LNC* and the record before this Court. Finally, the *prima facie* evidence of collusion between Congo and CMS renders unavailable the supposed "double liability" defense.

in order to force Congo's appearance here. The fact that CMS took it upon itself to raise Congo's arguments in this proceeding does not change the nature of the proceeding.

Third, to the extent CMS contends its counsel fees are a damage, those wounds were self-inflicted. Indeed, CMS's status as garnishee is antithetical to any claim that CMS has an interest subject to protection. *See Pagliaro Inc. v. Zimbo*, 1987 WL 10275, at *4 (Del. Super. Ct. Apr. 16, 1987) ("The garnishee is a mere stakeholder who should do nothing either in aid of or to the detriment of, the real parties (plaintiff or defendant) to the suit."). Moreover, despite federal precedent that a garnishee may not raise a judgment debtors' Foreign Sovereign Immunity Act defenses,[8] CMS took it upon itself to raise Congo's defenses, including attacking the underlying judgment. Moreover, CMS easily could have avoided many of the fees it incurred by simply interpleading the funds at issue and letting the Court decide what to do with them. In fact, had CMS done so it might have qualified for fees under the interpleader statute. *See Metropolitan Life Ins. Co. v. Kubichek*, C.A. No. 02-4254, 2003 WL 22904540 (3d Cir. Dec. 10, 2003) (court has discretion to award to interpleader plaintiff attorneys fees and costs if the plaintiff is disinterested stakeholder has sought a discharge from liability) (citing *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989) ("A disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees.")). Similarly, under its Oil Convention with Congo, CMS had redress before an international arbitral tribunal had it so chosen. Thus, contrary to CMS's view (CMS Br. at 6), there is no policy to be served in providing CMS a windfall for the tactical decisions it made to contest this proceeding vigorously on behalf of Congo.

---

[8]    *See, e.g., Rubin v. Islamic Rep. of Iran*, 408 F. Supp. 2d 549, 555 (N.D. Ill. 2005) (criticizing *Walker* and holding that "Section 1609 of the FSIA is an affirmative defense that only the foreign state has standing to invoke"), *aff'd* 436 F. Supp. 2d 938 (N.D. Ill. 2006).

The other case CMS principally relies upon, *Walker Int'l. Holdings, Ltd. v. Republic of Congo* is also inapposite. 415 F.3d 413 (5th Cir. 2005) (cited at CMS Br. 1). The Court awarded fees in *Walker*, because there was a specific fee provision under Texas state law which provides: "Where a garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee shall be taxed against the plaintiff...." *See* Tex. R. Civ. P. 677. There is no similar provision under Delaware law or procedure. Indeed, the specious nature of CMS's fee request is highlighted by the fact that CMS fails to disclose the procedural underpinnings of the garnishee's fee request in *Walker*. CMS has simply provided no basis for derogating the American Rule.

**POINT II**

**THE POWER OF THIS COURT TO REVIEW**
**A FEE APPLICATION DOES NOT ENTITLE CMS TO FEES**

CMS hopes to equate the power of this Court to consider CMS's fee application, made after filing of the Notice of Dismissal, with an entitlement to an award of fees. (CMS Br. at 3.) Again, the authorities upon which CMS relies provide no such entitlement. *Sequa Corp. v. Cooper*, 245 F.3d 1036 (8th Cir. 2001) concerned a <u>defendant's</u> entitlement to costs, <u>not to fees</u>, under Rule 54(d)(1). Notably, the plaintiff in *Sequa Corp.* had obtained no relief in that case before it voluntarily dismissed the action. Here, to the contrary, (1) plaintiff obtained a writ of garnishment, (2) this Court denied CMS's motion for summary judgment seeking dismissal of the writ, and (3) Af-Cap filed its notice of dismissal after it had been paid on its judgment pursuant to a settlement agreement with the defendant Congo.

Even *Fantasy Shipping Pool, Ltd. v. Simatech Marine S.A.*, C.A. No. 10725ICSH, 2002 WL 1733662 (S.D.N.Y. July 25, 2002), a case that CMS discusses at pages 6-8 of its brief, does not support an award of fees without statutory or contractual authority on a motion made after

the filing of a notice of dismissal. Unlike CMS's post notice of dismissal filing, the fee application in *Fantasy Shipping* was made under the discovery rules, and before plaintiff filed the notice of dismissal. *Id.* at *1. Neither *Fantasy Shipping,* nor the case upon which the district court relied, *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (U.S. 1990), concerned a fee application that was made after the filing of the notice of dismissal.

Finally, CMS is wrong when it argues that *Fantasy Shipping* "refutes" Af-Cap's entitlement to end this case under Rule 41(a)(1). (CMS Br. at 6.) The district court in *Fantasy Shipping* reasoned that a plaintiff could terminate a garnishment proceeding if the defendant had not answered, since the "garnishees were entirely indifferent to the underlying issues between Fantasy and defendant...." *Fantasy Shipping*, 2002 WL 1733662 at *2. The court later identified the "underlying issues" to be the attachment of defendant's property, not the garnishee's property: "The garnishees are in the case at bar only because plaintiff alleged they might hold some of the defendant's property, which were that true, would operate under the principles of admiralty law to establish Fantasy's jurisdiction over [defendant] and furnish security for Fantasy's claims against [defendant]." *Id. See also Pagliaro, Inc.*, 1987 WL 10275 at *4 (explaining role of garnishee under Delaware law). Thus, CMS's belatedly saying so does not make it an "adverse party" within the meaning of Rule 41.

A contrary finding under the facts of this case would be inequitable in any event. From the outset of this proceeding, CMS has insisted that it is an "innocent third party." CMS Ans. at 2. In its latest brief, CMS continues the theme by asserting that it "is a stranger to the Congo's debt allegedly owed to Af-Cap" but takes the inconsistent position that it is the real party in interest. CMS was not an adverse party in this case -- it was merely a garnishee holding Af-Cap's judgment debtor's property. (CMS Br. at 1.) This undeniable fact is underscored by the

outcome of Af-Cap's dispute with Congo. Congo has paid Af-Cap on the underlying judgment and has required Af-Cap to dismiss all pending actions to collect the debt, including this one. Mitchell Decl. ¶ 3.[9] With the underlying dispute settled, there is no case or controversy before this Court.

### POINT III

### THERE IS NO BASIS FOR AN AWARD AGAINST AF-CAP, A PREVAILING PARTY

Implicit in CMS's analysis is the unfounded assumption that it is the prevailing party. Ironically, the facts demonstrate that Af-Cap -- as a judgment creditor in this enforcement proceeding which was paid on its debt -- is the prevailing party and we know of no case where prevailing party fees have been awarded <u>against</u> a prevailing party. To be deemed a "prevailing party," a litigant "must succeed on 'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (U.S. 1983). *See also Wheeler by Wheeler v. Towanda Area School Dist.*, 950 F.2d 128, 131 (3d Cir. 1992).

This rule has been refined in this Circuit into a two-part test: (1) whether the plaintiffs achieved the relief sought; and (2) whether there is a causal connection between the litigation and the relief from the defendant obtained. *See Institutionalized Juveniles v. Sec'y of Public Welfare*, 758 F.2d 897, 910 (3d Cir. 1985). For the second prong, even though the litigation may not result in adjudication to judgment, a litigant will still be a prevailing party if the pressure of the lawsuit acts as a material contributing factor in bringing about *extrajudicial* relief, such as settlement. *See Wheeler*, 950 F.2d at 132. *See also Disabled in Action v. Pierce*, 789 F.2d 1016,

---

[9]   *See* footnotes 1 and 2 above.

1019 (3d Cir. 1986) ("The fact that the relief obtained was the result of a settlement rather than a litigated decree does not prevent a finding that the plaintiff is prevailing.")

And, a party settling a matter in its favor who achieves one of the goals sought in the litigation is considered a "prevailing party" under Rule 54. As stated by this Court: "Plaintiffs may be eligible for fees even though they prevailed through settlement rather than through full litigation of the issues." *Rollison v. Biggs*, 656 F. Supp. 1204, 1210 (D. Del. 1987) (granting plaintiff parents of handicapped child attorney fees as prevailing parties in action seeking tuition reimbursement where parents recovered total amount sought in original complaint through settlement) (citing *Maher v. Gagne*, 448 U.S. 122, 129 (1980)). Accordingly, "[i]t is well settled that a plaintiff is no less eligible for a fee award as a prevailing party because his or her lawsuit terminated favorably on the basis of a consent judgment, rather than through litigation and a judicial determination that the plaintiff's rights have been violated." *Dillard v. City of Foley*, 995 F. Supp. 1358, 1362 (M.D. Ala. 1998) (citing *Maher, supra*) (granting plaintiff's motion for attorney's fees as prevailing party where lawsuit terminated favorably on basis of consent judgment rather than through litigation).

There can be no dispute that litigation, including this action, caused Congo to pay a debt that it had owed for over a decade. Mitchell Decl. ¶ 4. In fact, the Settlement Agreement with Congo expressly recognizes plaintiffs' "numerous efforts worldwide to enforce the Af-Cap Judgment and the Walker Judgment" and provides that upon payment under the Settlement Agreement, "the creditors shall immediately take all necessary steps to terminate all ongoing judicial action for the enforcement of the Judgments." (Agreement at Page 2 and Article 2). Thus, if there were to be any fee award in this action, it would be in favor of Af-Cap.[10]

---

[10]   Given the complete lack of merit to CMS's application, underscored by the inapposite Delaware authority it relies upon, CMS's papers are worthy of a Rule 11 motion. *See, e.g., Napier v Thirty or More Unidentified Federal*

## CONCLUSION

For all of the reasons stated above, Af-Cap Inc. respectfully requests that CMS's application for fees and costs be denied in all respects and the Court enter a notation in the docket of this action that the case is closed.

Dated: April 12, 2007                    GREENBERG TRAURIG, LLP

Donald J. Detweiler (No. 3087)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000

and

Kenneth P. Kaplan
Sanford M. Saunders
800 Connecticut Avenue, N.W., Suite 500
Washington, DC 20006
(202) 331-3100

and

James W. Perkins
MetLife Building
200 Park Avenue
New York, NY 10166
(212)801-9200

Attorneys for Plaintiff

---

*Agents, Employees, et al.*, 855 F.2d 1080, 1090-91 (3d Cir. 1988) (Rule 11 "is intended to discourage pleadings that are frivolous, legally unreasonable or without factual foundation, even though the paper was not filed in subjective bad faith") (internal citations and quotations omitted). In the interest of finally resolving this now moot action, Af-Cap is not seeking relief under that Rule.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------- x

CONNECTICUT BANK OF COMMERCE,

                Plaintiff,

        - against -            :  Civil Action No. 05-762 SLR

THE REPUBLIC OF CONGO,

                Defendant,

CMS NOMECO CONGO INC.,

                Garnishee.

-------------------------------------------------------------------- x

## CERTIFICATE OF SERVICE

    I hereby certify that I am an attorney at Greenberg Traurig, LLP, counsel for the Plaintiff, and that on April 12, 2007, copies of the following were served upon the parties listed below in the manner indicated.

- *Brief in Opposition to Motion for Award of Attorney's Fees and Costs*
- *Declaration of Patrick H. Mitchell in Opposition to CMS Nomeco Congo Inc.'s Motion for Attorney's Fees*

VIA HAND DELIVERY
M. Duncan Grant, Esquire
James C. Carignan, Esquire
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801

VIA U.S. MAIL
Guy Lipe, Esquire
Jason Powers, Esquire
Vinson & Elkins LLP
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002

Dated: April 12, 2007

Dennis A. Meloro (No. 4435)
Greenberg Traurig, LLP
1007 North Orange Street, Suite 1200
The Nemours Building
Wilmington, DE 19801
(302) 661-7000

Attorneys for the Plaintiff