# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONNECTICUT BANK OF COMMERCE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-762 SLR |
| THE REPUBLIC OF CONGO, | ) ) | |
| Defendant; | ) ) | |
| CMS NOMECO CONGO INC., | ) ) | |
| Garnishee. | ) | |

## GARNISHEE CMS NOMECO'S REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER AWARDING ATTORNEYS' FEES AND OTHER COSTS

OF COUNSEL:

Guy S. Lipe
Jason M. Powers
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX 77002-6760
(713) 758-2222

Dated: April 19, 2007

M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for Garnishee CMS Nomeco Inc.

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

    I.    Despite CMS Nomeco's Status as an Innocent Third Party, Af-Cap Has Subjected CMS Nomeco to Claims for Millions of Dollars in Monetary Liability, and It Would Be Wholly Inequitable To Require CMS Nomeco to Bear its Fees Incurred in Defending this Action .......2

    II.    Delaware Law Authorizes an Award of Attorneys' Fees as "Costs" to a Prevailing Party Attacking an Attachment...........................................................................................................8

    III.    CMS Nomeco is a Prevailing Party for Purposes of Recovery of its Costs By Virtue of Af-Cap's Abandonment of its Claims Against CMS Nomeco and the Circumstances Relating Thereto...............................................................................................................................9

    IV.    There is No Reason for Delay or Discovery on the Reasonableness of CMS Nomeco's Fee Request...........................................................................................................................12

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
  475 F.3d 1080 (9th Cir. 2007) ............................................................. 12

*Af-Cap, Inc. v. Republic of Congo*,
  462 F.3d 417 (5th Cir. 2006) ...........................................................6, 12

*Brewer v. Socialist People's Republic of Iraq*,
  890 F.2d 97 (8th Cir. 1989) ................................................................ 11

*Connecticut Bank of Commerce v. Republic of Congo*,
  440 F. Supp. 2d 346 (D. Del. 2005) .............................................5, 6, 12

*Disabled in Action v. Pierce*,
  789 F.2d 1016 (3d Cir. 1986) .............................................................. 10

*Everitt v. Everitt*,
  37 Del. Ch. 512, 146 A.2d 388 ............................................................. 8

*FG Hemisphere Associates, L.L.C. v. Republique du Congo*,
  455 F.3d 575 (5th Cir. 2006) ...........................................................6, 11

*Institutionalized Juveniles v. Sec'y of Public Welfare*,
  758 F.2d 897 (3d Cir. 1985) ................................................................ 10

*Kingsland Holding, Inc. v. Bracco*,
  1996 WL 104257 (Del. Ch. 1996) .......................................................... 8

*Sequa Corp. v. Cooper*,
  245 F.3d 1036 (8th Cir. 2001) ............................................................... 9

*Walker International Holdings Limited v. Republic of Congo*,
  395 F.3d 229 (5th Cir. 2004) ............................................................... 11

*Walsh v. Hotel Corp. of America*,
  231 A.2d 458 (Del. 1967) ..................................................................... 8

Garnishee CMS Nomeco Congo Inc. ("CMS Nomeco") submits this Reply Brief in Support of its Motion for Order Awarding Attorneys' Fees and Other Costs (D.I. 107), replying to the Answering Brief in Opposition filed by Af-Cap, Inc. ("Af-Cap") on April 12, 2007 (D.I. 109).

## INTRODUCTION

For almost eighteen months, Af-Cap pursued millions of dollars in monetary liability against CMS Nomeco in this garnishment action. Af-Cap pursued those claims despite the fact that CMS Nomeco is a stranger to the Congo's debt that Af-Cap was attempting to collect, despite the fact that the writ of garnishment was issued by the Delaware Superior Court without any findings (or any showing) on the threshold requirements of the Foreign Sovereign Immunities Act, and despite the fact that imposition of the liability that Af-Cap sought would impose double liability on CMS Nomeco as garnishee. Then, facing the prospect of an adverse decision on threshold legal issues that presented insurmountable obstacles to any recovery against CMS Nomeco, and knowing that a motion for attorneys' fees would be forthcoming shortly thereafter,[1] Af-Cap filed a unilateral notice of dismissal of the garnishment action (D.I. 102), claiming that its abandonment of its claims against CMS Nomeco before a decision on the merits cut off CMS Nomeco's right to be reimbursed for the fees incurred in this proceeding.

In an effort to cover its effort to flee from this Court to avoid an award of fees, Af-Cap has made a number of outrageous and false allegations in its Answering Brief in Opposition to CMS Nomeco's motion for attorneys' fees and other costs, and it has misstated the law. CMS Nomeco addresses Af-Cap's false allegations and misstatements in detail below and

---

[1] CMS Nomeco's Answer to the garnishment writ contains a request for attorneys' fees. See D.I. 2.

shows that this case presents the most compelling case possible for an award of attorneys' fees to

a garnishee, a remedy that is fully authorized by Delaware law.

## ARGUMENT

**I.     Despite CMS Nomeco's Status as an Innocent Third Party, Af-Cap Has Subjected CMS Nomeco to Claims for Millions of Dollars in Monetary Liability, and It Would Be Wholly Inequitable To Require CMS Nomeco to Bear its Fees Incurred in Defending this Action**

A key theme of Af-Cap's Answering Brief is that it had the right to unilaterally dismiss

its case against CMS Nomeco and unilaterally deprive this Court of the authority to award CMS

Nomeco its fees.  Critical to that argument is Af-Cap's contention that CMS Nomeco is not an

"adverse party" in this case.  In support of that contention, Af-Cap alleges that until only

recently, CMS Nomeco was a pure stakeholder in this litigation and was not claiming to be an

"adverse party."  Af-Cap attempts to create the impression that CMS Nomeco was not at risk in

this proceeding yet "voluntarily . . . took on the issues in this case," purportedly making a

"voluntary decision to litigate this case on Congo's behalf."[2]  It asserts that recently, in CMS

Nomeco's motion for attorneys' fees and other costs, CMS Nomeco "assigned itself a new role"

and "recast itself as the party whose property was at stake."[3]

These allegations are completely and demonstrably false.  From the inception of this

litigation, until Af-Cap abandoned its claims against CMS Nomeco, Af-Cap pursued millions of

dollars in monetary liability against CMS Nomeco, claims that CMS Nomeco was required to

defend, at a cost in the hundreds of thousands of dollars in fees and expenses.  CMS Nomeco's

position has been uniform throughout – it is an innocent third party that has been pulled into

litigation between the Congo and its judgment creditor relating to a debt in which CMS Nomeco

---

[2] Ans. Br. at 4; *see also* Ans. Br. at 1, 5-6, 9-10

[3] *Id.* at 5-6, 9-10.

had no involvement, and it would be unfair and improper to force CMS Nomeco to pay the Congo's debts out of its own pocket. Along the way, CMS Nomeco has been subjected not only to claims that sought to impose millions of dollars in double liability for the Congo's royalty, but also threats of termination of its oil concession by the Congo (which is valued in the tens of millions of dollars), Congo court orders (in direct contradiction with U.S. court orders) confirming the Congo's right to take its own natural resources in its own territory, threats of use of public force and detention of personnel in Congo, and actual use of public force including boarding by armed gendarmes of its oil storage vessel. All of this occurred as a result of Af-Cap and other judgment creditors of the Congo taking action in the U.S. courts which the Fifth Circuit has now determined to have been invalid.

In response to Af-Cap's assertion in its Answering Brief that CMS Nomeco has "misstate[d] the record when asserting that . . . 'Af-Cap has pursued a claim for millions of dollars in monetary liability against Garnishees CMS Nomeco,'"[4] CMS Nomeco submits for the Court's consideration the following quotations from Af-Cap's pleadings filed in this case, which demonstrate the falsity of Af-Cap's assertions and prove that Af-Cap has, since inception, sought to impose enormous monetary liability against CMS Nomeco:

- "Af-Cap respectfully requests . . . that the Court issue a judgment against CMS for the full value of Af-Cap's judgment [against the Congo] plus interest and costs . . . ." Plaintiff's Exceptions to Garnishees' Answer to Writ of Garnishment (D.I. 4) at 13-14, filed November 17, 2005.

- "Af-Cap, Inc. . . . moves this Court for a personal judgment against Garnishee, CMS Nomeco Congo, Inc. . . . for the full value of Af-Cap's judgment against its

_____

[4] *Id.* at 9.

-3-

judgment debtor, the Republic of Congo ("Congo") in the amount of $13,628,340.11 plus interest and costs." Af-Cap, Inc.'s Motion for Summary Judgment Against Garnishee CMS Nomeco Congo, Inc. (D.I. 7) at 1, filed November 30, 2005.

- "Af-Cap respectfully requests that the Court enter a personal judgment for the full value of Af-Cap's judgment [against the Congo] plus interest and costs against CMS." Af-Cap, Inc.'s Opening Brief in Support of its Motion for Summary Judgment Against Garnishee CMS Nomeco Congo, Inc. (D.I. 8) at 8, filed November 30, 2005.

- "For the reasons set for the above, Af-Cap respectfully requests that the Court enter judgment against CMS for the full value of Af-Cap's judgment [against the Congo] plus interest and costs." Af-Cap's Reply Brief in Further Support of Motion for Summary Judgment (D.I. 18) at 19, filed December 21, 2005.

- Without disclosing to the Court that the Congo had taken its royalties in kind under compulsion of Congolese court orders and with the use of force by armed Congolese police, Af-Cap filed a motion in January 2007 asserting that CMS Nomeco should be "ordered to pay plaintiffs, the amount of royalties paid Congo during the time the Af-Cap Writ has been in effect . . . ," which Af-Cap alleged to be "in excess of $27 million." Opening Brief in Support of Plaintiff's Emergency Motion for an Order to Show Cause for an Order of Contempt, Order of Sequestration, and Injunctive Relief (D.I. 68) at 2, 10, filed January 10, 2007.

As these pleadings make clear, Af-Cap has consistently argued in this case that CMS Nomeco should be required to pay the full amount of Af-Cap's judgment in this case. Af-Cap made these

claims despite the fact that the Congo was taking its in-kind royalty in its own territory under compulsion of Congolese court orders, with the Congo using the force of its armed police to overcome any resistance.[5]  The Congo's actions in taking its own oil in its own territory under these circumstances were wholly outside the control of CMS Nomeco.

Thus, Af-Cap's pleadings establish that CMS Nomeco was an "adverse party" from the beginning of its involvement in the case.  In fact, this Court has already held that CMS Nomeco is the true defendant in this case, not the Congo.  *Connecticut Bank of Commerce v. Republic of Congo*, 440 F. Supp. 2d 346, 351-352 (D. Del. 2005).  CMS Nomeco properly and understandably conducted a robust defense against Af-Cap's claims, and its involvement was far from "voluntary."  Af-Cap chose to sue CMS Nomeco in Delaware after having lost its litigation in Texas, and just as CMS Nomeco successfully defended itself in the Texas litigation, it had every right to defend itself in this litigation.  Af-Cap's assertions in its latest filing that CMS Nomeco is not an "adverse party," that CMS Nomeco made a "voluntary decision to litigate this case on Congo's behalf," and that this lawsuit is one that CMS Nomeco "voluntarily and needlessly proliferated by asserting the defenses of the judgment debtor" are outrageous mischaracterizations of this litigation and the positions taken by the parties.

The true facts are these:

1.    Af-Cap pursued garnishment litigation against CMS Nomeco in Texas, losing in the Western District of Texas and the Fifth Circuit.

2.    Having lost in Texas, Af-Cap sought a second bite at the apple, pursuing claims against CMS Nomeco in this garnishment proceeding for the full amount of its judgment, plus interest.

---

[5] The record evidence of these facts is overwhelming and undisputed. *See, e..g.*, Exhibits A and B to CMS Nomeco's Preliminary Answering Brief in Opposition to Af-Cap's Emergency Motion for an Order to Show Cause for an Order of Contempt, Order of Sequestration, and Injunctive Relief (D.I. 80).

3.     In obtaining the writ of garnishment from the Delaware Superior Court, Af-Cap neglected to inform that court that the Foreign Sovereign Immunities Act ("FSIA") required that the court find, before authorizing issuance of the writ, that the property was "in the United States" and "used for a commercial activity in the United States." Although the Congo and CMS Nomeco had actively defended against virtually identical writs in Texas and the Fifth Circuit, Af-Cap failed to disclose the FSIA's legal requirements or the facts relating to the Texas litigation to the Delaware Superior Court, instead misrepresenting to that court that the request for a garnishment writ was "unopposed."[6]

4.     The Fifth Circuit has held, in the context of the Congo's in-kind royalty at issue in this case, that a court's failure to make supporting findings under the Foreign Sovereign Immunities Act before authorizing issuance of the writ of garnishment renders the writ void *ab initio*. *FG Hemisphere Associates, L.L.C. v. Republique du Congo*, 455 F.3d 575, 588-591 (5th Cir. 2006). The writ at issue in this case suffers precisely that same defect, a defect that Af-Cap improperly attempted to overcome by failing to disclose the FSIA's requirements and the true facts to the Delaware Superior Court.[7]

---

[6] Af-Cap suggests that it was appropriate for it to tell the Delaware Superior Court that the application for issuance of the garnishment writ was "unopposed" because the Congo and CMS Nomeco "failed to appear." As this Court has already recognized, prior to actual service of the garnishment writ, CMS Nomeco "was not required to appear." *Connecticut Bank of Commerce v. Republic of Congo*, 440 F. Supp. 2d at 352-353. To suggest that CMS Nomeco "failed to appear" is disingenuous. Furthermore, Af-Cap knew full well that the Congo's position was that the U.S. courts had no jurisdiction to enter orders affecting the Congo's right to take its own oil in its own territory. The Congo's foreign minister had written a letter to the federal judge presiding over the Austin litigation in the Spring of 2005, clearly stating that position. *See* D.I. 80, Ex. 6 to Ex. A.

[7] In its Answering Brief on the motion for attorneys' fees and other costs, Af-Cap persists in its false arguments that the Western District of Texas and Fifth Circuit rejected CMS Nomeco's defenses. *See* Ans. Br. at 3 ("CMS filed a procedurally deficient Answer raising, inter alia, the same rejected defenses from Western District of Texas and Fifth Circuit cases"). To the contrary, the Fifth Circuit held in the *FG Hemisphere* case that a district court must evaluate the FSIA requirements each time that writs are issued, and that a district court's failure to make findings on the FSIA requirements based on the circumstances existing at the time the writs are authorized, rendering the writs issued against CMS Nomeco in that case void *ab initio*. 455 F.3d at 588-591. The Fifth Circuit later held that CMS Nomeco was right in arguing that the Congo's in-kind royalty was not subject to garnishment as a matter of state law. *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006). Af-Cap's assertion that the Fifth Circuit "rejected" the defenses raised in this proceeding is baseless.

-6-

5.    During the course of the proceedings, CMS Nomeco faced the risk of termination of its oil concession by the Congo and was subjected to Congo court orders and threats of use and actual use of public force to enforce those orders.[8]

6.    This Court ordered the parties to brief the threshold legal issues of whether the FSIA rendered the writ of garnishment invalid (as held by the Fifth Circuit with regard to indistinguishable writs issued in Texas) and whether (as found by the Fifth Circuit under Texas law), state garnishment law precluded garnishment of the Congo's in-kind royalty.

7.    Shortly before the briefing of those threshold issues was completed, Af-Cap abandoned its claims against CMS Nomeco, filing a unilateral notice of dismissal in an effort to deprive this Court of authority to order Af-Cap to reimburse CMS Nomeco's attorneys' fees incurred in this proceeding.

A more compelling case for an award of fees to a garnishee could not exist. Based on a writ of garnishment obtained through non-disclosure of key facts and legal requirements and misrepresentation of non-opposition, Af-Cap dragged CMS Nomeco through almost eighteen months of proceedings, in an effort to force CMS Nomeco to pay a debt in which it had no involvement, resulting in expenditure of hundreds of thousands of dollars in fees to protect CMS Nomeco's legitimate interests. Then, on the eve of a potential adverse decision on the merits, Af-Cap attempted to flee this Court and deprive this Court of the ability to require reimbursement of CMS Nomeco's fees by filing a unilateral notice of dismissal, abandoning its

---

[8] Af-Cap asserts in its Brief in Opposition that with regard to CMS Nomeco's "alleged plight with the Congo," "none of the supposed facts are supported by affidavit or admissible proof." That contention is false. CMS Nomeco has previously submitted numerous affidavits establishing these facts. *See, e.g.*, the Declarations of Maryse Bernard and Bernard Castanet attached to CMS Nomeco's Brief in Opposition to Af-Cap's Emergency Motion for Order of Contempt, for Writ of Sequestration, and for Preliminary Injunction (D.I. 80, Exs. A and B). Af-Cap has not denied those facts, but has simply argued that they were irrelevant to its claims.

claims against CMS Nomeco, but leaving CMS Nomeco with hundreds of thousands of dollars in fees and expenses.

Af-Cap cannot escape so easily from the consequences of its actions. Denial of an award of attorneys' fees under these circumstances, leaving CMS Nomeco to bear the burden of hundreds of thousands of dollars in costs in connection with litigation over a debt in which it had no involvement, would be wholly inequitable. Contrary to Af-Cap's protestations to the contrary, Delaware law does not require such an inequitable result, as discussed below.

## II.    Delaware Law Authorizes an Award of Attorneys' Fees as "Costs" to a Prevailing Party Attacking an Attachment

Af-Cap goes to great lengths in arguing that there is no Delaware statute that expressly provides that a garnishee is entitled to recover attorneys' fees. That argument does not refute or even address the argument that CMS Nomeco makes in support of its motion that this Court award it attorneys' fees as part of the recoverable "costs" in this proceeding.

As the Delaware Supreme Court said in *Walsh v. Hotel Corp. of America*, 231 A.2d 458, 462 (Del. 1967), "[i]n Delaware, 'ordinary Court costs are usually allowed to the prevailing party, but counsel fees as part of allowable costs are exceptions.'" (quoting *Everitt v. Everitt*, 37 Del.Ch. 512, 146 A.2d 388). However, the court in Walsh recognized an exception to this general rule that "costs" do not include attorneys' fees: "[C]ounsel fees should be allowed . . . for a victorious attack on the attachment itself." *Walsh*, 231 A.2d at 462. Thus, under Delaware law, "costs" to be awarded to the prevailing party include "counsel fees . . . for a victorious attack on the attachment itself."

In recognition of the rule announced in *Walsh*, the court in *Kingsland Holding, Inc. v. Bracco*, 1996 WL 104257 (Del. Ch. 1996) required the plaintiff to post a bond to secure a garnishee's potential recovery of attorneys' fees in challenging a sequestration. The court

-8-

ordered a bond sufficient to cover the garnishees' attorneys' fees, holding that "more than a nominal bond is appropriate, in my view, because of Garnishees' attack on the sequestration process itself." That holding is fully consistent with the rule announced in *Walsh* that attorneys' fees are properly includable as "costs" in the event of a "victorious attack on the attachment itself."

Af-Cap's efforts to distinguish *Walsh* and *Kingsland Holding* are unavailing. Af-Cap argues that *Walsh* involved Superior Court Rule 4(b)(2), not garnishment proceedings, and it argues that *Kingsland Holding* involved sequestration and the Chancery Court rules. However, none of the statutes and rules at issue in those cases expressly provides for attorneys' fees. Instead, the courts were applying the rule, specifically adopted in *Walsh*, that with regard to a victorious attack on an attachment, attorneys' fees are included within "costs" recoverable by a prevailing party.

In short, the fact that there is no Delaware statute that expressly provides for an award of attorneys' fees to a garnishee attacking the validity of a writ of attachment *fieri facias* is irrelevant; Delaware law allows an award of such fees as an element of recoverable "costs" to the prevailing party. Af-Cap's argument that there is no Delaware authority for an award of attorneys' fees as costs in the context of an attachment proceeding is simply wrong.

**III.    CMS Nomeco is a Prevailing Party for Purposes of Recovery of its Costs By Virtue of Af-Cap's Abandonment of its Claims Against CMS Nomeco and the Circumstances Relating Thereto**

Af-Cap argues that its unilateral dismissal of the case prevents CMS Nomeco from being characterized as a prevailing party entitled to recover its costs. As noted in CMS Nomeco's Opening Brief, the Eighth Circuit has held that a district court has the inherent authority to award costs to a defendant when the plaintiff voluntarily dismisses its case. *Sequa Corp. v. Cooper*, 245 F.3d 1036 (8th Cir. 2001). Af-Cap attempts to distinguish *Sequa* by

-9-

arguing that the plaintiff in that case "obtained no relief in that case before it voluntarily dismissed the action." Ans. Br. at 11. That is no distinction. Af-Cap has obtained no relief whatsoever against CMS Nomeco in this case. Af-Cap cannot avoid its responsibility for reimbursement of CMS Nomeco's costs by voluntarily abandoning its claims shortly before judgment.[9]

In any event, even under the "prevailing party" authorities cited by Af-Cap, CMS Nomeco is properly characterized as a "prevailing party" for purposes of recovery of attorneys' fees. As Af-Cap acknowledges in its Brief in Opposition, a case need not go to judgment for a party to be a "prevailing party" under the federal statutes that authorize recovery of fees by a "prevailing party." The rule announced by the Third Circuit, formulated in the context of the typical situation in which a plaintiff is seeking recovery of attorneys' fees under a "prevailing party" statute, is (1) whether the party seeking fees achieved the relief sought; and (2) whether there is a causal connection between the litigation and the relief obtained. *Institutionalized Juveniles v. Sec'y of Public Welfare*, 758 F.2d 897, 910 (3d Cir. 1985). Under this rule, a party can be a "prevailing party" even if the case is resolved by settlement before judgment. *Disabled in Action v. Pierce*, 789 F.2d 1016, 1019 (3d Cir. 1986).

---

[9] Af-Cap argues in a footnote that CMS Nomeco's motion for attorneys' fees is inconsistent with its consent to recent dismissal orders in the federal court proceedings in Austin and Houston. Ans. Br. at 2 n.1. Again, Af-Cap has misstated the facts. In the Austin litigation, CMS Nomeco has not been a party since February 2005, when the Austin federal district court granted summary judgment in favor of CMS Nomeco and dismissed all claims against it. The recent stipulations of dismissal in the Austin litigation were submitted by the remaining parties to the pending proceedings there; CMS Nomeco was no longer a party and had no right to object to anything filed in those cases. With regard to the Houston proceedings, Af-Cap failed to inform this Court that the dismissal order in the Houston case expressly provided that "any remaining issues with respect to the Garnishees shall be resolved by separate order." Nor did Af-Cap inform this Court that CMS Nomeco and the other garnishees in the Houston case have filed a motion in that case seeking recovery of in excess of $2,000,000 in fees and costs from the judgment creditor in that case, FG Hemisphere. In short, there is nothing inconsistent in the positions that CMS Nomeco is taking with regard to the recent dismissals of the various cases against the Congo, and Af-Cap's suggestion to the contrary is blatantly and demonstrably false.

-10-

Under these standards, CMS Nomeco is a "prevailing party." In this action, Af-Cap sought recovery of millions of dollars in monetary liability against CMS Nomeco. CMS Nomeco denied any such liability. Af-Cap has now abandoned its claims against CMS Nomeco, having settled with the Congo for an undisclosed amount (with no contribution to the settlement whatsoever from CMS Nomeco) in the knowledge that under the Fifth Circuit's decisions in the Texas litigation and other authority, its case against CMS Nomeco was untenable. In short, Af-Cap got nothing from CMS Nomeco in this litigation, precisely the relief that CMS Nomeco was seeking from this Court.

There is an irrefutable causal connection between the litigation and the dismissal of the claims. Af-Cap aggressively sought recovery of the entire debt owed by the Congo from CMS Nomeco. CMS Nomeco defended against those claims, raising numerous defenses, including threshold legal defenses based on Fifth Circuit and other authority that established insurmountable obstacles to any recovery by Af-Cap.[10] In the face of a briefing order requiring the parties to address those threshold legal issues, and without any contribution whatsoever from CMS Nomeco, Af-Cap settled with the Congo for an undisclosed fraction of the total debt.

---

[10] Af-Cap suggests that a district court decision out of Illinois stands for the proposition that this Court had no authority to invalidate the writ issued in this case on FSIA grounds because the Congo did not appear. Ans. Br. at 10 & n.8. Through its use of a "*[s]ee, e.g.,*" signal, it attempts to mislead the Court into thinking that there are other decisions that reach that conclusion, but to CMS Nomeco's knowledge, the Illinois decision is the only one that does so. The Illinois decision is refuted by authority from the Fifth and Eighth Circuits. *Walker International Holdings Limited v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004) ("the very language of the FSIA makes clear that the [Congo's] presence is irrelevant"); *Brewer v. Socialist People's Republic of Iraq*, 890 F.2d 97, 102 (8th Cir. 1989) ("[E]ven if a party fails to enter an appearance and assert its claim of immunity, a court must determine whether immunity is available pursuant to the FSIA"). The Fifth Circuit's decision in *FG Hemisphere* establishes the invalidity of the writ issued in this case, as it is undisputed that the Delaware Superior Court made no findings concerning the "in the United States" and "used for a commercial activity" requirements of the FSIA, and the Fifth Circuit held in FG Hemisphere that such findings are jurisdictionally required. 455 F.3d at 588-591. Writs issued without such findings are void *ab initio*. *Id.* Af-Cap's legal position in this case was that this Court should disregard the decisions of the Fifth and Eighth Circuits.

Having failed in its garnishment efforts in Texas[11] and California,[12] and facing defeat in this litigation unless it could convince this Court that the Fifth Circuit was wrong on key threshold issues in the case, Af-Cap settled with the Congo for less than the full amount of the debt and abandoned its garnishment claims without any contribution from CMS Nomeco.  The only rational conclusion is that there is a substantial and irrefutable causal connection between this litigation and Af-Cap's abandonment of its claims against CMS Nomeco.  CMS Nomeco is a prevailing party.[13]

## IV.    There is No Reason for Delay or Discovery on the Reasonableness of CMS Nomeco's Fee Request

Af-Cap's Brief in Opposition contains a footnote suggesting that if the Court does not "reject CMS's request out of hand, then Af-Cap will seek discovery on the reasonableness of CMS's fees."  Ans. Br. 4-5 n.4.  In that same footnote, Af-Cap requests the Court to defer consideration of the reasonableness of the fees that CMS Nomeco seeks until the Court determines the liability issues.  *Id.*

There is no reason for such a bifurcation in this case or the associated delay.  As a threshold matter, the advisory committee notes to Rule 54 state that "*on rare occasion*, the court may determine that discovery under Rules 26-37 would be useful to the parties" on an attorneys'

---

[11] *See Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006) (affirming dismissal of Af-Cap's garnishment action against CMS Nomeco, holding that in-kind obligations are not garnishable as a matter of state garnishment law)

[12] *See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080 (9th Cir. 2007) (rejecting Af-Cap's attempt to garnish obligations owed by Chevron affiliates to the Congo on the grounds that the garnishment was prohibited by the FSIA).

[13] Af-Cap's counter-argument that it is the "prevailing party" based on its settlement with the Congo is baseless. As this Court has already held, the true defendant in this garnishment proceeding is CMS Nomeco, not the Congo. *See Connecticut Bank of Commerce v. Republic of Congo*, 440 F. Supp. 2d at 351-352. Af-Cap obtained no relief, by settlement or otherwise, from its opponent in this proceeding – CMS Nomeco. All of the "prevailing party" cases involving settlements that are cited by Af-Cap in its Brief in Opposition involved situations in which the plaintiff obtained a favorable settlement from its opponent in the litigation. Here, Af-Cap abandoned its claims against CMS Nomeco, with no payment or other consideration whatsoever.

fee application.  Fed. R. Civ. P. 54(d) Advisory Committee Note (emphasis added).  Af-Cap

provides no explanation of why this case qualifies as such a "rare" case in which discovery is

appropriate.  The fee application and supporting evidence is straightforward, and Af-Cap has

provided no justification for discovery or for a bifurcation.

## **CONCLUSION**

For the reasons set out above and in its Opening Brief, Garnishee CMS Nomeco

requests that the Court grant its motion for an award of attorneys' fees and other costs.  CMS

Nomeco also requests such other relief to which it may be entitled.


Respectfully submitted,


OF COUNSEL:

Guy S. Lipe
Jason M. Powers
VINSON & ELKINS L.L.P.
First City Tower
1001 Fannin Street, Suite 2300
Houston, TX  77002-6760
(713) 758-2222

Dated:  April 19, 2007

/s/ M. Duncan Grant
M. Duncan Grant (Del. Bar No. 2994)
James C. Carignan (Del. Bar No. 4230)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

Attorneys for Garnishee CMS Nomeco Inc.