IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONNECTICUT BANK OF COMMERCE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civ. No. 05-762-SLR |
| REPUBLIC OF CONGO, | ) ) |
| Defendant, | ) ) |
| CMS NOMECO CONGO INC., | ) ) |
| Garnishee. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this 20th day of November, 2007, having reviewed garnishee's

motion for attorney fees, and papers submitted in connection therewith;

IT IS ORDERED that the pending motion (D.I. 107) is denied, for the reasons

that follow.

**1. Introduction.** Connecticut Bank of Commerce ("CBC") obtained a money

judgment in March 2000 against defendant, the Republic of Congo (the "ROC"), in the

Supreme Court of the State of New York. (D.I. 1 at ¶ 3) CBC's assignee, Af-Cap, Inc.

("Af-Cap"), filed a judgment action in the State of Delaware on August 30, 2005;

garnishee, CMS Nomeco Congo LLC ("CMS"), removed to this court. Id. Af-Cap's

motion to remand was denied. (D.I. 3, 29) The parties' cross-motions for summary

judgment (D.I. 7, 14) were denied without prejudice to renew after the completion of

discovery. (D.I. 29) Af-Cap's emergency motion to show cause (D.I. 66) was denied.

(D.I. 87) The parties cross-motioned for judgment on the pleadings. (D.I. 90, 96)

Having then settled with the ROC, Af-Cap filed a notice of voluntary dismissal under

Fed. R. Civ. P. 41(a)(1)(i). (D.I. 102) Presently before the court is CMS's motion for

attorney fees.[1] (D.I. 107)

**2. Background.** These parties have litigated nearly identical claims in Texas

resulting in three decisions by the United States Court of Appeals for the Fifth Circuit.

In 1984, Equator Bank Limited entered a loan agreement with ROC to build a highway.

The ROC defaulted on the loan and a judgment was entered in London. CBC, the

assignee of the creditor, converted the foreign judgment into a United States judgment

by filing suit in New York. The New York court issued a default money judgment (the

"New York Judgment").

CBC then registered the New York judgment in Texas state court and received a

writ of garnishment against CMS. CMS and other garnishees removed to the United

States District Court for the Western District of Texas. The Fifth Circuit, applying Texas

statutory garnishment law, ultimately held that nonmonetary obligations, namely in-kind

royalty payments (oil deliveries), were not subject to garnishment because the statute

only allowed garnishment of monetary obligations. Af-Cap, Inc. v. Republic of Congo,

462 F.3d 417 (5th Cir. 2006).

**3. Discussion.** The first question to be addressed is whether the notice of

voluntary dismissal divests this court of jurisdiction to resolve the pending motion for

---

[1]The court notes that the only objection to dismissal is the pending motion for attorney fees.

2

attorney fees.   Voluntary dismissal without a court order is governed by Fed. R. Civ. P.

41(a)(1)(i), which provides:

> Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of
> the United States, an action may be dismissed by the plaintiff without
> court order (i) by filing a notice of dismissal at any time **before service by
> the adverse party of an answer or of a motion for summary
> judgment**, which ever first occurs . . . .

(Emphasis added)[2]  CMS served an answer (D.I. 2) and a motion for summary

judgment (D.I. 14) prior to the notice of dismissal (D.I. 102).  If CMS is an "adverse" or

"opposing" party, voluntary dismissal is improper absent a court order.

   Both parties have cited <u>Fantasy Shipping Pool Ltd. v. Simatech Marine S.A.</u>, No.

Civ. A. 01-10725, 2002 WL 1733662 (S.D.N.Y. July 25, 2002), as supportive of their

respective positions. (D.I. 105, 106)  The <u>Fantasy Shipping</u> court held that a garnishee

was not an "adverse party" when "[t]he garnishees were entirely indifferent to the

underlying issues between [the parties].  The resolution of those issues, by litigation or

settlement, would have no impact upon the property or any other interest of the

garnishees." <u>Id.</u> at *2.

   By contrast, this court has already held in its decision denying remand that,

---

   [2] Unless Congress takes action, a proposed rule amendment will become
effective which changes the language of Rule 41 to read:

> (1) By the Plaintiff.  (A) Without a Court Order. Subject to Rules 23(e),
> 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may
> dismiss an action without a court order by filing: (i) a notice of dismissal
> **before the opposing party serves either an answer or a motion for
> summary judgment** . . . .

(Proposed) (emphasis added).  The 2007 amendment advisory committee notes state
that "[t]hese changes are intended to be stylistic only."  The amendment, therefore,
replaces the term "adverse party" with the term "opposing party" as a stylistic change.

under the circumstances at bar, the pending garnishment action is a separate and distinct civil action. (D.I. 28) As recognized by the court, there is a realistic danger that the garnishment could put CMS's interests in jeopardy, a fact that distinguishes the instant litigation from Fantasy Shipping. See 2002 WL 1733662, at *2. Without reaching the merits of the garnishment action, CMS could be ordered to pay Congo's royalties in the United States and, at the same time, be ordered by Congolese courts to pay the same royalties. See LNC Inv., Inc. v. Republic of Nicaragua, No. Civ. A. 1-134, 2002 WL 32818644, at *1 (D. Del. 2002) (quashing writ of attachment where the danger of double liability existed because discharge of debt would not be recognized in foreign jurisdiction). The potential jeopardy to CMS's interests makes CMS an interested party rather than a garnishee merely holding a debtor's property.

Even if the notice of dismissal were properly filed under Fed. R. Civ. P. 41(a)(1)(i), the court would retain jurisdiction over collateral issues such as CMS's motion for attorney fees. See Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."); Earnes v. Nationwide Mut. Ins. Co., 412 F. Supp. 2d 431, 438 n.5 (D. Del. 2006) (summarizing Cooter & Gell as "stating that a district court may retain jurisdiction over an award of fees and costs after dismissal"). "[M]otions for costs or attorney fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.'" Cooter, 496 U.S. at 395 (quoting Sprague v. Ticonic National Bank, 307 U.S. 161, 170 (1939) (alteration in original)).

According to the American Rule, "absent statute or enforceable contract, litigants

4

pay their own attorneys' fees." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421

U.S. 240, 257 (1975).  However, the inherent powers of courts of equity allow the award

of attorney's fees under three exceptions:  common fund exception; willful violation of

court order; or "when a party has 'acted in bad faith, vexatiously, wantonly, or for

oppressive reasons.'"  Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (quoting

Alyeska, 421 U.S. at 258-59).  "[I]nherent powers must be exercised with restraint and

discretion."  Id. at 44 (explaining that discretion includes the ability to fashion

appropriate sanctions for abusing the judicial process).  In sum, the exceptions allow

only limited judicial discretion under special circumstances.

Under the facts at bar, the common fund exception and the willful violation of a

court order exception are inapplicable.  The only exception that may apply is whether

Af-Cap "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Alyeska,

421 U.S. at 258-59 (narrowing the courts' discretionary powers to award attorney fees

to abuses of the judicial process).

CMS contends in this regard that it was subject to protracted litigation in Texas

before being haled into this court by Af-Cap, notwithstanding Af-Cap's legal set-backs in

Texas and its knowledge of the circumstances facing CMS.[3]  With respect to the

litigation in Texas, the district court dismissed the case, holding that the Foreign

Sovereign Immunity Act ("FSIA") prohibited garnishment of in-kind royalties and tax

obligations.  It took three decisions of the Fifth Circuit to determine the law of the case,

---

[3]Because the ROC stridently refused to allow in-kind royalty payments to be
diverted, allegedly through armed force, the double liability danger allegedly was known
to Af-Cap.

to wit, that Texas state law (as opposed to the FSIA) prohibited garnishment of nonmonetary obligations, such as in-kind royalties. That Af-Cap pursued litigation in this court, under Delaware state law,[4] should not be characterized as an abuse of the judicial process in the context of this complicated litigation. Therefore, the court finds no basis for an award of attorney fees at bar.

IT IS FURTHER ORDERED that, consistent with the notice of voluntary dismissal, the above captioned case is dismissed.

_____
United States District Judge

---

[4]It is not clear whether Delaware law confines garnishment to only monetary obligations. See 10 Del. C. § 3508 ("Goods, chattels, rights, credits, moneys, effects, lands and tenements may be attached under this chapter."). This "includes debts owed the judgment debtors by the garnishee." See LNC Inv., Inc. v. Democratic Republic of Congo, 69 F. Supp. 2d 607, 611 (D. Del. 1999).